JOSEPH S. PICCHI, ESQ. (State Bar No. 157102)
AARON T. SCHULTZ, ESQ. (State Bar No. 222949)
GALLOWAY, LUCCHESE, EVERSON & PICCHI
A Professional Corporation
2300 Contra Costa Blvd., Suite 350
Pleasant Hill, CA 94523-2398
Tel. No. (925) 930-9090
Fax No. (925) 930-9035
E-mail: aschultz@glattys.com

Attorneys for Defendant
SAN FRANCISCO FERTILITY CENTERS dba PACIFIC FERTILITY CENTER
(erroneously sued herein as PACIFIC FERTILITY CENTER)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION, | Case No. 3:18-CV-01586-JSC <br><br> Hon. Jacqueline Scott Corley <br><br> **SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO COMPEL ARBITRATION** <br><br> **Date: February 21, 2019** <br> **Time:** 9:00 a.m. <br> **Ct.Room: F, 15th Floor** <br> **Judge:** Hon. Jacqueline S. Corley |

## I.   INTRODUCTION

Plaintiffs' original Consolidated Complaint included, as against PFC, eight causes of action. Among these was included a cause of action entitled Negligence/Gross Negligence alleging that Defendants (including PFC) failed to exercise due care in storage and freezing of the eggs and embryos. The original Joint Complaint also named PFC in Plaintiffs' causes of action for Unfair Business Practices, violations of the Consumer Legal Remedies Act (hereafter "CLRA"), and Deceit and Fraudulent

1

Concealment. In support of these other causes of action Plaintiffs alleged that PFC had knew that their equipment, systems, and processes, including Defendants' storage tank, electronic monitoring, alarm, and response systems and processes, were inadequate to safely store Plaintiffs' eggs and embryos and failed to communicate this to Plaintiffs.

The newly filed First Amended Complaint clarifies the positions and responsibilities of the various defendants and has reduced the causes of action alleged against PFC to only three, the Fifth Cause of Action for Violations of the Unfair Competition Law (hereafter "UCL"), the Sixth Cause of Action for violations of the CLRA, and the Seventh Cause of Action for Fraudulent Concealment. While the causes of action against PFC have dwindled and the factual claims have been modified, the basis for the action against PFC remains the same, that PFC breached duties to its patients related to fertility services that it provided. It is alleged that PFC did so, in part by failing to ensure that proper safeguards were in place to protect its patients' eggs and embryos, and in part by failing to disclose to its patients that PFC had contracted with Prelude/Pacific MSO to maintain and store its patients' eggs and embryos. However, rather than directly alleging that PFC failed to implement adequate measure, Plaintiffs now only allege that PFC failed to tell its patients that inadequate measure were being taken to safeguard their eggs and embryos.

Limiting the allegations against PFC to only allegations that they failed to tell its patients about inadequate systems and processes and Co-defendants responsibilities with respect to these does not bring the claims against PFC outside of the provisions of the "Medical Services" Arbitration Agreement, and Plaintiffs would still be compelled to arbitrate all claims against PFC pursuant to that Agreement for the same reasons as were previously set forth in PFC's moving papers. Further, even if the allegations against PFC fell outside of the definition of "Medical Services", Plaintiffs would still be compelled to arbitrate their claims against PFC under the "Other Claims" arbitration provision contained in the Informed Consents signed by Plaintiffs. For these reasons,

GALLOWAY, LUCCHESE,
EVERSON & PICCHI
2300 Contra Costa Blvd.,
Suite 350
Pleasant Hill, CA 94523
(925) 930-9090

2

3:18-CV-01586-JSC: SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO COMPEL ARBITRATION

950-10570/ATS/1040502.docx

the amendments to the complaint do not materially impact PFC's Motion to Compel Arbitration.[1]

## II. PERTINENT ALLEGATIONS AGAINST PFC IN THE FIRST AMENDED COMPLAINT

In the First Amended Complaint, Plaintiffs allege that, unbeknownst to Plaintiffs, PFC entered into an agreement with Prelude, and under that agreement, Prelude took over PFC's egg and embryo storage operation, agreeing as part of the transaction that Prelude and its operating subsidiary, Pacific MSO, would bear responsibility for determining how the storage services were performed. Plaintiffs contend that, "despite multiple opportunities to do so, neither PFC nor Prelude notified Plaintiffs of the Prelude-PFC transaction or that because of it, PFC (and the doctors it employs) were no longer responsible for the storage of Plaintiffs' eggs and embryos at its facility. (See FAC ¶ 5.)

Plaintiffs go on to allege the facts concerning the failure of Tank 4 and attribute the failure to the conduct of Chart and failures on the part of Prelude/Pacific MSO. (See FAC ¶ 6-9.) As against Prelude/Pacific MSO, Plaintiffs allege that they failed to safely preserve the eggs and embryos belonging to Plaintiffs, resulting in harm to Plaintiffs. (See FAC ¶ 193.) As to PFC, Plaintiffs assert PFC failed to disclose that it had transitioned responsibility for egg and embryo storage to Prelude and that Prelude's prevailing systems and processes in place for safe storage were inadequate. (See FAC ¶¶ 233, 247, and 260.)

Plaintiffs contend that Prelude should have had a system and process in place to ensure that Plaintiffs' eggs and embryos were not damaged. Plaintiffs allege that Prelude lacked monitoring, alarm, and response systems sufficient to detect and

---

[1] The FAC also substitutes two new Plaintiffs. The Plaintiffs identified as A.B and C.D. have been changed to a new couple, but they are still identified as A.B. and C.D. PFC has submitted a supplemental Declaration concurrently with this brief which attaches the arbitration agreements signed by these new Plaintiffs. (See Declaration SUPPLEMENTAL DECLARATION OF AARON T. SCHULTZ IN SUPPORT OF DEFENDANT PACIFIC FERTILITY CENTER'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION.)

GALLOWAY, LUCCHESE, EVERSON & PICCHI
2300 Contra Costa Blvd.,
Suite 350
Pleasant Hill, CA 94523
(925) 930-9090

3

3:18-CV-01586-JSC: SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO COMPEL ARBITRATION

950-10570/ATS/1040502.docx

prevent temperature rise in Tank 4. Plaintiffs also allege that this risk could have been mitigated by Prelude (and earlier by PFC) by storing multiple eggs and embryos belonging to a single customer in separate tanks. (See FAC ¶ 95.) Thus, while Plaintiffs allege lack of disclosure against PFC, their underlying claim against PFC is based on inadequate processes and systems in place to ensure the safety of eggs and embryos.

In addition, Plaintiffs contend that communications by PFC to its patients after the incident with Tank 4 compounded the harm to Plaintiffs. According to Plaintiffs, PFC first contacted its patients one week after the incident and that after this the PFC call center was overwhelmed for weeks and that information provided over the phone was vague and often inconsistent. Plaintiffs further allege that in this subsequent communication PFC still did not inform the patients that Prelude had control over the eggs and embryos, and in some cases continued to bill patients for storage. Plaintiffs claim that the inconsistent and slow information provided by PFC to its patients compounded the harm caused by the incident. (See FAC ¶ 125.)

With respect to the three Causes of Action alleged against PFC, for violations of the UCL, CLRA and for Fraud, the claims against PFC are essentially the same. It is claimed that PFC knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable processes and systems in place to safeguard Plaintiffs' eggs and embryo, and that PFC knowingly and intentionally failed to disclose and actively concealed that it had ceded control over storage of Plaintiffs' eggs and embryos to Prelude and Pacific MSO. Plaintiffs claim that had PFC advised that it ceded control of the eggs and embryos to Prelude and that Prelude had inadequate measures in place that they would not have purchased, or continued purchasing, the long-term freezer storage services at issue (See FAC ¶¶ 236, 253, and 263.)

GALLOWAY, LUCCHESE, EVERSON & PICCHI
2300 Contra Costa Blvd.,
Suite 350
Pleasant Hill, CA 94523
(925) 930-9090

## III. LAW AND ARGUMENT

### A. The Causes of Action for Violations of the UCL, CRLA and for Fraud Remain Based on Alleged Improper Rendering of Medical Services.

The initial negligence claims against PFC alleged, at least in part, Defendants owed Plaintiffs a duty to exercise the highest degree of care when maintaining, inspecting, monitoring, and testing the liquid nitrogen storage tanks used for the preservation of eggs and embryos at Defendants' San Francisco laboratory.  (See Consolidated Complaint (hereafter "Compl."), ¶ 192.)

Chief among the allegations against PFC in the original Consolidated Complaint was that PFC failed to have adequate systems and processes in place to safeguard stored eggs and embryos.  (See Compl. 99, 180, 202(f), 238(f), 242, 254.)  Plaintiffs are now aware that PFC was not responsible for the maintaining the eggs and embryos, so the claims that PFC failed to have adequate systems and processes in place have been deleted, and have been replaced with a claim that PFC failed to inform its patients of the inadequate processes and safeguards.  (See FAC ¶ 223(a), stating "When offering to provide long-term freezer storage services to Plaintiffs and class members, PFC knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable processes and systems in place to safeguard Plaintiffs' and class members' eggs and embryos".)

The purported failure to ensure adequate processes and systems to monitor and safeguard the eggs and embryos is the gravamen of Plaintiffs claims against PFC and Prelude, regardless of whether they are couched in a cause of action for negligence or a cause of action for violations of CLRA or UFL, or fraud, and regardless of whether they are for failing to put in place the appropriate processes and symptoms or whether the claim is for a failure to inform.  Certainly, if reasonable processes and systems were in place to safeguard Plaintiffs' and class members' eggs and embryos, then there would be no basis for a claim in this case against PFC or Prelude.

As discussed in PFC's moving papers, the "Medical Services" Arbitration Agreement provides for arbitration of any claim as to whether any medical services were improperly rendered.[2]  As more fully briefed in the original moving papers, the fertility services provided by PFC (including the cryopreservation storage services which were then contracted to Prelude) were medical services.  Plaintiffs claim that these medical services were improperly provided and that PFC is liable because it did not inform its patients of the inadequacies.  These are claims that the services provided by PFC were improperly, negligently or incompletely rendered, and thus they fall under the "Medical Services" arbitration agreement.

**B.     Plaintiffs' Allegation that PFC Failed to Inform Plaintiffs that it Ceded Control of their Eggs and Embryos Comes within the Medical Services Arbitration Agreement.**

Plaintiffs allege that it was improper for PFC to enter into an agreement for Prelude/Pacific MSO to maintain Plaintiffs stored eggs and embryos.  As noted above, the "Medical Services" arbitration agreement provides that claims for improperly rendered medical services are to be arbitrated.  By alleging that PFC improperly failed to inform its patients that their eggs and embryos were going to be maintained by Prelude/Pacific MSO, Plaintiffs are challenging the propriety of the manner in which PFC provided the fertility services it offered.  Plaintiffs' contention is that PFC had a duty to disclose others who would be involved in, or who would be responsible for the aspects of the fertility services offered by PFC.  The question as to whether or not PFC had such a duty to its patients or whether PFC had a duty to maintain control over storage services is a question about whether or not the medical services provided were improperly, negligently or incompletely rendered.

Therefore, claims that PFC improperly ceded control and failed to inform Plaintiffs of this is a claim that would be covered under the "Medical Services" Arbitration Agreement.

---

[2] See Schultz Decl. Exs. 1A, 1C, 1E, 1G, 1I, 1M, filed as part of the Motion to Compel.

3:18-CV-01586-JSC: SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO COMPEL ARBITRATION         950-10570/ATS/1040502.docx

GALLOWAY, LUCCHESE, EVERSON & PICCHI
2300 Contra Costa Blvd.,
Suite 350
Pleasant Hill, CA  94523
(925) 930-9090

### C. Even If the Court Declines Application of the "Medical Services" Provision, Plaintiffs Agreed to Arbitrate "Other Claims."

Plaintiffs signed agreements to arbitrate claims based on the provision of "medical services" and an agreement to arbitrate any other claim related to the Informed Consent forms signed by Plaintiffs. The Informed Consent Agreements reiterated the agreement of patients to abide by the "Medical Services" arbitration agreement and also provided that patients agreed to arbitrate any other dispute related to the informed consent agreement. The informed consent agreement refers in detail to cryopreservation and storage. The dispute in this case undeniably relates to cryopreservation and storage of eggs and embryos. Therefore, regardless of whether Plaintiffs claims fall under the "Medical Services" arbitration agreement, Plaintiffs would still be compelled to arbitrate their claims against PFC under the "Other Claims" provision of the Informed Consent Agreements.[3]

## IV.   CONCLUSION

The new allegations against PFC as set forth in the FAC do nothing to impact the application of arbitration agreements between PFC and Plaintiffs. All of the causes of action relate to a dispute concerning medical services and therefore all under the provisions of the "Medical Services" Arbitration Agreement. To the extent that any claims against PFC may fall outside of the scope of the Arbitration Agreement they would be covered by the Other Claims provision of the Informed Consent agreements.

Dated: January 9, 2019

GALLOWAY, LUCCHESE, EVERSON & PICCHI

By:   /s/ Aaron T. Schultz
AARON T. SCHULTZ, ESQ.
Attorneys for Defendant
SAN FRANCISCO FERTILITY CENTERS
dba PACIFIC FERTILITY CENTER

---

[3] The Informed Consent Agreements are attached to Decl. of Schultz, filed as part of the Motion to Compel at Ex. 1B at 21, Ex. 1H at 23, Ex. 1D at 23, Ex. 1F at 23, Exs. 1J-L at 23, Ex. 1N at 7, Ex. 1O at 4, Ex. 1P at 7, Ex. 1Q at 4, Ex. 1R at 4, Ex. 1S at 4.)

GALLOWAY, LUCCHESE, EVERSON & PICCHI
2300 Contra Costa Blvd., Suite 350
Pleasant Hill, CA 94523
(925) 930-9090

7

3:18-CV-01586-JSC: SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO COMPEL ARBITRATION

950-10570/ATS/1040502.docx