UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No.18-cv-01586-JSC<br><br>**ORDER DENYING DEFENDANTS' MOTIONS FOR A STAY PENDING APPEAL**<br><br>Re: Dkt. Nos. 203, 208 |

Plaintiffs filed this putative class action against Pacific Fertility Center ("Pacific Fertility"), Prelude Fertility, Inc. ("Prelude"), and Chart Industries ("Chart") alleging various state law claims.[1] Pacific Fertility responded by moving to compel arbitration based on the Plaintiffs' fertility services agreement with Pacific Fertility. Prelude, Pacific Fertility MSO, and Chart filed separate joinders likewise moving to compel arbitration. After two rounds of briefing, the Court granted Pacific Fertility's motion to compel arbitration, but denied Prelude, Pacific Fertility MSO, and Chart's motions to compel arbitration, and denied the accompanying requests to stay proceedings pending arbitration. (Dkt. No. 192.) Prelude, Pacific Fertility MSO, and Chart have since appealed the denial of their motions to compel arbitration and now move for a stay pending appeal. (Dkt. Nos. 203 & 208.) Having considered the parties' briefs and having had the benefit of oral argument on June 20, 2019, the Court DENIES the motions to stay. Defendants have failed to demonstrate that their appeals raise serious legal issues or that they face probable irreparable injury absent a stay.

---

[1] Plaintiffs' First Amended Complaint added Pacific Fertility MSO, LLC, a Prelude subsidiary, as a defendant. (Dkt. No. 143.)

## BACKGROUND

Pacific Fertility markets and sells egg and embryo cryopreservation services. (Dkt. No. 196, First Amended Consolidated Amended Class Action Complaint ("FAC") at ¶ 1.[2]) Cryopreservation involves preservation of tissue using cooling techniques. (*Id*. at ¶ 1.) Plaintiffs engaged Pacific Fertility's services to cryopreserve their eggs and embryos between 2010 and 2016, and in doing so, signed Informed Consent Agreements containing arbitration clauses. (*Id*. at ¶ 4.) In 2017, unbeknownst to Plaintiffs, Prelude took over operation of Pacific Fertility's egg and embryo storage facilities through its operating subsidiary Pacific MSO. (*Id*. at ¶ 5.) Prelude operates a national network of egg and embryo long-term freezer storage facilities. (*Id*.) On March 4, 2018, Prelude "discovered that the liquid nitrogen levels in a tank known as 'Tank 4' had dropped to an unsafe level for an undetermined period of time, destroying or jeopardizing the eggs and embryos stored in the tank, including those belonging to Plaintiffs." (*Id*. at ¶ 6.) The at-issue tank was manufactured by Chart. (*Id*. at ¶ 8.)

On March 11, 2018, Plaintiffs were notified via email of "'a very unfortunate incident' in which the storage tank containing Plaintiffs' cryopreserved eggs and embryos 'lost liquid nitrogen for a brief period of time,' [and] that a 'preliminary analysis' suggested some of the eggs and embryos in the tank may have been destroyed." (*Id*. at ¶ 7.) Following receipt of this email, Plaintiffs filed this putative class action, which was later consolidated with two other actions pending in the Northern District of California: *Bauer, et al. v. Pacific Fertility Center, et al*., No. 3:18-cv-01634 (N.D. Cal. filed Mar. 15, 2018) and *A.B., et al. v. Pacific Fertility Center, et al*., No. 3:18-cv-02298 (N.D. Cal. Filed April 17, 2018). (Dkt. No. 17.) These actions are now known as the *In re: Pacific Fertility Litigation*.

Shortly after the actions were consolidated, Pacific Fertility filed a motion to compel arbitration in which Prelude and Chart filed separate joinders. (Dkt. Nos. 52, 56, 67.) The motions to compel arbitration first came before the Court for a hearing on November 9, 2018. At that hearing, Plaintiffs requested leave to amend their complaint to reflect information learned through discovery.

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

The Court granted Plaintiffs' request and ordered the parties to file supplemental briefing related to the motion to compel arbitration. (Dkt. No. 133.) Plaintiff's FAC added Pacific MSO, Prelude's subsidiary, as a defendant and pleads the following 11 claims for relief: (1) negligence and/or gross negligence as to Prelude and Pacific MSO; (2) negligent failure to recall as to Chart; (3) bailment as to Prelude and Pacific MSO; (4) premise liability as to Prelude and Pacific MSO; (5) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq. as to all Defendants; (6) violation of California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 et seq. as to Pacific Fertility, Prelude, and Pacific MSO; (7) fraudulent concealment as to Pacific Fertility, Prelude, and Pacific MSO; (8) strict products liability-failure to warn as to Chart; (9) strict products liability-manufacturing defect as to Chart; (10) strict products liability-design defect-consumer expectations test as to Chart; and (11) strict products liability-design defect-risk utility test as to Chart. (Dkt. No. 196.) The Court thereafter granted multiple extensions of the briefing schedule and ultimately, the motions to compel arbitration came before the Court for a second hearing on March 12, 2019. (Dkt. Nos. 149, 162, 178.)

On March 25, 2019, the Court issued its Order granting Pacific Fertility's motion to compel arbitration, but denying Prelude, Pacific Fertility MSO, and Chart's joinders, as well as their motions to stay proceedings pending arbitration of the claims against Pacific Fertility. (Dkt. No. 192.) A month later, Prelude, Pacific Fertility MSO, and Chart filed notices of appeal and the underlying motions to stay pending appeal. (Dkt. Nos. 201, 202, 204, 208.) The following day, the parties appeared for a Further Case Management Conference where the Court set a briefing schedule on the motion to stay, and a schedule for the rest of the action with a deadline of January 16, 2020 for hearing Plaintiffs' class certification motion and a trial date of September 8, 2020. (Dkt. No. 206.) The Court also lifted the stay of discovery and is presently actively engaged in overseeing discovery.

**LEGAL STANDARD**

A district court's order denying a motion to compel arbitration does not automatically result in a mandatory stay of proceedings pending appeal of that order. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). A stay pending appeal is a matter of

judicial discretion, not of right. *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken*, 556 U.S. at 433.

> In deciding whether to exercise that discretion, courts consider the following factors:
> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. (citation omitted). In weighing these factors, courts apply a "sliding scale," whereby the elements of the test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Leiva–Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). In particular, a moving party who under the first factor cannot satisfy a strong likelihood of success, must at minimum show that its appeal presents "a substantial case on the merits." *Id*. at 966. Courts alternatively articulate this lesser threshold as whether "serious legal issues" are raised. *See Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998). "[A] party satisfying this lower threshold under the first *Nken* factor must [also] demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor." *Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 5591722, at *2 (N.D. Cal. Sept. 23, 2015) (internal citation and quotation marks omitted).

**DISCUSSION**

Prelude and Chart advance similar arguments in favor of a stay.[3] Both insist that their appeals raise serious legal issues and that they would face irreparable harm if proceedings were to continue in this Court while their appeals are heard.

**A. Serious Legal Issues/ Substantial Case on the Merits**

The first *Nken* factor requires the moving party to demonstrate either a "likelihood of success on the merits" or "a substantial case on the merits" or that "serious legal questions are raised." *Leiva-Perez*, 640 F.3d at 968. Defendants here do not argue a likelihood of success on

---

[3] For the remainder of this order, Prelude and its subsidiary Pacific Fertility MSO are referred to collectively as Prelude and Defendants refers to Prelude, Pacific Fertility MSO, and Chart collectively.

4

the merits and instead focus on whether their appeals present a substantial case on the merits or raise serious legal issues. The Ninth Circuit has not clearly defined these phrases. Courts, however, have found that the following constitute serious legal issues: issues of first impression within the Ninth Circuit, *see Britton*, 916 F.2d at 1412, questions of constitutionality, *see Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *3 (N.D. Cal. June 8, 2011), splits in authority on important legal issues, *see Pokorny v. Quixtar, Inc.*, No. 07–00201 SC, 2008 WL 1787111 at *2 (N.D. Cal. Apr.17, 2008), and open questions as to whether a California Supreme Court case was preempted by the Federal Arbitration Act, *see Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2018 WL 2234049, at *2 (N.D. Cal. May 16, 2018). *See also Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, – F.Supp.3d – 2019 WL 2372324, at *3 (N.D. Cal. June 5, 2019) (finding that a substantial question is one which "raise[s] genuine matters of first impression with the Ninth Circuit, implicate[s] a constitutional question, or otherwise address[es] a pressing legal issue.").

Neither Prelude nor Chart argue that their appeals present an issue of first impression, a constitutional question, or seek to resolve a split of authority. Instead, they both dispute the Court's application of well-settled California and Ninth Circuit law to the facts of this case. In particular, both Prelude and Chart insist that the Court erred in finding that they were not entitled to enforce the arbitration agreements Plaintiff signed with Pacific Fertility under a theory of equitable estoppel. However, as the Court discussed at length in its order, equitable estoppel is "narrowly confined" in the arbitration context. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) ("Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined."). Neither of the circumstances set forth in *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 221 (2009), are satisfied here because Plaintiffs' claims against Prelude and Chart are not "founded in," "intertwined with," or "intimately connected to" the agreements they signed with Pacific Fertility which contain the arbitration agreements. Prelude also renews its argument that it is entitled to enforce the arbitration agreements as a third-party beneficiary based on its status as an assignee or as "designated staff." The Court considered, and rejected, this argument in

denying Prelude's motion to compel arbitration.[4] Finally, Chart insists that the Court's denial of a stay of proceedings pending arbitration of the Pacific Fertility claims presents a serious legal issue reiterating the same arguments previously advanced.

Defendants' rehash of arguments the Court previously considered and rejected at length fails to raise a serious legal question; otherwise, every time a party disagreed with a court's ruling, a serious question would exist. *See Jimenez*, 2015 WL 5591722, at *2 ("rais[ing] similar arguments to those made in its motion to compel arbitration" rather than any substantively new arguments fails to raise a serious legal issue for purposes of a stay pending appeal). *Guifu*, 2011 WL 2293221, at *4 (finding that defendant failed to raise a serious legal question where its argument was not that the court applied the wrong test, but rather that the court misapplied the test that all the parties agreed was the proper test).

Accordingly, neither Prelude nor Chart have shown that their appeals raise a substantial case on the merits or a serious legal issue. The first *Nken* factor thus weighs against a stay.

### B. Irreparable Harm and Balance of Hardships

The moving party's "burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as she must show that an irreparable injury is the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 968. As the Supreme Court has explained, the "key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Here, Prelude and Chart insist that they will be irreparably harmed if proceedings continue while their appeals are heard. Prelude argues that if a stay is denied "they will irrevocably lose the chance to reap the advantages of arbitration" (Dkt. No. 203 at 20:19-20) and Chart insists that the potential advantages of arbitration will be lost should litigation continue pending appeal (Dkt. No. 208 at 13:10-11). In making this argument, they rely on cases in which the appealing party had an arbitration agreement which the trial court had refused to enforce notwithstanding the presumption

---

[4] Prelude has abandoned its third theory for third-party beneficiary status—that it was a successor-in-interest.

6

in favor of arbitration. These circumstances are not present here; rather, the Court rejected Defendants' attempt to take advantage of an arbitration agreement to which they are not parties. There is no presumption in favor of arbitration in this context. *See Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (explaining that the liberal federal policy regarding scope of arbitration does not apply to the question "whether a particular party is bound by the arbitration agreement"). Further, the burden to establish that arbitration is proper under such circumstances is firmly on the non-signatory—Defendants; Plaintiffs do not bear the burden to show that arbitration is not required. *See In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 1338474, at *4 (N.D. Cal. Mar. 28, 2014) ("Defendants have the burden of establishing equitable estoppel."); *Crestline Mobile Homes Mfg. Co. v. Pac. Fin. Corp.*, 54 Cal.2d 773, 778 (1960) (stating that under California law the party relying on equitable estoppel has the burden to show it applies); *Jones v. Jacobson*, 195 Cal. App. 4th 1, 15 (2011), as modified (June 1, 2011) ("[W]hen a nonsignatory seeks to enforce an arbitration agreement/provision against a signatory . . . the nonsignatory bears the burden to establish he or she is a party to the arbitration agreement/provision covering the dispute." (emphasis removed)).

The cases Defendants rely on are thus inapposite. In *Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, No. 17-CV-04063-JSW, 2017 WL 5569819, at *1 (N.D. Cal. Nov. 20, 2017), the court granted a stay after denying the defendant's motion to compel arbitration pursuant to its *own* arbitration agreement. The court's reasoning that there was irreparable harm where "a party is denied the opportunity to arbitrate and is required to incur the expense and delay of trial before being able to appeal, 'the advantages of arbitration—speed and economy—are lost forever'" does not apply here where neither Prelude nor Chart are parties to the arbitration agreement. *See Wuest*, 2017 WL 5569819, at *1 (citing *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984); *see also Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013) (granting a stay pending appeal of the court's order denying defendants' motion to compel arbitration under its own arbitration agreement).[5] Prelude

---

[5] Further, *Alascom*, on which both *Wuest* and *Zaborowski* relied, dealt with whether an order staying arbitration may be appealed and not a request to stay proceedings pending appeal.

7

and Chart cannot argue that they are not getting the benefit of the bargained for exchange—there was no bargain, no exchange. Indeed, Prelude had no relationship with Pacific Fertility at the time Plaintiffs entered into the arbitration agreements with Pacific Fertility.

Further, in *Britton*, the Ninth Circuit rejected the notion of an automatic stay pending appeal of the denial of a motion to compel arbitration. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) (rejecting the suggestion that an appeal regarding arbitrability could always put a case on hold because it "would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration."); *see also Monsanto v. DWW Partners, LLP*, No. CV–09–01788–PHX–FJM, 2010 WL 1904274, at *1 (D. Ariz. May 10, 2010) ("*Britton* does not hold that the general standard for a stay pending appeal is inapplicable in the context of arbitration" and applying the four-factor test set forth in *Hilton* and *Nken*).

Defendants must show some particular harm to *them* if a stay is not granted. In considering the irreparable harm factor in the context of a motion for a stay of removal in an immigration case, the Ninth Circuit in *Leiva-Perez* held that the "noncitizen must show that there is a reason *specific* to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm." *Id*. at 640 F.3d at 969 (emphasis added). So too here. Defendants cannot just rely on the costs of litigation and expenditure of resources—these exist in every interlocutory appeal. *See Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1032–33 (N.D. Cal. 2015) (noting that "nearly all courts have concluded that incurring litigation expenses does not amount to an irreparable harm" and collecting cases re: same). Further, the discovery underway now will be necessary for arbitration as well and are thus not lost expenditures regardless of what happens on appeal.

In contrast, Plaintiffs face real harm absent a stay. Unlike Defendants, the harm to Plaintiffs is not economic—it is time and information. Information regarding the viability of their eggs and embryos and a finite period of time in which they can make reproductive related

---

*Alascom*, 727 F.2d at 1422 (holding that an order staying arbitration is appealable, because otherwise "one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes.").

8

decisions based on that information. Defendants hold that information and a delay of proceedings here while the Ninth Circuit considers their appeals will harm Plaintiffs' ability to make these decisions.

Defendants have thus failed to show that "irreparable injury is the more probable or likely outcome" if proceedings are not stayed pending appeal and the balance of hardships tips sharply in Plaintiffs' favor. *See Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). The second and third *Nken* factors therefore weigh against as stay as well.

### C. The Public Interest

The first two factors in the traditional stay test are the most important. Indeed, a court need not consider the remaining factors unless it concludes that the moving party has made an adequate showing on the first two. *See Nken*, 556 U.S. at 435 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."); *Mount Graham Coalition v. Thomas*, 89 F.3d 554, 558 (9th Cir. 1996) (declining to continue analysis where moving party failed to satisfy first factor's threshold requirement). Because neither Prelude nor Chart have met the first three *Nken* factors, the Court need not go on to consider the public interest.

## CONCLUSION

For the reasons stated above, Defendants' motions for stay pending appeal are DENIED. (Dkt. Nos. 203 & 208.)

**IT IS SO ORDERED.**

Dated: June 27, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge