UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE PACIFIC FERTILITY CENTER LITIGATION

Case No.18-cv-01586-JSC

**ORDER RE: MOTIONS TO DISMISS**

Re: Dkt. Nos. 227, 228, 229

Plaintiffs filed this putative class action against Pacific Fertility Center ("Pacific Fertility"), Prelude Fertility, Inc. ("Prelude"), and Chart Industries ("Chart") alleging various state law claims. Plaintiffs thereafter filed a First Amended Complaint which added Pacific Fertility MSO, LLC, a Prelude subsidiary, as a defendant. (Dkt. No. 143.) Pacific Fertility's claims have been compelled to arbitration. (Dkt. No. 192.) The remaining Defendants—Prelude, Pacific MSO, and Chart—have all filed separate motions to dismiss Plaintiffs' First Amended Complaint. (Dkt. Nos. 227, 228, 229.) Having considered the parties' briefs and having had the benefit of oral argument on August 1, 2019, the Court GRANTS IN PART and DENIES IN PART the motions to dismiss.

Prelude and Pacific MSO's motions to dismiss for failure to satisfy Rule 8(a)'s notice pleading requirement and to dismiss Plaintiffs' premises liability claim under Rule 12(b)(6) are denied. Prelude's motion to dismiss the bailment claim is granted. Prelude and Pacific MSO's motion to dismiss the fraudulent concealment and Unfair Competition Law claims based on Plaintiffs' failure to allege a duty to disclose is granted. Chart's motion to dismiss Plaintiffs' design defect-consumer expectations test claim is denied without prejudice to renewal at summary

judgment. Chart's motion to dismiss Plaintiffs' failure to warn and negligent failure to recall claims is granted with leave to amend.

## BACKGROUND

### A. First Amended Complaint Allegations

Pacific Fertility markets and sells egg and embryo cryopreservation services. (Dkt. No. 196, First Amended Consolidated Amended Class Action Complaint ("FAC") at ¶ 1.[1]) Cryopreservation involves preservation of tissue using cooling techniques. (*Id*. at ¶ 1.) Plaintiffs engaged Pacific Fertility's services to cryopreserve their eggs and embryos between 2010 and 2016. (*Id*. at ¶ 4.)

In 2017, unbeknownst to Plaintiffs, Prelude took over operation of Pacific Fertility's egg and embryo storage facilities through its newly created operating subsidiary Pacific MSO. (*Id*. at ¶¶ 5, 28, 67.) Prelude is unlicensed and operates a national network of egg and embryo long-term freezer storage facilities staffed by non-clinical (non-medical) employees. (*Id*. at ¶ 67.) According to the agreements between Pacific Fertility and Prelude, Prelude is "responsible for determining the method, details and means of performing [egg and embryo storage] Services," Prelude personnel are not employees of Pacific Fertility, and Pacific Fertility and Prelude are not "joint venturers, partners, employees or agents of the other." (*Id*. at ¶ 68.)

On March 4, 2018, Prelude "discovered that the liquid nitrogen levels in a tank known as 'Tank 4' had dropped to an unsafe level for an undetermined period of time, destroying or jeopardizing the eggs and embryos stored in the tank, including those belonging to Plaintiffs." (*Id*. at ¶ 6.) The at-issue tank was manufactured by Chart. (*Id*. at ¶ 8.) At the time of the incident, "Prelude, independently or through its qualified subsidiary Defendant Pacific MSO, exercised control over the [Pacific Fertility] egg and embryo storage operation….[and] the employees responsible for performing regular monitoring and maintenance of Tank 4 were employees of Prelude or Pacific MSO, LLC." (*Id*. at ¶ 30.) No alarms or phone alerts notified Prelude of the March 4 malfunction; instead, a Prelude employee working in the lab discovered the problem and the eggs and embryos were transferred to another tank. (*Id*. at ¶ 93.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

On March 11, 2018, Plaintiffs were notified via email of "'a very unfortunate incident' in which the storage tank containing their cryopreserved eggs and embryos 'lost liquid nitrogen for a brief period of time,' [and] that a 'preliminary analysis' suggested some of the eggs and embryos in the tank may have been destroyed." (*Id*. at ¶ 7.) A month later, Plaintiffs received a second email stating that a preliminary analysis suggested that the incident "likely involved a failure of the tank's vacuum seal." (*Id*. at ¶¶ 117-118.) Pacific Fertility did not disclose to Plaintiffs in either of these emails that "Prelude had and continues to have control over egg and embryo storage." (*Id*. at ¶ 119.)

Four days after the second email was sent, Chart recalled certain cryostorage tanks stating in the recall notice that it was "presently investigating the possible cause of the **VACUUM LEAK AND/OR FAILURE** which may be due to inadequate adhesion of the composite next to the aluminum unit." (*Id*. at ¶ 99 (emphasis in original).)

**B. Procedural Background**

Following the March 11 notification, Plaintiffs filed this putative class action, which was later consolidated with two other actions pending in the Northern District of California: *Bauer, et al. v. Pacific Fertility Center, et al*., No. 3:18-cv-01634 (N.D. Cal. filed Mar. 15, 2018) and *A.B., et al. v. Pacific Fertility Center, et al*., No. 3:18-cv-02298 (N.D. Cal. Filed April 17, 2018). (Dkt. No. 17.) These actions are now known as the *In re: Pacific Fertility Litigation*.

Shortly after the actions were consolidated, Pacific Fertility filed a motion to compel arbitration in which Prelude and Chart filed separate joinders. (Dkt. Nos. 52, 56, 67.) While those motions were pending, the Court granted Plaintiffs leave to file the FAC which adds Pacific MSO, Prelude's subsidiary, as a defendant and pleads the following 11 claims for relief: (1) negligence and/or gross negligence as to Prelude and Pacific MSO; (2) negligent failure to recall as to Chart; (3) bailment as to Prelude and Pacific MSO; (4) premises liability as to Prelude and Pacific MSO; (5) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq. as to all Defendants; (6) violation of California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 et seq. as to Pacific Fertility, Prelude, and Pacific MSO; (7) fraudulent concealment as to Pacific Fertility, Prelude, and Pacific MSO; (8) strict products liability-failure to warn as to Chart; (9) strict

3

products liability-manufacturing defect as to Chart; (10) strict products liability-design defect-consumer expectations test as to Chart; and (11) strict products liability-design defect-risk utility test as to Chart. (Dkt. No. 196.)

After several rounds of briefing, the Court issued its Order granting Pacific Fertility's motion to compel arbitration, but denying Prelude, Pacific Fertility MSO, and Chart's joinders, as well as their motions to stay proceedings pending arbitration of the claims against Pacific Fertility. (Dkt. No. 192.) A month later, Prelude, Pacific Fertility MSO, and Chart filed notices of appeal and motions to stay pending appeal. (Dkt. Nos. 201, 202, 204, 208.) The Court has since denied the motions to stay. (Dkt. No. 250.) Prelude, Pacific MSO, and Chart thereafter filed the now fully briefed motions to dismiss. (Dkt. Nos. 227, 228, 229.)

## DISCUSSION

Prelude, Pacific MSO, and Chart have each separately moved to dismiss. Because the basis for Prelude and Pacific MSO's motions overlap substantially, the Court discusses them together and then turns to Chart's motion to dismiss.

## I. Prelude and Pacific MSO's Motions to Dismiss

As a threshold matter, both Prelude and Pacific MSO insist that Plaintiffs' complaint must be dismissed in its entirety as to them because Plaintiffs' "group" pleading violates Federal Rule of Civil Procedure 8(a)'s notice requirement. Prelude also moves to dismiss Plaintiff's bailment claim for failure to state a claim upon which relief can be granted. Finally, both Prelude and Pacific MSO move to dismiss Plaintiffs' premises liability and fraudulent concealment/UCL claims for failure to state a claim, albeit on slightly different grounds as discussed below.

### A. Plaintiffs' Group Pleading Adequately Puts Defendants on Notice

Rule 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). "[A] complaint which lump[s] together ... multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (internal citation

4

and quotation marks omitted).  However, "[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v. Sankey*, No. 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015).  For example, where the defendants are alleged to be "related entities" who acted in concert "it is entirely possible that the allegations of wrongdoing are intended to include each and every entity defendant."  *Id*. at *4; *see also Munning v. Gap, Inc.*, No. 16-CV-03804-TEH, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) ("because the Defendants all share a parent-subsidiary relationship with The Gap Inc. as the parent company and because all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely.").

Here, the FAC allegations adequately put Prelude and Pacific MSO on notice of the claims against them.  Plaintiffs allege that Prelude took over Pacific Fertility's egg and embryo storage in September 2017 and that in connection with that takeover, Prelude created Pacific MSO to assist with the egg and embryo storage operation.  (FAC at ¶¶ 28-30.)  Neither this transaction nor the existence of Prelude and Pacific MSO were disclosed to Plaintiffs until sometime after the Tank 4 incident.  (*Id*. at ¶ 71.)  While the background allegations often include "and/or" language with respect to Prelude and Pacific MSO, the allegations under each of the claims are as to each defendant separately.  (*Id*. at p 33 n.1.)  To the extent that the same allegations are pled as both, that is because at this stage of the litigation Plaintiffs do not know which defendant did what.  Given Plaintiffs' lack of knowledge of either defendant until after this action was filed, it is only through discovery that they will be able to differentiate meaningfully between the liability of the defendants. Further, given the close relationship between these defendants and the fact that they share the same counsel, they are aware of the actions they may have taken to give rise to Plaintiffs' legal claims.  Under these circumstances, Plaintiffs' allegations "provide sufficient notice to [Prelude and Pacific MSO] as to the nature of the claims asserted," including "what conduct is at issue." *Villalpando v. Exel Direct Inc*., No. 12-CV-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014*).

The cases Prelude and Pacific MSO rely on are inapposite.  In *Powell v. Residential Mortg. Capital*, No. C 09-04928 JF (PVT), 2010 WL 2133011 (N.D. Cal. May 24, 2010), the

plaintiff brought claims regarding a residential mortgage transaction and pled his claims generally against all the defendants which included multiple lenders as well as the loan servicer. *Id*. at *2. The court granted the loan servicer's motion to dismiss claims regarding the loan origination which were pled as to "defendants" generally because the servicer could not have been a part of any of those claims. *Id*. at *2-3. Likewise, in *Markman v. Leoni*, No. CV 09-8364 SVW FFM, 2010 WL 8275829, at *3 (C.D. Cal. Nov. 3, 2010), report and recommendation adopted, No. CV 09-8364 SVW FFM, 2012 WL 83721 (C.D. Cal. Jan. 5, 2012), the court dismissed plaintiff's claims against an IRS agent who allegedly introduced plaintiff to an FBI agent (also named as a defendant) because the complaint included very few allegations as to the IRS agent and instead lumped him together with the other defendants against whom specific facts were alleged. *Id*. at *9. Finally, in *Adams v. I-Flow Corp*., No. CV09-09550 R SSX, 2010 WL 1339948, at *1 (C.D. Cal. Mar. 30, 2010), the plaintiffs sued 22 defendants who allegedly manufactured and distributed either pain pumps or anesthetics, but did not differentiate between the defendants and instead pled their claims against "defendants" generally without tying their factual allegations to a particular pain pump or anesthetic or manufacturer. The court dismissed the claims under Rule 8 because the complaint did "not allege that any particular plaintiff was administered a particular drug through a particular pain pump that was manufactured by a particular defendant." *Id*. at *3. In contrast to *Powell*, *Markman*, and *Adams*, Prelude and Pacific MSO are related entities who cannot claim the same lack of knowledge as defendants who are completely separate and have no relevant knowledge of each other.

Accordingly, Prelude and Pacific MSO's motions to dismiss predicated on Rule 8(a) are denied.

### B. Plaintiff's Bailment Claim

Prelude's motion to dismiss Plaintiffs' bailment claim is twofold. First, Prelude insists that the claim fails because Plaintiffs have not pled that it took possession of Plaintiffs' tissue. Second, Prelude maintains that the claim is duplicative of the negligence claim. The Court addresses each argument in turn.

"A bailment is the deposit of personal property with another, usually for a particular

purpose." *United States v. Alcaraz-Garcia*, 79 F.3d 769, 775 (9th Cir. 1996) (citing 4 Witkin, Summary of Cal. Law, Personal Property, § 129 (9th Ed.1987)); *Windeler v. Scheers Jewelers*, 8 Cal.App.3d 844, 850 (1970) ("A bailment is generally defined as 'the delivery of a thing to another for some special object or purpose on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men.'") (citations omitted); *Niiya v. Goto*, 181 Cal.App.2d 682, 687 (1960) (same)).

Plaintiffs allege that Prelude "received for safekeeping Plaintiffs' irreplaceable personal property to be safely and securely kept for the benefit of Plaintiffs." (FAC at ¶ 211.) Further, under Pacific Fertility's agreement with Prelude, Prelude was "identified as responsible for determining the method, details, and means of performing [egg and embryo storage] Services." (*Id.* at ¶ 68.a.) Notwithstanding these allegations, Prelude insists that the FAC fails to allege that it—as opposed to Pacific MSO—took custody of the property at issue (Plaintiffs' tissue). The Court, however, rejected this argument *supra* in the context of Prelude's Rule 8 motion. Prelude's insistence that Plaintiffs have not pled that it took possession or control is no more availing. At the pleading stage, the Court must construe the allegations in the light most favorable to Plaintiffs. The allegation that Prelude was "responsible for determining the method, details, and means of performing [egg and embryo storage] Services," construed in the light most favorable to Plaintiffs is sufficient to allege custody and possession at this stage of the proceedings.

Plaintiffs have nonetheless not alleged sufficient facts to give rise to a bailment claim against Prelude. At oral argument, Plaintiffs conceded that their bailment claim does not arise out of a contract; instead, Plaintiffs contend that their bailment claim is a negligence bailment claim not requiring an express or implied contract. In support of this novel theory, Plaintiffs rely on *Whitcombe v. Stevedoring Servs. of Am.*, 2 F.3d 312, 316 (9th Cir. 1993), as amended (Aug. 16, 1993) and *Windeler*, 8 Cal. App. 3d at 850. Neither case supports a bailment claim based on the facts alleged here.

In *Whitcombe*, the court considered whether a claim for bailment existed between an automobile property owner and a marine terminal operator when the property owner deposited automobiles with a freight forwarder who contracted with a shipping company who turned the

automobiles over to the marine terminal operator who provided stevedoring services. *See Whitcombe*, 2 F.3d at 313. The automobiles were damaged while in the care of the marine terminal operator. *Id.* Applying California law, the Ninth Circuit found that a bailment was created between the property owner and the marine terminal operator based on "the principle that when a cargo owner voluntarily delivers cargo to a terminal operator for storage and eventual shipment, a bailment is created between the owner and the terminal operator." *Id.* at 316 (citing *Stein Hall & Co., Inc. v. S.S. CONCORDIA VIKING,* 494 F.2d 287 (2d Cir.1974)). The Ninth Circuit held that under these circumstances the district court's determination that the property owner's actions amounted to "the delivery of a thing in trust for a purpose upon an implied or express contract" was not clearly erroneous. *Id.*

Plaintiffs' urging that the same principle applies here is unpersuasive. Plaintiffs did not deliver their property to Prelude for storage and eventual shipment, and did not even deliver it to a different entity for delivery to Prelude for storage and eventual shipment pursuant to an implied or express contract. The circumstances alleged here are entirely different from *Whitcombe*: Plaintiffs delivered their property to Pacific Fertility for storage and with no knowledge that Pacific Fertility would hand over storage to Prelude. Plaintiffs do not cite any case which supports the creation of a bailment between the plaintiff and the ultimate possessor in such circumstances. *See H. S. Crocker Co. v. McFaddin*, 148 Cal. App. 2d 639, 644 (1957) ("The general rule that the assent of both parties is necessary before a contract, either express or implied in fact, can come into existence, is applicable to the ordinary case of a contract of bailment"). *Windeler* is even less helpful to Plaintiffs' theory as there the plaintiff delivered the rings directly to the defendant, thus creating a contract, implied or express. *See Windeler*, 8 Cal. App. 3d at 848-50; *see also id.* at 850 ("in sum, a bailment is a contractual relationship").

While "pleading of alternative theories of relief on the same set of facts is, of course, quite proper and is often done where there is a legally recognized basis for recovery in both contract and tort," *Gebert v. Yank*, 172 Cal. App. 3d 544, 554 (1985), Plaintiffs have not alleged any facts that support a bailment claim, that is, a contractual theory of recovery. Accordingly, Plaintiff's bailment claim against Prelude is dismissed.

### C. Plaintiffs' Premises Liability Claim

Prelude and Pacific MSO advance the same three reasons for dismissal of Plaintiffs' premises liability claim: (1) it is legally indistinct from the negligence claim; (2) Plaintiffs have failed to plead facts which would give rise to an independent premises liability clam; and (3) premises liability only protects individuals coming onto land and not the property they leave behind.

First, while "the elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury," the duty of care arises differently in the two claims; that is, a premises liability claim "is grounded in the possession of the premises and the attendant right to control and manage the premises; accordingly, mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1158 (2016) (internal citation and quotation marks omitted). Plaintiffs contend that as with their bailment claim they are allowed to plead alternative claims and that discovery will shed light on whether the negligence and premises liability claims will merge. The Court agrees that Prelude's motion is premature to the extent that it is based on the overlapping nature of these claims.

Second, Plaintiffs have adequately pled facts which would suggest a plausible basis for a premises liability claim. Plaintiffs allege that "Prelude and Pacific MSO owned, leased, and/or occupied the property, premises, machinery, and equipment, including Tank 4, on the premises at 55 Francisco Street, Suite 500, San Francisco, California 94133. (FAC at ¶ 218.) With respect to Pacific MSO, Plaintiffs specifically allege that while it is a Delaware corporation, its principal executive office is located at 55 Francisco Street, San Francisco. (*Id*. at ¶ 28.) Likewise, with respect to Prelude, Plaintiffs have pled that it is a Delaware corporation, but that it operates Pacific Fertility's storage facility at 55 Francisco Street, San Francisco. (*Id*. at ¶ 25.) Prelude's factual argument that it has produced documents showing that its corporate headquarters are in Tennessee such that Plaintiffs cannot allege that it owned, leased, or possessed the real property at 55 Francisco Street is improper at the pleadings stage. *See Lee v. City of Los Angeles*, 250 F.3d 668,

688 (9th Cir. 2001) ("factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6).").

Finally, Prelude and Pacific MSO's argument that premises liability only extends to individuals and not the property they leave behind is likewise improper at this stage. Neither Prelude nor Pacific MSO have cited a case which holds that premises liability *only* covers injuries to persons and not property and the Court is unaware of any. Indeed, the law is to the contrary. *See Wilson v. Rancho Sespe*, 207 Cal. App. 2d 10, 17 (1962) (holding that the legal principles of premises liability "is applicable also with respect to liability for damage to property"). Defendants' attempt to discredit this language from *Wilson* as running afoul of the Restatement of Torts § 318 limitation of premises liability claims to "bodily injury" is unpersuasive. *Wilson* noted the limitation of the Restatement and found no reason why the claim should *not* be extended to claims of property injury. This Court is bound by the decisions of the California Court of Appeals . *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) ("where there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it.") (internal quotation marks and citation omitted). Neither the cases Defendants cite nor any other case post-*Wilson* that the Court could find holds that premises liability only covers bodily injury. *See Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1619 (1989) (describing premises liability as imposing a duty on "[t]he owner of premises [] to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm" but not addressing whether that risk of harm could include harm to the person's property); *Preston v. Goldman*, 42 Cal. 3d 108, 118 (1986) (same); *Sprecher v. Adamson Companies*, 30 Cal. 3d 358, 365 (1981) (same). The Court thus cannot say as a matter of law that Plaintiffs' premises liability claim fails because they seek redress for injury to their property as opposed to their persons.

Prelude and Pacific MSO's motions to dismiss Plaintiffs' premises liability claim are therefore denied.

//

10

### D.  Plaintiffs' Fraudulent Concealment Claim and UCL Claims

Finally, Prelude and Pacific MSO move to dismiss Plaintiffs' fraudulent concealment and UCL claims (predicated on the same fraud) on the same grounds.  As a threshold matter, they both insist that Plaintiffs' complaint fails to meet Rule 9(b)'s specificity requirement because of group pleading and because it fails to specific the who, what, when, where, and how of the alleged fraud. In addition, Prelude and Pacific MSO contend that Plaintiffs have failed to adequately plead that they concealed a material fact or that they owed Plaintiffs a duty to disclose.

#### 1)  Plaintiffs' Allegations Satisfy Rule 9(b)

The elements of a claim for fraudulent concealment are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014).  Fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must include the "who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Ultimately, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  In cases of corporate fraud, it may be "difficult to attribute particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Here, Plaintiffs allege that Prelude and Pacific MSO "knowingly and intentionally failed to disclose and actively concealed: (1) that they had acquired control over the storage of Plaintiffs' eggs and embryos from PFC, had no license, and had no medical personnel on staff; and (2) that

11

their systems and processes in place to safeguard the eggs and embryos were inadequate." (FAC at ¶ 260.c.) Plaintiffs also allege that Prelude and Pacific MSO failed to disclose that they "were not employing reasonable processes and systems to safeguard Plaintiffs' eggs and embryos" and failed to disclose that there had been "a change in control over tissue storage, and that their storage systems and processes were inadequate." (*Id*. at ¶¶ 261-63, 265.) For the same reason Plaintiffs' group pleading of these allegations is sufficient for purposes of Rule 8(a), it is likewise sufficient for purposes of Plaintiffs' fraud claims under Rule 9(b). Given Prelude and Pacific MSO's parent and subsidiary relationship and Plaintiffs' limited knowledge of the operation of this relationship, Plaintiffs permissibly plead their claim as to both defendants equally. *See Waldrup v. Countrywide Fin. Corp*., No. 2:13-CV-08833-CAS, 2015 WL 93363, at *8 (C.D. Cal. Jan. 5, 2015) ("Absent discovery, however, it appears that plaintiff cannot point to the specific fraudulent misrepresentations or omissions allegedly made by the four parent company defendants as part of the alleged scheme"); *In re TFT LCD (Flat Panel) Antitrust Litig*., 586 F.Supp.2d 1109, 1120 (N.D. Cal. 2008) ("[I]t is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators.").

Plaintiffs have likewise adequately pled the who, what, when, and how of the alleged fraud. The who is Prelude and Pacific MSO, the what and how are the failure to disclose that Prelude and Pacific MSO had taken over the tissue storage operation and that they had inadequate processes and protections in place, the where is Pacific Fertility Center, and the when is between Prelude and Pacific MSO's takeover in September 2017 through the March 2018 incident. Contrary to Prelude and Pacific MSO's argument, in an omission case there is no requirement that a party find alternative ways to plead the particular circumstances of the fraud. In *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987), for example, the court held that "[w]here the fraud consists of omissions on the part of the defendants, the plaintiff *may* [—not should as Defendants contend—] find alternative ways to plead the particular circumstances of the fraud." *Id*. at 1482 (emphasis added). Indeed, in *Washington*, the court found that the complaint satisfied

Rule 9(b) where the plaintiff "divided the defendants into relevant groups and specified the causes of action against each group." *Id.* Likewise, the court in *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013), on which Defendants also rely, held that "because a plaintiff bringing fraud by omission claims will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim, plaintiffs may plead fraud by omission by alternative means." *Id.* at 999 (internal citation and quotation marks omitted).

### 2) Plaintiffs have Adequately Alleged Concealment of a Material Fact

Prelude and Pacific MSO next argue that Plaintiffs have failed to adequately plead concealment of a material fact because Plaintiffs have not specified with particularity how their alleged failure to disclose that they had taken over the tissue management from Pacific Fertility was material; that is, what they would have done differently if this information was disclosed. Plaintiffs, however, did plead what they would have done differently:

> Had either or both PFC and Prelude disclosed that Prelude had taken control of PFC's egg and embryo storage operation or that the Prelude's storage monitoring and alarm systems and other processes were deficient, nonfunctional, or incapable of protecting their eggs and embryos in the event of a tank failure, Plaintiffs would not have purchased or continued using the egg and embryo storage services.

(FAC at ¶ 174.) Prelude and Pacific MSO's contention that this is a "legal conclusion" is illogical. "Omitted information is material if a plaintiff can allege that, 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Plaintiffs have alleged that they would have behaved differently—ceased purchasing or using the egg and embryo services—had they known that Prelude and/or Pacific MSO had taken over the tissue storage operation from Pacific Fertility. At the pleading stage, the Court must accept this allegation as true.

Likewise, Plaintiffs have adequately pled how the systems and processes were inadequate—"Prelude lacked monitoring, alarm, and response systems and processes sufficient to detect and prevent harm from a dangerous temperature rise in Tank 4" (FAC at ¶ 94)—and how

these facts were intentionally concealed—Plaintiffs were not notified of Prelude and Pacific MSO's existence until after the March 2018 incident. (*Id*. at ¶ 71.)

### 3) Plaintiffs have Not Adequately Alleged a Duty to Disclose

Lastly, Prelude and Pacific MSO argue that they had no duty to disclose their role in the tissue storage operation or any details of the tissue storage operation. There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

Plaintiffs contend that the duty arises here because Defendants have exclusive knowledge of material facts not known to Plaintiffs; however, it is not enough to plead that Defendants had exclusive knowledge—Plaintiffs must also plead a relationship between the parties which gives rise to the obligation to disclose this information. "[W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts." *Id*. at 337; *see also Goodman v. Kennedy*, 18 Cal.3d 335, 347 (1976) ("duty of disclosure ... may exist when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to ... the other party"). Plaintiffs do not allege any such relationship or transaction.

Accordingly, Plaintiffs' fraudulent disclosure claim is dismissed. Because Plaintiffs' UCL claim is predicated on the same factual allegations, it is likewise dismissed.

\*\*\*

In summary, Prelude and Pacific MSO's motion to dismiss is granted in part and denied in part. The motions to dismiss for failure to satisfy Rule 8(a)'s notice pleading requirement and to dismiss the premises liability claim under Rule 12(b)(6) are denied. Prelude's motion to dismiss the bailment claim is granted with leave to amend. Prelude and Pacific MSO's motion to dismiss the fraudulent concealment and UCL claims based on Plaintiffs' failure to allege a duty to disclose

is granted with leave to amend.

## II. Chart's Motion to Dismiss

Chart moves to dismiss three of Plaintiffs' claims for relief: (1) strict products liability-design defect-consumer expectations test; (2) failure to warn; and (3) negligent failure to recall. Chart insists that Plaintiffs' allegations with respect to these claims are insufficient to state a claim.

### A. Plaintiffs' Design Defect Claim

Plaintiffs plead two separate design defect claims—one under the consumer expectations test and one under the risk-utility test. Chart contends that the consumer expectations test does not apply and moves to dismiss Plaintiffs' design defect claim premised on the consumer expectations test. Under this test, a product is defective if the product did not perform "as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner." *Saller v. Crown Cork & Seal Co.*, 187 Cal. App. 4th 1220, 1231–32 (2010). "The rationale of the consumer expectations test is that "[t]he purposes, behaviors, and dangers of certain products are commonly understood by those who ordinarily use them." *Id.*

Here, Plaintiffs allege that "[t]he cryogenic storage tank did not perform as safely as an ordinary consumer would have expected it to perform." (FAC at ¶ 286.) In particular, Plaintiffs allege that the tank was defective "because it could cause nitrogen loss resulting in damage to or destruction of stored frozen reproductive materials." (*Id.* at ¶ 287.)

The expectation of an "ordinary consumer" is a question of fact. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 987–88 (N.D. Cal. 2014). "If the facts permit an inference that the product at issue is one about which consumers may form minimum safety assumptions in the context of a particular accident, then it is enough for a plaintiff, proceeding under the consumer expectation test, to show the circumstances of the accident and the objective features of the product which are relevant to an evaluation of its safety, leaving it to the fact-finder to employ its own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." *McCabe v. Am. Honda Motor Co.*, 100 Cal.App.4th 1111, 1120 (2002) (citing *Soule v. General Motors Corp.*, 8 Cal.4th 548, 563–66 (1994) (internal

quotation marks omitted)). If a plaintiff has "identified the defect, the causes of the defect, and [alleges that the product] fails to perform as safely as an ordinary consumer would expect," "[t]hese allegations are sufficient, at the motion to dismiss stage, to state a claim under the consumer expectations test." *Coleman-Anacleto v. Samsung Elecs. Am., Inc*., No. 16-CV-02941-LHK, 2017 WL 86033, at *12 (N.D. Cal. Jan. 10, 2017); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig*., 754 F. Supp. 2d 1208, 1220 (C.D. Cal. 2010) (noting at the pleading stage "under the consumer expectations test, plaintiff should describe how the [product] failed to meet the minimum safety expectations of an ordinary consumer of that product.").

It is thus unsurprising that nearly all the cases Chart cites regarding the consumer expectations test are at the summary judgment or post-trial stage. *See Soule*, 8 Cal. 4th at 568 (considering whether the jury was properly instructed on the consumer expectations test); *Romine v. Johnson Controls, Inc*., 224 Cal. App. 4th 990, 1004 (2014) (same); *Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 156 (Cal. Ct. App. 2017), review denied (Oct. 11, 2017) (same); *Saller v. Crown Cork & Seal Co*., 187 Cal. App. 4th 1220, 1233 (2010) (considering whether the jury was properly instructed on the consumer expectations test and noting that in deciding whether the test applies "the trial court must initially determine as a question of foundation, within the context of the facts and circumstances of the particular case, whether the product is one about which the ordinary consumer can form reasonable minimum safety expectations."); *Stephen v. Ford Motor Co*., 134 Cal. App. 4th 1363 (2005) (considering whether the trial court properly granted the defendant's motion for nonsuit); *McCabe v. Am. Honda Motor Co*., 100 Cal. App. 4th 1111, 1123 (2002) (finding that the trial court erred in granting summary judgment based on a finding that the consumer expectations test was inapplicable as a matter of law); *Sparks v. Owens-Illinois, Inc.,* 32 Cal. App. 4th 461, 476 (1995), as modified on denial of reh'g (Feb. 16, 1995) (finding that the trial court did not err in instructing the jury on the consumer expectations test); *Barker v. Lull Eng'g Co*., 20 Cal. 3d 413 (1978) (holding that the trial court's jury instructions on product defect were in error); *Akkerman v. Mecta Corp*., 247 F. App'x 895 (9th Cir. 2007) (affirming jury verdict); *Jian Wu v. Ean Holdings, LLC*, No. 5:13-CV-00188-PSG, 2014 WL

117338, at *5 (N.D. Cal. Jan. 10, 2014) (granting summary judgment on a design defect claim under the consumer expectations test).

The only case Chart cites which was decided at the pleading stage is inapposite. *See Smith v. Adobe Sys., Inc.*, No. C-11-1480 EMC, 2011 WL 4404152 (N.D. Cal. Sept. 21, 2011). In *Smith*, the court dismissed plaintiff's design defect claim because it was not apparent from the complaint which Adobe product she claimed was defective and she had not alleged that she was using the Adobe product in an intended or foreseeable manner. *Id.* at *2. Here, in contrast, Plaintiffs have specifically identified the allegedly defective product—Tank 4—and alleged that it was being used in its intended manner—to store their cryopreserved embryos and eggs. In *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*, 754 F. Supp. 2d 1208, 1221 (C.D. Cal. 2010), the plaintiffs adequately alleged that "Toyota vehicles do not meet consumer expectations [by alleging that] they suddenly and unexpectedly accelerate and cannot be stopped upon proper application of the brake pedal, which happened to [the plaintiff] and caused his crash and injuries." So too here. Plaintiffs have alleged that the tank wherein their eggs and embryos were being cryopreserved was defective because it lost liquid nitrogen which resulted in warming of the tank and thus damage to their frozen reproductive materials.

Accordingly, Chart's motion to dismiss Plaintiffs' design defect claim based on the consumer expectations test is denied without prejudice to renewal at summary judgment.

## B. Plaintiffs' Failure to Warn Claim

To establish strict liability for failure to warn, the plaintiff must prove the defendant "did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.... [T]he reasonableness of the defendant's failure to warn is immaterial." *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1304 (2012). Chart's motion to dismiss Plaintiffs' failure to warn claim is twofold: (1) Chart insists that Plaintiffs knew and consented to the risks about which they now complain, and (2) Chart properly relied on Pacific Fertility to provide warnings to Plaintiffs.

//

17

### 1) Plaintiffs' Knowledge of the Risks

A manufacturer does not have a "duty to warn of known risks or obvious dangers." *Chavez*, 207 Cal. App. 4th at 1304. Plaintiffs allege that Chart failed to warn them of "the risk of defective seals that may result in catastrophic nitrogen loss, the risk of nitrogen loss and prevalence of this occurrence, the risk of a rise in temperature that can damage and/or cause destruction of eggs or embryos, the rate of failure of the cryogenic storage tanks in the preservation of eggs or embryos or other human tissue, and the need for maintenance, inspection, and/or replacement of the cryogenic storage tanks." (FAC at ¶ 272.) Chart insists that the informed consent agreements Plaintiffs signed with Pacific Fertility included warnings regarding these risks.[2] In particular, Chart points to the following warnings:

> In any technical process that requires mechanical support, failure of equipment can occur. Freezing equipment can fail, electrical power systems can fail, lighting systems and temperature and gas control systems can fail at critical stages of the procedure, storage systems can crack or leak liquid nitrogen, and technical errors can occur. Liquid nitrogen storage can cause rupture of a storage system with loss of stored eggs. Back-up systems and staff training decrease the likelihood of any malfunction, but unforeseen situations can occur that risk loss or damage to cryopreserved eggs.

(Dkt. No. 231-2 at 53.)

At oral argument, Plaintiffs insisted that these warnings were inadequate because they failed to warn that the tanks had defective seals. However, Plaintiffs have not pled that Chart *knew the seals* were defective. Plaintiffs' allegation that "Chart had constructive notice of knowledge and knew, or in the exercise of reasonable care should have known, that the cryogenic storage Tank 4 was dangerous, had risks, and was defective in manufacture or design, including because it could cause nitrogen loss resulting in damage to or destruction of frozen reproductive

---

[2] Under the incorporation by reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal citation and quotation marks omitted). The "'incorporation by reference' doctrine applies to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint. *Id.* The Informed Consent Agreements fall into this latter category as they were part of the agreements whereby Plaintiffs obtained their fertility services from Pacific Fertility. Because Plaintiffs do not object to the documents or dispute their authenticity, the Court can consider their contents for purposes of Chart's motion to dismiss.

materials, including eggs or embryos" (FAC at ¶ 274), is too conclusory to plausibly support an inference that Chart was on notice that the seals were defective. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that at the pleading stage a plaintiff my plead "enough facts to state a claim to relief that is plausible on its face."). "California law places a duty on manufacturers to warn of a 'particular risk' if it is 'known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.'" *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 946 (9th Cir. 2012) (quoting *Conte v. Wyeth, Inc.*, 168 Cal.App.4th 89, 101 (2008)). At oral argument, Plaintiffs argued that they could allege facts which would show that Chart knew the seals were defective such that Chart was required to warn of that particular risk. Plaintiffs shall be granted leave to do so.

### 2) Chart's Reliance on Pacific Fertility to Provide the Warnings

The Court is not persuaded by Chart's alternative argument that because it provided warnings to Pacific Fertility—a sophisticated intermediary—it was not required to provide warnings to Plaintiffs. Under the sophisticated intermediary rule, "a supplier may discharge its duty to warn end users about known or knowable risks in the use of its product if it: (1) provides adequate warnings to the product's immediate purchaser, or sells to a sophisticated purchaser that it knows is aware or should be aware of the specific danger, and (2) reasonably relies on the purchaser to convey appropriate warnings to downstream users who will encounter the product." *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 187 (2016).

Chart insists that the "record demonstrates that the intermediary **knew** of the subject risks and actually provided warnings to Plaintiffs." (Dkt. No. 252 at 9:12-13 (emphasis in original).) However, at the pleading stage, the Court does not look to the record, but rather, is restricted to the complaint which does not allege that Chart provided warnings to Pacific Fertility or that Pacific Fertility knew or should have been aware of the specific danger posed. Affirmative defenses such as the sophisticated intermediary doctrine involve fact-intensive questions which cannot usually be resolved at the pleading stage. *See Webb*, 63 Cal. 4th at 188 (describing the evidence necessary to make out the sophisticated intermediary defense). In any event, Chart does not argue that it

19

warned Pacific Fertility of the particular risk Plaintiffs' identify; namely, that the seals were defective. Thus, Chart's argument here also fails for the same reason its contention that Plaintiffs were warned fails.

***

Accordingly, Chart's motion to dismiss Plaintiffs' failure to warn claim is granted with leave to amend to allege that Chart failed to warn that that seal was defective and that Chart knew the seal was defective.

### C. Plaintiffs' Negligent Failure to Recall Claim

Finally, Chart moves to dismiss Plaintiffs' negligent failure to recall claim as inadequately pled. The elements of a negligence claim for failure to recall/retrofit are: "(1) defendant manufactured/distributed/sold the product; (2) defendant knew or reasonably should have known that the product was dangerous when used in a reasonably foreseeable manner; (3) defendant became aware of this defect after the product was sold; (4) defendant failed to recall/retrofit; (5) that a reasonable manufacturer/distributor/seller under the same or similar circumstances would have recalled/retrofitted the product; (6) plaintiff was harmed; (7) [] defendant's failure to recall/retrofit was a substantial factor in causing plaintiff's harm." *See Arnett v. Seaside Transportation Servs., LLC*, No. 13-CV-01672-WHO, 2014 WL 117325, at *3 (N.D. Cal. Jan. 13, 2014) (citing CACI No. 1223). Chart contends that Plaintiffs have failed to allege any post-sale knowledge of a dangerous defect.

Plaintiffs allege that Chart designed, manufactured, assembled, produced, and distributed Tank 4, that it knew or reasonably should have known that Tank 4 presented or was likely to present a danger to eggs and embryos, that it was vulnerable to breach, and that upon breach the liquid nitrogen levels would drop causing the tank to "reach dangerously elevated temperatures." (FAC at ¶¶ 204-205.) According to the FAC, despite knowledge that the vacuum seal was susceptible to breaking, Chart did not recall, repair, or warn of the danger posed by the tank until April 23, 2018—four days after Pacific Fertility notified its customers that independent experts concluded the tank failure "likely involved a failure of the tank's vacuum seal"—at which point it recalled certain cryostorage tanks stating that it was investigating the cause of a vacuum seal leak

20

or failure.  (FAC at ¶ ¶ 99-100, 206.)

Plaintiffs insist that these allegations are sufficient to show that: "defendant manufactured and distributed the product in question; received sufficient reports indicating the product could fail, such that it took the drastic step of issuing a recall; knew or should have known of the defect prior to the incident; and yet took no action to recall, retrofit, or warn of the danger."  (Dkt. No. 248 at 14:17-20 (citing FAC ¶¶ 6, 8, 99-100, 204, 206, 208.)  However, these paragraphs do not allege that Chart "received sufficient reports indicating the product could fail" *prior to* the March 4 incident.  To the contrary, there are no allegations that plausibly suggest that Chart was aware of the defect with the tank or vacuum seal prior to the incident.  The cases upon which Plaintiffs rely are distinguishable on this basis.  *See Mansour v. Raynor Mktg., Ltd*., No. CV 13-02085 MMM (EX), 2013 WL 12126093, at *6 (C.D. Cal. July 25, 2013) (denying motion to dismiss negligent failure to recall claim where plaintiffs alleged that defendant "received multiple reports of defects and knew of the defect in the chair's seat back attachment"); *Hill v. Davol Inc*., No. 16-01759 ODW (KK), 2016 WL 10988657, at *7 (C.D. Cal. Nov. 16, 2016) (denying motion to dismiss where plaintiff alleged that "defendants should have or did know about problems rendering the device unfit for its intended purpose, citing a 'growing number of complaints regarding complications with [the product] and Defendants' actual knowledge of "adverse event reports" concerning the [product]"); *see also Roberts v. Electrolux Home Prod., Inc*., No. CV 12-1644 CAS (VBKx), 2013 WL 7753579, at *13 (C.D. Cal. Mar. 4, 2013) (denying motion to dismiss where plaintiffs alleged that "defendant learned of the safety defect when it received thousands of warranty claims and conducted follow-up investigations").

However, Plaintiffs contend that they can amend their complaint to allege that Chart was aware of the defect years prior to the incident.  (Dkt. No. 248 at 12 n.2.)  Plaintiffs' negligent failure to recall claim is therefore dismissed with leave to amend to include allegations which support a plausible inference of Chart's knowledge of the defective tank/vacuum seal prior to the March 4 incident.

## CONCLUSION

For the reasons stated above, Prelude, Pacific MSO, and Chart's motions to dismiss are

GRANTED IN PART and DENIED IN PART.  The motions are granted as to the bailment claim against Prelude, the fraudulent concealment and unfair competition claims as to Prelude and Pacific Fertility, and the strict products liability failure to warn and negligent failure to recall claims against Chart.  The motions are denied in all other respects.

Plaintiffs shall file their second amended complaint within 21 days of this Order.

This Order disposes of Docket Nos. 227, 228, and 229.

**IT IS SO ORDERED.**

Dated: August 8, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge