UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACIFIC FERTILITY CENTER LITIGATION | Case No. 18-cv-01586-JSC<br><br>**ORDER NO. 2. RE: JOINT DISCOVERY LETTER BRIEF ON SITRICK & CO. AND K2 COMMUNICATIONS SUBPOENAS**<br><br>Re: Dkt. Nos. 422 & 426 |

The parties filed a joint discovery letter brief regarding Plaintiffs' subpoenas to non-parties Sitrick & Co. and Krupp Communications. (Dkt. No. 422.) Defendants Pacific MSO and Prelude Fertility ("Defendants" for purposes of this Order) retained these public relations entities prior to (in the case of Krupp Communications) and following the March 4 incident. Defendants have possession of the documents subpoenaed from Sitrick & Co. and Krupp Communications. Of these documents, Defendants have produced 101 documents and withheld 190 documents on the basis of the attorney-client privilege and work-product doctrine. Based on Plaintiffs' review of the privilege log, Plaintiffs challenge Defendants' assertion of the attorney-client privilege as to 17 documents. After reviewing the parties' letter brief, the Court ordered Defendants to produce the 17 challenged documents for *in camera* review. (Dkt. No. 423.) Having considered the parties' briefs, including their supplemental submissions regarding the appropriate legal standard, and the documents themselves, the Court concludes that Defendants' inclusion of the third-party public relations firms on the at-issue communications waived the attorney-client privilege.

//

## DISCUSSION

California law governs this privilege dispute. *See In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law"); *Cortina v. Goya Foods, Inc.*, No. 14cv169 L (NLS), 2015 WL 11251806, at *2 (S.D. Cal. Oct. 7, 2015) (applying state law to attorney-client privilege question in CAFA case). Under California law, the attorney-client privilege is governed by statute. *See Behunin v. Superior Court*, 9 Cal. App. 5th 833, 843 (2017) (discussing Cal. Evid. Code §§ 952, 954 and 912). Section 952 defines a confidential attorney-client communication:

> [A] "confidential communication between client and lawyer" means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code §§ 952. The scope of attorney-client privilege must be construed narrowly. *See McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229, 1236 (2004) (collecting cases). Further, while the opponent of a claim of attorney-client privilege generally has the burden of demonstrating that the privilege does not apply, where the privileged communication was disclosed to a third-party, the proponent of the privilege has the burden of establishing that the privilege applies. *Behunin*, 9 Cal.App.5th at 844-45.

In *Behunin*, the court reviewed a similar claim of privilege regarding communications between a businessman, his attorney, and a public relations consultant. The court held that "whether communications among a client, his or her attorney, and a public relations consultant are protected by the attorney-client privilege depends on whether the communications were confidential and whether disclosing them to the consultant was reasonably necessary to accomplish the purpose for which the client consulted the attorney." 9 Cal. App. 5th at 845 (citing Cal. Evid. Code §§ 912(d), 952; *Seahaus La Jolla Owners Assn. v. Superior Court*, 224 Cal. App. 4th 754, 766 (2014)). *Behunin* recognized that "[t]here may be situations in which an attorney's

2

use of a public relations consultant to develop a litigation strategy or a plan for maneuvering a lawsuit into an optimal position for settlement would make communications between the attorney, the client, and the consultant reasonably necessary for the accomplishment of the purpose for which the attorney was consulted." *Behunin*, 9 Cal. App. 5th at 849–50.

Defendants insist that the communications at-issue fall within this exception because the public relations firms worked with Defendants to develop a legal strategy for the litigation that included post-incident communications and information given to patients and the media in anticipation of litigation. (Dkt. No. 422-4 at ¶ 6.) Defendants contend that they and their legal counsel "sought public relations advice because they knew litigation was coming and that each public communication was critical to the defense of that litigation." (Dkt. No. 438 at 3:8-10.) Defendants, however, have failed to show that these communications meet the "reasonably necessary" standard.

*Behunin* cited with approval a decision based on New York law, which it described as "similar to California law on this issue," and held that the communications with the public relations consultant must be "'more than just useful and convenient, but rather ... the involvement of the third party [must] be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications.'" *Behunin*, 9 Cal. App. 5th at 847-48 (quoting *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013)). Indeed, the "mere fact that [the public relations consultant] was inserted into the legal decisionmaking process does nothing to explain why [the consultant's] involvement was necessary to [the plaintiff's] obtaining legal advice from his actual attorneys." *Behunin*, 9 Cal. App. 5th at 848–49 (quoting *Egiazaryan*, 290 F.R.D. at 431) (alternations in original). The *Behunin* court overruled the claim of privilege (as did the *Egiazaryan* court) because Behunin failed to submit evidence of the public relations firm's involvement "in developing, discussing, or assisting in executing a legal strategy." *Behunin*, 9 Cal. App. 5th at 849; *see also Anderson v. SeaWorld Parks & Entm't, Inc*., 329 F.R.D. 628, 634 (N.D. Cal. 2019) (overruling claim of privilege because "the evidence submitted and documents lodged for *in camera* review show at most that [defendant] and its counsel sought advice from public relations firms to better predict the public reaction to legal activities and other efforts it

3

1  considered in response to [a controversial documentary], and to determine how best to present
2  such activities to the public and other entities.").

3  So too here. The at-issue documents reflect Defendants' communications with the public
4  relations consultants regarding how to respond to news articles and manage media inquiries in the
5  immediate aftermath of the incident, as well as how to manage patient communications. To the
6  extent that a few of the documents may reflect the public relations firms consulting with counsel
7  to develop a strategy regarding how to respond to media inquiries in light of the lawsuits, there is
8  nothing about the communications which suggests the inclusion of the third party was necessary
9  or essential. That is, the documents do not show that counsel needed the public relations firms'
10 assistance to accomplish the purpose for which Defendants' hired the attorneys. *See Behunin*, 9
11 Cal. App. 5th at 849 (rejecting Behunin's claim of privilege because there were no facts "showing
12 or explaining why [counsel] needed [the public relation firm's] assistance to accomplish the
13 purpose for which [Defendants] retained [them]."). The communications here, as in *Anderson*, are
14 about monitoring and predicting the public reaction to the incident and subsequent lawsuits,
15 managing messaging to patients, and determining how best to present the issues to the public and
16 press. *Anderson*, 329 F.R.D. at 634.

17 Defendants' suggestion that the communications may nonetheless be privileged because
18 the attorney-client privilege was the dominant purpose of the parties' relationship is unavailing. In
19 support of this proposition, Defendants rely on the dominant-purpose test set forth in *Costco*
20 *Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725 (2009). In *Costco*, however, the court was not
21 considering whether the privilege applied to communications shared with an unaffiliated third-
22 party, but rather, the scope of the privilege as between an attorney and a corporate employee and
23 whether "the corporation's dominant purpose in requiring the employee to make a statement is the
24 confidential transmittal to the corporation's attorney of information emanating from the
25 corporation"; if so, "the communication is privileged." *Id.* at 735. These facts are simply not
26 applicable here.

## CONCLUSION

28 For the reasons stated above, the Court finds that inclusion of the public relations

4

consultants on the communications at-issue waived the attorney-client privilege.  Defendants are therefore ordered to produce the documents within one week of this order.

This Order disposes of Docket Nos. 422 and 437.

**IT IS SO ORDERED.**

Dated:  April 22, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge