John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,
ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    March 4, 2021<br>Time:    9:00 a.m.<br>Judge:   Hon. Jacqueline Scott Corley<br>Place:   Zoom |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................2

I.      INTRODUCTION ...................................................................................................2

II.     STATEMENT OF FACTS .....................................................................................4

        A.      Chart's Product – the MVE 808 Cryogenic Freezer ................................4

        B.      PFC and the Events Leading Up to the Incident ....................................4

        C.      This Litigation ........................................................................................6

III.    LEGAL STANDARD .............................................................................................9

IV.     ARGUMENT .........................................................................................................10

        A.      Because Kasbekar's Opinion Testimony Is Not Admissible, the
                Plaintiffs Cannot Establish Causation ....................................................11

        B.      Chart Is Entitled to Summary Judgment On Plaintiffs' Negligent
                Failure to Recall Claim .........................................................................13

        C.      A Portion of Plaintiffs' Damages Claims Are Legally Inadequate ........15

V.      CONCLUSION ......................................................................................................18

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC

1

## TABLE OF AUTHORITIES

2 **CASES**                                                                                    **Page(s)**

3

4  *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,
     (2002) 96 Cal. App. 4th 1017 ....................................................................16

5

6  *Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986)....................................................................................10

7

8  *Broome v. Pavitt*,
     (1992) 5 Cal. App. 4th 1487 ......................................................................17

9

10  *Celotex Corp v. Catrett*,
      477 U.S. 317 (1986)..............................................................................9, 10

11  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
      509 U.S. 579 (1993)............................................................................10, 13

12

13  *Demara v. The Raymond Corp.*,
      (2017) 13 Cal. App. 5th 545 ................................................................11, 13

14

15  *G.D. Searle & Co. v. Superior Ct.*,
      (1975) 49 Cal. App. 3d 22 .........................................................................16

16

17  *In re Johnson & Johnson Talcum Powder Cases*,
      (2019) 37 Cal. App. 5th 292 ......................................................................16

18

19  *Jones v. Ortho Pharma. Corp.*,
      (1985) 163 Cal. App. 3d 396 .....................................................................17

20

21  *Keenan v. Allan*,
      91 F.3d 1275 (9th Cir. 1996) .....................................................................10

22  *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
      89 F.3d 594 (9th Cir. 1996) .......................................................................12

23

24  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
      475 U.S. 574 (1986)......................................................................................9

25

26  *Mock v. Michigan Millers Mut. Ins. Co.*,
      (1992) 4 Cal. App. 4th 306 ........................................................................16

27

28  *Montez v. Ford Motor Co.*,
      (1980) 101 Cal. App. 3d 315 .....................................................................14

*Saller v. Crown Cork & Seal Co., Inc.*,
(2010) 187 Cal. App. 4th 1220 ........................................................................12

*Scott v. C.R. Bard, Inc.*,
(2014) 231 Cal. App. 4th 763 ....................................................................11, 13

*Soule v. General Motors Corp.*,
(1994) 8 Cal. 4th 548 .......................................................................................12

*Stephen v. Ford Motor Co.*,
(2005) 37 Cal. App. 4th 1363 ............................................................. 11-12, 13

*Taylor v. List*,
880 F.2d 1040 (9th Cir. 1989) ........................................................................10

**RULES**

Fed. R. Civ. P. 56(a) ...............................................................................................9

Cal. Civ. Code § 3294...................................................................................15, 16

CCJI 1223 ............................................................................................................14, 15

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC

## NOTICE OF MOTION AND MOTION

TO ALL ATTORNEYS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 4, 2021, at 9 a.m., before the Honorable Jacqueline Scott Corley, Defendant Chart Inc. will and does hereby move the Court for summary judgment or, alternatively, for partial summary judgment on a portion of Plaintiffs' claims.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Kevin M. Ringel, pleadings and other documents on file in this action, any oral or documentary evidence or argument as may be requested by the Court, and any other information the Court deems proper and necessary.

Dated: December 22, 2020                    Respectfully submitted,

                                            By: /s/ Kevin Ringel

                                            John J. Duffy (SB No. 6224834)
                                            Kevin M. Ringel (SB No. 6308106)
                                            Margaret C. Redshaw (SB No. 6327480)
                                            **SWANSON, MARTIN & BELL, LLP**
                                            330 N Wabash, Suite 3300
                                            Chicago, Illinois 60611
                                            Tel: (312) 321-9100; Fax: (312) 321-0990
                                            jduffy@smbtrials.com
                                            kringel@smbtrials.com
                                            mredshaw@smbtrials.com

                                            Marc G. Cowden (SB No. 169391)
                                            Adam Stoddard (SB No. 272691)
                                            **SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
                                            1033 Willow Street
                                            San Jose, California 95125
                                            Tel: (408) 288-9700; Fax: (408) 295-9900
                                            mcowden@smtlaw.com
                                            astoddard@smtlaw.com

                                            *Counsel for Defendant Chart, Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Chart Inc. respectfully submits this memorandum of points and authorities in support of its motion for summary judgment.

## I.   INTRODUCTION

On March 4, 2018, Dr. Joseph Conaghan, the lab director at Pacific Fertility Center (PFC), discovered that one of PFC's cryogenic freezers, a Chart, Inc. model MVE 808 used to store cryopreserved eggs and embryos (Tank 4), had insufficient liquid nitrogen and unsafely high temperatures. The Plaintiffs'[1] claims arise out of that discovery: they claim that Tank 4 failed because of an allegedly defective weld near the bottom of the tank. The weld, the Plaintiffs allege, did not withstand exposure to normal thermal stresses, cracked, and caused Tank 4 to immediately lose its vacuum seal. Plaintiffs further allege that Tank 4's computer controller, the TEC 3000 which (among many other things) monitored Tank 4's liquid nitrogen (LN2) levels and temperature, stopped fully functioning before the incident. They bring three claims: (1) a strict products liability claim based on an alleged manufacturing defect; (2) a strict products liability claim alleging a design defect under both the consumer expectations test and the risk-benefit test; and (3) negligent failure to recall.

PFC is entitled to summary judgment on each of those claims. First, Plaintiffs have not offered admissible expert opinion testimony required to support the causation element of their strict liability claims alleging manufacturing defect and design defect.[2] Their liability expert, Anand Kasbekar, is not qualified to render cryogenic opinions, and he employed a flawed

---

[1] This motion addresses the five bellwether claims alleged in the instant Third Amended Complaint for Plaintiffs A.B., C.D., E.F., G.H, and I.J. (Docket No. 578).

[2] Chart also adopts and incorporates the arguments raised in its Motion to Exclude Plaintiffs' Experts into this Motion for Summary Judgment.

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC

methodology that does not withstand *Daubert* scrutiny.[3]   Because his causation opinion is inadmissible, the Plaintiffs claims predicated on a manufacturing defect theory fail.   Second, for similar reasons, Plaintiffs' design defect claims fail.   They failed to offer admissible expert opinions related to causation; and, the consumer expectations test is not applicable in this case, where the mechanics of Tank 4 and the reasons for its alleged failure are technical scientific and engineering questions well beyond the ken of an ordinary juror.   Third, Chart is entitled to summary judgment on Plaintiffs' negligent failure to recall claim.   That claim is premised on allegations that Tank 4's controller, the TEC 3000, was prone to malfunctioning, that Chart should have anticipated that users would disable the controller as a result, and that Chart should have recalled and replaced all of those controllers.   However, Plaintiffs did not disclose an expert to opine on any defects in the controller, or how any alleged *controller* issues caused *Tank 4* to fail and, in turn, caused any damage to their tissue stored in Tank 4.   Plaintiffs were required to offer admissible expert opinion testimony about the controller, the mechanics of the control system, Plaintiffs' theory about how or why the controller malfunctioned, Plaintiffs' theory about why a controller recall would have prevented any issues related to Tank 4, or Plaintiffs' theory about how or why they were damaged as a result.   They cannot establish causation or any entitlement to damages, much less exemplary damages.

Finally, even if, alternatively, this Court were to allow some of Plaintiffs' claims to move forward, a portion of Plaintiffs' damages claims should be barred.   Plaintiffs' experts conceded that one of the Plaintiffs, G.H., had a less than a 50% chance of achieving a live birth with the cryopreserved eggs stored in Tank 4 at the time of the March 4, 2018 incident.

---

[3] Chart has contemporaneously filed a *Daubert* motion to exclude Kasbekar.

1

2

## II.   STATEMENT OF FACTS

### A.   Chart's Product – the MVE 808 Cryogenic Freezer.

Tank 4 is a Chart model MVE 808-AF-GB, a cryopreservation freezer in which biological material is immersed in liquid nitrogen for extreme cold storage.  (Ringel Decl., Ex. A at 2).  Chart made the freezer with two primary design features. First, Chart made a double-walled, vacuum insulated tank, which is more commonly known as a dewar. Second, Chart incorporated a supplier's computer controller, the TEC 3000, to operate the freezer under the supervision of lab personnel. (Ringel Decl., Ex. A at 2-3).  Liquid nitrogen in the tank boils away over time, both from heat slowly leaking into the cold space, and from the occasional removal of the top lid to add or remove patient samples stored in the tank.  (Ringel Decl., Ex. A at 2).  The controller senses the level of liquid nitrogen in the dewar.  (Ringel Decl., Ex. A at 2).  When it drops to a level set by the user, the controller automatically opens a valve allowing liquid nitrogen to flow from a liquid nitrogen supply tank into the dewar through a connected, vacuum-insulated piping system.  (Ringel Decl., Ex. A at 2; Ringel Decl., Ex. B at 45:6-46:13).  The controller also monitors temperature levels, calculates the rate of liquid nitrogen use by units of inches per day, and alarms if it observes the temperature rising.  (Ringel Decl., Ex. A at 2-3).  And, the controller contains fail-safe features such as a Sensaphone device that calls and text messages end users to alert them to a rise in temperature, an increase in liquid nitrogen usage, or a low liquid nitrogen level, thereby allowing the end user to remedy the condition and protect any biological material in the tank.  (Ringel Decl., Ex. A at 3; *see* Ringel Decl., Ex. B at 56:5-57:2).

### B.   PFC and the Events Leading Up to the Incident.

PFC's offices, located on the fifth floor of its building, included examination rooms, a procedure area, and an IVF laboratory.  (Ringel Decl., Ex. B at 51:6-52:16).  The laboratory, a

room of approximately 800 square feet, housed three tanks, including Tank 4; and a variety of other equipment including incubators, chambers, and microscopes.  (Ringel Decl., Ex. B at 53:7-17).  Three other tanks, Tanks 1, 2, and 3, were housed in a storage room adjacent to the laboratory, and additional backup tanks were stored on the building's ground floor.  (Ringel Decl., Ex. B at 52:23-54:18).

PFC purchased Tank 4 in 2011 through a third-party distributor.  (Ringel Decl., Ex. B at 65:9-22).  On February 15, 2018, the controller on Tank 4 lost its ability to measure the level of liquid nitrogen in the tank, causing it to alarm.  (Ringel Decl., Ex. B at 77:7-23).  It started making a beeping sound and also sent an electronic signal to call PFC, alerting it to the alarm.  (Ringel Decl., Ex. B at 78:9-20).  Dr. Conaghan, PFC's lab director since 1999, investigated and determined that the tank's nitrogen levels were at an acceptable level.  (Ringel Decl., Ex. B at 67:18-21, 77:17-19, 78:5-8).  He decided to unplug the controller from the wall outlet.  (Ringel Decl., Ex. B at 79:19-20).

For the next 17 days, Dr. Conaghan instructed lab workers to plug in the controller once a day to top up LN2 in Tank 4 before closing the lab for the day.  (Ringel Decl., Ex. B at 90:23-91:4, 93:22-25, 148:25-149:2).  Lab workers were also instructed by Dr. Conaghan to manually measure each day the level of LN2 in Tank 4 by inserting a dipstick into the tank.  (Ringel Decl., Ex. B at 93:22-25).  It is not clear whether they did so:  although lab employees were expected to record those measurements in Reflections, PFC's recording software, some end-of-day measurements between the date on which Dr. Conaghan unplugged the controller until March 4, 2018 were not contemporaneously recorded.  (Ringel Decl., Ex. C at 19:20-26:1).  No one from PFC contacted Chart about the issue with the controller.  (Ringel Decl., Ex. B at 87:16-88:23).

On March 4, 2018, before the lab closed, Dr. Conaghan turned on the autofillers for Tanks 6, 5, and 4.  (Ringel Decl., Ex. B at 101:7-11).  A few minutes later, he attempted to open the lid on Tank 4 to check the LN2 level, but discovered that the lid was stuck.  (Ringel Decl., Ex. B at 101:12-24, 104:24-105:1).  He and embryologist Jean Popwell were able to remove the lid, and Dr. Conaghan noted that the liquid nitrogen level was not as high as the boxes stored inside – the level at which he usually noted it.  (Ringel Decl., Ex. B at 101:24-102:1, 105:25-3, 107:9-12).  He unsuccessfully attempted to get a dipstick reading of the LN2 level.  (Ringel Decl., Ex. B at 110:11-12).  He did not notice any condensation on the exterior of Tank 4, but he noticed "a little water on the floor" under and around Tank 4.  (Ringel Decl., Ex. B at 115:20-116:5, 136:13-25).  Dr. Conaghan added more LN2 to Tank 4; a short time later, the tissue was removed from Tank 4 and placed in a backup tank.  (Ringel Decl., Ex. B at 113:12-20, 117:1-4, 119:3-8, 165:20-166:9).

According to Dr. Conaghan, by the following day, the interior of Tank 4 appeared mangled and distorted.  (Ringel Decl., Ex. B at 117:22-23).  The interior of Tank 4 became more deformed over time.  (Ringel Decl., Ex. B at 117:13-20).

## C. This Litigation.

This litigation arises out of claims brought by individuals whose eggs and embryos were stored in Tank 4 at the time of the incident.  (Third Amended Complaint at 12-13).  They allege that Tank 4 failed because of a defective weld near the bottom of the tank:  "The weld was too thin and the fit between the welded portions of the tank was improper.  As a result, the weld was unable to withstand long-term exposure to normal thermal stresses and eventually cracked."  (Third Amended Complaint at 1).  The Plaintiffs allege that, as a result, the tank "immediately lost its vacuum insulation and ability to maintain a safe temperature for PFC's patients' eggs and embryos," and that the "cracked weld also triggered an implosion of the tank's inner vessel."

(Third Amended Complaint at 1).  Because Tank 4 failed, the Plaintiffs claim, "material from Tank 4 is far less likely to produce a thawed egg or embryo viable for transfer and implantation, far less likely to result in clinical pregnancy, and far less likely to result in a live birth."  (Third Amended Complaint at 13).  The Plaintiffs also claim that "Tank 4's electronic controller – which monitors liquid nitrogen levels and temperature – malfunctioned shortly before the incident.  *To the extent that this malfunctioning controller contributed to the harm suffered by Plaintiffs*, Chart is responsible for that as well."  (Third Amended Complaint at 12) (emphasis added).

Based on those allegations, Plaintiffs plead three causes of action.  (Third Amended Complaint a 13-15).  First, they allege strict products liability – manufacturing defect, claiming that Tank 4 contained "at least one manufacturing defect when it left Chart's possession.  In particular, the weld at the liquid nitrogen fill port, which should have sealed the tank's vacuum space, was defective[.]" (Third Amended Complaint at 13).  Second, they allege that Chart is strictly liable for purported design defects in Tank 4 under the consumer expectations "and/or" the risk-benefit test.  (Third Amended Complaint at 13).  Third, the Plaintiffs seek damages for Chart's alleged negligent failure to recall or retrofit Tank 4 because of the allegedly faulty controller.  (Third Amended Complaint at 14-15).  Specifically, the Plaintiffs maintain that Chart knew the controller was "prone to malfunction, leading to inaccurate measurements and false alarms," and that it was "reasonably foreseeable" that if a controller malfunctioned, a customer "would continue to use their cryogenic freezers without a fully functional controller."  (Third Amended Complaint at 15).  The Plaintiffs also allege that Chart "knew prior to March 4, 2018 that it was possible for the welds in its freezers to crack, causing an inner vessel implosion, total vacuum loss, and loss of function."  (Third Amended Complaint at 15).  According to the Plaintiffs, because of "what Chart knew about the likelihood of a TEC 3000 electronic controller malfunction and the risks posed by

that malfunction, Chart should have recalled or retrofitted all tanks equipped with a TEC 3000 electronic control system prior to March 4, 2018." (Third Amended Complaint at 15). The Plaintiffs claim they are also entitled to exemplary damages for Chart's failure to recall Tank 4. (Third Amended Complaint at 15).

In support of their claims, the Plaintiffs identified five experts: Kasbekar; Wininger; Stephen Somkuti, a reproductive endocrinologist; Elizabeth Grill, a psychologist; and Nicholas Jewell, a biostatistician. Chart identified seven experts: Franklin Miller, a cryogenic engineer; Ron Parrington, a metallurgist; Grace Centola, an expert lab director; Eve Feinberg, a reproductive endocrinologist; Angela Lawson, a psychologist; John Cauthen, a digital forensic examiner; and Eldon Leaphart, an electrical engineer. Only certain opinions offered by Kasbekar, Wininger, and Somkuti are relevant to this motion.

Kasbekar claimed that "the cause of the failure [of Tank 4] was a breach in the interior wall of the tank at the annular weld that attaches the fill port fitting to the inner tank wall." (Ringel Decl., Ex. D at 60). The weld, Kasbekar maintained, "lacked adequate penetration and failed to fuse together the tank wall and fitting." (Ringel Decl., Ex. D at 60). Kasbekar premised his opinions on his assumption that Tank 4 contained approximately 14 inches of liquid nitrogen on March 3, 2018 – the day before the incident. (Ringel Decl., Ex. D at 37-38). Liquid nitrogen, Kasbekar argued, leaked into the vacuum space through the cracked weld at the fill port, causing the space to expand and the tank to deform. (Ringel Decl., Ex. D at 60). According to Kasbekar, "Chart knew that leakage of liquid nitrogen into the vacuum space followed by an expansion from liquid to gas as the tank warmed over time would result in the subsequent implosion or collapse of the inner vessel." (Ringel Decl., Ex. D at 60). Kasbekar opined that weld was the root cause of the issue because the one-sided weld lacked sufficient strength to withstand thermal stress and was

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC

1
2
3

susceptible to cracking.  (Ringel Decl., Ex. D at 62).  He further opined that Chart could have made the weld joint more robust or made the inner tank thicker.  (Ringel Decl., Ex. D at 63).  Kasbekar offered no opinions related to the controller.

4
5
6
7
8
9

Plaintiffs' counsel acknowledged that Wininger, an embryologist, was "not an engineer put forth to opine on the mechanical failure of the tank." (Ringel Decl., Ex. E at 37:11-13).  Rather, Wininger sought to opine, among other things, about consumer expectations.  He claimed that users of cryogenic tanks "do not expect them to suffer a sudden and total loss of vacuum insulation" or excessive use of liquid nitrogen.  (Ringel Decl., Ex. F at 14).

10
11
12
13
14

Somkuti opined about the likelihood that plaintiff G.H. would achieve a live birth.  In 2016, G.H. had undergone a retrieval and cryopreserved two eggs.  According to Somkuti, based on G.H.'s age and apparent low egg reserve, she had a less than 50 percent chance of a live birth with the two eggs she cryopreserved in 2016.

15
16

### III.  **LEGAL STANDARD**

17
18
19
20
21
22
23
24

The summary judgment standard is well-established.  Summary judgment must be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  The movant bears the burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence.  *Id.*

25
26
27
28

Once the movant makes the initial showing, the opponent the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  At that point, the opponent

must provide specific admissible facts showing that the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative and admissible evidence will not prevent summary judgment. *Id*. at 248-50. Thus, conclusory statements and unsubstantiated assertions cannot defeat a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the nonmoving party fails to show the existence of an element essential to his case on which he bears the burden of proof, summary judgment must be granted. *Celotex*, 477 U.S. at 322-32. This court has no duty to search the record for the nonmoving party for triable issues. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## IV.   ARGUMENT

Each of Plaintiffs' three claims – alleging strict products liability for a manufacturing defect, strict products liability for a design defect, and negligent failure to recall – fails as a matter of law. For each, Plaintiffs are required to offer admissible expert testimony establishing both the existence of a defect and a causal link between the alleged defect and Plaintiffs' claimed injuries. As explained in Chart's Motion to Exclude, Kasbekar's causation opinion is inadmissible under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. If this Court grants Chart's motion to exclude, Plaintiffs will have no expert testimony to support their claims and Chart will be entitled to summary judgment.

Additionally, Chart is entitled to partial summary judgment on Plaintiffs' negligent failure to recall claim. That claim alleges that Chart knew of issues with the *controller*, a separate component from the dewar, and that Chart negligently failed to recall it. However, Plaintiffs have not offered evidence of causation. The only expert testimony the Plaintiffs offered about any manufacturing or design defect concerns the weld at the fill port on the tank. There is no expert

testimony establishing that TEC 3000 control system was defective and should have been recalled. As importantly, there is no expert opinion testimony establishing that a recall of the controller would have affected the only alleged defect – the weld – that Plaintiffs' expert has identified, or that failure to recall the controller caused damage to the Plaintiffs' tissue inside Tank 4.

Finally, in further alternative, this Court should grant partial summary judgment on a portion of Plaintiffs' claimed damages. Because there is no evidence that Chart willfully and consciously ignored any issue with the controller, Plaintiffs are not entitled to exemplary damages under any negligent failure to recall claim. And, G.H. is not entitled to seek damages for any possible inability to successfully achieve a live birth where, according to her own expert, her odds of success before the March 4, 2018 incident were already less than 50 percent.

A.    **Because Kasbekar's Opinion Testimony Is Not Admissible, the Plaintiffs Cannot Establish Causation.**

First and foremost, because Kasbekar's causation opinion is not admissible, the Plaintiffs cannot establish a necessary element of any of their product liability claims. For any products liability claim, a plaintiff may seek to recover in strict liability, whether in tort or negligence. *Scott v. C.R. Bard, Inc.*, (2014) 231 Cal. App. 4th 763, 773. Under either theory, "the plaintiff must prove that a defect caused the injury," either because of a design defect or a manufacturing defect. *Id.*; *see Demara v. The Raymond Corp.*, (2017) 13 Cal. App. 5th 545, 554 (observing that to prove causation in a products liability case, a plaintiff must "prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury").

The plaintiff has the burden of proof on specific material facts such as causation. *Demara*, 13 Cal. App. 5th at 555. "A product liability case must be based on substantial evidence establishing both the defect and causation (a substantial probability that the design defect, and not something else, caused the plaintiff's injury) and where, as here, the complexity of the causation

1   issue is beyond common experience, expert testimony is required to establish causation." *Stephen*

2   *v. Ford Motor Co.*, (2005) 37 Cal. App. 4th 1363, 1373. Because Plaintiffs cannot satisfy the

3   causation requirement for any of their three claims, Chart is entitled to summary judgment on all

4   of them. *Lust By & Through Lust v. Merrell Dow Pharm.*, *Inc*., 89 F.3d 594, 598 (9th Cir. 1996)

5   (affirming summary judgment for the defendant manufacturer and district court's exclusion of the

6   plaintiff's expert's causation opinion under *Daubert*).

7          It should be noted that Chart is entitled to summary judgment on Plaintiffs' design defect

8   claim regardless of whether this Court evaluates that claim using the consumer expectations test

9   or the risk-benefit test.  Under California law, defective design can be established under two

10  theories:  "(1) the consumer expectations test, which asks whether the product performed as safely

11  as an ordinary consumer would expect when used in an intended and reasonably foreseeable

12  manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design

13  outweigh the risk of danger inherent in the design." *Saller v. Crown Cork & Seal Co., Inc.*, (2010)

14  187 Cal. App. 4th 1220, 1232.  California reserves the consumer expectations test for cases where,

15  "it is clear that a product violates ordinary consumer expectations only when the circumstances

16  arouse such reasonable expectations based on common experience of the product's users[.]" *Soule*

17  *v. General Motors Corp.*, (1994) 8 Cal. 4th 548, 564.  Said another way, the consumer expectations

18  test is "reserved for cases in which the *everyday experience* of the product's users permits a

19  conclusion that the product's design violated *minimum* safety assumptions, and is thus defective

20  *regardless of expert opinions about the merits of the design*." *Id*. at 657 (emphasis in original).

21  However, a "complex product, even when it is being used as intended, may often cause injury in

22  a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe

23  performance." *Id*.

Such is the case here.  Tank 4 is a complex product.  Even if it were being used as intended – something Chart disputes, given Dr. Conaghan's decision to unplug Tank 4's controller, thereby disabling its temperature monitoring, fill, alarm, calling and texting features – it is not in the everyday experiences of an average juror to understand the use of a computer controlled cryogenic freezer and the complex physics, engineering, and metallurgical principles necessary to evaluate whether Tank 4 experienced a cracked weld because of a supposed defective design or something else.  Expert testimony on this topic is necessary in this case.

**B.    Chart Is Entitled to Summary Judgment On Plaintiffs' Negligent Failure to Recall Claim.**

Additionally, Chart is entitled to summary judgment on Plaintiffs' third cause of action alleging negligent failure to recall.  (Third Amended Complaint at 14-15).  Plaintiffs failed to offer any expert evidence to establish defect or causation for this claim.  Unlike their strict liability claims, however, that absence of expert testimony is unrelated to Chart's *Daubert* arguments.  Rather, Plaintiffs' failure to recall claim is premised on the idea that Tank 4's *controller* failed and should have been recalled – a topic about which Plaintiff has offered *no* expert testimony.

As noted above, under either a strict products liability or negligence claim, a plaintiff must show that the alleged defect caused her injury.  *Demara*, 13 Cal. App. 5th at 554.  She must also show that the product defect was due to negligence of the defendant.  *Scott*, 231 Cal. App. 4th at 773.  And, in cases involving complicated products, a plaintiff must prove those concepts of defect and causation with expert testimony.  *Stephen*, 37 Cal. App. 4th at 1373.  Moreover, in a negligent failure to recall claim, a plaintiff must prove that a defendant "knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner," that the defendant "became aware of this defect after the product was sold," that the defendant "failed to recall . . . the product," that a reasonable manufacturer under similar

13

circumstances would have recalled the product; and that the defendant's failure to recall the product "was a substantial factor in causing plaintiff's harm."  CCJI 1223 (internal brackets omitted).

Here, the Plaintiffs negligent failure to recall claim focuses not on the allegedly defective weld at the liquid nitrogen port, but rather on the controller – a complicated computer about which Plaintiffs have offered no expert testimony.[4]  According to Plaintiffs, the controller was "prone to malfunction, leading to inaccurate measurements and false alarms."  (Third Amended Complaint at 15).  The Plaintiffs also claim that it was reasonably foreseeable that customers would continue to use their cryogenic freezers without a "fully functioning controller."  (Third Amended Complaint at 15).  And, Plaintiffs argue, based on what Chart purportedly knew about possible controller issues, Chart should have recalled and retrofitted all tanks fitted with a TEC 3000 controller.  (Third Amended Complaint at 15).

Plaintiffs have offered no evidence to show how Chart's alleged failure to recall or retrofit the *controller* caused them harm.  Plaintiffs' mechanical engineering expert testified that Tank 4 failed as a result of a weld issue.  He offered no opinions related to the controller.  The alleged weld failure has nothing to do with the controller.  Indeed, the alleged controller issue occurred 17 days before Dr. Conaghan discovered that Tank 4 had supposedly failed.  Plaintiffs have neither offered evidence nor explained how the malfunctioning alarm on the controller relates to or concerns the alleged tank failure, much less how or why Chart owed them any duty to recall the controller.  *See*, *e.g.*, *Montez v. Ford Motor Co.*, (1980) 101 Cal. App. 3d 315, 319-20.  That is Plaintiffs' obligation – they are required to show that the controller's failure, and Chart's failure

---

[4] In contrast, Chart *has* disclosed an electrical engineering expert, Mr. Leaphart, who opined that the controller was not unreasonably dangerous.

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC

to recall the controller, were substantial factors in causing the Plaintiffs' alleged injuries. *See* CCJI 1223. Without any expert testimony to establish either defect or causation, the Plaintiffs' controller-related claims fail.

One additional matter on this subject should be noted. Although the Plaintiffs do not appear to make any other claims based on the alleged failure of the controller, to the extent they intend to argue they are entitled to damages related to the controller issues, they are precluded from doing so for the same reason their negligent failure to recall claim fails: they have offered no expert testimony to support any such theory. Chart is entitled to summary judgment on any of Plaintiffs' claims of injury related to the controller.

## C.    A Portion of Plaintiffs' Damages Claims Are Legally Inadequate.

Finally, this Court should grant Chart partial summary judgment on a portion of Plaintiffs' damages claims. They are not entitled to exemplary damages for any allegedly negligent failure to recall or, to the extent sought, under any other theory alleged in their Third Amended Complaint; and, G.H. is not entitled to seek damages related to her reduced odds of success of a live birth.

For all of the reasons discussed above, Chart is entitled to summary judgment on Plaintiffs' negligent failure to recall claim. Additionally, the Plaintiffs' claim for exemplary damages fails: there is *no* evidence, much less clear and convincing evidence, sufficient to award exemplary damages in this case. Under California law, exemplary damages may be appropriate where a plaintiff shows by clear and convincing evidence that a defendant "has been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code § 3294. Section 3294 defines all three terms: malice is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others"; oppression is "despicable conduct that subjects a person to cruel and unjust hardship in

conscious disregard of that person's rights"; fraud is "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294.

A plaintiff may be entitled to exemplary damages in the context of a products liability claim, but *only* where the manufacturer's conduct satisfies those criteria. *G.D. Searle & Co. v. Superior Ct.*, (1975) 49 Cal. App. 3d 22, 27. Notably, "where the plaintiff's ultimate burden of proof will be by clear and convincing evidence, the higher standard of proof must be taken into account in ruling on a motion for summary judgment or summary adjudication, since if a plaintiff is to prevail on a claim for punitive damages, it will be necessary that the evidence presented meet the higher evidentiary standard." *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, (2002) 96 Cal. App. 4th 1017, 1049.

Here, there is no evidence that Chart acted with malice, oppression, or fraud related to any of the allegations in this complaint. There is no evidence that Chart *intended* to cause injury to the Plaintiffs. *See id*. If there is no evidence of intentional conduct, a plaintiff must show that a defendant's conduct is both willful and despicable. *In re Johnson & Johnson Talcum Powder Cases*, (2019) 37 Cal. App. 5th 292, 332. Plaintiffs can prove neither here. Despicable conduct is conduct "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by most ordinary decent people." *Mock v. Michigan Millers Mut. Ins. Co.*, (1992) 4 Cal. App. 4th 306, 330. There is no evidence of any such conduct in this case. Fundamentally, there is no evidence to support *any* claim for punitive damages, attached to *any* of Plaintiffs' allegations. Chart is entitled to partial summary judgment on that point.

Further, Chart is entitled to partial summary judgment on one portion of G.H.'s damages claim.  She is not entitled to seek damages related to the diminished possibility of achieving a live birth, where Plaintiffs' expert conceded G.H. had a less than 50 percent chance of a live birth using the biological material stored in Tank 4.  Under California law, a plaintiff must establish that her claimed injury is more likely than not a result of the defendant's alleged negligence.  *See Broome v. Pavitt*, (1992) 5 Cal. App. 4th 1487, 1498-1500.  Although there may be many possible causes of an injury, mere possibility is not sufficient to establish a *prima facie* case.  *Jones v. Ortho Pharma. Corp.*, (1985) 163 Cal. App. 3d 396, 402.  A possible cause "only becomes probable when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action."  *Broome*, 5 Cal. App. 4th at 1498 (internal quotations and citations omitted).  G.H. cannot satisfy that requirement.  Because there is no medical testimony that the biological material G.H. stored in Tank 4 would more likely than not result in a live birth, G.H. cannot prove that Tank 4's failure caused that alleged injury.  Based on Plaintiffs' own expert testimony, G.H. is precluded from any related claim of damages.

In sum, Chart is entitled to summary judgment on all of Plaintiffs' claims, because they cannot establish causation.  Additionally, the Plaintiffs have offered no expert causation evidence in support of their negligent failure to recall claim, or for any claims seeking damages related to the failure of the controller in this case.  Finally, the Plaintiffs are not entitled to any punitive damages in this case, and G.H. is not entitled to damages because Plaintiffs' expert has stated Tank 4's failure is not the but-for cause of any failure to achieve a live birth with the biological material in the tank.

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC

V.    **CONCLUSION**

For all of the foregoing reasons, Chart requests that the Court grant its motion for summary judgment.

Dated: December 22, 2020            Respectfully submitted,

                                     By: /s/ Kevin Ringel

                                     John J. Duffy (SB No. 6224834)
                                     Kevin M. Ringel (SB No. 6308106)
                                     Margaret C. Redshaw (SB No. 6327480)
                                     **SWANSON, MARTIN & BELL, LLP**
                                     330 N Wabash, Suite 3300
                                     Chicago, Illinois 60611
                                     Tel: (312) 321-9100; Fax: (312) 321-0990
                                     jduffy@smbtrials.com
                                     kringel@smbtrials.com
                                     mredshaw@smbtrials.com

                                     Marc G. Cowden (SB No. 169391)
                                     Adam Stoddard (SB No. 272691)
                                     **SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
                                     1033 Willow Street
                                     San Jose, California 95125
                                     Tel: (408) 288-9700; Fax: (408) 295-9900
                                     mcowden@smtlaw.com
                                     astoddard@smtlaw.com

                                     *Counsel for Defendant Chart, Inc.*

DEFENDANT CHART INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-01586-JSC