Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE &
CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

IN RE PACIFIC FERTILITY CENTER
LITIGATION


This Document Relates to:
No. 3:18-cv-01586
(A.B., C.D., E.F., G.H., and I.J.)

Master Case No. 3:18-cv-01586-JSC

**PLAINTIFFS' MOTION TO
EXCLUDE EXPERT TESTIMONY**

Date: March 4, 2021
Time: 9:00 a.m.
Judge: Hon. Jacqueline S. Corley
Place: Courtroom F, 15th Floor


**REDACTED - FILED UNDER SEAL**

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................1

INTRODUCTION ..........................................................................................................2

BACKGROUND .............................................................................................................3

ARGUMENT ...................................................................................................................4

    I.       Select portions of Chart's expert reports do not meet the standard for admissibility.......4

    II.      Eldon Leaphart: The Court should exclude opinions that venture beyond Leaphart's expertise in electrical engineering. ..........................................................5

          A.     Leaphart is not qualified to opine that ██████████ ███████████████████████ ............................6

          B.     Leaphart cannot reliably opine ████████████████████████████ ███████████ ............................7

    III.     John Cauthen: The Court should exclude testimony that █████████████ ██████ as irrelevant and prejudicial. ................................8

    IV.     Grace Centola: The Court should exclude testimony regarding ██████ ███████ as irrelevant and prejudicial .........................10

          A.     Centola's testimony that ████████████████████████ is inadmissible under Rule 404...........11

          B.     Centola's testimony that ██████████████████ ██████████████ is likewise inadmissible under Rule 404. .......................................12

          C.     Centola's testimony that ██████████████ is inadmissible under Rule 404....................13

          D.     Centola's testimony about ██████████ is inadmissible under Rule 404. ....................14

    V.      Franklin Miller: The Court should exclude opinions that venture beyond Miller's expertise, draw legal conclusions, or lack a reliable foundation. ...................................14

          A.     Miller's opinion ████████████ is an improper and unsupported legal conclusion.....................................15

          B.     Miller's opinion that ████████████ is an irrelevant legal conclusion. ...................................16

C.   Miller's █████████████████████████████ is not the same as
the legal definition, making his conclusions irrelevant and confusing. ..............16

D.   Miller is not qualified to opine ████████████████████████
██████████ ...........................................................................17

E.   Miller should not be permitted to confuse the jury with ██████████████
████████████████████████████████..........................................18

F.   Like Centola, Miller should not be permitted to testify regarding ████
████████████████████████ .........................................21

G.   Miller's second rebuttal report should be stricken.............................21

VI.   Angela Lawson: The Court should preclude any testimony or insinuations
concerning █████████████████████████ .........................................22

CONCLUSION...........................................................................................23

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*Apple Inc. v. Samsung Elecs. Co.*
    881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........................................................................15

4
*Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*
5
    984 F. Supp. 768 (S.D.N.Y. 1997)................................................................................21

6
*Beard v. United States Postal Serv.*
    2019 WL 257978 (N.D. Cal. Jan. 18, 2019) .................................................................20
7

8
*Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*
    2009 WL 10674074 (S.D. Cal. Apr. 1, 2009) .................................................................9

9
*Daubert v. Merrell Dow Pharm., Inc.*
10
    43 F.3d 1311 (9th Cir. 1995).........................................................................................20

11
*Daubert v. Merrell Dow Pharm., Inc.*
    509 U.S. 579 (1993) ...............................................................................................passim
12

13
*Domingo ex rel. Domingo v. T.K.*
    289 F.3d 600 (9th Cir. 2002)...........................................................................................5

14
*Dupuis v. Alaskan Shores F/V*
15
    139 F.3d 904 (9th Cir. 1998)........................................................................................11

16
*Friend v. Time Mfg. Co.*
    2006 WL 2135807 (D. Ariz. July 28, 2006) .................................................................14
17

18
*Gen. Elec. Co. v. Joiner*
    522 U.S. 136 (1997).......................................................................................................21

19
*Glover v. Main St. Wholesale Furniture, LLC*
20
    545 S.W.3d 245 (Ark. App. 2018) ...............................................................................23

21
*Greenman v. Yuba Power Prod., Inc.*
    59 Cal. 2d 57 (1963) .....................................................................................................16
22

23
*Grodzitsky v. Am. Honda Motor Co.*
    957 F.3d 979 (9th Cir. 2020)...........................................................................................8

24
*In re PersonalWeb Techs., LLC Patent Litig.*
25
    2020 WL 6821074 (N.D. Cal. Feb. 3, 2020) ................................................................22

26
*In re Pfizer Inc. Sec. Litig.*
    288 F.R.D. 297 (S.D.N.Y. 2013) ..................................................................................11
27

28
*Jinro Am. Inc. v. Secure Investments, Inc.*
    266 F.3d 993 (9th Cir.)..................................................................................................10

*Jones v. S. Pac. R.R.*
   962 F.2d 447 (5th Cir. 1992)..................................................................................11, 13

*Jones v. Standard Ins. Co.*
   2013 WL 5549779 (N.D. Ill. Oct. 8, 2013).......................................................................23

*Kumho Tire Co. v. Carmichael*
   526 U.S. 137 (1999)...........................................................................................................5

*Luke v. Family Care & Urgent Med. Clinics*
   323 F. App'x 496 (9th Cir. 2009).....................................................................................22

*Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*
   970 F. Supp. 2d 1229 (D. Utah 2013)................................................................................6

*Marron v. Stromstad*
   2002 WL 34189740 (Alaska Super. Aug. 09, 2002)..........................................................23

*Morris v. Long*
   2012 WL 3276938 (E.D. Cal. Aug. 9, 2012)
   *aff'd*, 592 F. App'x 579 (9th Cir. 2015).........................................................................12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*
   523 F.3d 1051 (9th Cir. 2008)....................................................................................15, 17

*O'Connor v. Boeing N. Am., Inc.*
   2005 WL 6035256 (C.D. Cal. Aug. 9, 2005)....................................................................12

*Pooshs v. Philip Morris USA, Inc.*
   904 F. Supp. 2d 1009 (N.D. Cal. 2012) ...........................................................................18

*Prasol v. Cattron-Theimeg, Inc., et al.*
   2011 WL 3897794 (E.D. Mich. Sept. 6, 2011).................................................................22

*Rovid v. Graco Children's Prod. Inc.*
   2018 WL 5906075 (N.D. Cal. Nov. 9, 2018)........................................................19, 21, 22

*S. Pac. Transp. Co. v. Builders Transp., Inc.*
   1993 WL 185620 (E.D. La. May 25, 1993) .....................................................................13

*Simplex, Inc. v. Diversified Energy Sys., Inc.*
   847 F.2d 1290 (7th Cir. 1988)..........................................................................................12

*Small v. WellDyne, Inc.*
   927 F.3d 169 (4th Cir. 2019).............................................................................................5

*Snyder v. Bank of Am., N.A.*
   2020 WL 6462400 (N.D. Cal. Nov. 3, 2020)......................................................................6

*Sparks v. Gilley Trucking Co.*
   992 F.2d 50 (4th Cir. 1993)..............................................................................................14

*United States v. Geston*
299 F.3d 1130 (9th Cir. 2002)..................................................................................23

*United States v. Ruvalcaba-Garcia*
923 F.3d 1183 (9th Cir. 2019)....................................................................................4

*United States v. Valencia-Lopez*
971 F.3d 891 (9th Cir. 2020)......................................................................................5

*Winters v. Fru-Con Inc.*
498 F.3d 734 (7th Cir. 2007)......................................................................................7

*Wise v. Southern Tier Express, Inc.*
2017 WL 11488518 (D. Nev. July 10, 2017)............................................................23

**Rules**

Fed. R. Evid. 403 ...............................................................................................10, 23

Fed. R. Evid. 404 ..............................................................................................passim

Fed. R. Evid. 702 .......................................................................................................4

Fed. R. Evid. 704 .......................................................................................................7

**Statutes**

Cal. Evid. Code § 1101 ............................................................................................10

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 4, 2021, at 9:00 a.m., before the Honorable

Jacqueline Scott Corley, Plaintiffs A.B., C.D., E.F, G.H., and I.J. will and hereby do move to exclude

expert testimony pursuant to the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.,*

509 U.S. 579 (1993).

Plaintiffs seek an order excluding Chart from presenting the following expert witness testimony

at the parties' upcoming trial:

      A.      Eldon Leaphart's (i) opinion that ███████████████████████

███, and (ii) opinion ██████████████████████████████████████

███████.

      B.      John Cauthen's opinion that █████████████████████.

      C.      Grace Centola's (i) opinion that ███████████████████████

████████████, (ii) opinion that ████████████████████

████████████, (iii) opinion that ████████████████████████

██████████, and (iv) ███████████████████████████

█████████.

      D.      Franklin Miller's (i) opinion that ██████████████████

████████████, (ii) opinion that ████████████████████

██████████████████████, (iv) opinion that ████████████

████████████████, (v) ██████████████████, (vi) opinion

that ██████████████████████████, and (vii) supplemental

report dated December 11, 2020.

      E.      Angela Lawson's references to ████████████████████.

Plaintiffs' motion is supported by the following points and authorities, as well as the accompanying

declaration of Amy M. Zeman, and the exhibits attached thereto.

---

# INTRODUCTION

In advance of the parties' upcoming trial, Defendant Chart has submitted reports from seven proposed expert witnesses. These witnesses are all qualified, experienced in their respective fields, and capable of presenting relevant testimony that may assist the jury in resolving a central issue in the case. But there are several instances where the witnesses venture beyond their expertise and offer opinions they are not qualified to present to a jury. For example, Eldon Leaphart is an electrical engineer who possesses the experience and training necessary to █████████████████████████████████████ █████████████████████████████████. But he lacks the expertise to say █████████████ ████████████████████████████████. Similarly, Franklin Miller is a cryogenic engineer who can competently present his theory ████████████████████████████████████████ ████. But he lacks the expertise to testify ███████████████████████████████████████ ████████████. He also lacks the expertise to testify █████████████████████████████ ███████████████████████████████████████.

There are also several other instances where the witnesses' testimony exceeds the bounds of admissible evidence. Under Rule 404(b) of the Federal Rules of Evidence, Chart is not permitted to present evidence that ████████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████.[1] But three of Chart's experts intend to testify to ███████████████████████ █████████████████████████████████████████████████. Grace Centola, an andrologist who will opine that ████████████████████████████████ █████████████████, also intends to testify that █████████████████████████████████ █████████████████████████████████████████████████████████ ███████. Centola and Miller both intend to testify that ██████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████. And John Cauthen, a digital forensic examiner, intends to testify that ████

---

[1]     Plaintiffs use PFC throughout this motion to refer to the Pacific Fertility Center and all associated entities and medical professionals, including Prelude Fertility, Inc., and Pacific MSO, LLC.

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY
MASTER CASE NO. 3:18-cv-01586-JSC

█████████████████████████████████████████████████████████

████████████████████████████. Rule 404(b) forbids the use of such evidence precisely because

it could unfairly prejudice the jury against PFC, necessitate prolonged testimony on ████████████

███████████████, and distract the jury from the central issues in the case. Those central issues

include whether PFC caused the March 4th incident through its negligent behavior in February and

early March, but not █████████████████████████.

Plaintiffs accordingly request that the Court closely examine the opinions Chart's experts have

disclosed in their reports, as required by *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993),

and exclude those opinions—identified below—that do not meet the standard for admissibility. Chart

will still be entitled to present its side of the case to the jury, and to do so through expert testimony. But

by narrowing the scope of the opinions those experts are allowed to present, the Court will also ensure

that the jury is not unduly influenced or confused by unreliable, unsupported, or irrelevant testimony

that nonetheless carries the imprimatur of a Court-sanctioned expert.

## BACKGROUND

This litigation centers on the events of Sunday, March 4, 2018, when PFC's Lab Director

discovered that a cryogenic tank containing 2,500 embryos and 1,500 eggs—including Plaintiffs' eggs

and embryos—had lost liquid nitrogen and begun imploding. (*See* Third Am. Compl., ECF No. 578-1,

¶ 1.)  Subsequent analysis of the tank, referred to as Tank 4 by PFC, revealed a crack in an interior

weld. (*Id.*, ¶ 4, 31-33.) Plaintiffs contend the tank was defective in manufacturing and design and will

ask the jury to hold Chart strictly liable for the financial and emotional harm its defective tank has

caused them. (*Id.*, ¶¶ 46-56.) Plaintiffs also contend Chart acted negligently by failing to recall Tank 4

prior to the March 4th incident. Chart knew Tank 4's controller was prone to "spontaneously go

haywire," and knew that if the tank's weld cracked while the controller was malfunctioning, Tank 4

would suddenly lose nitrogen and damage the material stored inside. (*Id.*, ¶¶ 57-64.)

Chart denies that its cryogenic tank was defective or in any way caused the damage to

Plaintiffs' eggs and embryos. (*See* Chart's Answer, ECF No. 597, ¶¶ 47-64.) It says that Tank 4 lost

liquid nitrogen and exposed Plaintiffs' eggs and embryos to dangerously high temperatures solely

because PFC's Lab Director and team of embryologists acted negligently. (*See id.* at 8.) According to

3

Chart, PFC's negligence caused Tank 4 to run out of liquid nitrogen and implode, and that implosion caused the tank's weld to crack. To support its position at trial, Chart intends to call seven expert witnesses:

- *Eve Feinberg*, a reproductive endocrinologist who ████████████████████ ████████████████████████████████████████████████████████████;

- *Eldon Leaphart*, an electrical engineer who ██████████████████████ █████████████████████████████;

- *John Cauthen*, a digital forensic examiner who █████████████████ ████████████████████████████████████████████████████████████████;

- *Grace Centola*, an andrologist who █████████████████████████ ██████████████████████████████████████████;

- *Ronald Parrington*, a metallurgical engineer who ████████████████ ██████████████████████████████████████████;

- *Franklin Miller*, a cryogenic engineer who ███████████████████████ ████████████████████████████████████; and

- *Angela Lawson*, a forensic psychologist who ██████████████████████ ██████████████████.

## ARGUMENT

### I.   Select portions of Chart's expert reports do not meet the standard for admissibility.

Before admitting expert testimony into evidence, courts are required to perform a gatekeeping role to ensure the testimony satisfies three overarching requirements:

  (i)   *qualifications*:  the expert must be qualified as an expert by knowledge, experience, training, or education;

  (ii)  *reliability*:  the reasoning or methodology underlying the expert's testimony must be scientifically reliable; and

  (iii) *relevance*:  the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.

Fed. R. Evid. 702; *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019).

4

The reliability requirement is a flexible one that varies with the nature of the expert's testimony. "Science-based" opinions can be evaluated, for example, by considering whether the underlying reasoning or methodology has been tested, subjected to peer review and publication, or widely accepted in the scientific community. *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (citing *Daubert*, 509 U.S. at 592-94). "Experience-based" opinions can be more difficult to evaluate, but the lack of objective benchmarks makes it even more important for courts to screen the opinions to ensure they are adequately explained and supported. *Valencia-Lopez*, 971 F.3d at 898. Without a proper explanation based on demonstrated knowledge and experience in the relevant discipline, expert opinion testimony can improperly devolve into nothing more than "because I say so." *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (excluding opinion evidence connected to existing data only by the *ipse dixit* of the expert). The Court's ultimate goal is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Valencia-Lopez*, 971 F.3d at 898 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Chart's seven expert witnesses largely satisfy the gateway requirements for opinion testimony. There are some relatively narrow aspects of Chart's expert reports that exceed the bounds of permissible expert testimony, however—either because they venture beyond the witness's field of expertise; pertain to irrelevant, confusing, or potentially prejudicial facts; or are not adequately explained and supported. Plaintiffs accordingly request that the Court preclude Chart's experts from offering the testimony discussed below.

## II.   Eldon Leaphart: The Court should exclude opinions that venture beyond Leaphart's expertise in electrical engineering.

Eldon Leaphart is an electrical engineer who ████████████████████████ ███████████████. He concluded that ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ (Zeman Decl., Ex. 1 at 30-32.) These symptoms are consistent with the ████████████████████████████████████████████████

5

1    ████████████████████████████████████████████████████. (*Id.*,
2    Ex. 1 at 23, 32; Ex. 2 at 157.)

3           The majority of Leaphart's report concerns ████████████████████
4    ███████████████████. He reports on ████████████████████████████████
5    ████████████████████████████████████████████████████████
6    ████████████████████████████████████. (*Id.*, Ex. 1 at 10-32.) But in a few

7    instances, Leaphart ventures beyond his expertise and opines regarding other matters. Plaintiffs request

8    the Court preclude Chart from presenting these opinions at trial, but otherwise permit Leaphart to

9    testify regarding ███████████████████████████████████.

10          A.      **Leaphart is not qualified to opine that** ████████████████████
11    ███████████████.

12          At his deposition, Leaphart acknowledged ██████████████████████████
13    ████████████████████████████████████████████
14    ████████████. (*Id.*, Ex. 2 at 141.) Leaphart ██████████████████████████
15    ████████████████████████████. (*Id.* at 52-53.) So while

16    Leaphart's experience as an electrical engineer may qualify him to ████████████████████
17    ████████████████, he possesses no special knowledge or expertise that would allow him to

18    competently opine ████████████████████████████. *See Snyder v. Bank of Am.,*
19    *N.A.*, No. 15-CV-04228-KAW, 2020 WL 6462400, at *4 (N.D. Cal. Nov. 3, 2020) ("[E]xpertise in one

20    subject does not necessarily mean the expert will be qualified to testify on all issues that could arise

21    from that subject.") (quoting *Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229,

22    1241 (D. Utah 2013)).

23          It stands to reason that if Leaphart is not qualified to testify ████████████████████
24    ████████████████████████████████████████. Yet in his report,

25    Leaphart claims that █████████████████████████████████████████
26    ████████████ (*Id.*, Ex. 1 at 36, ¶ 3 (third bullet); *see also id.* at 33 █████████████
27    █████████████████████████████████████████████████████
28    █████████████ He does not support this opinion in his report, say ████████████████████

6

1  ████████████████████████████████, or explain ████████████████████████████

2  ████. This lack of support, combined with Leaphart's ████████████████████████,

3  renders his opinion inadmissible. Fed. R. Evid. 704(b); *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th

4  Cir. 2007) ("An expert must substantiate his opinion; providing only an ultimate conclusion with no

5  analysis is meaningless").

6        **B.      Leaphart cannot reliably opine** ████████████████████████████

7              ████████.

8        Despite Leaphart's representation that ████████████████████████████████

9  ████████████████████████████████████████████████████████████████████

10 ████████████. The report says ████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████

12 (Zeman Decl., Ex. 1 at 35, ¶ 1; *see also id.* at 6 ████████████████████████████

13 ████████████████████████████████████████████.)

14       This opinion is unsupported, outside the scope of Leaphart's assignment, and contrary to

15 Leaphart's own admissions at deposition. Leaphart's report may say that ████████████████

16 ████████████████████████████████, but Leaphart himself called that ██

17 ████████████ and acknowledged that ████████████████████████████████████

18 ████████████████████ (*Id.*, Ex. 2 at 80-81, 151.) When asked to explain why

19 ████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████ (*Id* at 72-74; *see also* 75-76 ██████████████

22 ████████████████████████████████████.)

23       Leaphart further acknowledged that ████████████████████████████████

24 ████████████████████████████████████████████████████████████████████

25 ████████████████████████████████. (*Id.* at 27, 148.) Without a ██████████████,

26 there is simply no way that Leaphart can reliably testify ████████████████████████████

27 ████████████████████████████. *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d

28

---

7



979, 986 (9th Cir. 2020) (excluding expert opinion where "the only testing [the expert] performed was not designed to identify any defects").

**III.   John Cauthen: The Court should exclude testimony that ▮▮▮▮▮▮▮▮▮▮ as irrelevant and prejudicial.**

John Cauthen is a digital forensic examiner who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Zeman Decl., Ex. 3 at 3-4.) Plaintiffs do not object to Cauthen testifying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. They also do not object to limited testimony regarding ▮▮▮▮▮▮▮▮▮▮. For instance, Cauthen's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* at 21.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*) In other words, Cauthen's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.*, Ex. 12 at 129-31.) This evidence is relevant to a central issue in the case—whether Tank 4 failed because of a defective weld, as Plaintiffs contend, or because PFC negligently failed to fill Tank 4 with liquid nitrogen on March 3, 2018, as Chart contends.

Plaintiffs do object, however, to Cauthen presenting evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See id.*, Ex. 3 at 23, ¶ 6; *see also id.* at 13-21, Ex. 4 at 58-59.) Plaintiffs do not intend to introduce ▮▮▮▮▮▮▮▮ into evidence, and allowing Cauthen to nonetheless testify would create a substantial risk of unfair prejudice. The ▮▮▮▮▮▮ discussed in Cauthen's report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id*, Ex. 13 (3/13/18 letter).) It appears that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY
MASTER CASE NO. 3:18-cv-01586-JSC



1  ██████████████████████████████. (*See id.*, Ex. 3 at 13-21.) These ████████████

2  ███████████████████████████████████████

3  ██  ████████████████████████████████████████

4  ████████████████████████

5  ██  ███████████████████████████████████████

6  ██  ████████████████████████████████████████████

7  ███████████████████

8  ██  ████████████████████████████

9  (*Id.* at 23, ¶ 6(a)-(d).) Again, Plaintiffs do not intend to introduce any of these ████████████████ as

10  evidence, so there is no need for Cauthen to testify that █████████████████. The parties can

11  stipulate that ███████████████████████████████████████

12  ██████████████████.

13       The danger with permitting Cauthen to testify ██████████████████████████████

14  ████████ is that it creates the appearance of improper conduct ████████████████████████ that

15  may unduly prejudice the jury against PFC. Even if ████████████████████████████

16  ██████████████████████, that does not make it more likely that PFC engaged in negligent

17  behavior that caused Plaintiffs' injuries. Similarly, even if ████████████████████████████

18  ██████████████████████████████████████, as Cauthen suggests in

19  his report, that too does not make it more likely that PFC contributed to the loss of Plaintiffs' eggs and

20  embryos. (*See id.* at 18-20.) Any misconduct occurred after the fact, and while it may reflect poor

21  judgment or a dishonest character, that sort of character evidence is inadmissible: Rule 404(a) of the

22  Federal Rules of evidence precludes the use of character evidence to prove that PFC or its employees

23  acted in accordance with that character trait. Fed. R. Evid. 404(a)(1). And Rule 404(b) similarly

24  precludes Chart from introducing evidence of other wrongs or acts in pursuit of the same end. Fed. R.

25  Evid. 404(b)(1); *see also Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, No. 06-CV-1584 H,

26  2009 WL 10674074, at *2-3 (S.D. Cal. Apr. 1, 2009) (excluding evidence of behavior during discovery

27  as irrelevant and prejudicial).

28

1    In addition to unfairly prejudicing the jury against PFC, Cauthen's testimony would also lead to

2    extended proceedings on collateral issues and distract jury members from the central issues in the case.

3    *See* Fed. R. Evid. 404, Note to 2006 amendments; Cal. Evid. Code § 1101, comment. If Cauthen is

4    permitted to testify that ███████████████████████████████████████████████████████████

5    ████████████████ will of course wish to defend themselves. Plaintiffs likewise will want to ensure

6    that the jury considers PFC's conduct in the appropriate context and separates ████████████████

7    ████████████████████████████ from the issues in the case. A great deal of time and testimony

8    will be devoted to the collateral issues of why ████████████████████████████████

9    ████████ and whether doing so was in anyway wrong or unusual.

10   Plaintiffs accordingly request that the Court preclude Cauthen from presenting evidence

11   suggesting that ███████████████████████████████. Plaintiffs do not plan to enter those

12   entries into evidence and any testimony concerning those entries would unnecessarily prolong the trial,

13   distract the jury from the central issues in the case, and unfairly prejudice jury members against PFC.

14   *See Jinro Am. Inc. v. Secure Investments, Inc.,* 266 F.3d 993, 1006 (9th Cir.) ("Otherwise admissible

15   expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially

16   outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay.")

17   **IV.    Grace Centola: The Court should exclude testimony regarding ████████████████ as**

18         **irrelevant and prejudicial**

19         Grace Centola is a specialist in andrology and male fertility who ████████████████

20   ████████████████████████████████████████████████████████████████████████████████████

21   (Zeman Decl., Ex. 6 at 14.) She was asked ████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████

23   ████████ (*See id* at 26-28; *see also id.*, Ex. 5 at 3-44.) For the most part, Plaintiffs do not object to

24   Centola presenting her opinions to the jury: she should be permitted to testify that, in her opinion,

25   ████████████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████

28

1    Plaintiffs do object, however, to Centola offering testimony concerning ███████████

2    ████████████████████████. That testimony, like ██████████ testimony offered by Cauthen,

3    is inadmissible under Rule 404 and would unfairly prejudice PFC, divert the jury's attention from the

4    true issues in the case, and require Plaintiffs spend a significant amount of court time placing those

5    other incidents in the proper context. *See Jones v. S. Pac. R.R.*, 962 F.2d 447, 449–50 (5th Cir. 1992)

6    (evidence of prior safety infractions is inadmissible under Fed. R. Evid. 404(b)), *cited by Dupuis v.*

7    *Alaskan Shores F/V*, 139 F.3d 904 (9th Cir. 1998); *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 318

8    (S.D.N.Y. 2013) ("[defendant's] prior acts of negligence are not admissible to prove that it was

9    negligent here").

10   **A.    Centola's testimony that** █████████████████████████████████████

11   ████████████████ **is inadmissible under Rule 404.**

12   Like Cauthen, Centola intends to testify that █████████████████████████████████

13   ██████████████. (Zeman Decl., Ex. 5, ¶¶ 17-21, 24-25.) Centola goes even further than Cauthen,

14   relying on his findings to opine ████████████████████████████████████████

15   ██████████ (*Id.*, ¶ 38.) In addition to ████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████ (*Id.*, ¶¶

18   39-41.) In fact, that ████████████████████████████████████████████

19   ████████████████████████████████ (*Id.*, Ex. 14 at 3, Q7.)

20   Just as Rule 404 prohibits Cauthen from presenting evidence that ████████████████, so

21   too does it prohibit Centola from testifying that ████████████████████████████

22   ██████████████████. Centola's testimony is an even clearer violation of Rule 404, as she

23   specifically acknowledges that ████████████████████████████████████

24   ████████████████████████████████. (*Id.*, Ex. 5, ¶ 38, 42.) Centola claims ██████

25   ████████████████████████████████ perhaps suggesting that her testimony should be

26   considered habit evidence that can be admitted under Rule 406. (*Id.*, ¶ 38.) But "[b]efore a court may

27   admit evidence of habit, the offering party must establish the degree of specificity and frequency of

28   uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct

11

that is 'semi-automatic' in nature." *O'Connor v. Boeing N. Am., Inc*., No. CV 00-0186 DT RCX, 2005

WL 6035256, at *31 (C.D. Cal. Aug. 9, 2005) (quoting *Simplex, Inc. v. Diversified Energy Sys.,*

*Inc.,* 847 F.2d 1290, 1293 (7th Cir. 1988)). The evidence Centola proposes to present to the jury

constitutes ███████████████████████████████████████████████████████████

████████████. She has not established that PFC "semi-automatically" ████████████

████████████████████████████████████████████ "over substantially all occasions."

*Id.* at *31; *see also Morris v. Long*, No. 1:08-CV-01422-AWI, 2012 WL 3276938, at *10–13 (E.D. Cal.

Aug. 9, 2012) (excluding testimony where proponent failed to show conduct was reflexive or semi-

automatic in nature), *aff'd*, 592 F. App'x 579 (9th Cir. 2015).

      **B.**     **Centola's testimony that** ████████████████████████████████

████████████████████**s likewise inadmissible under Rule 404.**

      Centola intends to testify that ██████████████████████████████████████

█████████████████████████████████████████████████████████████████████

(*Id.*, Ex. 5, ¶ 46.) Her only support for this opinion █████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████. (*Id.*, ¶ 45.) As another of Chart's experts explains, however,

that █████████████████████████████████████████████████████████████████

█████████████████████████████████████ (*Id.*, Ex. 7 at 23.) In

addition, Tank 4's controller was programmed with a level offset of 1.3 inches, meaning that level

readings below 1.3 inches would be recorded as zero; the controller may not have been properly

calibrated at the factory (███████████████████████████████████████████

██████████████████████████████████████████); and Chart's controllers are

prone to malfunction and display inaccurate liquid nitrogen levels. (1/10/20 Gustafson report, ECF No.

418-4, ¶ 24; Zeman Decl., Ex. 7 at 15; *id.*, Ex. 1 at 23, 34.)

      Chart's previous counsel took the position that Tank 4's controller readings meant that

Plaintiffs' eggs and embryos "could very well have been adversely affected *prior to the March 4*

*Incident.*" (1/10/20 Chart Opp., ECF No. 352-4 at 11 (emphasis in original)*; see also id.* at 1, 13, 14,

16 (also asserting the 2013/14 incidents could have damaged Plaintiffs' tissue).) A statistical analysis

12

1  indicated otherwise, however, and Chart has abandoned the argument. Instead, Centola opines that ███

2  █████████████████████████████████████████████████████████████

3  ██████ (Zeman Decl., Ex. 5 at 4.) When asked ████████████████████

4  █████████████████████████████████████████████████████

5  ████ (*Id.*, Ex. 6 at 246.) As she pointed out, ██████████████████████

6  █████████████████████████████ (*Id* at 240; *see also id.* at 256

7  ████████████████████████████████ .

8      Centola is instead ██████████████████████████████

9  █████████████████████ (*Id.*, Ex. 5, ¶ 46.) But as with ██████

10  ████████████████ , evidence of PFC's prior bad acts is not admissible to prove that

11  PFC also acted inappropriately in 2018 and caused Tank 4 to lose liquid nitrogen. As the Fifth Circuit

12  Court of Appeals observed in *Jones*, "prior safety infractions, nearly all of which occurred several years

13  before the accident took place, [are] collateral to the issues involved," and are "not admissible to show

14  that [a party] was negligent on the day of the accident, or that [it] had a habit of [acting] negligently."

15  *Jones*, 962 F.2d at 450; *see also S. Pac. Transp. Co. v. Builders Transp., Inc.,* No. CIV. A. 90-3177,

16  1993 WL 185620, at *10 (E.D. La. May 25, 1993) (evidence of a "train crew's prior negligent acts is

17  not admissible to prove that its members were negligent on [the date in question]").

18      **C.    Centola's testimony that ██████████████████████████ is inadmissible**
19          **under Rule 404.**

20      Centola also claims that ████████████████████████████

21  ███████ (Zeman Decl., Ex. 5, ¶ 36.) Tank 4 and five other cryogenic tanks were supplied with

22  liquid nitrogen through two supply tanks that are hooked up to a common plumbing system. (*Id.*, Ex. 15

23  at 37.) For the same reason that Centola cannot properly testify ████████████████████

24  ████████████████ , she also cannot properly testify t██████████████████

25  ███████████████ .

26      Centola also should be precluded from mentioning ████████████████

27  ███████████████ . (*See id.*, Ex. 5, ¶ 35; Ex. 16 at 48 ██████████████

28  ████████████ .) These ██████████████████ are all also inadmissible

13

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY
MASTER CASE NO. 3:18-cv-01586-JSC

1  under Rule 404(b). *See also Sparks v. Gilley Trucking Co.,* 992 F.2d 50, 53 (4th Cir. 1993) (error to

2  admit extensive evidence of prior speeding to suggest defendant was speeding at the time of the

3  accident).

4      **D.    Centola's testimony about ███████████████ is inadmissible**
5          **under Rule 404.**

6      Centola's report briefly discusses ████████████████████████████████.

7  (Zeman Decl., Ex. 5, ¶¶ 27-29.) PFC did not use buckets as a primary way of refilling Tank 4, but it did

8  frequently use buckets to fill smaller dewars and to fill Styrofoam containers for use in day-to-day

9  operations. (*See id.*, Ex. 17 at 225, 228.) On occasion, embryologists would use a bucket to top off one

10  of the larger tanks, such as when liquid nitrogen is left over from other tasks. (*See id.*, Ex. 18 at 11-12,

11  13-14.) According to Centola, this ████████████████████████████████

12  ████████████████████████. (*Id.*, Ex. 5 ¶¶ 27-29.)

13      Centola acknowledged at her deposition, however, that ████████████████

14  ████████████████ (*Id.*, Ex. 6 at 230.) The testimony is intended only to paint PFC

15  in a negative light and suggest that ████████████████████████████████

16  ████████████████████████. That type of evidence is

17  precluded by Rule 404(b) and should be excluded. *See Friend v. Time Mfg. Co.*, No. 03-343-TUC-CKJ,

18  2006 WL 2135807, at *10 (D. Ariz. July 28, 2006) (excluding evidence offered "to prove that [party]

19  has a habit of engaging in negligent working habits to show that [his] negligence was the sole cause of

20  the accident").

21  **V.    Franklin Miller: The Court should exclude opinions that venture beyond Miller's**
22      **expertise, draw legal conclusions, or lack a reliable foundation.**

23      Franklin Miller is a mechanical engineer who ████████████████████████

24  ████████████████████████. (Zeman Decl., Ex. 7 at 1-2.) He intends to ████████

25  ████████████████████████████████. Whereas Plaintiffs contend that a

26  crack in one of Tank 4's interior welds is responsible, Miller contends that ████████████████

27  ████████████████. He has postulated ████████████████████████████

28  ████████████████. (*Id.* at 9-12.) Plaintiffs have no objection to Miller presenting his theory to the

14

jury, but some of the opinions that Miller wishes to present in conjunction with that theory—such as his

opinion that ███████████████—are improper and should be excluded.

      **A.**    **Miller's opinion ███████████████ is an improper and unsupported legal conclusion.**

      Miller's theory postulates that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (*Id.* at 9, steps 2-3.) One problem with that theory is that Tank 4 was tested extensively after the March 4th incident and no such ███████ was ever identified—the crack in the weld is the *only* leak that has ever been detected. Chart's experts were present for that testing and, in fact, they directed much of the leak testing. They spent hours looking for a leak and found nothing. (*See id.*, Ex. 8 at 149-50.)

      Miller would like to opine that ████████████████████████████████ (*Id.*, Ex. 7 at 24, ¶ 5.) But ███████ is a legal issue and "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008). If Chart truly believed that ███████████████████, its remedy was to bring a motion for evidentiary sanctions against PFC *before* Tank 4 was thoroughly leak-tested and then—with Chart's consent—cut apart for further testing, rendering further leak testing impossible. *See Apple Inc. v. Samsung Elecs. Co.,* 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012) (courts possess inherent authority to impose spoliation sanctions).

      Miller's ███████ opinion is also unsupported by the evidence and undercut by his own deposition testimony. Miller believes that ████████████████████████████████████████████████████████████████ (Zeman Decl., Ex. 7 at 7.) But he doesn't explain ███████████████████████. (*Id.*, Ex. 8 at 145 ██████████████████████████████████████. And he cites to no scientific authority or independent testing for his supposition. *See Daubert,* 509 U.S. at 590 (expert testimony must be based on more than "subjective belief or unsupported speculation").

1   In fact, Miller's only citation is to Chart's own discovery responses. (Zeman Decl., Ex. 7 at 8 nn.22-

2   25.) Then when Plaintiffs asked ███████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████

4   ███  (*Id.*, Ex. 8 at 141-42 ███████████████████████████████████████████

5   ███████████████████████████████████████████████████████████

6   ███████████████████  In short, Miller's opinion that █████████████████████████

7   ███████████████  is an improper legal conclusion, unsupported by reliable scientific evidence, and

8   undermined by the factual record.

9          **B.    Miller's opinion that** ██████████████████ **is an irrelevant legal conclusion.**

10         Miller's report also strays into the legal realm when he opines that █████████████████

11   ███████████████████  (*Id.*, Ex. 7 at 24, ¶ 6; *see also id.* at 7-8.) Miller has no special expertise that

12   allows him to opine ███████████████████████████████████████████.

13   More importantly, Chart's contractual obligations to PFC are not relevant to Plaintiffs or their third-

14   party legal claims, which sound in strict liability, not in contract. Permitting Miller to opine that ████

15   ███████████████  would only confuse the jury with irrelevant information and wrongly suggest to

16   jury members that Chart is not strictly liable for injuries caused by its product—whether that harm

17   occurs before or after the term of Chart's written warranty. *Greenman v. Yuba Power Prod., Inc.*, 59

18   Cal. 2d 57, 62 (1963) ("rules defining and governing warranties … cannot properly be invoked to

19   govern the manufacturer's liability to those injured by their defective products").

20         **C.    Miller's** ████████████████████████████ **is not the same as the legal**

21             **definition, making his conclusions irrelevant and confusing.**

22         Miller opines that ████████████████████████████████████████████████

23   █████████████████████████████████████████████████████████████

24   ██████  (Zeman Decl., Ex. 7 at 24, ¶ 1; *see also id.* at 2.) The issue of whether or not Tank 4 contained

25   a design or manufacturing defect is ultimately one for the jury to decide based on the instructions from

26   the Court. *See* CACI No. 1201-1204. Under California law, "[a] product contains a manufacturing

27   defect if the product differs from the manufacturer's design or specifications or from other typical units

28   of the same product line." CACI No. 1202. And a product is defective in design if it either does not

---

16

1  perform as safely as an ordinary user would have expected, or if the design is a substantial factor in

2  causing harm and the manufacturer cannot prove the benefits of that design outweigh its risks. CACI

3  No. 1203-1204.

4      Miller ███████████████████████████████████████. He

5  considers ████████████████████████████████████

6  ████ (Zeman Decl., Ex. 8 at 235-36.) And he believes that ████████████████████████

7  ████████████████████████████ (*Id.* at 238-39.) Using his own definitions,

8  Miller is able to opine that ████████████████████████████

9  ████████████████████████████████. (*Id.* at 238-39.) He's able

10  to opine ████████████████████████████████████████

11  ████████████████████████████████████████

12  ████████████████████ (*Id.* at 235.) And he's able to opine that ████

13  ████████████████████████████████████████

14  ████████████████████ (*Id.* at 216

15  ████████████████████.)

16      Under these circumstances, permitting Miller to testify at trial that ████████

17  ████████████████████ would only confuse or mislead the jury. *See Nationwide,* 523 F.3d at

18  1059 (excluding expert from presenting legal conclusions that "would have been not only superfluous

19  but mischievous"). Chart engaged a qualified metallurgist to ████████████, and that expert

20  will be permitted to present his factual findings to the jury to assist them in deciding whether Tank 4

21  suffered from any design or manufacturing defects. There is no need for Miller to opine on the same

22  topic, particularly when he offers only legal conclusions that are not supported by any testing or

23  analysis and are based on a misunderstanding of the law.

24      **D.**    **Miller is not qualified to opine** ████████████████████.

25      Miller also should be precluded from testifying that, ████████████████

26  ████████████████████████████████████████

27  ████████████████████ (Zeman Decl., Ex. 7 at 7.) Miller admits ████

28  ████████████████ and he has provided no other basis upon which he could reliably testify ████

17

1  ███████████████████████████████████. (*Id.*, Ex. 8 at 124.) The only support Miller supplies

2  for his contention ███████████████████████████████████████████████. (*Id.*,

3  Ex. 7 at 7 n.19.) If Chart wants to call Mr. Ingram to testify at trial, it can do so, but it should not be

4  permitted to offer opinion testimony ██████████████████████████████████████████

5  ████████. *See Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1019-20 (N.D. Cal. 2012)

6  (finding testimony that exceeded the bounds of expert's qualification would not assist trier of fact).

7         **E.**    **Miller should not be permitted to confuse the jury with** ████████████████

8  ███████████████████████████████████.

9        One of Chart's other experts has testified ███████████████████████████████

10  ████████████████████████████████████████████████████████████████████████████

11  █████████████████████████████████. (Zeman Decl., Ex. 3 at 21.) Ms.

12  Popwell confirmed that the measurement was accurate: on March 3, 2018, she inserted a yardstick into

13  Tank 4 and filled it up to the 14-inch mark—just as she had done on several prior occasions when she

14  was responsible for filling Tank 4 before leaving for the day. (*Id.*, Ex. 12 at 129-32.) Everyone

15  generally agrees on what happened next. Around 12:30 the next day, PFC's Lab Director discovered

16  that Tank 4 had lost all or substantially all of its liquid nitrogen.

17        Miller conducted ██████████████████████████████████████████

18  █████████████████████ (*Id.*, Ex. 7 at 24, ¶ 8; *see also id.* at 8.) He also claims ████████████

19  █████████████████████████████████████████████████

20  █████████████████ (*Id.*) Miller's ████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ██████████████████████████████. (*Id.* at 13.) ███████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████ (*Id.* at 20; Ex. 8 at 177)

26

27

28

1      But at deposition, Miller admitted that ███████████████████████████████

2  ████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  ████ (*Id.*, Ex. 8 at 113-14.) Miller ██████████████, but Tank 4 was filled with 80 boxes, 1280

5  cryo-canes, 1280 goblets, and 3000-4000 cryotips or cryolocks, each holding biological tissue. (*Id.*, Ex.

6  19 at 119-20.) All that equipment takes up a substantial amount of space, as shown below:



*Contents of Tank 4 at the time of failure*
*(shown after relocation to replacement tank)*

20  (*Id.*, Ex. 20.) ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████, and Miller should not be permitted to testify that it did. *See Rovid*

27  *v. Graco Children's Prod. Inc.*, No. 17-CV-01506-PJH, 2018 WL 5906075, at *8 (N.D. Cal. Nov. 9,

28  2018) (excluding expert test that "did not even attempt to simulate" the real-world accident at issue);

*compare with* Zeman Decl., Ex. 8 at 114 ████████████████████████████████

██.

       For similar reasons, Miller's ██████████████████████████████████

████████████████████████████████████████████. Miller

██████████████████████████████████████████████████████

████████████████████████████. (*See id.* at 108.) Instead, he ████████████████████

████████████████████████████████████████████████████████████ (*Id.*,

Ex. 7 at 15.) Not surprisingly, Miller's ████████████████████████████████. (*Id.* at

22.) That result says ████████████████████████████████████████████████████

████████████████████████.

       Chart itself has recognized that there is a meaningful distinction between an interior leak and an

exterior one. It has identified over 100 ways that its tanks could fail and analyzed those potential failure

modes through a formal Design Failure, Modes, Effects & Criticality Analysis. (*Id.*, ¶ 21, Ex. 21.) In

the event of an interior weld failure, Chart concluded: "Liquid [would] draw[] into vacuum space,

expanding rapidly and causing an inner vessel implosion, total vacuum loss. Loss of function of the

freezer." (*Id.*, Ex. 21, DEW-3, DEW-4.) The result for an exterior breach, █████████████████████,

is less severe: no liquid draws into the vacuum space; there is no rapid expansion; vacuum loss leading

to a high evaporation rate is predicted, but not total vacuum loss; and an inner vessel collapse is

described as only a possibility, not a certainty. (*Id.*, DEW-6.) In other words, Chart's own pre-litigation

analysis undermines Miller's ████████████████████████████████████████████████

████████████████████████████████████████. *See Beard v. United States Postal Serv.*,

No. 17-CV-03218-JCS, 2019 WL 257978, at *2 (N.D. Cal. Jan. 18, 2019) ("a federal judge should

exclude scientific expert testimony … unless he is 'convinced that it speaks clearly and directly to an

issue in dispute in the case.'") (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17

(9th Cir. 1995).

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

Lastly, Miller's conclusions are suspect since they are the result ████████. He did not ████████████████████████████████████████████████████████████████ ████████████. *See Daubert*, 509 U.S. at 594 ("the court ordinarily should consider the known or potential rate of error"). As Justice Sotomayor has observed, "[t]he results of any scientific test should be repeatable at least three times in order to eliminate the possibility of results being skewed by conditions specific to the time that the test was first conducted." *Avon Prod., Inc. v. S.C. Johnson & Son, Inc.,* 984 F. Supp. 768, 787 (S.D.N.Y. 1997). ████████████████ multiple times and under different conditions, Miller cannot show that his method is reproducible or reliable. *Rovid*, 2018 WL 5906075 at *5. All opinions based on Miller's ████ est should accordingly be excluded as unreliable and irrelevant to the conditions that actually existed inside Tank 4 and in the PFC laboratory. Permitting Miller to testify ████████████████████████████████████████████████ ████████████████████████████████ would only serve to confuse and potentially mislead members of the jury.

**F.    Like Centola, Miller should not be permitted to testify regarding ████████ ████████████████████████████.**

Miller's report includes a short section that addresses ████████████████████ ████████████████████. (Zeman Decl., Ex. 7 at 22-23.) Like Centola, Miller recounts ████ ████████████████████████████████████████████████████████████ ████. (*Id*.) And just as Centola claims ████████████████████ Miller claims ████████████████████████████████ (*Id.*, Ex. 5, ¶ 43; Ex. 7 at 22, 24, ¶ 9.) This testimony is inadmissible under Rule 404(b), regardless of whether it comes from Centola or from Miller, and so should be excluded for both experts. (*See* Section IV.B., *supra*.)

**G.    Miller's second rebuttal report should be stricken.**

On December 11, Miller submitted a second rebuttal report that responds to criticisms raised by Plaintiffs in their rebuttal reports and during Miller's deposition. (Zeman Decl., ¶ 10, Ex. 9.) By

21

1    submitting this second rebuttal report after the deadline for initial and rebuttal reports, Miller tries to get

2    the last word and to introduce ███████████████████████████████████. (*Id.*) "That type

3    of report is the exact type of supplemental report that the Ninth Circuit and courts across this Circuit

4    have held should be excluded or struck under Rule 37(c)." *Rovid*, 2018 WL 5906075 at *11 (citing,

5    e.g., *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 499-500 (9th Cir. 2009)). Miller

6    should not be permitted to gain an unfair advantage over the experts who complied with the Court's

7    deadlines. His second rebuttal report should be stricken and Miller should be precluded from presenting

8    any material raised for the first time in that report to the jury. *See In re PersonalWeb Techs., LLC*

9    *Patent Litig.*, No. 18-MD-02834-BLF, 2020 WL 6821074, at *6 (N.D. Cal. Feb. 3, 2020) (striking

10   untimely supplemental report: "It is not proper for [expert] to supplement his expert report to 'revise'

11   his disclosures in light of [opposing party's] challenges to his analysis").

12   **VI.    Angela Lawson: The Court should preclude any testimony or insinuations concerning**

13   ██████████████████████████████████.

14          Angela Lawson is a psychologist who █████████████████████████████████████

15   ████████████████. She submitted a rebuttal report ████████████████████████████

16   ██████████████████████████████████████. (Zeman Decl., Ex. 10.) Lawson ████████

17   ████████████████████████████████████████████████████████

18   ██████████████████████ (*Id.* at 13). Lawson does not, however, render any opinion ████

19   ███████████████████████████. (*Id.* at 2 n.1.) And she confirmed in her deposition

20   that █████████████████████████████████████████████████████████████

21   ██████████████████. (Zeman Decl., Ex. 11. at 13-14). Plaintiffs therefore ask the Court to preclude

22   Lawson from ██████████████████████████████████. Lawson has no

23   foundation for any such testimony, which would inappropriately suggest to the jury that Plaintiffs could

24   be faking or exaggerating their emotional distress.

25          Where a defendant has not laid the foundation for an opinion concerning malingering or alleged

26   exaggeration, any questions, comments, statements, or arguments concerning malingering or symptom

27   exaggeration are improper. *See Prasol v. Cattron-Theimeg, Inc., et al.*, No. 9-10248, 2011 WL

28   3897794, at *1 (E.D. Mich. Sept. 6, 2011) (granting motion to exclude questions, comments, statements

or arguments concerning symptom magnification or malingering); *see also Glover v. Main St. Wholesale Furniture, LLC*, 545 S.W.3d 245, 249 (Ark. App. 2018) (abuse of discretion to "permit[] testimony suggesting that [plaintiff] was motivated by secondary gain" where the expert "testified that he was not expressing an opinion that [the plaintiff] was malingering"); *Marron v. Stromstad*, No. 3AN-00-10929CI, 2002 WL 34189740 (Alaska Super. Aug. 09, 2002) (expert "did not opine that [Plaintiff] is a malingerer. He may not testify that she is malingering."). Lawson admitted at her deposition that ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████. (Zeman Decl., Ex. 11. at 69-70). In fact, she testified that ████████████

███████████████████████████████████████ (*Id.* at 85; *see also* 69-70 ██

███████████████████████████████████████████████████████

███████████████████████████).

      Allowing Chart to cast doubt on the authenticity of Plaintiffs' distress claims, particularly through use of pejorative concepts like ████████████████████████" would invade the province of the jury in assessing the Plaintiffs' credibility, severely prejudicing Plaintiffs while offering no probative value whatsoever. *See* Fed. R. Evid. 403; *Wise v. Southern Tier Express, Inc.*, No. 2:15-cv-0219-APG-PAL, 2017 WL 11488518, at *1 (D. Nev. July 10, 2017) (excluding testimony about or reference to malingering or desire for secondary gain because it "would invade the province of the jury to determine credibility") (citing *United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002)); *Glover*, 545 S.W.3d at 249 ("To the extent the testimony had any relevance, it should [be] excluded because its probative value [is] substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury."); *see also Jones v. Standard Ins. Co.*, No. 12 C 328, 2013 WL 5549779, at *3 (N.D. Ill. Oct. 8, 2013) (malingering "is a pejorative term and need not be used.").

## CONCLUSION

      For the reasons stated, Plaintiffs respectfully request that the Court grant their motion and exclude the expert testimony discussed above from the parties' upcoming trial. Chart will still be permitted to present its case through expert testimony, but the scope of that testimony should be limited to ensure that only relevant and reliable opinions are presented to the jury.

23

1    Dated: December 22, 2020                  Respectfully submitted,

2                                              By:    /s/ Amy M. Zeman

3                                              Eric H. Gibbs (State Bar No. 178658)
                                               Amy M. Zeman (State Bar No. 273100)
4                                              **GIBBS LAW GROUP LLP**
                                               505 14th Street, Suite 1110
5                                              Oakland, CA 94612
                                               Tel: (510) 350-9700
6                                              Fax: (510) 350-9701
                                               ehg@classlawgroup.com
7                                              amz@classlawgroup.com
8
                                               Dena C. Sharp (State Bar No. 245869)
9                                              Adam E. Polk (State Bar No. 273000)
                                               **GIRARD SHARP LLP**
10                                             601 California Street, Suite 1400
                                               San Francisco, CA 94108
11                                             Tel: (415) 981-4800
                                               Fax: (415) 981-4846
12                                             dsharp@girardsharp.com
                                               apolk@girardsharp.com
13
14                                             Adam B. Wolf (State Bar No. 215914)
                                               Tracey B. Cowan (State Bar No. 250053)
15                                             **PEIFFER WOLF CARR KANE &**
                                               **CONWAY, APLC**
16                                             4 Embarcadero Center, Suite 1400
                                               San Francisco, CA 94111
17                                             Tel: (415) 766-3545
                                               Fax: (415) 402-0058
18                                             awolf@peifferwolf.com
                                               tcowan@peifferwolf.com
19
20                                             *Plaintiffs' Counsel*
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY
MASTER CASE NO. 3:18-cv-01586-JSC

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 22, 2020, I electronically filed the foregoing document using

3

the CM/ECF system, which will send notification of such filing to all counsel of record registered in

4

the CM/ECF system. I also caused an unredacted copy of the foregoing document to be served via

5

email on counsel of record.

6

7                                                           /s/ *Amy Zeman*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY
MASTER CASE NO. 3:18-cv-01586-JSC