John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFFS' EXPERT DR. ELIZABETH GRILL**<br><br>Date: March 4, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Place: Zoom |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................5

I.   INTRODUCTION ................................................................................................................5

II.  LEGAL STANDARD ..........................................................................................................6

III. SUMMARY OF DR. GRILL'S OPINIONS. ......................................................................6

IV.  SUMMARY OF DR. LAWSON'S REBUTTAL. ..............................................................7

V.   ARGUMENT .......................................................................................................................8

    A.   Dr. Grill is not qualified to opine on in this matter. ..................................................8

    B.   Dr. Grill employed inadequate methodology and rendered opinions based on incomplete data. ...........................................................................9

        1.  The psychosocial interview administered by Dr. Grill is not the standard of care for a forensic evaluation. ..............................................11

        2.  The diagnostic evaluation employed by Dr. Grill is not the standard of care for a psychological evaluation. ...........................................14

        3.  Dr. Grill failed to reconcile conflicting data. ................................................15

VI.  CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.,*
    55 F.Supp.2d 1024 (N.D. Cal. 1999) ........................................................................15, 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993) ................................................................................................5, 6, 16

*General Electric Co. v. Joiner,*
    522 U.S. 136 (1997)............................................................................................................13

*In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.,*
    2009 WL 2750462 (D.S.C. 2009).......................................................................................17

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)..............................................................................................................6

*Lust by and through Lust v. Merrell Dow Pharms., Inc.,*
    89 F.3d 594 (9th Cir.1996) ................................................................................................16

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) ...............................................................................................6

*Rovid v. Graco Children's Prods. Inc.,*
    No. 17-cv-01506, 2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) .........................................6

*Stilwell v. Smith & Nephew, Inc.,*
    482 F.3d 1187 (9th Cir. 2007) .............................................................................................6

*U.S. v. Finley,*
    301 F.3d 1000 (9th Cir. 2002) ....................................................................................10, 11

*United States v. Falcon,*
    245 F.Supp.2d 1239 (S.D. Fla. 2003) .........................................................................10, 11

**RULES**

Fed. R. Evid.
    702 ………………………………………………………………………………….......6

**NOTICE OF MOTION AND MOTION**

TO ALL ATTORNEYS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 4, 2021, at 9 a.m., before the Honorable Jacqueline Scott Corley, Defendant Chart Inc. will and does hereby move the Court for an Order excluding opinions of Dr. Elizabeth Grill, which are unsupported and unreliable under Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Kevin M. Ringel, pleadings and other documents on file in this action, any oral or documentary evidence or argument as may be requested by the Court, and any other information the Court deems proper and necessary.

Dated: December 22, 2020

Respectfully submitted,

By: /s/ Kevin Ringel

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Chart Inc. (Chart) respectfully submits this memorandum of points and authorities in support of its motion to exclude as unreliable and irrelevant the opinions of Elizabeth Grill, Ph.D.

## I. INTRODUCTION

Dr. Grill is offered as an expert in the diagnosis and the causation of the plaintiffs' psychological distress. As a threshold issue, Dr. Grill is not qualified to opine in this matter. The American Psychological Association (APA), the lead organization of psychologists in the country, considers rendering an opinion in litigation to be an exclusive function of forensic evaluations.[1] Dr. Grill does not have any training, education, or experience in forensic evaluations or forensic psychology.

Given her complete lack of experience in the relevant area, it is unsurprising that Dr. Grill's methodology is fundamentally flawed and unreliable. Dr. Grill failed to conduct a forensic evaluation or administer any objective testing of the plaintiffs. The field of psychology does not accept the informal psychosocial interview performed by Dr. Grill as a sufficient basis to form an opinion. Dr. Grill relied entirely on the plaintiffs' representations and records provided by counsel for plaintiffs. She did not attempt to obtain additional information from essential witnesses, such as the plaintiffs' mental health providers and spouses. Further, her report failed to address contradictory data and research, which renders her opinions inherently unreliable. In combination, these considerations demonstrate that Dr. Grill's opinions and the underlying methodology do not meet the *Daubert* standard for reliability, and must be excluded.

---

[1] Ringel Decl., Ex. E at 4.02.02.

## II. LEGAL STANDARD

Plaintiffs, as the proponents of the Dr. Grill's opinions, bear the burden of establishing their admissibility by a preponderance. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993); *Rovid v. Graco Children's Prods. Inc.*, No. 17-cv-01506, 2018 WL 5906075, *3 (N.D. Cal. Nov. 9, 2018). Rule 702 provides that an expert may testify, if qualified and helpful, and if (a) "the testimony is based upon sufficient facts or data"; (b) the testimony is the product of reliable principles and methods"; and (c) "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Whether the expert testimony will be helpful to the trier of fact is analyzed by first asking whether the testimony is relevant. *See, e.g.*, *Daubert*, 509 U.S. at 595. Admissible expert testimony must also rest on a reliable foundation of facts and data. *Daubert*, 509 U.S. at 597; *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *see also Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1191 (9th Cir. 2007) (the expert's testimony must be "based upon sufficient facts or data"). Expert testimony based on subjective or speculative belief is inadmissible. *Daubert*, 509 U.S. at 590; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). Further, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co.*, 526 U.S. at 157 (citation omitted). Because Dr. Grill's opinions do not meet the standards established by *Daubert* and its progeny, she should be excluded from this case.

## III. SUMMARY OF DR. GRILL'S OPINIONS

In her report, Dr. Grill summarizes her opinion as to the plaintiffs' emotional distress and provides a 15-page literature review on "Fertility Decisions," "Infertility and Treatment," and "Embryo Status." (Ringel Decl., Ex. B at pp. 4, 11, 15). Dr. Grill reached the same conclusions for

all five plaintiffs: (a) each plaintiff made the decision and underwent egg retrieval or embryo cryopreservation procedures, which were physically, emotionally, and financially demanding and stressful; and (b) the tank incident resulted in significant emotional distress and psychological harm to each plaintiff. (Ringel Decl., Ex. B at pp. 20, 28, 36, 44). At deposition, Dr. Grill disclosed that she conducted a 90-minute to two-hour Zoom psychosocial interview of each plaintiff. (Ringel Decl., Ex. A at 36:3-8; 48:9-23). The interviews of the plaintiffs were not structured clinical diagnostic interviews required under the standard of care for forensic and psychological evaluations to reliably assess the emotional condition of the plaintiffs.[2] Instead, Dr. Grill applied "her own" standard of care for a reproductive psychologist during the interviews. (Ringel Decl., Ex. A at 33:11). Although Dr. Grill's standard of care may be appropriate in a clinical setting, it is not appropriate where a financial motive is present.[3]

### IV.  SUMMARY OF DR. ANGELA LAWSON'S REBUTTAL

Chart retained Dr. Angela Lawson to review Dr. Grill's report and prepare a rebuttal report. (Ringel Decl., Ex. C). Dr. Lawson focused on the manner in which Dr. Grill reached her opinions and the underlying data she relied upon. (Ringel Decl., Ex. C at 32:16-21). Dr. Lawson opines that Dr. Grill did not follow the standard of care in forensic psychology or within reproductive psychology when malingering is a concern. (Ringel Decl., Ex. C at 65:4-7).

Dr. Lawson is a clinical psychologist and forensic psychologist. She has extensive experience as a forensic expert, specializing in the study of the forensic evaluation and experience of individuals involved in litigation. (Ringel Decl., Ex. D at p. 1). In the last four years, Dr. Lawson

---

[2] Ringel Decl., Ex. F at 9.01.
[3] Ringel Decl., Ex. E at 10.02, ¶3: "Assessment in forensic contexts differs from assessment in therapeutic contexts in important ways that forensic practitioners strive to take into account when conducting forensic examinations."

has provided expert opinions in fifteen cases. (Ringel Decl., Ex. C at 30:15-16). By Dr. Grill's own admission, Dr. Lawson is highly regarded in the field of reproductive psychology. (Ringel Decl., Ex. A at 43:13). Dr. Grill also appears to hold Dr. Lawson in high regard as a forensic psychologist. This is evidenced by Dr. Grill's telephone calls to Dr. Lawson in October 2020, after plaintiffs retained her as an expert, to discuss forensic evaluations. (Ringel Decl., Ex. C at 45:3-23). During their conversations, Dr. Lawson informed Dr. Grill that she always administers a comprehensive forensic evaluation in her work as a forensic expert. (Ringel Decl., Ex. C at 45:3-23). Nonetheless, Dr. Grill failed to heed Dr. Lawson's advice.

## V.  ARGUMENT

Dr. Grill's opinions are inadmissible because she is not qualified to give them and because she employed an unreliable methodology, failed to follow the standard of care, and failed to address, let alone reconcile, conflicting data and evidence. For any or all of these reasons, she should be excluded from testifying in this case.

### A. Dr. Grill's is not qualified to opine in this matter.

Dr. Grill is not qualified to opine in this matter. While Dr. Elizabeth Grill is a licensed psychologist specializing in reproductive psychology, her role in this litigation is outside her practice and expertise. (Ringel Decl., Ex. A at 30:1-2). By the American Psychological Association (APA) definition,[4] Dr. Grill's role is as a "forensic psychologist," regardless of the underlying sub-discipline of psychology. Reproductive Psychology and Forensic Psychology are two specialties

---

[4] Ringel Decl., Ex. E at Appendix B ("forensic psychology refers to all forensic practice by any psychologist working within any sub-discipline of psychology [e.g., clinical, developmental, social, cognitive]").

with different purposes and different standards of care.[5] (Ringel Decl., Ex. D at p. 7). As a member of the APA, Dr. Grill is committed to comply with the standards of the APA ethics code[6] and the Specialty Guidelines for Forensic Psychology (Guidelines).[7] While Dr. Grill may be qualified to serve in a clinical context, she admits that she lacks any experience, knowledge, education, and training necessary to testify as a forensic expert. (Ringel Decl., Ex. A at 30:16-17, 33:19-20, 42:14-17). Dovetailing with this lack of experience is the fact that Dr. Grill is unfamiliar with the standard of care for forensic psychology. (Ringel Decl., Ex. A at 30:16-17, 33:19-20, 42:14-17). Dr. Grill compounded her problems by declining to review any materials or texts to familiarize herself with forensic psychology[8] and ignoring information offered to her by one of the leading forensic experts in the country, Dr. Lawson. (Ringel Decl., Ex. A at 16:13-14, 43:14-19, 46:9-10). Based on her lack of qualifications alone, Dr. Grill should be excluded from offering opinions in this case.

### B. **Dr. Grill employed inadequate methodology and rendered opinions based on incomplete data.**

Assessments of psychiatric conditions are "notoriously unreliable (e.g. two clinicians can interview the same individual and come to two different conclusions), particularly if they ask different questions, neglect to explore all areas, and lack objectivity." (Ringel Decl., Ex. D at p. 4). In an effort to reduce bias and ensure reliability in psychological opinions, the scientific

---

[5] Ringel Decl., Ex. E at 10.02, *¶3* ("assessment in forensic contexts differs from assessment in therapeutic contexts in important ways that forensic practitioners strive to take into account when conducting forensic examinations").
[6] Ringel Decl., Ex. F at Introduction and Applicability, p. 2 ("areas covered [under the Ethics Code] include ... forensic activities").
[7] Ringel Decl., Ex. E at p. 2 (the Guidelines "apply in all matters in which psychologists provide expertise to judicial, administrative, and educational systems").
[8] Ringel Decl., Ex. F at 2.01(c) ("psychologists planning to provide services, teach, or conduct research involving populations, areas, techniques, or technologies new to them undertake relevant education, training, supervised experience, consultation, or study").

community has concluded that the standard of care necessitates some form of objective testing. The APA ultimately adapted this requirement into formal ethical rules imposed on all practitioners, including Dr. Grill.[9] When financial incentives are at stake, as in this case, forensic psychologists should administer psychological testing and assess for malingering in patients undergoing reproductive treatments/procedures. (Ringel Decl., Ex. D at p. 6). This is also true in a clinical context where financial motivations are present. (Ringel Decl., Ex. D at p. 6).

In addition to the scientific community, the Ninth Circuit has emphasized the need for expert testimony founded on objective testing and outside information. *U.S. v. Finley*, 301 F.3d 1000, 1009 (9th Cir. 2002) (psychological opinions must rely on objective testing which goes beyond the expert merely crediting interviews with subjects). In *Finley*, court determined that exclusion of an expert's psychological evaluation was improper because the expert used "accepted psychological tests" that were "specifically designed to detect someone who is trying to fake a mental illness." *Id*. at 1009. For example, the expert "administered psychological tests to rule out serious mental disorders, he took a case history and interviewed [the witness's] spouse to obtain additional information, and he observed [the witness's] physical movements and conducted a physical exam to determine if there was a possible physiological problem." *Id*. at 1010-11. The court further explained that exclusion of a psychological evaluation conducted by a qualified expert is proper where the methodology is based "largely" or "solely" on witness statements. *Id*. at 1009.

Moreover, in *United States v. Falcon*, 245 F.Supp.2d 1239 (S.D. Fla. 2003), the court excluded the opinion of a forensic psychologist expert for lack of reliable methodology. While the

---

[9] Ringel Decl., Ex. F at 9.01.

forensic psychologist had reviewed the witness's prior testimony, examined her medical records, and observed hours of her live testimony, the court found fatal that the expert had not conducted an extended clinical interview, reviewed any relevant empirical research, nor interviewed any witnesses. *Id.* at 1243-44. Under these circumstances, the court determined the psychology expert failed to apply the same level of intellectual rigor characteristic in the field of expert forensic psychology. *Id.* at 1243-1244.

Dr. Grill's work in this case falls short of the standard set in *Finley* and is on all fours with the excluded expert opinion in *Falcon*. Irrespective of her qualifications (or lack thereof), Dr. Grill's opinions are not admissible because they are not scientifically reliable.

### 1. The psychosocial interview administered by Dr. Grill is not the standard of care for a forensic evaluation.

Although the exact nature of the protocol, including what diagnostic tests to administer, varies amongst individual psychologists, there is widespread agreement that psychological evaluations are a scientific process and require adherence to scientific norms and standards. (Ringel Decl., Ex. D at p. 4). In a forensic setting, such as this case, the scientific process requires the use of a reliable interview procedure, standardized testing, consideration of all relevant data, and the consideration of alternative hypotheses for both diagnosis and causation. (Ringel Decl., Ex. D at p. 4). A structured diagnostic interview is the "gold standard" in forensic psychology as it "reduces the error introduced by idiosyncratic idiopathic procedures almost to zero." (Ringel Decl., Ex. D at p. 4). A reliable structured interview involves "identical questions in a fixed sequence to assess empirically validated categories of psychiatric distress (e.g., Major Depressive Disorder, Posttraumatic Stress Disorder)." (Ringel Decl., Ex. D at p. 4). A thorough forensic evaluation requires a significant time commitment, which generally includes a minimum of 2-3

hours of psychological testing with the administration of multiple measures that assess for malingering; three or more hours of in-depth psychosocial history interview; and two or more hours of differential diagnostic interviewing. (Ringel Decl., Ex. D at p. 12, fn 24).

Dr. Grill formed her opinions without abiding by the standard of care. (Ringel Decl., Ex. A at 33:8-10). In fact, Dr. Grill admitted she is not even aware of the standard of care for a forensic evaluation. (Ringel Decl., Ex. A at 30:16-19). Consequently, she did not conduct a requisite systematic diagnostic interview, such as a Structured Clinical Interview for the DSM-5 or SCID-5. (Ringel Decl., Ex. A at 34:25). Instead, Dr. Grill performed relatively brief Zoom interviews of the plaintiffs, with each interview lasting between 90 minutes and two hours. (Ringel Decl., Ex. A at 48:8-24). It is impossible to assess the integrity of the interviews because Dr. Grill failed to disclose the test materials necessary to evaluate reliability.[10] Nowhere in her report does she reveal the key components of a diagnostic interview: the questions, the interview conditions, and the governing protocols.[11]

Dr. Grill further eliminated any measure of reliability and validity in her opinions by failing to administer objective testing.[12] As noted above, the standard of care in psychology differs when financial incentives are relevant. Rather than conduct an empirically valid evaluation of malingering, Dr. Grill based her assessment of malingering and exaggeration entirely on her "clinical judgment." (Ringel Decl., Ex. A at 34:21-22). This is a textbook example of an opinion

---

[10] Ringel Decl., Ex. F at 9.11 ("psychologists make reasonable efforts to maintain the integrity and security of test materials and other assessment techniques consistent with law and contractual obligations, and in a manner that permits adherence to this Ethics Code").

[11] Ringel Decl., Ex. F at 9.11 ("the term test materials refers to manuals, instruments, protocols, and test questions or stimuli and does not include test data as defined in Standard 9.04").

[12] Ringel Decl., Ex. E at *10.02 (*"forensic practitioners use assessment instruments whose validity and reliability have been established for use with members of the population assessed").

connected to the data by only the *ipse dixit* of the expert, which is not admissible. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). As described by Dr. Lawson, the misperception that a psychologist can reliably and validly detect malingering/deceit or the true emotional condition of a patient has been studied extensively and is known as the "overconfidence bias." [13] (Ringel Decl., Ex. D at pp. 5-6). One such study concluded that a "psychologist's increasing feelings of confidence as he works through a case are not a sure sign of increasing accuracy for his conclusions. So-called clinical validation, based on the personal feelings of confidence of a clinician, is not adequate evidence for the validity of clinical judgment in diagnosing or predicting human behavior."[14] (Ringel Decl., Ex. D at p. 6). Dr. Grill's "clinical judgment" based opinion is not reliable and therefore inadmissible.

In blind reliance on her "clinical judgment," Dr. Grill failed to assess the plaintiffs' history or current mental health symptoms nor did she conduct any differential diagnostic assessment of current functioning. She merely accepted as true the plaintiffs' representations and medical records provided to her by plaintiffs' counsel. She did not conduct a single collateral interview with the mental health professionals that treated the plaintiffs (or any other individual, for that matter) because, in her words, the records were "consistent with the opinions in [her] report." (Ringel Decl., Ex. A at 37:19-25, 40:6-9). Contrary to this results-oriented methodology, it is widely accepted amongst psychologists that patients may provide inaccurate representations of their mental health and treatment histories for fear they will not get the outcome they desire (e.g. fertility treatment).[15] (Ringel Decl., Ex. D at p. 6). Dr. Lawson's published research study found that

---

[13] Ringel Decl., Ex. G at p. 700.
[14] Ringel Decl., Ex. H at pp. 261–265.
[15] Ringel Decl., Ex. L at pp. 1377-1384

"psychosocial test results and patient reported experiences of mood or anxiety symptoms were inconsistent, suggesting that reliance on either testing or clinical judgment alone are insufficient in the reliable and valid determination of psychological distress."[16] (Ringel Decl., Ex. D at p. 6). Because Dr. Grill offers nothing more than over-confidence in her "clinical judgment," her opinions of the plaintiffs' experiences and emotional distress are not admissible.

### 2. The diagnostic evaluation employed by Dr. Grill is not the standard of care for psychological evaluation.

Even assuming that the standard of care for forensic psychology does not apply, Dr. Grill's methodology fails to meet even the minimum standard of care for a psychological evaluation. Dr. Grill administered a psychosocial interview used in the <u>clinical context</u> to evaluate individuals seeking fertility treatment. (Ringel Decl., Ex. B at p. 3).[17] When asked why she failed to administer psychological testing, Dr. Grill claimed such testing is not the standard of care in reproductive psychology for patients undergoing IVF or egg freezing. (Ringel Decl., Ex. A at 36:3-8). Dr. Grill is incorrect. The APA ethical rules provide that reliable and valid psychological evaluations include objective testing and a full review of secondary sources of information.[18] Moreover, Dr. Grill's clinical standard fails to account for the financial aspects of this case. When financial incentives are at stake, reproductive psychologists administer psychological testing and assess for malingering in patients undergoing reproductive treatments/procedures. (Ringel Decl., Ex. D at p. 6). Accordingly, not only did Dr. Grill fail to follow the standard of care for forensic psychology,

---

[16] Ringel Decl., Ex. J at 1377-1384.
[17] Infertility Counseling: A Comprehensive Handbook for Clinicians, Second Edition, is a comprehensive, multidisciplinary textbook for all health professionals providing care for individuals facing reproductive health issues." (Back cover of Infertility Counseling: A Comprehensive Handbook for Clinicians, Second Edition)
[18] Ringel Decl., Ex. E; *see also* Ringel Decl., Ex. F at 9.01.

but she also failed to follow the standard of care in reproductive psychology. Without the benefit of objective testing and an assessment of malingering, Dr. Grill cannot provide objective data concerning the plaintiffs. Thus, her opinions are unreliable and inadmissible.

### 3. Dr. Grill failed to reconcile conflicting data.

Dr. Grill's biased literature review and presentment of data further underscores reasons to exclude her opinions. A hallmark of a reliable scientific opinion is the expert's consideration and reconciliation of conflicting data. When experts rely on scientific literature, they must address and reconcile data that does not support their opinions, and not simply rely upon data that does. Failure to do so is a ground to exclude. *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F.Supp.2d 1024, 1039 (N.D. Cal. 1999). This court's assessment is consistent with the APA Guidelines: "When offering expert opinion to be relied upon by a decision maker, providing forensic therapeutic services, or teaching or conducting research, forensic practitioners strive for accuracy, impartiality, fairness, and independence. (EPPCC Standard 2.01) Forensic practitioners recognize the adversarial nature of the legal system and strive to treat all participants and weigh all data, opinions, and rival hypotheses impartially."[19]

Dr. Grill's report is replete with biased inclusions and omissions.[20] For example, she failed to provide a balanced review of the data, including an accurate description of the plaintiffs' beliefs of success with their genetic material. Specifically, Dr. Grill repeatedly used the phrase "insurance policy" to describe the plaintiffs' cryopreservation of eggs and embryos. (Ringel Decl., Ex. B at

---

[19] Ringel Decl., Ex. E at 1.02.
[20] *See* Ringel Decl., Ex. D at Section II report for a comprehensive listing of Dr. Grill's partiality.

pp. 20, 28, 36).[21] She did not include, however, that the plaintiffs (with the exception of Plaintiffs A.B. and C.D.) testified that PFC did not offer cryopreservation as an insurance policy and that they did not believe the frozen genetic material guaranteed the birth of a child. She also failed to mention that Plaintiff I.J.'s husband obtained a vasectomy after the tank incident. Dr. Grill's report does not mention the American Society of Reproductive Medicine guidance against referring to egg freezing as an "insurance policy."[22]

Dr. Grill's literature review also reflects the same partial perspective. As explained by Dr. Lawson, the 15-page literature review did not incorporate studies establishing that many women are unable to conceive with their cryopreserved material, most women who freeze their eggs never return to use them, and that many patients hold unrealistic expectations about their chance of success via fertility treatment. (Ringel Decl., Ex. D at p. 10)(citing e.g., Greenwood et al, 2018). Dr. Grill admitted that she was aware of such research, however, she did not cite it because she felt it was "irrelevant" to whether the plaintiffs felt distress as a result of the tank incident which caused destruction to their "back up plan." (Ringel Decl., Ex. A at 56-57:23-1). Ironically, Dr. Grill's use of the term "back-up plan" actually highlights the relevance of the research, which undermines the notion that individuals view fertility treatment as a "back-up plan."

Dr. Grill's decision to ignore the body of contradictory research and evidence exposes a reliability roadblock to admissibility under *Daubert*. Exclusion of expert testimony is appropriate "where the expert selectively chose his support from the scientific landscape." *Carnegie Mellon Univ.*, 55 F.Supp.2d at 1039; *accord Lust v. Merrell Dow Pharms., Inc.,* 89 F.3d 594 (9th

---

[21] Ringel Decl., Ex. B ("Cryopreservation and freezer storage services are sold as an "insurance policy" that allows women the freedom to defer having children until they find the right partner, finish their education or pursue careers that could in turn provide peace of mind")
[22] Ringel Decl., Ex. K.

Cir.1996) (affirming district's court's exclusion of evidence because, *inter alia*, the expert "pick[ed] and chose' from the scientific landscape"). The "failure to address ... contrary data renders" an expert's opinions "inherently unreliable." *In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.,* 2009 WL 2750462 (D.S.C. 2009). The results here should be no different -- Dr. Grill's opinions should be excluded.

## VI.  CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Elizabeth Grill, Ph.D.

Dated: December 22, 2020.                     Respectfully submitted,

By: /s/ Kevin Ringel

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*