

January 12, 2021

**VIA ELECTRONIC MAIL**

Hon. Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California

      Re:    *In re Pacific Fertility Center Litigation*
               Case No. 3:18-cv-01586-JSC

Dear Judge Corley:

Plaintiffs and Defendant Chart Inc. submit this joint letter brief regarding the selection of Additional Cases for trial following the Court's December 7, 2020 Order Regarding Additional Trials. Dkt. No. 620.

**I.**    **Nature and Status of Dispute**

Pursuant to the parties' stipulation, the Court ordered that each trial after the first trial (which is set to begin on May 3, 2021) will include five Additional Cases consisting of "only Plaintiffs who had embryos stored in Tank 4" ("embryo Plaintiffs") "or only Plaintiffs who had eggs stored in Tank 4." ("egg Plaintiffs"). *Id.* at 2. The Court also ordered that of the five Additional Cases to be included in each trial, Plaintiffs will select two cases, Chart will select two cases, and one case will be selected randomly from the remaining eligible Additional Cases. *Id.*

On January 8, 2021, the parties met and conferred by videoconference regarding the composition of the Additional Cases for the second trial in November 2021, but were unable to reach an agreement as to whether the next phase of trials should consist of embryos only, eggs only, or a mixture of both. Plaintiffs then provided Chart with their case selections pending the Court's resolution of this dispute. Chart declined to provide its selections for the Additional Cases, given the unresolved dispute as to the selection process.

**II.**    **Plaintiffs' Statement**

The Court should adopt Plaintiffs' proposal to try only embryo cases in the second trial in November because it will provide the parties with greater information regarding the value of egg *and* embryo claims, thereby increasing the likelihood the remaining Additional Cases will be resolved expeditiously. Plaintiffs who had eggs stored in Tank 4 are differently situated than those who went through the process of creating and freezing embryos. Embryos are further along in the process toward becoming children—there is less attrition associated with thawing and transferring an embryo than there is with thawing and fertilizing an egg to create an embryo for

To:  Hon. Jacqueline Scott Corley
Re:  *In re Pacific Fertility Center Litigation*
January 12, 2021
Page 2

transfer. Thus, while all Plaintiffs allege they have sustained distress as a result of the tank failure, those whose embryos were exposed to the Tank 4 incident describe suffering from distinct, severe, and complex emotions arising from their experiences. It is therefore necessary for the parties to determine a reasonable range of value for both egg and embryo claims as soon as possible.

The first trial in this matter will consist of the remaining former class representatives—three Plaintiff households with eggs and one with embryos in Tank 4. Plaintiffs believe that the second trial should consist entirely of embryo Plaintiff households because doing so will ensure a more balanced sample set of egg and embryo claims are in included in the first two trials—three egg Plaintiff households and six embryo Plaintiff households—and will help the parties determine the value a jury would assign for each type of claim (should the trials end with a verdict for the plaintiffs) and facilitate resolution of the remaining cases. By contrast, Chart's proposal to have only egg Plaintiffs for the second trial would result in eight of the nine initial trial verdicts being for egg Plaintiff households. As a practical matter, having only one verdict for an embryo Plaintiff household will not provide the parties with balanced information about the value of the claims for settlement, thereby protracting this already lengthy litigation, and likely necessitating additional trials. While Plaintiffs are confident in the strength of their position, a jury's perspective on a substantial number of both egg and embryo claims is needed to expeditiously resolve this matter in its entirety.

Chart's alternative proposal to have a mixture of egg and embryo Plaintiffs in the second trial is contrary to the Court's December 7 Order and will result in further delay. The first trial includes both egg and embryo claims and will require the parties to both present additional issues because egg and embryo Plaintiffs are differently situated and to take special caution to avoid jury confusion. The parties entered the Joint Stipulation to avoid those complications in subsequent trials and to promote efficiency. All parties and the Court will benefit from the streamlined efficiency allowed by a trial including only one type of claim.

Moreover, Plaintiffs' proposal to select embryo Plaintiffs for the November trial is consistent with the Manual for Complex Litigation as well as orders entered in other cases involving mass proceedings. As the Manual for Complex Litigation, Fourth, § 10.123 notes, the selection of individual cases for trial in mass proceedings should be made with the aim of allowing the parties to properly gauge the value of the claims to facilitate settlement. *Id.* ("Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims . . . and what range of values the cases may have if resolution is attempted on a group basis. The more representative the test cases, the more reliable the information about similar cases will be."). Courts have recognized the importance of using initial test cases to provide a sufficiently representative cross-section to enable the parties to gather enough information for a potential settlement. *See, e.g.*, *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) (noting that test cases are "used to facilitate settlement in similar cases by demonstrating the likely value of a claim . . . ."); *In re E. I. Du Pont De Nemours & Co. C-8 Pers. Injury Litig.*, No. CV 2:13-MD-2433, 2019 WL 2088768, at *8 (S.D. Ohio May 13, 2019) (noting that the initial cases were

To: Hon. Jacqueline Scott Corley
Re: *In re Pacific Fertility Center Litigation*
January 12, 2021
Page 3

"chosen for a special purpose that all parties and this Court recognized: information gathering that would facilitate valuation of cases to assist in global settlement"); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 00 MDL 1898 (SAS), 2010 WL 1328249, at *4 (S.D.N.Y. Apr. 5, 2010) (observing that the cases should help parties "assess the values of the claims at issue, develop a relevant body of law, and in doing so to provide guidance to parties pursuing settlement"); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. MDL 3:11-MD-2244-K, 2016 WL 10707019, at *3 (N.D. Tex. July 5, 2016) (similar).

Chart's proposal to include only egg Plaintiffs in the second trial will not further these goals, and the arguments Chart raised during the parties' meet and confer are unpersuasive. Chart claims that Plaintiffs were able to select the first group of cases, and that allowing Plaintiffs to select embryo cases for the November trial will deprive Chart of input into the proceedings. The plaintiffs in the initial trial were not chosen as "test cases," however, but instead were selected because these individuals stepped forward initially in this litigation to serve as proposed class representatives. And Chart will not, as it claims, be deprived of its right to select cases for trial if the Court adopts Plaintiffs' proposal because it will still be able to select two embryo cases under the Court's December 7 Order, providing it with direct input into trial selection.

As stated above, Chart's alternative proposal of a mixed egg and embryo trial is inconsistent with the parties' stipulation that "[e]ach trial will include only Plaintiffs who had embryos stored in Tank 4, or only Plaintiffs who had eggs stored in Tank 4" (Dkt. No. 620 at 2), and is ill-conceived. Conducting a mixed second trial will result in further delay as egg and embryo claims present different issues—e.g., different preservation procedures, fact patterns (i.e. fertility preservation versus In Vitro Fertilization), and damages.

There are 134 Additional Cases in this litigation. Given that the second trial will not occur until November—more than three years after the Tank 4 incident occurred—with the Additional Cases trailing behind, it is especially important that the initial trials provide the parties with a sufficiently representative cross-section of cases to help facilitate settlement of the remaining Additional Cases. Because Plaintiffs' proposal is most likely to provide the parties with enough information about the value of both egg and embryo claims, Plaintiffs respectfully submit that the Court should enter an order directing that the second trial should consist entirely of embryo cases.

### III. Defendant's Statement

As an initial matter, it is important to note that Chart had no input on the selection of the first five cases set for trial in May 2020. Plaintiffs' counsel unilaterally selected all those cases. As Plaintiffs' counsel noted, most of the plaintiffs in that group (the cases set for trial in May, 2020) are "egg plaintiffs," or individuals who had eggs stored in Tank 4 at the time of the incident. Accordingly, Plaintiffs' counsel has indicated that in the interest of balancing cases that are representative of the class of remaining plaintiffs, the Additional Cases should consist of "embryo plaintiffs," or those individuals who had embryos, not eggs, stored in Tank 4 at the time of the incident. This argument is improper for two reasons. First, any imbalance of egg versus embryo plaintiffs in the initial group of cases is the byproduct of Plaintiffs' counsel's own selection of

To: Hon. Jacqueline Scott Corley
Re: *In re Pacific Fertility Center Litigation*
January 12, 2021
Page 4

plaintiffs as class representatives. Chart had no input on the selection of this first group of plaintiffs, and Plaintiffs' counsel's attempt to rectify that imbalance now by unilaterally imposing a requirement to choose embryo plaintiffs for the Additional Cases is an attempt to rectify a disproportion of their own creation. One purpose of the Order is to impute a level of fairness in selecting the Additional Cases, and allowing Plaintiffs' counsel to impose their own unilateral requirements for the categorization of the selection of the Additional Cases contradicts the equity envisioned by the Order.

Second, the distinction Plaintiffs draw between egg and embryo plaintiffs is inconsequential for purposes of selecting Additional Cases that fairly represent valuation for the group of plaintiffs as a whole. Plaintiffs believe that the valuation of a plaintiff's claim, and their representative capability for the rest of the group, rests primarily on whether they had eggs or embryos stored in Tank 4 at the time of the incident. However, the more reliable measure of the valuation of any plaintiff's case, and a more accurate measure of any individual case's ability to represent a group, is the reproductive potential (and alleged loss of reproductive potential) of the plaintiff or plaintiffs in each case. That potential is not dependent solely on whether the plaintiffs had stored eggs or embryos at the time of the incident, but on a number of other factors including age, medical issues affecting fertility, efforts to utilize stored genetic material, and assisted reproductive treatment and options available to each plaintiff. Accordingly, a fair selection of cases for the next group would not depend exclusively on whether the plaintiffs had stored eggs or embryos, but rather a fuller picture of each plaintiff addressing the overall reproductive potential of those individuals.

For those reasons, Chart cannot agree to Plaintiffs' proposal that the parties simply choose embryo cases for the next group. Chart proposed a compromise such that Chart would offer two egg plaintiffs and Plaintiffs would offer two embryo plaintiffs and select the fifth case at random, independent of whether it is an egg or embryo case. Plaintiffs rejected that proposal and Chart further proposed that each party select one embryo and one egg case apiece. Plaintiffs also rejected this proposal.

If Plaintiffs continue to refuse to compromise with a mixed trial, and insist that the November 2021 trial should consist of only embryo plaintiffs, the Court should order that the trial proceed as egg plaintiffs only, pursuant to Chart's preference. Chart had no input in the May 2020 trial plaintiffs, which were unilaterally selected by Plaintiffs' counsel. Allowing Plaintiffs to now unilaterally impose their preference that only embryo plaintiffs proceed to trial in November 2021 would prejudice Chart and is in contradiction to the spirit of the Order, which seeks to create an equitable selection process. Chart has offered a good faith compromise that was rejected by Plaintiffs, who seek an unfair and unilateral selection process. If Plaintiffs maintain this objection, the Court should simply rule that the November 2021 shall proceed with only egg plaintiffs.

Again, Chart does not believe that the distinction between egg and embryo Plaintiffs is a consequential demarcation for selecting plaintiffs for the Additional Cases. Rather, as Chart's reproductive endocrinologist has written and testified to, the central distinguishing feature for each

To: Hon. Jacqueline Scott Corley
Re: *In re Pacific Fertility Center Litigation*
January 12, 2021
Page 5

plaintiff is their reproductive potential, which is multifactorial, and cannot be ascertained simply by creating a binary categorization between those plaintiffs who stored eggs and those who stored embryos. An "egg plaintiff" can have far better, or far worse, reproductive potential than an "embryo plaintiff" and the nature of the genetic material stored at the time of the incident does not alone offer any dispositive information as to their reproductive potential. Accordingly, Chart believes that the selection of Additional Cases should not be governed by a simple determination of whether a plaintiff had embryos or eggs stored at the time of the incident.

Therefore, Chart requests the Court order the November 2021 trial to proceed with two egg plaintiffs, two embryo plaintiffs, and a fifth plaintiff selected at random from all remaining cases. The selection breakdown can be either A) Chart selects two egg plaintiffs and Plaintiffs select two embryo plaintiffs; or B) each party selects one egg plaintiff and one embryo plaintiff.

In the alternative, Chart requests that the Court order the November 2021 trial to proceed with all egg plaintiffs. Plaintiffs had unilateral control and selection of the specific cases to proceed to trial in May 2021, and allowing them again to assert unilateral control over their preference of cases in November 2021 is unfairly prejudicial to Chart.

Respectfully Submitted,

By: /s/ *Dena C. Sharp*

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612

By: /s/ *John J. Duffy*

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100
Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com

*Counsel for Defendant Chart, Inc.*

To:  Hon. Jacqueline Scott Corley
Re:  *In re Pacific Fertility Center Litigation*
January 12, 2021
Page 6

Tel: (510) 350-9700
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR & KANE, A PROFESSIONAL LAW CORPORATION**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@pwcklegal.com
tcowan@pwcklegal.com

Elizabeth J. Cabraser (State Bar No. 083151)
Lexi J. Hazam (State Bar No. 224457)
Sarah R. London (State Bar No. 267083)
Tiseme G. Zegeye (State Bar No. 319927)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel.:  415.956.1000
Fax:  415.956.1008
ecabraser@lchb.com
lhazam@lchb.com
slondon@lchb.com
tzegeye@lchb.com

*Counsel for Plaintiffs*