EXHIBIT 80

1   Elizabeth Cabraser (Cal. Bar No. 83151)        Eric H. Gibbs (State Bar No. 178658)
    Lexi J. Hazam (Cal. Bar No. 224457)            Dylan Hughes (State Bar No. 209113)
2   Sarah R. London (Cal. Bar No. 267083)          Steven M. Tindall (State Bar No. 187862)
    Tiseme Zegeye (Cal. Bar No. 319927)            Amy M. Zeman (State Bar No. 273100)
3   **LIEFF CABRASER HEIMANN &**                   **GIBBS LAW GROUP LLP**
    **BERNSTEIN**                                  505 14th Street, Suite 1110
4   275 Battery Street, Fl. 29                     Oakland, CA 94162
    San Francisco, CA 94111                        Tel: (510) 350-9700
5   Telephone: (415) 956-1000                      Fax: (510) 350-9701
    Facsimile: (415) 956-1008                      ehg@classlawgroup.com
6   slondon@lchb.com                               dsh@classlawgroup.com
                                                   smt@classlawgroup.com
7   Dena C. Sharp (State Bar No. 245869)           amz@classlawgroup.com
    Jordan Elias (State Bar No. 228731)
8   Adam E. Polk (State Bar No. 273000)            Adam B. Wolf (Cal. Bar No. 215914)
    **GIRARD SHARP LLP**                           Tracey B. Cowan (Cal. Bar No. 250053)
9   601 California Street, 14th Floor              **PEIFFER WOLF CARR & KANE, PLC**
    San Francisco, CA 94108                        4 Embarcadero Center, Suite 1400
10  Tel: (415) 981-4800                            San Francisco, CA  94111
    Fax: (415) 981-4846                            Telephone: (415) 766-3545
11  dsharp@girardsharp.com                         Facsimile: (415) 402-0058
    jelias@girardsharp.com                         awolf@pwcklegal.com
12  apolk@girardsharp.com                          tcowan@pwcklegal.com

13

14  *Counsel for Plaintiffs and Interim Class Counsel*

15

16              **UNITED STATES DISTRICT COURT**

17             **NORTHERN DISTRICT OF CALIFORNIA**

18                 **SAN FRANCISCO DIVISION**

19                                          Case No. 3:18-cv-01586-JSC

20  *IN RE PACIFIC FERTILITY CENTER*        **PLAINTIFF A.B.'S RESPONSES TO**
    *LITIGATION*                            **DEFENDANT CHART INC.'S**
21                                          **INTERROGATORIES**

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

Plaintiff A.B. ("Plaintiff") hereby objects and responds to Chart Inc.'s ("Chart") Interrogatories.  All responses to the following Interrogatories are based on information currently known to Plaintiff and are provided without prejudice to Plaintiff's right to submit evidence of any subsequently discovered facts and information, should such become known.  Plaintiff anticipates that as investigation and trial preparation continue, it is possible that additional facts may become known, which may in turn warrant additions to or changes in the responses provided herein.  These responses are made in a good faith effort to supply such information as is presently known to Plaintiff.  These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.  Plaintiff reserves her right to supplement these responses and objections at an appropriate time before trial, as Plaintiff discovers additional facts relevant to her claims.

Plaintiff's responses or objections to any Interrogatory or part of an Interrogatory are not an admission of any fact set forth or assumed by that Interrogatory.  In addition, each of Plaintiff's responses to an Interrogatory or part of an Interrogatory is not a waiver of part or all of any objection she might make to that Interrogatory, or an admission that such answer or objection constitutes admissible evidence.

This preliminary statement is incorporated into each response by this reference.

**GENERAL OBJECTIONS**

The following objections apply to the entire set of responses.  These general objections are incorporated by reference as though fully set forth in each response to each individual Interrogatory listed below:

1.      Plaintiff objects to the Interrogatories insofar as they purport to require disclosure of communications and information that are shielded from disclosure by the attorney-client privilege and attorney work product doctrine.

2. Plaintiff objects to the Interrogatories insofar as they purport to require disclosure of communications and information that are shielded from disclosure by the physician-patient privilege.

3. Plaintiff objects to the Interrogatories on the grounds that they require the disclosure of confidential and/or private information that is not directly relevant to Plaintiff's claims, the disclosure of which would cause injury, embarrassment, or the invasion of Plaintiff's privacy as protected under Section 1 of the California Constitution.

4. Plaintiff objects to the Interrogatories to the extent to which they purport to impose obligations on the responding entities other than those imposed by applicable law, including calling for responses that are not reasonably calculated to lead to the production of admissible evidence.

5. Plaintiff objects to the Interrogatories to the extent they infringe upon plaintiff's privacy rights.

6. Without waiving any of the foregoing General Objections, each of which is hereby expressly incorporated into each individual response as if fully restated therein, Plaintiff responds, as set forth below, subject to the following additional reservations:

a. The right to object on any permissible ground whatsoever, including, but not limited to, competency, vagueness, relevance, and materiality, to the admission into evidence or other use of any of these responses at the trial of this action or at any other proceeding in this action or any other action;

b. The right to object on any permissible ground whatsoever to any demand for further responses or any other discovery procedures involving or relating to the subject matter of the responses; and

c. The right at any time to revise, correct, add to, or clarify any of the responses set forth herein, as discovery is ongoing.

**<u>INTERROGATORY NO. 1</u>:**

Identify Your date of birth.

1    **RESPONSE TO INTERROGATORY NO. 1:**

2        Plaintiff responds ███████, 1983.

3    **INTERROGATORY NO. 2:**

4        Identify all Providers from whom You have sought treatment for obstetrics, gynecology,

5    or reproductive services during the last 10 years.

6    **RESPONSE TO INTERROGATORY NO. 2:**

7        Plaintiff objects to this Interrogatory on the grounds that it purports to require the

8    disclosure of information subject to a claim of privilege or protection, including, without

9    limitation, information protected by based on the attorney-client relationship, physician-patient

10   relationship, marital relationship, attorney work product, or litigation materials (Objection on the

11   ground of "Privilege.")  Plaintiff also objects to this Interrogatory to the extent that it calls for

12   information protected by Plaintiff's privacy rights, or the privacy rights of others, or any other

13   lawfully recognized privilege or immunity from disclosure that may attach to information

14   requested by the interrogatory.  (Objection on the ground of "Privacy.")  Plaintiff objects to this

15   Interrogatory to the extent that it purports to impose any duty upon Plaintiff that is inconsistent

16   with, or beyond that required by, the rules of this Court and the Federal Rules of Civil Procedure.

17   (Objection on the ground of "Scope.")  Plaintiff objects to this Interrogatory on the ground that it

18   seeks information that is not relevant to this action and not "proportional to the needs of the case"

19   under Federal Rule of Civil Procedure 26(b)(1).  (Objection on the ground of "Relevance.")

20   Plaintiff further objects to this Interrogatory to the extent that it seeks information for the

21   illegitimate purposes of harassing, annoying, or embarrassing Plaintiff.  (Objection on the ground

22   of "Harassment.")  Notwithstanding the above, and without waiving any objections, Plaintiff

23   responds that she sought "reproductive services" from Pacific Fertility Center and from the

24   following providers between March 4, 2017 through the present:  Dr. Carolyn Givens and Dr.

25   Eldon Schriock. Plaintiff A.B. also used Reproductive Gynecology & Infertility in Ohio for

26   bloodwork following her FET on 5/30/2018 (see response to Interrogatory No. 4).  Plaintiff's

27   husband also had a telephone consultation with Dr. Paul Turek.

28

PLAINTIFF A.B.'S RESPONSES TO DEFENDANT
CHART INC.'S INTERROGATORIES
3:18-CV-01586-JSC

1  **INTERROGATORY NO. 3:**

2      Identify any diagnosis of infertility or other medical diagnosis that You understand could

3  impact Your fertility or ability to give birth to a child in any way, including the date of such

4  diagnosis and the name of the Provider(s) from whom You received such diagnosis.

5  **RESPONSE TO INTERROGATORY NO. 3:**

6      Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, and

7  Harassment.  Plaintiff further objects that this Interrogatory calls for expert testimony and

8  information that may not be within Plaintiff's personal knowledge.  Notwithstanding the above,

9  and without waiving any objections, Plaintiff responds to the best of her understanding:

10      Plaintiff has Polycystic Ovarian Syndrome, which causes ovulation irregularities. Plaintiff

11  was diagnosed with this condition in 2010 by Aubrey Marcum, P.A., with approval from Dr.

12  Lorie A Thomas.  Plaintiff was also diagnosed with Ovarian Hyperstimulation Syndrome (OHSS)

13  following a cycle cancelled due to a lack of sperm from Plaintiff C.D. in 2012. Plaintiff saw Dr.

14  Krystene DiPaola and Dr. Julie M. Sroga in connection with the OHSS.

15  **INTERROGATORY NO. 4:**

16      Identify all Fertility-Related Services that You have received, including, but not limited

17  to, a description of such services, the dates on which You received such services, and the names

18  of the Providers from whom You received such services.

19  **RESPONSE TO INTERROGATORY NO. 4:**

20      Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

21  Harassment.   Notwithstanding the above, and without waiving any objections, Plaintiff responds

22  that she received the following fertility services from Pacific Fertility Center:

23          Cryopreservation and storage of husband's (Plaintiff C.D.) sperm.

24          Consultations with Dr. Eldon Schriock on 5/29/13 (telephone) and 6/11/13 (in

25      person).

26          Egg retrieval by Dr. Liyun Li on 8/27/2013, ICSI fertilization of those eggs with

27      Plaintiff C.D.'s sperm, IVF fresh transfer by Dr. Isabelle Ryan on 9/01/13,

28      cryopreservation and storage of remaining embryos.

1    Frozen embryo transfer by Dr. Eldon Schriock on 9/4/15.

2    Frozen embryo transfer by Dr. Eldon Schriock on 4/13/16.

3    Two frozen embryo transfers in 2018 (see below for further details).

4    Plaintiff further responds that she received the following fertility services between March

5    4, 2017 through the present:

6    Tank 4 post-incident frozen embryo transfer attempt #1:  PFC thawed three

7    embryos from Tank 4, two were non-viable.  PFC determined in its discretion that the

8    third embryo could be transferred.  Dr. Carolyn Givens transferred the embryo to Plaintiff

9    A.B. on May 30, 2018.  The transfer was unsuccessful.

10    Tank 4 post-incident frozen embryo transfer attempt #2:  PFC thawed the final

11    embryo from Tank 4.  PFC's embryologist and Dr. Givens both strongly recommended

12    against transfer, given the lack of viable cells, noting only 5-10 cells were alive.

13    Nevertheless, Plaintiff specifically requested the embryo be transferred to take whatever

14    slim chance there might be for a pregnancy.  Dr. Givens transferred the embryo on

15    September 2, 2018.  The transfer was unsuccessful.

16    **INTERROGATORY NO. 5:**

17    For any Fertility-Related Services identified in response to Interrogatory No. 4, identify

18    any psychological or emotional distress that You experienced in connection with such services.

19    **RESPONSE TO INTERROGATORY NO. 5:**

20    Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

21    Harassment.   Plaintiff further objects that this Interrogatory calls for expert testimony.

22    Notwithstanding the above, and without waiving any objections, Plaintiff responds:

23    Plaintiff A.B. has been devastated by many aspects of the fertility-related services she

24    received at PFC.  Full explanation of her psychological and emotional distress is difficult, as

25    Plaintiff A.B. lacks the words to express the depth of her injuries in this regard.  However, she

26    experienced psychological and emotional strain during the egg retrieval procedure, as a result of

27    the hormones and medications, in conjunction with her own anxiety about the results.  She also

28    experienced emotional strain in connection with Plaintiff C.D.'s sperm banking, which resulted in

1   the samples that he stored in PFC's lab facility.

2        Plaintiff A.B. first learned of the Tank 4 incident on March 14, 2018.  Plaintiff A.B. was

3   wracked with fear, anxiety, and grief upon learning the news.  Her grief was compounded by the

4   knowledge that she and her husband had had the extra sperm they had banked destroyed the year

5   before, based entirely on the fact that they knew they had four healthy, viable embryos in storage.

6   Based on her and Plaintiff C.D.'s health issues, she knew that the embryos in Tank 4 almost

7   certainly represented their last chance to grow their family.  Her emotional unrest was only

8   heightened by the lack of clear information from PFC.  She and Plaintiff C.D. immediately began

9   making plans to travel to San Francisco so that they could attempt to thaw and use their embryos.

10  Preparing for the transfer was a nightmare.  Not only did Plaintiff A.B. have to take the

11  medications, she had to do so knowing that there was a good chance none of her embryos would

12  be viable.

13       On the day of the first transfer, Plaintiff A.B. and her husband nervously awaited the

14  news. When they learned that the first two embryos were not viable, they were gutted.  Though

15  the third embryo was deemed by PFC to be worthy of transfer, Plaintiff A.B. did not achieve a

16  viable pregnancy.  She was distraught upon learning of the failed transfer.  The same process

17  repeated itself for the second attempted transfer.  When Dr. Givens told Plaintiff A.B. and her

18  husband that the thawed embryo was not recommended for transfer, Plaintiff was horrified and

19  appalled.  She and her husband felt humiliated by the tone of the conversation. They could not

20  reconcile themselves to the news and begged for the embryo to be transferred.  They both held

21  out hope that God might intervene.  Unfortunately, those hopes were again dashed.

22       Following the first transfer attempt, Plaintiff A.B. and her husband took the two thawed,

23  non-viable embryos home with them to be laid to rest.  Due to this litigation, they have not yet

24  been able to do so.  They plan to have a small ceremony where they can say their final goodbyes.

25  Even still, they will keep them in their hearts always and celebrate them as the members of the

26  family they might have been.

27       The first Christmas after the tank failure was incredibly difficult for Plaintiff A.B. and her

28  family.  For the first time they would not be able to celebrate their frozen hope at PFC.  In years

previous, Plaintiff A.B. and her husband had hung four golden snowflakes with their stockings to represent their four frozen embryos in Tank 4.

To this day, Plaintiff A.B. is terribly depressed and grief-stricken over the loss of her embryos.  The thought that she will never be able to give her children the siblings they longed for cuts her deeply.  She seeks solace through prayer and her faith, but there is not a day that goes by that she does not think of this loss.  It affects her well-being, her overall happiness, and even her relationships. Though she knows that she is not to blame, she nevertheless feels intense guilt for entrusting her future potential children with the wrong people.  Moreover, through all of this, Plaintiff A.B. has been further emotionally damaged as she has borne witness to the strain these events have placed on her husband, Plaintiff C.D.  Witnessing his grief has compounded and intensified her own feelings of anger, sadness, loss, and guilt.  Over the course of the past year and a half, Plaintiff has experienced extreme emotional distress as a result of this incident, including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

**INTERROGATORY NO. 6:**

Identify any treatment, medical or otherwise, that You have received for any psychological or emotional distress that You experienced in connection with Fertility-Related Services identified in Interrogatory No. 4, including, but not limited to, the type of treatment, the dates of such treatment, the names of the Providers from whom You received such treatment, the name of any medications that You were prescribed in connection with such treatment, and the outcome of such treatment.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.  Plaintiff further objects that this Interrogatory calls for expert testimony. Notwithstanding the above, and without waiving any objections, Plaintiff responds:  None.

**INTERROGATORY NO. 7:**

Identify the total number of pregnancies that You have had, including the date of each pregnancy, whether the pregnancy occurred without Assisted Reproductive Technology, and the

outcome of each pregnancy, including, but not limited to, whether the pregnancy resulted in a miscarriage or a live birth.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment, and particularly to the extent this question calls for information related to unplanned pregnancies terminated for elective reasons. Plaintiff also objects that this Interrogatory calls for expert testimony, is vague as to the definition of the term "pregnancy," vague as to "date of each pregnancy," and calls for information that may not be within Plaintiff's personal knowledge. Notwithstanding the above, and without waiving any objections, Plaintiff responds that to the best of her understanding, she had the following pregnancies using assisted reproductive technology:

| Date of pregnancy (approx.) | Miscarriage or Live Birth |
| --- | --- |
| 9/1/13 transfer of embryo | Live birth, 5/21/14 |
| 9/4/15 transfer of embryo | Miscarriage |
| 4/13/16 transfer of embryo | Live birth, 1/3/17 |
| 5/30/18 transfer of T4 embryo | HCG beta test dropped from 27 to 10 on 6/11/18, resulting in a non-viable pregnancy |

Plaintiff further responds that to the best of her understanding, she has had no pregnancies without using assisted reproductive technology from two years before contacting PFC through the present.

**INTERROGATORY NO. 8:**

For any pregnancy identified in Interrogatory No. 7 that did not result in a live birth, identify what You understand was the reason(s) for the pregnancy not resulting in a live birth and the basis for that understanding, including, but not limited to, the name of any Provider on whom You base Your understanding.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

Harassment.   Plaintiff also objects that this Interrogatory calls for expert testimony and for information not within Plaintiff's personal knowledge or understanding.

**INTERROGATORY NO. 9:**

Identify all reasons why You sought services at PFC.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this Interrogatory on the ground of Vagueness because the term "reasons" is vague or otherwise incomprehensible.  (Objection on the ground of "Vagueness."). Subject to objections, Plaintiff responds she and her husband were referred to PFC by Dr. Paul Turek, a urologist working with Plaintiff C.D. on his fertility issues.  They chose to work with PFC both because Dr. Turek had privileges at the lab as well as because their research led them to believe that PFC provided high-quality services that were state of the art.  Before having their embryos cryopreserved with PFC, Plaintiffs A.B. and C.D. saw representations about PFC's services on its website, including PFC's claims that it provided high-quality services.  Plaintiffs A.B. and C.D. also had a consultation session with Dr. Eldon Schriock, who told them about PFC's care, professionalism, and state-of-the-art facilities. Dr. Schriock led Plaintiff to believe that PFC would be able to work with her to tailor her egg retrieval cycle medications to avoid or minimize the chances of OHSS.  Ultimately, however, Plaintiff A.B. and her husband chose PFC based on the reputation of its lab, rather than its doctors.

**INTERROGATORY NO. 10:**

Identify the total number of children that You currently have, their ages, and whether any are Your biological children (i.e., conceived from Your own eggs or sperm).

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.  Subject to these objections, Plaintiff responds: two biological children, aged five and two.

**INTERROGATORY NO. 11:**

With regard to any child identified in response to Interrogatory No. 10, state (i) whether that child was conceived with Assisted Reproductive Technology, and (ii) whether that child

1  shares any genetic parentage with the Biological Material that You understand to have been

2  stored in Tank 4 on March 4, 2018, or in any other location, and, if so, which genetic parent or

3  parents are in common.

4  **RESPONSE TO INTERROGATORY NO. 11:**

5      Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

6  Harassment. Subject to these objections, Plaintiff responds: Both children referenced in Plaintiff's

7  response to Interrogatory 10 were achieved via ART, and both are full siblings to the embryos in

8  Tank 4.

9  **INTERROGATORY NO. 12:**

10     Identify all of the Biological Material that You have cryopreserved at any time, whether at

11  PFC or at another facility, the location(s) at which such Biological Material was cryogenically

12  stored, the type and quantity of Biological Material stored at each location, and the dates on

13  which the Biological Material was stored at each location.

14  **RESPONSE TO INTERROGATORY NO. 12:**

15     Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

16  Harassment.   Subject to these objections, and to the best of her understanding, Plaintiff responds:

17     Plaintiff and her husband created 7 embryos in 2013.  They used one of the embryos in

18  2013 and cryopreserved the remaining six.  As described in Plaintiff's response to Interrogatory

19  4, they subsequently used an embryo in 2015 for a transfer, and another in 2016 for a transfer.

20  They had four remaining embryos in Tank 4 at the time of the tank failure in or around March 3,

21  2018.  They thawed and used these embryos as described in Plaintiff's response to Interrogatory

22  No. 4.

23     Plaintiff and her husband also had her husband's sperm stored at PFC until 2017, when

24  the sperm was discarded.  An earlier sample of sperm was stored at Reproductive Gynecology &

25  Infertility in Ohio between 2011 and 2014.

26     Plaintiff has no remaining Biological Material in storage at this time.

27  **INTERROGATORY NO. 13:**

28     With regard to the Biological Material identified in Your response to Interrogatory No. 12,

1  identify all attempts that You made to use such cryopreserved Biological Material to initiate a

2  pregnancy and the dates of such attempts.

3  **RESPONSE TO INTERROGATORY NO. 13:**

4  Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

5  Harassment.   Subject to these objections, with respect to Biological Material stored at PFC,

6  Plaintiff responds:  See Response to Interrogatory No. 4.

7  **INTERROGATORY NO. 14:**

8  Describe the outcome of all of the attempts to use Your Biological Material identified in

9  Interrogatory No. 13, including, but not limited to, whether such attempt resulted in a pregnancy,

10  miscarriage, or a live birth.

11  **RESPONSE TO INTERROGATORY NO. 14:**

12  Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

13  Harassment.   Plaintiff further objects that the term "pregnancy" is vague.  Subject to these

14  objections, Plaintiff responds: See Plaintiff's responses to Interrogatories 4 & 7.

15  **INTERROGATORY NO. 15:**

16  For any attempt to use Your Biological Material identified in Interrogatory No. 13 that did

17  not result in a live birth, identify what You understand was the reason(s) for that result and the

18  basis for Your understanding, including, but not limited to, the name of any Provider on whom

19  You base Your understanding.

20  **RESPONSE TO INTERROGATORY NO. 15:**

21  Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

22  Harassment.   Plaintiff also objects that this Interrogatory calls for expert testimony and for

23  information not within Plaintiff's personal knowledge or understanding.  Subject to these

24  objections, Plaintiff responds that as to Biological Material that was stored in Tank 4 at PFC that

25  did not result in a live birth, Plaintiff's understanding is that the storage freezer failure, caused by

26  Defendants' conduct as alleged in the Second Amended Complaint and further set forth in

27  discovery, expert reports, and other pleadings, substantially contributed to the result.  Plaintiff's

28  understanding is also supported by Plaintiff and her husband's post-incident discussions with Dr.

1  Givens and an embryologist at PFC, who indicated that there may have been temperature

2  differences between the two goblets where Plaintiffs' embryos were stored, due to the tank

3  failure.

4  **INTERROGATORY NO. 16:**

5       With regard to any embryos that You allege to have been stored in Tank 4 on March 4,

6  2018, identify the name and relationship to You of Your Reproductive Partner (e.g., spouse,

7  donor, etc.).

8  **RESPONSE TO INTERROGATORY NO. 16:**

9       Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

10  Harassment.   Subject to these objections, Plaintiff responds: Plaintiff C.D., spouse.

11  **INTERROGATORY NO. 17:**

12       With regard to any embryos that You allege to have been stored in Tank 4 on March 4,

13  2018, identify whether You have, or are able to obtain, additional eggs or sperm from Your

14  Reproductive Partner.

15  **RESPONSE TO INTERROGATORY NO. 17:**

16       Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy.  Subject to

17  objections, Plaintiff responds that she does not have additional sperm from her Reproductive

18  Partner and there is a high likelihood she will not be able to obtain more of this material.

19  **INTERROGATORY NO. 18:**

20       If You are not able to obtain additional eggs or sperm from Your Reproductive Partner,

21  identify why You are not able to do so.

22  **RESPONSE TO INTERROGATORY NO. 18:**

23       Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy.  Subject to

24  objections, Plaintiff's Reproductive Partner has Y-chromosome microdeletion in the C region, a

25  degenerative condition that causes extremely low sperm count.  Furthermore, he has been led to

26  believe from his doctor that further sperm banking may not be successful.  Additionally, PFC has

27  refused to cover the costs of further fertility related services for Plaintiffs A.B. and C.D.

28

**INTERROGATORY NO. 19:**

State whether You have ever donated or discarded, or directed anyone to donate or discard, any cryogenically stored Biological Material.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy. Subject to objections, Plaintiff responds that as to Biological Material stored at PFC: Yes, see response to Interrogatory No. 12.

**INTERROGATORY NO. 20:**

Describe any emotional distress that You claim to have experienced as a result of the Incident.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy.  Subject to objections, Plaintiff directs Propounding Party to her response to Interrogatory No. 5. Furthermore, Plaintiff responds:  I was shocked when I learned of the March 4,2018 incident and have experienced devastation, panic, anxiety and severe emotional distress in the months that have followed. My husband and I have since attempted to use the embryos that were preserved in Tank 4 but none resulted in a successful pregnancy. Indeed, two were clearly not viable following thawing and a third was not recommended for transfer though we tried anyway, unsuccessfully. We attempted to transfer the remaining embryo, but the transfer was also not successful. We continue to experience crippling grief in the wake of learning that our embryos were damaged by the tank failure. Our loss is never far from our thoughts.

**INTERROGATORY NO. 21:**

Identify any treatment, medical or otherwise, that You have received for any psychological or emotional distress that You claim to have experienced as a result of the Incident, including, but not limited to, the type of treatment, the dates of such treatment, the names of the Providers from whom You received such treatment, the name of any medications that You were prescribed in connection with such treatment, and the outcome of such treatment.

1   **RESPONSE TO INTERROGATORY NO. 21:**

2   Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy.  Subject to

3   objections, Plaintiff responds: none.

4   **INTERROGATORY NO. 22:**

5   Identify any medical diagnoses that You have received in connection with any

6   psychological or emotional distress that You claim to have experienced as a result of the Incident,

7   including, but not limited to, the date of such diagnoses, the name of the Provider(s) who made

8   such diagnoses, and the name of any medications that You were prescribed in connection with

9   such diagnoses.

10  **RESPONSE TO INTERROGATORY NO. 23:**

11  Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy. Subject to

12  objections, Plaintiff responds: None.

13  **INTERROGATORY NO. 23:**

14  With regard to any Biological Material that You allege to have been stored in Tank 4 on

15  March 4, 2018, identify all payments made for such storage, including the dates of payment.

16  **RESPONSE TO INTERROGATORY NO. 23:**

17  Plaintiff objects to this Interrogatory on the grounds that the information sought is

18  available from other parties and/or is not within Plaintiff's possession, custody, or control.

19  (Objection on the ground of "Custody.").  Subject to objections, Plaintiff responds: $600 to PFC

20  in 2013 and yearly thereafter.

21  **INTERROGATORY NO. 24:**

22  Identify the total amount of expenses that You have incurred for any Fertility-Related

23  Services identified in response to Interrogatory No. 4, including the dates on which you incurred

24  such expenses

25  **RESPONSE TO INTERROGATORY NO. 24:**

26  Plaintiff objects to this Interrogatory on the grounds of Custody.  Subject to objections,

27  Plaintiff responds:

28

| Date | Description | Amount |
|------|-------------|--------|

| 5/22/2013 | Southwest, flight to San Francisco | $651.60 |
|---|---|---|
| 5/22/2013 | Delta, flight from San Francisco home | $223.80 |
| 5/22/2013 | Delta, flight from San Francisco home | $223.80 |
| 7/1/2013 | Delta, for July flight | $511.60 |
| 7/1/2013 | Delta, for July flight | $511.60 |
| 7/25/2013 | Southwest, flight to San Francisco | $543.60 |
| 8/30/2013 | Southwest, 2 flights from San Francisco home | $1101.60 |
| May 2013 | Lodging | $480.0 |
| June 2013 | Meal expenses while in San Francisco for June | $257.61 |
| June 2013 | Lodging | $138.00 |
| July 2013 | Meal expenses while in San Francisco for July | $294.74 |
| July 2013 | Lodging | $1623.20 |
| August 2013 | Meal expenses while in San Francisco for August | $607.82 |
| August 2013 | Lodging | $1590.00 |
| September 2013 | Meal expenses while in San Francisco for September | $50.66 |
| 2013 | Fertility related medical costs | $21,718.74 |
| June-November 2013 | Vehicle expenses while in San Francisco for fertility related services | $1713.94 |
| 2018 | Vehicle expenses while in San Francisco | $2979.80 |
| 2018 | Lodging expenses while in San Francisco | $4129.24 |
| 2018 | Flights to San Francisco | $1813.48 |
| 2018 | Meals while in San Francisco | $651.64 |
| 2018 | Prescriptions | $155.89 |

**INTERROGATORY NO. 245:**

Describe any damages to which You allege You are entitled based upon the claims alleged in the Action, including a detailed computation of all components of those damages.

**RESPONSE TO INTERROGATORY NO. 22:**

Plaintiff responds Plaintiffs, on behalf of themselves and the class, seek compensatory and punitive damages subject to proof. Plaintiffs' calculation of damages will depend on information to be received from Defendant in discovery, as well as expert testimony. Plaintiffs, on behalf of themselves and the class, also seek injunctive relief in the form of a preliminary and permanent injunction against Defendants.

Dated:  October 31, 2019

By: _Adam Wolf_

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR & KANE, A**
**PROFESSIONAL LAW CORPORATION**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@pwcklegal.com
tcowan@pwcklegal.com


Elizabeth J. Cabraser (State Bar No. 083151)
Lexi J. Hazam (State Bar No. 224457)
Sarah R. London (State Bar No. 267083)
Tiseme G. Zegeye (State Bar No. 319927)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008
ecabraser@lchb.com
lhazam@lchb.com
slondon@lchb.com
tzegeye@lchb.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)
Steven M. Tindall (State Bar No. 187862)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94162
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
smt@classlawgroup.com
amz@classlawgroup.com

*Counsel for Plaintiffs and Interim Class Counsel*

1

## VERIFICATION

2      I, Plaintiff A.B., verify subject to the penalty of perjury that the foregoing Objections and

3  Responses to Defendant Chart's Interrogatories are true and correct to the best of my knowledge

4  and belief.

5      Dated: 11/01/2019

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

28

PLAINTIFF A.B.'S RESPONSES TO DEFENDANT
CHART INC.'S INTERROGATORIES
3:18-CV-01586-JSC