EXHIBIT 81

Elizabeth Cabraser (Cal. Bar No. 83151)
Lexi J. Hazam (Cal. Bar No. 224457)
Sarah R. London (Cal. Bar No. 267083)
Tiseme Zegeye (State Bar No. 319927)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
apolk@girardsharp.com

Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)
Steven M. Tindall (State Bar No. 187862)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94162
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
dsh@classlawgroup.com
smt@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (Cal. Bar No. 215914)
Tracey B. Cowan (Cal. Bar No. 250053)
**PEIFFER WOLF CARR & KANE, PLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA  94111
Telephone: (415) 766-3545
Facsimile: (415) 402-0058
awolf@pwcklegal.com
tcowan@pwcklegal.com

*Counsel for Plaintiffs and Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE PACIFIC FERTILITY CENTER LITIGATION* | Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFF C.D.'S RESPONSES TO DEFENDANT CHART INC.'S INTERROGATORIES** |

1848584.2

1

2

3   **PRELIMINARY STATEMENT**

4        Plaintiff C.D. ("Plaintiff") hereby objects and responds to Chart Inc.'s ("Chart")

5   Interrogatories.  All responses to the following Interrogatories are based on information currently

6   known to Plaintiff and are provided without prejudice to Plaintiff's right to submit evidence of

7   any subsequently discovered facts and information, should such become known.  Plaintiff

8   anticipates that as investigation and trial preparation continue, it is possible that additional facts

9   may become known, which may in turn warrant additions to or changes in the responses provided

10   herein.  These responses are made in a good faith effort to supply such information as is presently

11   known to Plaintiff.  These responses and objections are made without prejudice to, and are not a

12   waiver of, Plaintiff's right to rely on other facts or documents at trial.  Plaintiff reserves his right

13   to supplement these responses and objections at an appropriate time before trial, as Plaintiff

14   discovers additional facts relevant to his claims.

15        Plaintiff's responses or objections to any Interrogatory or part of an Interrogatory are not

16   an admission of any fact set forth or assumed by that Interrogatory.  In addition, each of

17   Plaintiff's responses to an Interrogatory or part of an Interrogatory is not a waiver of part or all of

18   any objection she might make to that Interrogatory, or an admission that such answer or objection

19   constitutes admissible evidence.

20        This preliminary statement is incorporated into each response by this reference.

21   **GENERAL OBJECTIONS**

22        The following objections apply to the entire set of responses.  These general objections are

23   incorporated by reference as though fully set forth in each response to each individual

24   Interrogatory listed below:

25        1.      Plaintiff objects to the Interrogatories insofar as they purport to require

26   disclosure of communications and information that are shielded from disclosure by the attorney-

27   client privilege and attorney work product doctrine.

28

- 1 -

2.      Plaintiff objects to the Interrogatories insofar as they purport to require disclosure of communications and information that are shielded from disclosure by the physician-patient privilege.

3.      Plaintiff objects to the Interrogatories on the grounds that they require the disclosure of confidential and/or private information that is not directly relevant to Plaintiff's claims, the disclosure of which would cause injury, embarrassment, or the invasion of Plaintiff's privacy as protected under Section 1 of the California Constitution.

4.      Plaintiff objects to the Interrogatories to the extent to which they purport to impose obligations on the responding entities other than those imposed by applicable law, including calling for responses that are not reasonably calculated to lead to the production of admissible evidence.

5.      Plaintiff objects to the Interrogatories to the extent they infringe upon plaintiff's privacy rights.

6.      Without waiving any of the foregoing General Objections, each of which is hereby expressly incorporated into each individual response as if fully restated therein, Plaintiff responds, as set forth below, subject to the following additional reservations:

a.      The right to object on any permissible ground whatsoever, including, but not limited to, competency, vagueness, relevance, and materiality, to the admission into evidence or other use of any of these responses at the trial of this action or at any other proceeding in this action or any other action;

b.      The right to object on any permissible ground whatsoever to any demand for further responses or any other discovery procedures involving or relating to the subject matter of the responses; and

c.      The right at any time to revise, correct, add to, or clarify any of the responses set forth herein, as discovery is ongoing.

**<u>INTERROGATORY NO. 1:</u>**

Identify Your date of birth.

PLAINTIFF C.D.'S RESPONSES TO DEFENDANT
CHART INC.'S INTERROGATORIES
3:18-CV-01586-JSC

1    **RESPONSE TO INTERROGATORY NO. 1:**

2         Plaintiff C.D. responds ▮▮▮▮, 1982.

3    **INTERROGATORY NO. 2:**

4         Identify all Providers from whom You have sought treatment for obstetrics, gynecology,

5    or reproductive services during the last 10 years.

6    **RESPONSE TO INTERROGATORY NO. 2:**

7         Plaintiff objects to this Interrogatory on the grounds that it purports to require the

8    disclosure of information subject to a claim of privilege or protection, including, without

9    limitation, information protected by based on the attorney-client relationship, physician-patient

10   relationship, marital relationship, attorney work product, or litigation materials (Objection on the

11   ground of "Privilege.")  Plaintiff also objects to this Interrogatory to the extent that it calls for

12   information protected by Plaintiff's privacy rights, or the privacy rights of others, or any other

13   lawfully recognized privilege or immunity from disclosure that may attach to information

14   requested by the interrogatory.  (Objection on the ground of "Privacy.")  Plaintiff objects to this

15   Interrogatory to the extent that it purports to impose any duty upon Plaintiff that is inconsistent

16   with, or beyond that required by, the rules of this Court and the Federal Rules of Civil Procedure.

17   (Objection on the ground of "Scope.")  Plaintiff objects to this Interrogatory on the ground that it

18   seeks information that is not relevant to this action and not "proportional to the needs of the case"

19   under Federal Rule of Civil Procedure 26(b)(1).  (Objection on the ground of "Relevance.")

20   Plaintiff further objects to this Interrogatory to the extent that it seeks information for the

21   illegitimate purposes of harassing, annoying, or embarrassing Plaintiff.  (Objection on the ground

22   of "Harassment.")  Notwithstanding the above, and without waiving any objections, Plaintiff

23   responds that he sought "reproductive services" from Pacific Fertility Center and from the

24   following providers between March 4, 2017 through the present:  Dr. Carolyn Givens, Dr. Eldon

25   Schriock, and Reproductive Gynecology & Infertility in Ohio for bloodwork for his wife

26   following her FET on 5/30/2018 (see response to Interrogatory No. 4). Plaintiff C.D. also had a

27   telephone consultation with Dr. Paul Turek.

28

**INTERROGATORY NO. 3:**

Identify any diagnosis of infertility or other medical diagnosis that You understand could impact Your fertility or ability to give birth to a child in any way, including the date of such diagnosis and the name of the Provider(s) from whom You received such diagnosis.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, and Harassment.  Plaintiff further objects that this Interrogatory calls for expert testimony and information that may not be within Plaintiff's personal knowledge.  Notwithstanding the above, and without waiving any objections, Plaintiff responds to the best of his understanding:

Plaintiff C.D. has Y-chromosome microdeletion in the C region, a degenerative condition that causes extremely low sperm count.  Plaintiff was diagnosed with this condition by Dr. Carin V. Hoppes in 2011.

**INTERROGATORY NO. 4:**

Identify all Fertility-Related Services that You have received, including, but not limited to, a description of such services, the dates on which You received such services, and the names of the Providers from whom You received such services.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.   Notwithstanding the above, and without waiving any objections, Plaintiff responds that she received the following fertility services from Pacific Fertility Center:

Cryopreservation and storage of sperm (in conjunction with sperm banking conducted by a physician with privileges at PFC).

Consultations with Dr. Eldon Schriock on 5/29/13 (telephone) and 6/11/13 (in person).

Egg retrieval from wife, Plaintiff A.B., by Dr. Liyun Li on 8/27/2013, ICSI fertilization of those eggs with Plaintiff C.D.'s sperm, IVF fresh transfer by Dr. Isabelle Ryan on 9/01/13, cryopreservation and storage of remaining embryos.

Frozen embryo transfer to wife by Dr. Eldon Schriock on 9/4/15.

1           Frozen embryo transfer to wife by Dr. Eldon Schriock on 4/13/16.

2           Two frozen embryo transfers in 2018 (see below for further details).

3        Plaintiff further responds that he received the following fertility services between March

4    4, 2017 through the present:

5           Tank 4 post-incident frozen embryo transfer attempt #1:  PFC thawed three

6    embryos from Tank 4, two were non-viable.  PFC determined in its discretion that the

7    third embryo could be transferred.  Dr. Carolyn Givens transferred the embryo to Plaintiff

8    C.D.'s wife, Plaintiff A.B., on May 30, 2018.  The transfer was unsuccessful.

9           Tank 4 post-incident frozen embryo transfer attempt #2:  PFC thawed the final

10   embryo from Tank 4.  PFC's embryologist and Dr. Givens both strongly recommended

11   against transfer, given the lack of viable cells, noting only 5-10 cells were alive.

12   Nevertheless, Plaintiff specifically requested the embryo be transferred to take whatever

13   slim chance there might be for a pregnancy.  Dr. Givens transferred the embryo to

14   Plaintiff's wife on September 2, 2018.  The transfer was unsuccessful.

15   **INTERROGATORY NO. 5:**

16       For any Fertility-Related Services identified in response to Interrogatory No. 4, identify

17   any psychological or emotional distress that You experienced in connection with such services.

18   **RESPONSE TO INTERROGATORY NO. 5:**

19       Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

20   Harassment.   Plaintiff further objects that this Interrogatory calls for expert testimony.

21   Notwithstanding the above, and without waiving any objections, Plaintiff responds:

22       Plaintiff C.D. has been devastated by many aspects of the fertility-related services he

23   received at PFC.  Full explanation of his psychological and emotional distress is difficult, as

24   Plaintiff C.D. struggles to express the depth of his injuries in this regard.  However, he

25   experienced psychological and emotional strain during his wife's first egg retrieval procedure, as

26   a result of his natural anxiety about the results.  He also experienced emotional strain in

27   connection with his own sperm banking, which resulted in the samples that he stored in PFC's lab

28   facility, not knowing if the treatments and banking would be successful.

1        Plaintiff C.D. first learned of the Tank 4 incident on March 14, 2018.  Plaintiff C.D. was

2   wracked with fear, anxiety, and grief upon learning the news.  His grief was compounded by the

3   knowledge that he and his wife had had the extra sperm they had banked destroyed the year

4   before, based entirely on the fact that they knew they had four healthy, viable embryos in storage.

5   Based on his and Plaintiff A.B.'s health issues, he knew that the embryos in Tank 4 almost

6   certainly represented their last chance to grow their family.  His emotional unrest was only

7   heightened by the lack of clear information from PFC.  He and Plaintiff A.B. immediately began

8   making plans to travel to San Francisco so that they could attempt to thaw and use their embryos.

9   Preparing for the transfer was a nightmare.  Not only did his wife have to take the medications,

10  she had to do so knowing that there was a good chance none of her embryos would be viable.

11       On the day of the first transfer, Plaintiff C.D. and his wife nervously awaited the news.

12  When they learned that the first two embryos were not viable, they were gutted.  Though the third

13  embryo was deemed by PFC to be worthy of transfer, Plaintiff A.B. did not achieve a viable

14  pregnancy.  Both Plaintiff C.D. and his wife were distraught upon learning of the failed transfer.

15  The same process repeated itself for the second attempted transfer.  When Dr. Givens told

16  Plaintiff C.D. and his wife that the thawed embryo was not recommended for transfer, Plaintiff

17  was horrified and appalled.  He and his wife felt humiliated by the tone of the conversation. They

18  could not reconcile themselves to the news and begged for the embryo to be transferred.  They

19  both held out hope that God might intervene.   Unfortunately, those hopes were again dashed.

20       Following the first transfer attempt, Plaintiff C.D. and his wife took the two thawed, non-

21  viable embryos home with them to be laid to rest.  Due to this litigation, they have not yet been

22  able to do so.  They plan to have a small ceremony where they can say their final goodbyes.  Even

23  still, they will keep them in their hearts always and celebrate them as the members of the family

24  they might have been.

25       The first Christmas after the tank failure was incredibly difficult for Plaintiff C.D. and his

26  family.  For the first time they would not be able to celebrate their frozen hope at PFC.  In years

27  previous, Plaintiff C.D. and his wife had hung four golden snowflakes with their stockings to

28  represent their four frozen embryos in Tank 4.

PLAINTIFF C.D.'S RESPONSES TO DEFENDANT
CHART INC.'S INTERROGATORIES
3:18-CV-01586-JSC

To this day, Plaintiff C.D. and his wife are both terribly depressed and grief-stricken over the loss of their embryos.  The thought that they will never be able to give their children the siblings they longed for cuts them deeply.  He seeks solace through prayer and his faith, but there is not a day that goes by that he does not think of this loss.  It affects his well-being, overall happiness, and even his relationships. Though he knows that he is not to blame, he nevertheless feels intense guilt for entrusting his future potential children with the wrong people.  Moreover, through all of this, Plaintiff C.D. has been further emotionally damaged as he has borne witness to the strain these events have placed on his wife, Plaintiff A.B.  Witnessing her grief has compounded and intensified his own feelings of anger, sadness, loss, and guilt. Over the course of the past year and a half, Plaintiff has experienced extreme emotional distress as a result of this incident, including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

**INTERROGATORY NO. 6:**

Identify any treatment, medical or otherwise, that You have received for any psychological or emotional distress that You experienced in connection with Fertility-Related Services identified in Interrogatory No. 4, including, but not limited to, the type of treatment, the dates of such treatment, the names of the Providers from whom You received such treatment, the name of any medications that You were prescribed in connection with such treatment, and the outcome of such treatment.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.  Plaintiff further objects that this Interrogatory calls for expert testimony. Notwithstanding the above, and without waiving any objections, Plaintiff responds: None.

**INTERROGATORY NO. 7:**

Identify the total number of pregnancies that You have had, including the date of each pregnancy, whether the pregnancy occurred without Assisted Reproductive Technology, and the outcome of each pregnancy, including, but not limited to, whether the pregnancy resulted in a miscarriage or a live birth.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment, and particularly to the extent this question calls for information related to unplanned pregnancies terminated for elective reasons.  Plaintiff also objects that this Interrogatory calls for expert testimony, is vague as to the definition of the term "pregnancy," vague as to "date of each pregnancy," and calls for information that may not be within Plaintiff's personal knowledge. Notwithstanding the above, and without waiving any objections, Plaintiff responds that to the best of his understanding, he and his wife had the following pregnancies using assisted reproductive technology:

| Date of pregnancy (approx.) | Miscarriage or Live Birth |
| --- | --- |
| 9/1/13 transfer of embryo | Live birth, 5/21/14 |
| 9/4/15 transfer of embryo | Miscarriage |
| 4/13/16 transfer of embryo | Live birth, 1/3/17 |
| 5/30/18 transfer of embryo | HCG beta test dropped from 27 to 10 on 6/11/18, resulting in a non-viable pregnancy |

Plaintiff further responds that to the best of his understanding, he and his wife had no pregnancies without using assisted reproductive technology from two years before contacting PFC through the present, resulting in either a miscarriage or live birth.

**INTERROGATORY NO. 8:**

For any pregnancy identified in Interrogatory No. 7 that did not result in a live birth, identify what You understand was the reason(s) for the pregnancy not resulting in a live birth and the basis for that understanding, including, but not limited to, the name of any Provider on whom You base Your understanding.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.   Plaintiff also objects that this Interrogatory calls for expert testimony and for

1    information not within Plaintiff's personal knowledge or understanding.

2    **INTERROGATORY NO. 9:**

3        Identify all reasons why You sought services at PFC.

4    **RESPONSE TO INTERROGATORY NO. 9:**

5        Plaintiff objects to this Interrogatory on the ground of Vagueness because the term

6    "reasons" is vague or otherwise incomprehensible.  (Objection on the ground of "Vagueness.").

7    Subject to objections, Plaintiff responds he and his wife was referred to PFC by Dr. Paul Turek, a

8    urologist working with Plaintiff C.D. on his fertility issues.  They chose to work with PFC both

9    because Dr. Turek had privileges at the lab as well as because their research led them to believe

10   that PFC provided high-quality services that were state of the art.  Before having their embryos

11   cryopreserved with PFC, Plaintiffs A.B. and C.D. saw representations about PFC's services on its

12   website, including PFC's claims that it provided high-quality services.  Plaintiffs A.B. and C.D.

13   also had a consultation session with Dr. Eldon Schriock, who told them about PFC's care,

14   professionalism, and state-of-the-art facilities. Dr. Schriock led Plaintiff to believe that PFC

15   would be able to work with his wife to tailor her egg retrieval cycle medications to avoid or

16   minimize the chances of Ovarian Hyperstimulation Syndrome.  Ultimately, however, A.B. and

17   C.D. chose PFC based on the reputation of its lab, rather than its doctors.

18   **INTERROGATORY NO. 10:**

19       Identify the total number of children that You currently have, their ages, and whether any

20   are Your biological children (i.e., conceived from Your own eggs or sperm).

21   **RESPONSE TO INTERROGATORY NO. 10:**

22       Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

23   Harassment.  Subject to these objections, Plaintiff responds: two biological children, aged five

24   and two.

25   **INTERROGATORY NO. 11:**

26       With regard to any child identified in response to Interrogatory No. 10, state (i) whether

27   that child was conceived with Assisted Reproductive Technology, and (ii) whether that child

28   shares any genetic parentage with the Biological Material that You understand to have been

1  stored in Tank 4 on March 4, 2018, or in any other location, and, if so, which genetic parent or

2  parents are in common.

3  **RESPONSE TO INTERROGATORY NO. 11:**

4       Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

5  Harassment. Subject to these objections, Plaintiff responds: Both children referenced in Plaintiff's

6  response to Interrogatory 10 were achieved via ART, and both are full siblings to the embryos in

7  Tank 4.

8  **INTERROGATORY NO. 12:**

9       Identify all of the Biological Material that You have cryopreserved at any time, whether at

10 PFC or at another facility, the location(s) at which such Biological Material was cryogenically

11 stored, the type and quantity of Biological Material stored at each location, and the dates on

12 which the Biological Material was stored at each location.

13 **RESPONSE TO INTERROGATORY NO. 12:**

14      Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

15 Harassment.   Subject to these objections, and to the best of his understanding, Plaintiff responds:

16      Plaintiff and his wife created 7 embryos in 2013.  They used one of the embryos and

17 cryopreserved the remaining six.  As described in Plaintiff's response to Interrogatory 4, they

18 subsequently used an embryo in 2015 for a transfer, and another in 2016 for a transfer.  They had

19 four remaining embryos in Tank 4 at the time of the tank failure in or around March 3, 2018.

20 They thawed and used these embryos as described in Plaintiff's response to Interrogatory No. 4.

21      Plaintiff and his wife also had banked sperm stored at PFC until 2017, when the sperm

22 was discarded. An earlier sample of sperm was stored at Reproductive Gynecology & Infertility

23 in Ohio between 2011 and 2014.

24      Plaintiff has no remaining Biological Material in storage at this time.

25 **INTERROGATORY NO. 13:**

26      With regard to the Biological Material identified in Your response to Interrogatory No. 12,

27 identify all attempts that You made to use such cryopreserved Biological Material to initiate a

28 pregnancy and the dates of such attempts.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.   Subject to these objections, with respect to Biological Material stored at PFC, Plaintiff responds: See Response to Interrogatory No. 4.

**INTERROGATORY NO. 14:**

Describe the outcome of all of the attempts to use Your Biological Material identified in Interrogatory No. 13, including, but not limited to, whether such attempt resulted in a pregnancy, miscarriage, or a live birth.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.   Plaintiff further objects that the term "pregnancy" is vague.  Subject to these objections, Plaintiff responds: See Plaintiff's responses to Interrogatories 4 & 7.

**INTERROGATORY NO. 15:**

For any attempt to use Your Biological Material identified in Interrogatory No. 13 that did not result in a live birth, identify what You understand was the reason(s) for that result and the basis for Your understanding, including, but not limited to, the name of any Provider on whom You base Your understanding.

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and Harassment.   Plaintiff also objects that this Interrogatory calls for expert testimony and for information not within Plaintiff's personal knowledge or understanding.  Subject to these objections, Plaintiff responds that as to Biological Material that was stored in Tank 4 at PFC that did not result in a live birth, Plaintiff's understanding is that the storage freezer failure, caused by Defendants' conduct as alleged in the Second Amended Complaint and further set forth in discovery, expert reports, and other pleadings, substantially contributed to the result. Plaintiff's understanding is also supported by Plaintiff and his wife's post-incident discussions with Dr. Givens and an embryologist at PFC, who indicated that there may have been temperature differences between the two goblets where Plaintiffs' embryos were stored, due to the tank

PLAINTIFF C.D.'S RESPONSES TO DEFENDANT
CHART INC.'S INTERROGATORIES
3:18-CV-01586-JSC

1    failure.

2    **INTERROGATORY NO. 16:**

3          State whether You have ever donated or discarded, or directed anyone to donate or

4    discard, any cryogenically stored Biological Material.

5    **RESPONSE TO INTERROGATORY NO. 16:**

6          Plaintiff objects to this Interrogatory on the grounds of Privilege, Privacy, Relevance, and

7    Harassment. Subject to these objections, Plaintiff responds that as to Biological Material stored at

8    PFC: Yes.

9    **INTERROGATORY NO. 17:**

10         Describe any emotional distress that You claim to have experienced as a result of the

11   Incident.

12   **RESPONSE TO INTERROGATORY NO. 17:**

13         Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy.

14   Subject to objections, Plaintiff directs Propounding Party to his response to Interrogatory No. 5.

15   Furthermore, Plaintiff responds:  I was shocked when I learned of the March 4, 2018 incident and

16   have experienced devastation, panic, anxiety and severe emotional distress in the months that

17   have followed. My wife and I have since attempted to use the embryos that were preserved in

18   Tank 4 but none resulted in a successful pregnancy. Indeed, two were clearly not viable following

19   thawing and a third was not recommended for transfer though we tried anyway, unsuccessfully.

20   We attempted to transfer the remaining embryo, but the transfer was also not successful. We

21   continue to experience crippling grief in the wake of learning that our embryos were damaged by

22   the tank failure. Our loss is never far from our thoughts.

23   **INTERROGATORY NO. 18:**

24         Identify any treatment, medical or otherwise, that You have received for any

25   psychological or emotional distress that You claim to have experienced as a result of the Incident,

26   including, but not limited to, the type of treatment, the dates of such treatment, the names of the

27   Providers from whom You received such treatment, the name of any medications that You were

28   prescribed in connection with such treatment, and the outcome of such treatment.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy.  Subject to objections, Plaintiff responds: None.

**INTERROGATORY NO. 19:**

Identify any medical diagnoses that You have received in connection with any psychological or emotional distress that You claim to have experienced as a result of the Incident, including, but not limited to, the date of such diagnoses, the name of the Provider(s) who made such diagnoses, and the name of any medications that You were prescribed in connection with such diagnoses.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff objects to this Interrogatory on the grounds of Privilege and Privacy. Subject to objections, Plaintiff responds: None.

**INTERROGATORY NO. 20:**

With regard to any Biological Material that You allege to have been stored in Tank 4 on March 4, 2018, identify all payments made for such storage, including the dates of payment.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiff objects to this Interrogatory on the grounds that the information sought is available from other parties and/or is not within Plaintiff's possession, custody, or control. (Objection on the ground of "Custody.").  Subject to objections, Plaintiff responds: $600 to PFC in 2013 and yearly thereafter.

**INTERROGATORY NO. 21:**

Identify the total amount of expenses that You have incurred for any Fertility-Related Services identified in response to Interrogatory No. 4, including the dates on which you incurred such expenses.

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiff objects to this Interrogatory on the grounds of Relevance, Burden, Privacy. Subject to objections, Plaintiff responds:

| Date | Description | Amount |
|------|-------------|--------|

| 5/22/2013 | Southwest, flight to San Francisco | $651.60 |
|---|---|---|
| 5/22/2013 | Delta, flight from San Francisco home | $223.80 |
| 5/22/2013 | Delta, flight from San Francisco home | $223.80 |
| 7/1/2013 | Delta, for July flight | $511.60 |
| 7/1/2013 | Delta, for July flight | $511.60 |
| 7/25/2013 | Southwest, flight to San Francisco | $543.60 |
| 8/30/2013 | Southwest, 2 flights from San Francisco home | $1101.60 |
| May 2013 | Lodging | $480.0 |
| June 2013 | Meal expenses while in San Francisco for June | $257.61 |
| June 2013 | Lodging | $138.00 |
| July 2013 | Meal expenses while in San Francisco for July | $294.74 |
| July 2013 | Lodging | $1623.20 |
| August 2013 | Meal expenses while in San Francisco for August | $607.82 |
| August 2013 | Lodging | $1590.00 |
| September 2013 | Meal expenses while in San Francisco for September | $50.66 |
| 2013 | Fertility related medical costs | $21,718.74 |
| June-November 2013 | Vehicle expenses while in San Francisco for fertility related services | $1713.94 |
| 2018 | Vehicle expenses while in San Francisco | $2979.80 |
| 2018 | Lodging expenses while in San Francisco | $4129.24 |
| 2018 | Flights to San Francisco | $1813.48 |
| 2018 | Meals while in San Francisco | $651.64 |
| 2018 | Prescriptions | $155.89 |

**INTERROGATORY NO. 22:**

Describe any damages to which You allege You are entitled based upon the claims alleged in the Action, including a detailed computation of all components of those damages.

1

**RESPONSE TO INTERROGATORY NO. 22:**

2          Plaintiff objects to this Interrogatory on the grounds of Privilege.   Plaintiff also objects

3    that this Interrogatory calls for expert testimony and for information not within Plaintiff's

4    personal knowledge or understanding.  Subject to objections, Plaintiff responds that he, on behalf

5    of himself and the proposed class, seeks compensatory and punitive damages subject to proof.

6    Plaintiff's calculation of damages will depend on information to be received from Defendant in

7    discovery, as well as expert testimony. Plaintiff, on behalf of himself and the proposed class, also

8    seeks injunctive relief in the form of a preliminary and permanent injunction against Defendants.

9

10   Dated:  October 31, 2019                    By: _____
                                                  Adam B. Wolf (State Bar No. 215914)
11                                                Tracey B. Cowan (State Bar No. 250053)
                                                  **PEIFFER WOLF CARR & KANE, A**
12                                                **PROFESSIONAL LAW CORPORATION**
                                                  4 Embarcadero Center, Suite 1400
13                                                San Francisco, CA 94111Tel: (415) 766-3545
                                                  Fax: (415) 402-0058
14                                                awolf@pwcklegal.com
                                                  tcowan@pwcklegal.com
15

16                                                Elizabeth J. Cabraser (State Bar No. 083151)
                                                  Lexi J. Hazam (State Bar No. 224457)
17                                                Sarah R. London (State Bar No. 267083)
                                                  Tiseme G. Zegeye (State Bar No. 319927)
18                                                **LIEFF CABRASER HEIMANN &**
                                                  **BERNSTEIN, LLP**
19                                                275 Battery Street, 29th Floor
                                                  San Francisco, CA  94111-3339
20                                                Tel: (415) 956-1000
                                                  Fax: (415) 956-1008
21                                                ecabraser@lchb.com
                                                  lhazam@lchb.com
22                                                slondon@lchb.com
                                                  tzegeye@lchb.com
23

24

25

26

27

28

PLAINTIFF C.D.'S RESPONSES TO DEFENDANT
                                                  CHART INC.'S INTERROGATORIES
                                                  3:18-CV-01586-JSC

1

2

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)

3

**GIRARD SHARP LLP**
601 California Street, 14th Floor

4

San Francisco, CA 94108
Tel: (415) 981-4800

5

Fax: (415) 981-4846
dsharp@girardsharp.com

6

jelias@girardsharp.com

7

apolk@girardsharp.com

8

Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)

9

Steven M. Tindall (State Bar No. 187862)
Amy M. Zeman (State Bar No. 273100)

10

**GIBBS LAW GROUP LLP**

11

505 14th Street, Suite 1110
Oakland, CA 94162

12

Tel: (510) 350-9700
Fax: (510) 350-9701

13

ehg@classlawgroup.com
dsh@classlawgroup.com

14

smt@classlawgroup.com

15

amz@classlawgroup.com

16

*Counsel for Plaintiffs and Interim Class Counsel*

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Plaintiff C.D., verify subject to the penalty of perjury that the foregoing Objections and Responses to Defendant Chart's Interrogatories are true and correct to the best of my knowledge and belief.

Dated:   11/01/2019                    By: _____

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**