John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 4, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Place: Zoom |

**TABLE OF CONTENTS**

Page

I.    ARGUMENT IN REPLY ................................................................................................1

    A.  Plaintiffs Cannot Prove Their Manufacturing Defect Claim Without Expert Testimony.................................................................................2

    B.  Plaintiffs' Design Defect Claim Also Fails. ................................................................6

    C.  Plaintiffs Offered No Expert Testimony In Support of Any Negligence Theory Related to the Controller ..............................................................8

    D.  Chart is Entitled to Partial Summary Judgment on Portions of Plaintiffs' Damages Claims................................................................................11

II.    CONCLUSION..............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barker v. Lull Eng'g Co., Inc.*,
    (1978) 20 Cal. 3d 413 .................................................................................................6

*Broome v. Pavitt*,
    (1992) 5 Cal. App. 4th 1487 .......................................................................................2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................................2, 4

*Dumas v. Cooney*,
    235 Cal. App. 3d 1593 (1991) ..............................................................................13, 14

*Hernandez v. Badger Const. Equip. Co.*,
    28 Cal. App. 4th 1791 (1994) .....................................................................................9

*Hill v. Novartis Pharm. Corp.*,
    944 F. Supp. 2d 943 (E.D. Cal. 2013) ....................................................................13, 14

*Hill-Jones v. Gen. Elec. Co.*,
    2015 WL 12732713 (C. D. Cal. May 5, 2015) ............................................................5

*Howard v. Omni Hotels Mgt. Corp.*,
    (2012) 203 Cal. App. 4th 403 .....................................................................................6

*In re Johnson & Johnson Talcum Powder Cases*,
    37 Cal. App. 5th 292 (2019) .................................................................................12, 13

*Lunghi v. Clark Equip. Co.*,
    153 Cal. App. 3d 485 (1984) .......................................................................................9

*Merrill v. Navegar, Inc.*,
    26 Cal. 4th 465 (2001). ................................................................................................9

*Pfeifer v. John Crane, Inc.*,
    220 Cal. App. 4th 1270 (2013) ..................................................................................12

*Pierson v. Ford Motor Company*,
    445 Fed.Appx. 966 (9th Cir. 2011). ........................................................................3, 4

*Pruitt v. General Motors Corp.*,
    (1999) 72 Cal. App. 4th 1480 .....................................................................................7

*Saller v. Crown Cork & Seal Co., Inc.*,
    (2010) 187 Cal. App. 4th 1220 ..................................................................................6

*Simmons v. W. Covina Med. Clinic*,
    212 Cal. App. 3d 696 (1989) ....................................................................................13

*Soule v. General Motors Corp.*,
    (1994) 8 Cal. 4th 548 .................................................................................................6

*Stephen v. Ford Motor Co.*,
    (2006) 134 Cal. App. 4th 1363 .......................................................................4, 5, 6, 11

**RULES**

Cal. Civ. Code

    § 3294..........................................................................................................................4

## I. ARGUMENT IN REPLY

Chart's motion for summary judgment is premised primarily on three fundamental (and dispositive) issues with the Plaintiffs' claims: they cannot prove their claim alleging strict products liability based on a claimed manufacturing defect in the dewar without expert testimony; they cannot prove their claim alleging strict products liability based on a design defect in the dewar without expert testimony; and because they *have* no expert testimony related to the TEC 3000 controller, they cannot prove their negligent failure to recall or retrofit claim. In response, the Plaintiffs focus on a singular theme: that they need not offer any expert testimony in support of their claims. The Plaintiffs are incorrect.

A strict products liability claim must be premised on evidence establishing both the existence of a defect and a substantial probability that the alleged defect caused the plaintiff's alleged injury. The Plaintiffs argue that it is enough that they can offer evidence of a cracked weld at the fill port on Tank 4 and evidence that Chart's design specifications called for using a different weld. Even if Chart *could* offer that evidence – a matter very much in dispute – those two pieces of information do nothing to establish how or why the weld cracked; whether the weld cracked before or after Tank 4 failed; or whether the crack resulted from a manufacturing or design defect, as opposed to something else such as a metallurgical issue or user error.

Plaintiffs' lack of expert evidence related to the controller is even more problematic. They contend that, had Chart recalled or retrofitted the controller, the retrofitted controller would have alarmed when Tank 4 failed, alerting PFC to the issue and allowing lab workers time to transfer Tank 4's contents before it was damaged. Once again, this complicated piece of equipment cannot be so easily explained. First and foremost, the controller *did* alert PFC to a possible issue. Rather than investigate, Dr. Conaghan simply unplugged it – disabling the controller's failsafe alarm – and did nothing more. Second, with that in mind, there is no expert testimony about whether a reasonable manufacturer under similar circumstances would have recalled the product, or whether any alleged failure to recall was a substantial factor in causing the Plaintiffs' alleged harm. The Plaintiffs' assumptions are merely that: assumptions. Their

allegations and speculation cannot replace evidence. There is none to support their failure to recall or retrofit claim. Chart is entitled to summary judgment on Count III.

The Plaintiffs' response to Chart's final two arguments, seeking partial summary judgment on the Plaintiffs' claim for punitive damages and on Plaintiff G.H.'s claim for damages for the diminished possibility of success of a live birth, fails to offer more than hyperbolic argument. There is no evidence of malice, oppression, or fraud. Chart did not despicably or maliciously conceal controller-related issues from PFC. On the contrary, *PFC* never alerted *Chart* of any issues with the controller. As for G.H.'s damages claim, Chart's point is a straightforward one: claimed diminished likelihood of a successful live birth is not enough. G.H.'s odds of success of a live birth have *always* been less than 50 percent. Therefore, it is impossible to conclude that G.H.'s alleged injury is more likely than not the result of Chart's alleged negligence. To use the language cited by the Plaintiffs, it is impossible to know whether Chart's alleged negligence "contributed at all[.]" (Pls. Opp. at 33, ECF No. 673-4)(quoting *Broome v. Pavitt*, (1992) 5 Cal. App. 4th 1487, 1499).

The Plaintiffs' response arguments fail. Chart is entitled to summary judgment.

### A. Plaintiffs Cannot Prove Their Manufacturing Defect Claim Without Expert Testimony.

Plaintiffs argue that, regardless of this Court's ruling on Chart's motion to exclude Dr. Kasbekar's testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), they should be allowed to proceed to trial on their manufacturing defect claim. (Pls. Opp. at 20-22, ECF No. 673-4). "Expert testimony would certainly be helpful to the jury," they concede, "but it is not required." (Pls. Opp. at 22, ECF No. 673-4). Specifically, the Plaintiffs contend they can introduce evidence of a crack in Tank 4's interior weld; evidence that "Tank 4 failed as a result of its cracked weld[;]" and evidence that a manufacturing defect is "responsible for the crack." Their first point – that there existed a crack in Tank 4's interior weld – is true, but hardly speaks to causation without evidence of when, where, why, or how that crack occurred. The second two points are argument, not substantive evidence establishing defect or causation.

First, the Plaintiffs maintain that they can present evidence "showing a crack in Tank 4's interior weld." (Pls. Opp. at 21, ECF No. 673-4). That statement, however, does nothing to explain the timing or cause of the crack. Indeed, those questions – the how, when, and why of the crack – is the subject of extensive discussion and dispute among the disclosed experts in this case. Plaintiffs' entire case is premised on the idea that the incident resulted because of the crack, an idea based, in turn, exclusively on expert testimony. Dr. Kasbekar, Plaintiffs' engineering expert, assumed the crack occurred *prior* to the incident. (*See* Ringel Decl. Supp. Mot. Summ. J., Ex. D ("Kasbekar Report") at 60, ECF No. 646-8). Chart, in contrast, has provided opinions from a metallurgist, Ron Parrington, who concluded that the crack in the weld was a *consequence* of the incident, not the *cause* of the incident. (*See* Zeman Decl. Opp. Mot. Exclude, Ex. 6 ("Parrington Report") at 7, ECF No. 673-15). Mr. Parrington reached that conclusion based on his extensive education, background, and training, and only after analyzing and evaluating both Tank 4, itself, and possible causes of the incident. (Parrington Report, ECF No. 673-15).

That fundamental disagreement – about whether the crack in the weld was a cause of the incident or a consequence of the incident – cannot be resolved by a jury based on mere common experience and knowledge. It also cannot be resolved solely by evaluating the documents cited by the Plaintiffs, such as Chart documents evaluating "a *potential* cause of tank failure" (Pls. Opp. at 21, ECF No. 673-4, emphasis added); or documents in which a Chart distributor (not an expert in engineering or metallurgy, and not after extensive testing and analysis of Tank 4) suggests that an entirely different incident involving an entirely different tank showed "sign of an internal weld leak." (*Id*.). None of those documents establish the likely scientific cause of Tank 4's failure in this case; none of those documents excludes other possible causes of tank failure; nothing about that evidence proves the existence of a manufacturing defect.

In support of their theory, the Plaintiffs offer a single case: *Pierson v. Ford Motor Company*, an unpublished, non-precedential decision this Court made over a detailed and emphatic dissent. 445 Fed.Appx. 966 (9th Cir. 2011). In *Pierson*, plaintiff was permanently injured after an accident involving his rented, Ford Motor Company-manufactured van. 445

Fed.Appx at 967. During the accident, the van rolled, and the right-hand latch for the bench seat on which the plaintiff sat failed to hold, allowing it to rotate up and to the side as the van rolled. *Id*. at 968. At trial, the defendant sought to exclude testimony from plaintiff's biomechanics expert; the trial court denied the motion and the jury found for the plaintiff. *Id*. On appeal, the defendant argued that its *Daubert* motion should have been granted and, further, that the evidence did not show the van's design was a substantial factor in causing his injuries. *Id*. The appellate court affirmed, finding that the district court properly exercised its discretion in allowing the plaintiff's expert's testimony. *Id*. The Plaintiffs here point to *dicta* in that non-precedential case, in which the appellate court suggested that there was sufficient evidence to support the jury's verdict "even without the assistance of an expert." *Id*. The jury, the appellate court explained, had evidence of the rollover, that the latch on the bench seat failed to hold, and of where plaintiff's head hit the roof. *Id*. at 968-69.

The dissent (Smith, N.R., J.) emphasized two critical points. First, neither party argued the jury could determine causation "without the assistance of expert testimony." *Id*. at 969. The dissent emphasized: "The notion that this conclusion could be made without the assistance of expert testimony regarding accident reconstruction, latch strength, roof deformation, and biomechanics belies everything in the record." *Id*. Second, and relatedly, the dissent observed that the majority's *dicta* statement was belied by well-settled precedent: "It is well established under California law that a product liability case must be based on substantial evidence establishing both the defect and causation . . . and where the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." *Id*. (citing *Stephen v. Ford Motor Co.*, (2006) 134 Cal. App. 4th 1363, internal quotations and brackets omitted, ellipsis as in original).

The dissent is correct. Research shows no cases in which a California state or federal court has mentioned, much less adopted, the *dicta* expressed in *Pierson*. Instead, as the dissent noted, California cases have repeatedly reinforced the conclusion of *Stephen*: that where the causation issue is beyond the common experience of judges and jurors, causation can only be established through expert testimony. 134 Cal. App. 4th at 1373. In *Stephen*, plaintiff was

driving a Ford Explorer when she felt a vibration, lost control of the vehicle, and crashed into a center highway divider. 134 Cal. App. 4th at 1365. An investigation showed that the vehicle's rear right tire was still inflated but the tread was gone. *Id*. at 1366. The plaintiff sued two defendants, Firestone (the tire manufacturer) and Ford (the vehicle manufacturer) in strict products liability and negligence, alleging the tire and vehicle were defectively designed. *Id*. The trial court barred plaintiff's experts, then granted defendants' motions for nonsuit, finding that without an expert, plaintiff could not present a *prima facie* case of strict products liability or negligence. *Id*. at 1367. The trial court reasoned that without an expert, plaintiff could not show the applicable standard of care, that the defendants fell below it, that the products were a substantial factor in causing her injuries, that the designs presented a substantial risk of harm, or that there were feasible alternative designs. *Id*. The appellate court affirmed, pointing to a long line of California precedent requiring expert testimony to establish both defect and causation when the "complexity of the causation issue is beyond common experience[.]" *Id*. at 1373 (collecting cases); *see id*. at 1376. As to Firestone, the appellate court explained, plaintiff's theory "about the tire failure is based on the tire's chemical characteristics and the supposedly defective 'recipe' used by Firestone in the manufacturing process – a theory plainly beyond the common experience of both judges and jurors." *Id*. at 1373.

That explanation is particularly useful when considering the facts of this case. In their opposition, Plaintiffs maintain that they need no expert testimony to support their theory of a manufacturing defect, because "*at least one reasonable inference* that can be drawn from PFC's testimony, the physical evidence, and Chart's own records is that Tank 4 suffered an overnight vacuum failure and began imploding due to a defective weld." (Pls. Opp. at 23, ECF No. 673-4, emphasis added). Essentially, Plaintiffs argue that they can establish a manufacturing defect even without expert testimony because a jury *might agree* that the weld cracked before the incident. That mere possibility may be enough to survive a motion to dismiss at the pleadings phase, as was the case in the unpublished authority the Plaintiffs cite in support of their theory. *See Hill-Jones v. Gen. Elec. Co.*, 2015 WL 12732713 (C. D. Cal. May 5, 2015) (denying

1  defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6)).  It is not enough here, where the
2  issue is summary judgment.
3     Plaintiffs' argument is akin to the *Stephen* plaintiff arguing a jury could have found the
4  existence of a manufacturing defect simply based on the fact that the tire tread separated from the
5  tire.  Their burden is not so light.  The *Stephen* plaintiff was required to offer evidence of *why* the
6  tread separated from the tire, something she could only prove by explaining the chemical
7  composition of the products used and the related manufacturing process.  134 Cal. App. 4th at
8  1373-74.  Here, it is not enough for Plaintiffs to argue simply that the weld cracked:  they must
9  offer a scientific explanation for when it cracked, why it cracked, and how it cracked. That is a
10 complicated question that implicates broad concepts of physics and specific principles of
11 engineering, metallurgy, and chemistry.  It cannot be evaluated without expert testimony.

   **B.     Plaintiffs' Design Defect Claim Also Fails.**

      For similar reasons to those discussed above, Chart is entitled to summary judgment on
Plaintiffs' second cause of action, alleging strict liability based on a design defect.  The parties
agree that defective design can be established under two theories:  "(1) the consumer
expectations test, which asks whether the product performed as safely as an ordinary consumer
would expect when used in an intended and reasonably foreseeable manner; or (2) the
risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of
danger inherent in the design." *Saller v. Crown Cork & Seal Co., Inc.*, (2010) 187 Cal. App. 4th
1220, 1232 (*see also* Pls. Opp. at 23-25, ECF No. 673-4).

      As a preliminary matter, for all the reasons discussed above, assuming that this Court
grants Chart's motion to bar Plaintiffs' experts, Chart will be entitled to summary judgment on
Plaintiffs' claims using the risk/benefit test.  There is no dispute that claims alleging design
defect using the risk/benefit test involve "citing to technical and mechanical details in obscure
components of a mechanism or complex circumstances of an accident," *Howard v. Omni Hotels
Mgt. Corp.*, (2012) 203 Cal. App. 4th 403, 423; *see also Soule v. General Motors Corp.*, (1994) 8
Cal. 4th 548; *Barker v. Lull Eng'g Co., Inc.*, (1978) 20 Cal. 3d 413 – i.e., expert testimony.  Chart

has offered ample expert testimony from its cryogenic engineer, Franklin Miller; and from Mr. Parrington, its metallurgist, to establish there existed no design defect in Tank 4.

Moreover, the consumer expectations test cannot be used to evaluate the merits of the parties' complicated, deeply technical evidence. In their opposition papers, the Plaintiffs argue that the complexity of the product at issue here is not dispositive; rather, the question for the jury concerns "whether ordinary users of cryogenic containers would have minimum expectations about their safety for storing biological tissue and whether the circumstances of Tank 4's failure permit an inference that those minimum expectations are not met." (Pls. Opp. at 24, ECF No. 673-4). The Plaintiffs would have this Court conclude that all that matters is the failure of the tank, not the design components of the tank or their theory about why those components were defectively designed. Their design defect claim is not that simple.

California reserves the consumer expectations test for only those cases "in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and thus is defective *regardless of expert opinion about the merits of the design*." *Pruitt v. General Motors Corp.*, (1999) 72 Cal. App. 4th 1480, 1483 (internal quotations omitted, emphasis in original). As the *Pruitt* court observed, the California Supreme Court has offered examples of the limited circumstances in which the consumer expectations test might apply, such as "automobiles that explode while idling at a stoplight or roll over and catch fire in a two-mile-per-hour collision." *Id*. at 1484. Essentially, the *Pruitt* court explained, it is limited to *res ipsa*-like situations that have no need for any analysis of "a general standard to determine defective design." *Id*. (internal quotations and citations omitted). The consumer expectations test cannot be used in situations in which the challenged design is not part of the everyday experience of the consuming public, where "[j]urors are in need of expert testimony to evaluate the risks and benefits of the challenged design." *Id*.

Here, the Plaintiffs argue that this Court should agree that no expertise is necessary to evaluate their design defect claim. All that matters, they argue, is that the tank failed. They ignore that there is not even agreement about *how* the tank in this case failed. As explained above, the Plaintiffs assume that a cracked weld caused the tank to lose its vacuum insulation

and the inner tank to implode. But, Chart has offered expert testimony disputing that cause, reasoning that the cracked weld was actually a result, not a cause, of the tank's alleged failure. (*See* Zeman Decl. Opp. Mot. Exclude, Ex. 6 at 7, ECF No. 673.15). Plaintiffs also maintain that the weld joint, itself, is the design defect at issue in this case, because the weld "was unable to withstand long-term exposure to normal thermal stresses and eventually cracked." (3d Am. Compl. at 1, ECF No. 578). Again, that is the Plaintiffs' *theory* of what happened, but without expert testimony, it would be impossible for a jury to look at the tank, look at the weld, and conclude that the weld suffered a progressive fatigue fracture, much less understand that based on the engineering, metallurgy, physics, and chemistry involved, Chart allegedly negligently failed to use a full-penetration weld, as opposed to the partial-penetration weld, in the design of the tank. (*See* Pls. Opp. at 10, ECF No. 673-4).

The consumer expectations test does not apply in this case. The Plaintiffs are not entitled to make that argument to the jury; and, if the Plaintiffs have no expert testimony to support their design defect claim, Chart is entitled to summary judgment on Count II in its entirety.

### C. Plaintiffs Offered No Expert Testimony In Support of Any Negligence Theory Related to the Controller.

Chart is also entitled to summary judgment on Plaintiffs' third cause of action, alleging negligent failure to recall Tank 4's controller. As Chart explained in its motion for summary judgment, the Plaintiffs have offered no expert testimony about the alleged failure of the controller, that Chart negligently failed to recall the controller, or – crucially – any causal connection between the alleged controller issue and Tank 4's failure. In response, Plaintiffs argue at length that the controller was defective because it could lose the ability to accurately monitor LN2 levels, and Chart owed the Plaintiffs a duty to recall or retrofit the controller. (Pls. Opp. at 26-30, ECF No. 673-4). The Plaintiffs add, almost as an aside, that the controller caused their injuries because "a functional controller would have alerted them that Tank 4's liquid nitrogen levels had dropped below 6.5 inches and afforded them time to transfer Plaintiffs' eggs and embryos to a backup tank before irreversible damage occurred." (Pls. Opp. at 30, ECF No. 673-4). That contention, however, fails to address the fundamental problem with their

controller-related claim: there is no expert testimony explaining how the alleged malfunction of the *controller* relates to or concerns the alleged *tank failure*.

The Plaintiffs' negligence claim is no different from any other: to articulate a *prima facie* case, they must identify a legal duty owed them by Chart, that Chart breached that duty, and that the breach was a proximate or legal cause of their injuries. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001). The Plaintiffs focus much of their response on their assertion that Chart owed them a *duty* to recall the controller – an argument entirely premised on the Plaintiffs' claim that Chart knew the controllers were defective. (Pls. Opp. at 26-28, ECF No. 673-4). The problem with the Plaintiffs' position is there exists no expert testimony of record establishing that the controllers *were* defective, *how* the controllers were defective, or *whether* the controllers should have been the subject of a recall or mandatory retrofitting – thereby making it impossible to identify whether any legal duty was triggered in this case.

In support of their view, the Plaintiffs cite two cases, *Lunghi v. Clark Equip. Co.*, 153 Cal. App. 3d 485, 494 (1984) and *Hernandez v. Badger Const. Equip. Co.*, 28 Cal. App. 4th 1791, 1827 (1994), which both suggest that in certain situations, based on the specific facts of a case, a defendant may owe a duty "to conduct an adequate retrofit campaign." The point in both cases is simply that regardless of whether a jury found for a defendant in strict liability based on a design or manufacturing defect, a jury could still, based on specific evidence, find against a plaintiff based on general negligence principles. *Hernandez*, 28 Cal. App. 4th at 1827; *Lunghi*, 153 Cal. App. 3d at 494. Neither is relevant to these facts, both because Chart does not dispute the existence, under California law, of a failure to recall claim; and, because the holdings are irrelevant to *these* facts. Unlike *Hernandez* and *Lunghi*, the alleged design and manufacturing defect here (the weld at the bottom of the tank) is entirely different from the allegedly defective product at issue in the negligence claims (the controller).

More problematic than Plaintiffs' failure to identify a specific duty based on the facts of this case is their failure to identify any evidence of a *breach* of any duty. Once again, the Plaintiffs base their argument, this time that Chart breached some sort of duty, on allegation and assumption, rather than specific evidence. They claim that Chart failed to "recall or retrofit Tank

4 after learning that its electronic controller suffered from the dangerous "SN=0" defect." (Pls. Opp. at 25, ECF No. 673-4). On the contrary, it is undisputed that when Tank 4's controller alarmed on February 15, 2018 – 17 days before the incident at issue in this case – Dr. Conaghan decided to unplug the controller, rather than contact Chart about the issue. (Ringel Decl., Ex. B ("Conaghan Dep. I") at 78:9-20, 87:16-88:23, ECF No. 646-6). Indeed, *no one* from PFC contacted Chart after Dr. Conaghan unplugged the controller, and there is nothing in the record to suggest that Chart had any information about issues with Tank 4's controller before the February 15, 2018 incident. Simply put, Chart had no knowledge of any issues with this controller.

      The Plaintiffs also maintain that Chart knew generally that its TEC 3000 controllers had a "defect that causes them to lose the ability to accurately monitor liquid nitrogen levels, and knew it was important to take action immediately." (Pls. Opp. at 26, ECF No. 673-4) (internal citations and quotations omitted). While the Plaintiffs accurately quote the email identified, they do *not* accurately identify the scope of the alleged issue with the controllers. Chart denies widespread issues with the controller, and Chart was always responsive when issues were reported. If customers advised Chart of controller issues, Chart provided a new controller or worked with the customer to repair the original controller. (Zeman Decl. Opp. Motion Exclude, Ex. 2 ("Leaphart Report") at 34, ECF 671-3). Plaintiffs have offered no expert testimony to explain the scope of the alleged controller problem, the cause of the alleged controller problem, how that problem affected the performance of the tanks, themselves, about industry standards or requirements, or that the issue here was so widespread that Chart had an obligation to take more aggressive action related to recall or retrofitting in order to prevent injury. There is only the barest of claims in Plaintiffs' third amended complaint: "Tank 4's electronic controller – which monitors liquid nitrogen levels and temperature – malfunctioned shortly before the incident. *To the extent that this malfunctioning controller contributed to the harm suffered by Plaintiffs*, Chart is responsible for that as well." (3d Am. Compl. at 12, ECF No. 578, emphasis added). That is not enough. In short, there is no evidence that Chart breached any obligation to the Plaintiffs to recall the controllers.

Most importantly, the Plaintiffs have offered no expert testimony to explain how the issue with the controller was a substantial *cause* of their injuries – injuries they specifically allege resulted from the failure of Tank 4, *not* from the failure of the *controller*. Even the Plaintiffs concede that the "issue for the jury is not whether Chart's TEC 3000 controller performed as expected, but whether Chart's cryogenic container performed as expected." (Pls. Opp. at 24, ECF No. 673-4).

Setting that problem aside, the evidentiary requirements for their negligent failure to recall or retrofit claim are no different from the evidentiary requirements for their strict liability claims: to the extent the Plaintiffs are arguing that the alleged failure of the controller caused them injury, that causation issue is well beyond the common experience of judges or jurors. Expert testimony is required to explain the functioning of the controller, the relationship between the controller and the Tank 4, and why the Plaintiffs believe the controller error was a substantial cause of Tank 4's failure and the Plaintiffs' alleged damages. *See Stephen*, 134 Cal. App. 4th at 1373. The Plaintiffs have not identified the applicable standard of care associated with recalling or retrofitting the controller, that Chart fell below that applicable standard of care, that the controller attached to Tank 4 was substantial factor in causing the Plaintiffs' alleged injuries, that the controller's design presented a substantial risk of harm, or that there were feasible alternative designs. *See id*. at 1367. Those are not the only issues a jury would be required to consider here, in a case in which PFC disconnected the controller and disabled its failsafe functions *weeks before* Tank 4 failed. But, without that expert testimony, a jury cannot evaluate causation at all, much less in tandem with those questions about intervening and superseding causation.

### D. Chart Is Entitled to Partial Summary Judgment On Portions of Plaintiffs' Damages Claims.

Chart's final two arguments concern the scope of Plaintiffs' damages claims. They are not entitled to exemplary damages in this case for any sort of allegedly negligent failure to recall, and G.H. is not entitled to seek damages for her reduced odds of success of a live birth. In response, the Plaintiffs maintain that Chart "engaged in intentional concealment as well as in despicable conduct" by "hiding the TEC 3000 defect from its customers and repeatedly failing to

retrofit or recall affected cryogenic tanks[.]" (Pls. Opp. at 30, ECF No. 673-4). That conduct, the Plaintiffs argue, demonstrates a "shocking indifference to the health of its customers' valuable biological samples." (Pls. Opp. at 31, ECF No. 673-4).

It must be emphasized: the Plaintiffs' exemplary damages claim is part of its failure to recall or retrofit claim, only. Said differently, they seek punitive damages only as part of their claims related to the controller. They are not entitled to *any* such damages, much less for punitive damages, arising out of that claim – indeed, the Plaintiffs have not offered any proof that issues with the controller caused them any injury. That is important, as it brings into even starker relief the distinction between this case, in which they allege strict liability claims based on the failure of Tank 4, and the case they point to in support of their punitive damages claim. The Plaintiffs analogize Chart's controller-related conduct (i.e., Chart's decision not to recall or retrofit every controller attached to any Chart tank) to the conduct of an asbestos manufacturer, John Crane, Inc., which failed to disclose, for decades, the significant and serious dangers of asbestos to every individual who came into contact with it, decades of data demonstrating the hazards of the product and its link to certain types of cancer. *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1282 (2013).

There is no evidence of such behavior. Chart denies widespread issues with the controller, and the evidence shows that, when customers have reported controller issues, Chart has acted swiftly to address and resolve the issue. Further, the Plaintiffs have offered no expert evidence linking any issues with the controller to the alleged failure of Tank 4. More importantly, though, nothing about the Plaintiffs' argument satisfies California's requirement that a plaintiff show, by clear and convincing evidence, that Chart acted with malice, willful and conscious disregard, or oppression. Cal. Civ. Code § 3294. Conscious disregard exists only "where the defendant is aware of the probable dangerous consequences of his or her conduct and he or she willfully fails to avoid such consequences." *In re Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 333 (2019) (internal citations and quotations omitted). The *Johnson & Johnson* court added: "Despicable conduct is conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary

decent people. Such conduct has been described as having the character of outrage frequently associated with crime." *Id*. The Plaintiffs have not described such conduct here. The testimony does not support any such argument, and the evidence does not satisfy the higher standard of proof required for such claims.

Finally, Chart is entitled to summary judgment on Plaintiff G.H.'s claim for damages. Indeed, in their response, Plaintiffs *admit* G.H.'s chances of giving live birth using her frozen eggs was *always* less than 50 percent. (Pls. Opp. at 33, ECF No. 673-4). As a result of Plaintiffs' admission, there is no dispute that G.H., regardless of the alleged Tank 4 failure, had a less than 50 percent possibility of achieving a live birth. Therefore, summary judgment dismissal of G.H.'s claim for damages is warranted.

G.H. cannot recover, as a matter of California law, for the diminished possibility of achieving a live birth when she only ever had a mere possibility (a 17 percent chance) of achieving live birth in the first place. *See Simmons v. W. Covina Med. Clinic*, 212 Cal. App. 3d 696 (1989) and *Dumas v. Cooney*, 235 Cal. App. 3d 1593 (1991) (both rejecting the "lost chance" theory of recovery and holding that where the chance of avoiding the adverse outcome was never more than a mere possibility (less than 50 percent chance), it could not be probable that defendants' alleged negligence caused the adverse outcome).

The *Dumas* court recognized the issue of causation is difficult in cases where a plaintiff alleges a defendant's misconduct reduced the chance of a more favorable outcome. *Dumas*, 235 Cal. App. 3d at 1605-06. However, *Dumas* rejected a relaxed standard of causation even where it would deprive a plaintiff of recovering damages for the diminished chance of survival caused by a defendant's negligence, where the plaintiff had less than 50 percent chance of survival in the first place. *Id*. at 1606-08 (citing *Simmons v. W. Covina Med. Clinic*, 212 Cal. App. 3d at 704, which rejected the plaintiff's argument that "it is unfair and unjust to apply the traditional medical probability test of causation to cases such as this, where the compensable injury is a lost chance rather than a tangible physical injury"). Fundamentally, California does not recognize a "lost chance" theory of recovery. *See Hill v. Novartis Pharm. Corp*., 944 F. Supp. 2d 943, 959-60 (E.D. Cal. 2013) (finding California courts have declined the theory of lost chance).

Despite that well-established precedent, and Plaintiffs' alleged injury (*see* 3d Am. Compl. at ¶¶ 44-45, ECF No. 578), Plaintiffs now attempt to reframe G.H.'s injury and argue G.H. can recover for the alleged Tank 4 failure because it diminished or reduced G.H.'s chances of having a live birth using her frozen eggs, from 17 percent to 2 percent. (Pls. Opp. at 33, ECF No. 673-4). That shift does not change the fundamental problem with G.H.'s alleged injury: regardless of any diminished chance of a live birth because of Tank 4's alleged failure, her odds of success of a live birth were *never* greater than 50 percent, precluding the possibility of recovery under California law.

Ultimately, Plaintiffs admission that G.H.'s greatest chance of her frozen eggs producing a live birth was never greater than 17 percent precludes recovery. Plaintiffs' argument that G.H. can recover for a lost chance from 17 percent to 2 percent is the exact argument rejected by California courts declining to adopt the "lost chance" doctrine. *See Dumas*, 235 Cal. App. 3d at 1606-10; *Hill*, 944 F. Supp. 2d at 959-60. Therefore, G.H. cannot recover under California law, and Chart is entitled to summary judgment on G.H.'s claim.

In sum, Chart is entitled to summary judgment. The Plaintiffs cannot proceed without expert testimony in support of their strict liability claims alleging a crack in the bottom weld on Tank 4, and the Plaintiffs cannot proceed without expert testimony establishing causation on their negligent failure to recall or retrofit claim. In further alternative, Chart is entitled to partial summary judgment, because the Plaintiffs are not entitled to any exemplary damages in this case, and G.H. is not entitled to damages for loss of chance.

## II. CONCLUSION

For the foregoing reasons, Chart respectfully requests that this Court grant its Motion for Summary Judgment.

Dated: February 12, 2021.                    Respectfully submitted,

By: /s/ *Kevin M. Ringel*
John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*