UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 18-cv-01586-JSC<br><br>**ORDER RE: CHART'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 628 |

Plaintiffs bring product liability and failure to recall claims against Chart Industries following a March 2018 incident involving a Chart-manufactured cryopreservation tank which was storing Plaintiffs' eggs and embryos. Chart's motion for summary judgment is now pending before the Court.[1] (Dkt. No. 628.) Having considered the parties' briefs and having had the benefit of oral argument on March 4, 2021, the Court DENIES the motion for summary judgment. Chart has failed to show that it is entitled to judgment in its favor as a matter of law on any of Plaintiffs' claims.

## BACKGROUND

Plaintiffs obtained fertility services from Pacific Fertility Center (PFC)[2], and in particular, as relevant here, cryopreservation of their eggs and embryos. On March 4, 2018, PFC's laboratory director, Dr. Joseph Conaghan, discovered that Tank 4 which contained 2,500 embryos and 1,500 eggs—including Plaintiffs' eggs and embryos—had lost liquid nitrogen. As a result of this

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 553.)
[2] The Court uses PFC throughout this Order to refer to Pacific Fertility Center and all its associated entities and medical professionals, including Prelude Fertility, Inc., and Pacific MSO, LLC.

incident, Plaintiffs filed the underlying action against Chart alleging manufacturing and design defects, as well as failure to recall.[3]  Because Chart's motion for summary judgment does not depend on resolving whether there is a genuine factual dispute regarding Plaintiffs' claims for relief—there are many—but rather legal questions underlying Plaintiffs' claims, the Court does not recite the summary judgment evidence here.

**DISCUSSION**

Chart moves for summary judgment on each of Plaintiffs' claims. It contends that Plaintiffs' strict products liability claims based on a manufacturing defect and a design defect fail because Plaintiffs have failed to offer admissible expert opinion on the issue of causation for either claim and because the consumer expectations test is inapplicable in this context.  Next, it insists that Plaintiffs' failure to recall claim fails because Plaintiffs have not offered expert testimony regarding any defect with the TEC 3000 controller.  Finally, Chart maintains that even if these claims go forward, Plaintiffs are not entitled to exemplary damages and Plaintiff G.H. is not entitled to any damages based on her reduced odds of a successful live birth.

**A. Strict Liability Claims**

Chart's motion for summary judgment on Plaintiffs' strict liability claims is based, in large part, on its argument that Plaintiffs' expert, Dr. Kasbekar, should be excluded under *Daubert*.  The Court, however, has denied that motion finding in part, that Chart's arguments largely go to the weight to be given Dr. Kasbekar's opinion rather than its admissibility.  Accordingly, to the extent that Chart's motion for summary judgment is based Plaintiffs not having admissible expert testimony on the issue of causation, the motion is denied.

Chart's secondary argument, that at a minimum summary judgment should be granted on Plaintiffs' consumer expectation test theory of liability fares no better.  Chart insists that the product at issue—the cryogenic tank—is too complex a product for the consumer expectation test to apply.  "The consumer expectations test is reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated minimum safety

---

[3] The PFC entities were also named as defendants but the claims as to them have been compelled to arbitration.

assumptions, and is thus defective *regardless of expert opinion about the merits of the design*." *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994) (emphasis in original). Chart insists that the functioning of the cryogenic tank—particularly, where, as here, the controller had been unplugged—is beyond the everyday understanding of an average juror. The Court disagrees.

"[D]epending on the circumstances of a particular case, the consumer expectation test can apply to complex or technical products, even where the use of these products may not be within the common knowledge of jurors." *Demara v. The Raymond Corp.*, 13 Cal. App. 5th 545, 561 (2017). Indeed, *Soule* noted that "appropriate use of the consumer expectation test is not necessarily foreclosed simply because the product at issue is only in specialized use, so that the general public may not be familiar with its safety characteristics. If the safe performance of the product fell below the reasonable, widely shared minimum expectations of those who do use it, perhaps the injured consumer should not be forced to rely solely on a technical comparison of risks and benefits. By the same token, if the expectations of the product's limited group of ordinary consumers are beyond the lay experience common to all jurors, expert testimony on the limited subject of what the product's actual consumers do expect may be proper." *Soule*, 8 Cal. 4th at 568 n.4.

Thus, the question is whether Tank 4 performed as safely as its typical *user* would have expected. *See Demara*, 13 Cal. App. 5th at 559 ("[T]he consumer expectation test is not based on minimum safety assumptions or expectations of consumers in general regarding a product but rather, on the minimum safety assumptions or expectations of the product's users." ) (internal citation and quotation marks omitted). To this end, Plaintiffs have offered evidence from Dr. Wininger, an embryologist who has been an IVF lab director for more than 30 years and has designed five IVF labs, regarding his expectations as an ordinary user of cryogenic tanks. According to Dr. Wininger's report: "Users of cryogenic tanks, like myself, [] do not expect them to suffer a sudden and total loss of vacuum insulation (as opposed to a gradual degradation of the vacuum layer). Nor do they expect that the tank could consume more than 14 inches of liquid nitrogen in less than 24 hours—which is what happened to Tank 4." (Dkt. No. 671-15, Wininger Report at ¶ 39.) Because Plaintiffs have offered evidence of how an ordinary user of a cryogenic

3

tank would expect it to perform, and because Chart has not established that the issue is so complex that it is beyond a juror's understanding even with the benefit of expert testimony, or that it is so complex that an ordinary user of the tank would not have any assumptions about the minimum safety of the tank, *see Vanier v. Bagttery Handling Systems, Inc.*, 2007 WL 2688731 *7 (E.D. Cal. Sep. 12, 2007), Chart has not shown as a matter of law that the consumer expectation test is inapplicable here.

Chart's reliance on *Stephen v. Ford Motor Co.*, 134 Cal. App. 4th 1363, 1373 (2005), is misplaced. The court there excluded plaintiff's expert and concluded that without expert testimony on the issue of causation, nonsuit on plaintiff's manufacturing defect product liability claim was proper. *Id.* The court also held in a footnote that the plaintiff could not prove her design defect claim though the consumer expectation test based on circumstantial evidence that there was design defect and that the vehicle performed below the standard of care because an expert was necessary "to balance the benefits of design against the risk of danger." *Id.* at 1371 n.6. To the extent Chart reads *Stephen* to hold that if expert testimony is required to explain to jurors what an ordinary user of the product would expect the consumer expectations test cannot apply, such a holding is foreclosed by *Soule*. *Soule*, 8 Cal. 4th at 568 n.4. ("if the expectations of the product's limited group of ordinary consumers are beyond the lay experience common to all jurors, *expert testimony on the limited subject of what the product's actual consumers do expect may be proper*") (emphasis added). To the extent it reads *Stephen* to implicitly mean that a plaintiff cannot proceed on a consumer expectation theory and a risk/benefit theory at the same time, *Demara* explicitly answers that in the negative. 13 Cal. App. 5th at 557.

Accordingly, Chart's motion for summary judgment on Plaintiffs' strict products liability claims is denied.

### B. Failure to Recall

Chart contends that it is entitled to summary judgment on Plaintiffs' negligent failure to recall claim because Plaintiffs have not offered expert testimony regarding the alleged failure of the controller, Chart's alleged negligence in failing to recall the controller, or suggesting a causal connection between the controller issue and Tank 4's failure. Chart notes that Plaintiffs' experts

posit that it was the tank—not the controller—which caused Plaintiffs' injuries.

Plaintiffs do not dispute that they "contend the most immediate cause of the March 4th incident was a crack in Tank 4's defective weld," but they contend that an injury can have more than one contributing cause. (Dkt. No. 673-4 at 30:1-2.) Their theory is that if Chart had retrofitted the controller prior to the incident, then it would have alerted PFC staff that the liquid nitrogen level was dropping on March 3/4 and they would have transferred the eggs and embryos to a backup tank thus avoiding the injury.

For their negligent failure to recall claim, Plaintiffs must prove: (1) that Chart manufactured the controller; (2) that Chart knew or reasonably should have known that the controller was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (3) that Chart became aware of this defect after the controller was sold; (4) that Chart failed to recall/retrofit or warn of the danger of the controller; (5) that a reasonable manufacturer under the same or similar circumstances would have recalled/retrofitted the controller; (6) that Plaintiffs were harmed; and (7) that Chart's failure to recall/retrofit the controller was a substantial factor in causing Plaintiffs' harm. *See* California Jury Instruction, CACI 1223.

As a threshold matter, Chart identifies no case—and the Court is aware of none—which holds that to prove this claim and, in particular, the fifth element, Plaintiffs must rely on expert testimony. *See United States v. Mirama Enterprises, Inc.*, 185 F. Supp. 2d 1148, 1160 (S.D. Cal. 2002) ("The Court does not require expert testimony to find that a reasonable person could conclude that the juicer contained a defect, either in the actual unit or in the accompanying instructions."); *see also Yu Lian Tan v. Coast Crane Co.*, No. C-10-3570 MMC, 2013 WL 749514, at *2 (N.D. Cal. Feb. 27, 2013) ("[defendant] has not cited to any authority suggesting that such question of causation is, in this instance, a matter exclusively within the purview of experts."). Rather, it is "[w]here the complexity of the causation issue is beyond common experience, [that] expert testimony is required to establish causation." *Garbell v. Conejo Hardwoods, Inc.*, 193 Cal. App. 4th 1563, 1569 (2011).

Drawing all reasonable inferences in Plaintiffs' favor, the record supports a reasonable inference that Chart knew that its TEC 3000 controllers suffered from a "SN=0" defect which

1  caused the controllers to lose the ability to accurately monitor the liquid nitrogen levels, and that
2  over two years before the Tank 4 incident Chart had identified this as something about which it
3  needed to "take action immediately."  (Dkt. No. 675-16, 2/29/16 email; Dkt. No. 675-20, 11/7/17
4  email.)  A trier of fact could also find that while Chart had a retrofit available, it did not notify
5  PFC or other customers of the issue, offer to retrofit PFC or others' controllers, or issue a recall
6  notice to PFC or other customers.  (Dkt. No. 671-42, Junnier Depo, at 95-96; Dkt. No. 675-19,
7  Wade Depo. at 104, 128-130; Dkt. No. 672-2, Conaghan Depo. at 64.)  Finally, the record also
8  supports the inference that had the controller worked, Dr. Conaghan would not have unplugged it
9  and—as designed—it would have alerted PFC to the low liquid nitrogen level which preceded the
10 March 4 incident.  These inferences are not "beyond common experience."  *Garbell*, 193 Cal.
11 App. 4th at 1569.  Further, drawing all inferences in Plaintiffs' favor, there is also evidence from
12 which a reasonable jury could infer that Chart had a duty to act under these circumstances.  *See*
13 *Lunghi v. Clark Equip. Co.*, 153 Cal. App. 3d 485, 494 (1984) ("Clark's knowledge of the injuries
14 caused by these features imposed a duty to warn of the danger, and/or a duty to conduct an
15 adequate retrofit campaign.").

16  Finally, with respect to causation, as Plaintiffs note, they are not required to prove that the
17 controller alone caused the injury, but rather, that it contributed to the damage to Plaintiffs' eggs
18 and embryos.  "A defendant's negligent conduct may combine with another factor to cause harm;
19 if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the
20 defendant is responsible for the harm; a defendant cannot avoid responsibility just because some
21 other person, condition, or event was also a substantial factor in causing the plaintiff's harm; but
22 conduct is not a substantial factor in causing harm if the same harm would have occurred without
23 that conduct."  *Yanez v. Plummer*, 221 Cal. App. 4th 180, 187 (2013).

24  Ultimately, Chart's arguments go to the weight and persuasiveness of Plaintiffs' evidence.
25 Plaintiffs have introduced sufficient factual matter to preclude a finding of summary judgment
26 with respect to their failure to recall/warn claim.

27 **C.  Damages**

28  Chart contends that it is entitled to summary judgment on Plaintiffs' exemplary (punitive)

1  damages claim and on G.H's claim for damages based on her reduced odds of a successful live
2  birth.

### 1. Punitive Damages on the Failure to Recall Claim

Under California Civil Code 3294(a), "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Malice is defined for purposes of this section as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c).

Plaintiffs contend that Chart engaged in intentional concealment as well as despicable conduct "by hiding the TEC 3000 defect from its customers and repeatedly failing to retrofit or recall the affected cryogenic tanks." (Dkt. No. 673-4 at 34:19-21.) Chart insists that Plaintiffs cannot show that it acted with conscious disregard because it denies that there were widespread issues with the controller and that Chart acted swiftly to resolve any issues customers raised regarding the controller. Plaintiffs, however, have identified evidence which could support a contrary finding. That is, that Chart was aware of the defect, that it took no action to address the defect unless the issue was raised by a customer, and that it was aware that sudden changes in the liquid nitrogen level (which the controller should alert for) could cause damage and loss of function to the freezer. (Dkt. No. 671-12 at 5.) "Conscious disregard for the safety of another may be found 'where the defendant is aware of the probable dangerous consequences of his or her conduct and he or she willfully fails to avoid such consequences.'" *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 332 (2019), review denied (Oct. 23, 2019). Chart is not entitled to summary judgment on Plaintiffs' punitive damages claim. However, as discussed at oral argument, the Court intends to bifurcate the issue of punitive damages.

### 2. G.H's Damages Claim

Chart insists that G.H cannot recover any damages as a matter of law based on her diminished possibility of achieving a live birth when she only had a 17 percent chance of

7

achieving a live birth even before the Tank 4 incident.  Plaintiff G.H. counters that that the injury is not giving birth, but rather, G.H's diminished possibility of achieving a live birth given both the March 4 incident and the fact that she is now 42 with diminished ovarian reserves and no longer a good candidate for egg preservation or IVF procedures. Under California law, "the wrongful act must be 'a substantial factor in bringing about'" the plaintiff's injury.  *Bromme v. Pavitt*, 5 Cal. App. 4th 1487, 1498 (1992).  Put differently, the injury must be "more likely than not" the result of the negligence.  *Id.* at 1499.  As a result, resolution of this dispute turns on accurately defining the injury for which G.H. seeks compensation and then determining whether the record supports a finding that it is more likely than not that Chart's conduct caused that injury.

The Court agrees that G.H. cannot recover damages for not being able to have a live birth as a result of the Tank 4 incident.  She cannot do so because it is not more likely than not that she would have been able to conceive with those eggs even if the incident had not occurred. *See Dumas v. Cooney*, 235 Cal.App.3d 1593 (1991) (rejecting the "lost chance" theory of recovery for negligence and hold that the plaintiff could not recover wrongful life damages when it was not more likely than not that the missed test would have discovered the abnormality); *see also Bromme*, 5 Cal. App. 4th at 1499 (holding that the plaintiff could not recover for the death of spouse due to delayed diagnosis because even if the diagnosis had occurred in a timely manner the spouse was more likely to die than survive).  But G.H. does not appear to be seeking such damages; instead, she is seeking emotional distress damages from learning that the eggs had been damaged by the Tank 4 incident.  (Dkt. No. 673-4 at 36:20-22.)

Chart does not, and cannot argue, that it is not more likely than not that her stored eggs were damaged.  (Dkt. No. 671-15, Wininger Report at ¶¶ 52-54; Dkt. No. 675-24 at Somkuti Report at ¶ 53; Dkt. No. 676-1, Jewell Report at ¶ 65.)  This probability of damage distinguishes the facts here from other cases where there was only a possibility of damage.  *See Dumas*, 235 Cal.App.3d at 1603; *Bromme*, 5 Cal. App. 4th at 1498; *Simmons v. W. Covina Med. Clinic*, 212 Cal. App. 3d 696 (1989).  Nonetheless, the Court observes that whether G.H. can obtain damages for emotional distress simply from her reduced chances of a live birth (17% versus 2%) appears foreclosed by *Dumas* as it is based solely on statistics.  235 Cal.App.3d at 1609. These

8

1  distinctions, however, will have to be made in connection with a motion in limine or at trial. As it
2  the evidence supports a finding that there are some emotional distress damages that G.H. suffered
3  as a result of the more likely than not damage to her eggs, Chart's motion for summary judgment
4  on G.H.'s claims must be denied.

## CONCLUSION

For the reasons stated above, Chart's motion for summary judgment is DENIED.  (Dkt. No. 628.)

**IT IS SO ORDERED.**

Dated:  March 8, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge