John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S MOTION *IN LIMINE* NO. 3: EGG AND EMBRYO BANKING AS "INSURANCE POLICY"**<br><br>Date:    April 29, 2021<br>Time:   2:00 p.m.<br>Judge:  Hon. Jacqueline Scott Corley<br>Place:  Zoom |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 29, 2021, at 2:00 p.m. before the Honorable Jacqueline Scott Corley, Defendant Chart Inc. will and does hereby move the Court for an order in *limine* barring Plaintiffs, their experts, and their counsel from offering any testimony, argument, or statement using the phrase "insurance policy" in reference to egg or embryo banking through the egg retrieval and in vitro fertilization (IVF) process. The phrase "insurance policy" in the context of egg retrieval and IVF mischaracterizes the purpose and expected outcome of that treatment. Use of that phrase is prejudicial to Chart's defense, and carries a significant likelihood of creating juror confusion about this complex field of medicine. This motion is made following the conference of counsel pursuant to Local Rule 7-3.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Kevin M. Ringel, pleadings and other documents on file in this action, any oral or documentary evidence or argument as may be requested by the Court, and any other information the Court deems proper and necessary.

Dated: April 2, 2021

Respectfully submitted,

By: /s/ Kevin M. Ringel_____
John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com

*Counsel for Defendant Chart, Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs allege that, on March 4, 2018, they sustained injuries as a result of an incident involving a cryogenic tank (Tank 4), manufactured by Chart, at Pacific Fertility Center (PFC). Tank 4 contained Plaintiffs' eggs and embryos. On that date, the PFC laboratory director, Dr. Joseph Conaghan, discovered that Tank 4 had lost liquid nitrogen. Plaintiffs' theory is that a defect existed in Tank 4, which consequently created a crack in the interior weld that allowed liquid nitrogen to leak out of the tank overnight. Plaintiffs' contend that, as a result, the temperature of Tank 4 increased and compromised their eggs and embryos. The issues for the jury to decide are whether Chart was negligent in manufacturing and designing Tank 4, whether that conduct proximately caused Plaintiffs' alleged injuries, and what those injuries were.

Chart anticipates that Plaintiffs' counsel may seek to engage in questioning, argument, and/or attempt to elicit testimony from the Plaintiffs and their experts that would characterize the egg retrieval and IVF process as an "insurance policy" to preserve reproductive material for a time in the future when that material could be used in attempts to obtain a live birth. The problem with such a characterization is that the phrase "insurance policy" has inherent meanings and connotations that would impose certain expectations, protections, and guarantees on the egg retrieval and IVF process that are discordant with the realistic expectations, protections and certainties involved in egg retrieval and IVF.

For example, the commonly understood meaning of the phrase "insurance policy" is typically associated with a contractual relationship to protect against risk to property, health or life. The general public would likely associate the phrase "insurance policy" with homeowners insurance, or health care or life insurance, all of which carry expectations of protection against harm to property or self, and the promise of compensation in the event of damage, injury or loss of life. Conversely, the egg retrieval and IVF processes do not share the same characteristics, and should not be thought of as an "insurance policy" since they provide no implied protections against harm or damage, nor do they involve an implicit expectation of compensation in the event of an

adverse outcome. By characterizing these processes as "insurance policies," Plaintiffs, their counsel, and their experts would confuse a jury and prejudice Chart's defense. Egg retrievals and IVF are intended to provide options to assist a patient's fertility efforts, but carry only potential, not guarantees of success, or promises of compensation if a desired outcome is not achieved. Accordingly, describing the biological materials obtained through egg retrieval or IVF as an "insurance policy" would mischaracterize the purpose of those processes, and impute expectations of guarantees or compensation that are not, and cannot, be associated with egg retrieval or IVF. Therefore, Plaintiffs, their counsel, and their experts should be barred from using the phrase "insurance policy" when discussing egg retrievals, IVF, or the obtained biological materials.

## II.     LEGAL STANDARD

The Court has the inherent power to grant a motion *in limine*, in advance of trial, to exclude evidence that could be objected to at trial. *Luce v. U.S.*, 469 U.S. 38, 41, n.4 (1984). The Court may exercise broad discretion to grant a motion *in limine* to "exclude anticipated prejudicial evidence before the evidence is actually offered." *Id.*, at 40 n.2. A motion *in limine* can also be brought to limit the scope of a party's argument. *See 350 W.A. LLC v. Chubb Group of Ins.*, 2007 WL 4365502, at *17-18 (S.D. Cal., Dec. 5, 2007, No. 05CV75WQHCAB) (granting a motion *in limine* to limit evidence and argument). The purpose of a motion *in limine* is to avoid the futile attempt to "unring the bell" when highly prejudicial evidence is offered and then stricken at trial. *See McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1548 (10th Cir. 1991); *see also* FRE 103(c) and 104(c) (allowing the Court to hear and determine the question of the admissibility of evidence outside the presence or hearing of the jury).

The Court may also exclude "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

## III.    ARGUMENT

The 9th Circuit Court of Appeals has granted motions *in limine* when the probative value of evidence is substantially outweighed by the danger of unfair prejudice to the defendant, or from

the potential jury confusion of the evidence. *Skidmore as Trustee for Randy Craig Wolfe Trust v. Zeppelin*, C.A.9 (Cal.) 2020, 952 F.3d 1051. District Courts in the 9th Circuit have applied this test to certain phrases or terms to determine whether those terms have the potential to cause unfair prejudice to the defendant or jury confusion. For example, in *Saenz v. Reeves*, No. 1:09-CV-00057-BAM PC, 2013 WL 2481733, at *3 (E.D. Cal. June 10, 2013), the California Eastern District granted a defendant's motion to preclude testimony or use of the phrase "green wall camaraderie" since the plaintiff was not alleging issues of conspiracy, and the term had the potential to confuse the jury on the relevant issues at trial, and prejudice the defense. Likewise, in *Spin Master, Ltd. v. Zobmondo Ent., LLC,* No. CV 06-3459 ABC PLAX, 2012 WL 8134014, at *4 (C.D. Cal. July 6, 2012), the California Central District granted a defendant's motion to exclude plaintiffs' use of the phrase "would you rather?" in a trademark dispute since the phrase was used by third parties after the time period during which the element of distinctiveness was at issue. The Court there held that evidence of use of that phrase after the time period at issue would confuse the jury on the matter of distinctiveness of the phrase at the time period at issue since it would involve evidence and implications from a later time.

While there are no cases directly on point concerning a motion to exclude a phrase such as "insurance policy" in the medical context, the above cases illustrate courts' recognition that certain terms or phrases carry inherent meanings and contextual implications that can confuse jurors on the pertinent issues and prejudice the defense. In the present case, central issues presented to a jury will include the nature of Plaintiffs' alleged damages, their expectations involved in their egg retrieval or IVF processes, and how or if their fertility potential was impacted by the Tank 4 incident. Characterizing the egg retrieval and IVF processes as "insurance policies" is inappropriate as the phrase carries certain inherent expectations and protections against risk that are not involved in egg retrievals or IVF. If a juror is led to believe an egg retrieval or IVF is an "insurance policy," it is likely they will inevitably ascribe certain guarantees of protection against risk, and implied compensation for damages or injury that they would expect in any other insurance policy. For example, if juror has a homeowners' insurance policy, they likely understand that the policy protects them against the risk of damage to their home or property by assuring monetary

compensation for such damage should it occur. Likewise, a juror with health or life insurance will likely understand that those policies are intended to provide monetary compensation in the event of medical injury or death. If jurors impose those beliefs on the processes of egg retrieval or IVF, it would unfairly prejudice Chart by confusing the issues, and raising the possibility that monetary compensation is expected in the event of any potential damage or harm.

Egg retrievals and IVF are not "insurance policies" since they carry no inherent guarantees, or expectations of compensation if a patient's goals are not met. Cryostoring eggs or embryos preserves fertility potential for patients unable to conceive naturally, or socially unready to pursue pregnancy at the time. Unfortunately, however, the IVF process is one of attrition, and likelihood that any one egg or embryo will result in a live birth is far from a guarantee. In fact, eggs and embryos represent only potential, since there are many steps between retrieval of an egg, or creation of an embryo, and ultimately achieving a live birth, which is the goal of any patient undergoing these processes.

A central issue in this case will be the degree, to any, that the Tank 4 incident may have impacted the fertility potential of the Plaintiffs. If a juror is led to believe that the eggs and embryos are "insurance policies" for future children, it will influence their ability to absorb and understand evidence presented by the defense that egg and embryo storage carries no inherent promises or guarantees. Moreover, if a juror hears the phrase "insurance policy" in connection with eggs or embryos that are allegedly damaged, it will be difficult for that juror to disassociate the issue of claimed monetary damages in this case from the expectation of monetary compensation inherent in any traditional insurance policy.

For these reasons, the Court must prospectively bar Plaintiffs, their counsel, and their experts from using the phrase "insurance policy" in connection with egg retrievals or IVF.

IV. **CONCLUSION**

WHEREFORE, Defendant Chart, Inc. respectfully requests this Honorable Court enter an order *in limine* barring Plaintiffs, their counsel, or their experts, from offering any testimony argument, or statement including the phrase "insurance policy" in reference to egg retrieval or IVF, and for any other relief this Honorable Court may deem equitable and just.

Dated: April 2, 2021

Respectfully submitted,

By: /s/ Kevin M. Ringel

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

*Plaintiffs' counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 3: EGG AND EMBRYO BANKING AS "INSURANCE POLICY"**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

**INTRODUCTION**

Chart's third motion in limine seeks to preclude Plaintiffs from analogizing egg retrieval or IVF processes to "an 'insurance policy' to preserve reproductive material for a time in the future when that material could be used in attempts to obtain a live birth." (Mot. at 3.) As with Chart's other motions, this request does not specifically identify the exhibits or testimony it would like excluded, making it difficult for the Court to weigh the evidence's probative value or potential for prejudice in the proper context. To the extent Chart's request pertains to Plaintiffs' expert testimony, it is an untimely attempt to circumvent the Court's deadline for the filing of *Daubert* motions, and should be foreclosed on that ground alone.

Chart's motion also suffers from larger deficiencies. Detached from reference to any particular evidence or speaker, Chart's arguments fail to weigh the probative value that such evidence may have in the context of the trial and thus fail to carry its burden for exclusion under Rule 403. Further, the risk of the prejudice theorized by Chart is small. A reasonable juror is capable of understanding an analogy to an "insurance policy" as metaphorical—and not literal—especially given Chart's ability to cross-examine any witness who uses the phrase. Finally, Chart offers no authority for excluding the use of any such metaphor or analogy, and other authority reflects counsel's broad discretion to craft such analogies as they see fit for arguments at trial.

**ARGUMENT**

**A.   Chart's motion is an untimely attempt to end-run *Daubert* and Rules 703 and 704 that should be denied.**

The most likely target of Chart's motion would appear to be testimony from Plaintiff's experts: Stephen G. Somtuki (OB/GYN and infertility) and Elizabeth Grill (reproductive psychology). These experts' reports contain analogies of egg retrieval to "insurance" that higher quality eggs would be available to women later in life when they want to attempt to conceive, and they reference both scholarship in the field of reproductive cryotechnology. References to "insurance" also appear where Plaintiffs' experts reference their interviews with Plaintiffs, several of whom reported that they viewed egg cryopreservation as an insurance policy. But Chart took no steps to exclude this testimony—which is no minor part of the experts' opinions—at the appropriate time for *Daubert* challenges.  (ECF No.

674-14 (Grill Report) at 6-7, 20-21, 25, 28-32, 36-42; ECF No. 675-24 (Somkuti Report) at 18-20.) Had Chart done so, there is little doubt that scholarly articles and plaintiff interviews are the kinds of materials typically relied on by experts in the fields of fertility and psychology. *See* Fed. R. Evid. 703. Plaintiffs' and other women's motivations for undergoing this difficult process in order to secure the best chance of a positive fertility outcome later in life are relevant to their damages—the loss of Tank 4 eggs has reduced their fertility options and compelled them to expedite or forego their family building. But having passed on its opportunity to challenge such expert testimony at the appropriate time, Chart should not be permitted to do so now. *See Corcoran v. CVS Pharmacy, Inc.,* No. 15-CV-03504-YGR, 2021 WL 633809 at *6 (N.D. Cal. Feb. 18, 2021) ("Motions *in limine* are not to be used as a backdoor attempt to get around the scheduling order's deadline for the filing of *Daubert* motions.").

### B. Chart has not shown that the probative value of any evidence is substantially outweighed by the danger of prejudice.

Even if the Court now considers Chart's argument that, generally speaking, use of the term "insurance policy" at trial is prejudicial, it has not met its burden to do so under the Federal Rules of Evidence. Chart's motion pertains to any "*testimony, argument, or statement* including the phrase 'insurance policy' in reference to egg retrieval or IVF," but fails to identify what evidence and what contexts are implicated. There is no legal basis for limiting or excluding such evidence without weighing the evidence's potential for prejudice against its probative value, which cannot be done in a contextual vacuum. Rule 403 — the only rule potentially applicable here — places the burden on Chart to "show that the probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Tse*, 375 F.3d 148, 164 (1st Cir. 2004) (citing Fed. R. Evid. 403); *see also United States v. Estrada*, 430 F.3d 606, 620 (2d Cir. 2005) (same) (citing *Tse*). Here, Chart apparently concedes the relevance of these potential statements by invoking Rule 403, which presupposes their relevance. Yet Chart leaves the heavy lifting of not just weighing the claimed prejudice against that relevance but identifying the very evidence at issue to Plaintiffs and the Court. Without particularized challenges to the evidence, this type of motion in limine is overbroad and prevents the Court from determining what specific evidence is and is not admissible. As Chart has not addressed the probative value of any

specific evidence, it has not established that the risk of prejudice or confusion outweighs it. Therefore, it is not entitled to relief under Rule 403.

### C. Any prejudice or jury confusion is unlikely, or otherwise easily remedied at trial.

Further, the risks of prejudice or confusion suggested by Chart are speculative and can be readily addressed through cross-examination. It suggests that jurors, upon hearing the egg-freezing decision referred to as an "insurance policy," will draw upon their personal experience with homeowners' insurance and conclude that embarking on the egg cryopreservation process guaranteed Plaintiffs either (i) the birth of a baby; or (ii) financial compensation if no baby is born. (*See* Mot. at 5-6.) But Chart has already signaled its intention to discuss the success rates of egg-freezing and IVF procedures in order to reinforce to the jury that there are no guarantees with these technologies, and it is able to cross-examine Plaintiff's experts. Moreover, some of Plaintiffs' own statements make clear they understood there were no guarantees with assisted fertility. (*See, e.g.*, Grill Report at 39; Zeman Decl., Ex. 1 (G.H. Dep.) at 55 ("From what I understand, [having more eggs frozen] was just more insurance. And that nothing was a guarantee, which I understood."); *id.*, Ex. 2 (E.F. Dep.) at 51 ("my understanding was that there was no guarantee, but that [freezing eggs] was a really good insurance plan")) Whatever minimal risk there is of the jury's misunderstanding the nature of Plaintiffs' contracts with PFC can readily be managed by the tools at the parties' and the Court's disposal at trial.

### D. Witnesses and counsel are permitted to offer analogies to the jury.

Finally, Chart has provided no authority proscribing counsel or witnesses from making analogies that may be helpful or persuasive to a jury. In *Saenz v. Reeves*, the court's exclusion of the phrase "green wall camaraderie" was part of a larger prohibition on evidence of defendants' part in "a massive conspiracy" among correctional officers that had no relevance to plaintiffs' claims and a high risk of prejudice. 2013 WL 2481733, at *3 (E.D. Cal. June 10, 2013). And in *Spin Master, Ltd. v. Zobmondo Ent., LLC*, the court excluded evidence of other uses of the protected trademark at issue, "Would you rather…?," if they occurred six years or more after the relevant date by which the jury would adjudge the mark's distinctiveness. 2012 WL 8134014, at *3-4 (C.D. Cal. July 6, 2012). Chart omits the portion of the *Spin Master* ruling that allowed evidence from up to six years after the

3
PLTFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 3: INSURANCE POLICY
MASTER CASE NO. 3:18-cv-01586-JSC

1 | distinctiveness cut-off which was found not to be so far after that date as to lack some probative value.
2 | *Id.* at *3.

Chart acknowledges it could not find any cases that have excluded a phrase such as "insurance policy" from use at trial. (Mot. at 5.) In contrast, there is authority permitting counsel to argue by analogy at trial. As one court put it, "If counsel chooses in argument to analogize …, there is nothing in the Rules of Evidence that prohibits such argument so long as it is clear to the jury that it is just an analogy and just argument." *Coles v. Jenkins*, 1998 WL 964506, at *1 (W.D. Va. Dec. 22, 1998). The danger of prejudice was much greater in that case, as the analogy was to an accident involving a drunk driver, but the court nonetheless concluded that it "cannot grant the motion insofar as it would seek to prevent even any argumentative analogizing." *Id.* A similar result is called for here. So long as it is clear from the context that the term is just an analogy and not a reference to an actual insurance contract, Plaintiffs should remain free to use the term "insurance policy" during trial.

## CONCLUSION

For the foregoing reasons, Chart's third motion in limine should be denied.

Dated: April 14, 2021

Respectfully submitted,

By: */s/ Amy M. Zeman*

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846

dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE &
CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' Counsel*

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

*Plaintiffs' counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**DECLARATION OF AMY M. ZEMAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 3: EGG AND EMBRYO BANKING AS "INSURANCE POLICY"**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

I, Amy M. Zeman, declare as follows:

1. I am a partner at the law firm Gibbs Law Group LLP, counsel for Plaintiffs in the above captioned action, and submit this declaration in support of Plaintiffs' Opposition to Chart's Motion in Limine No. 3. I make this declaration upon personal knowledge and am competent to testify to the facts set forth herein.

2. Attached as **Exhibit 1** is an excerpt from the deposition of G.H. taken on December 11, 2019.

3. Attached as **Exhibit 2** is an excerpt from the deposition of E.F. taken on December 9, 2019.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 14th day of April 2021 in Oakland, California.

*/s/ Amy M. Zeman*
Amy M. Zeman

1

DECLARATION OF AMY M. ZEMAN ISO PLTFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 3: EGG AND EMBRYO BANKING AS "INSURANCE POLICY"
MASTER CASE NO. 3:18-cv-01586-JSC

# EXHIBIT 1

| | | |
|---|---|---|
| 1 | or at any time prior to the egg retrieval process, | 11:03:31 |
| 2 | did Dr. Givens or anyone else advise you as to how | |
| 3 | many eggs you could expect to retrieve during the | |
| 4 | process? | |
| 5 |     A.   Me as an individual? | 11:03:41 |
| 6 |     Q.   Yes. | |
| 7 |     A.   No. | |
| 8 |        But they did -- they told me, that you | |
| 9 | know, they wanted me to have a lot of eggs and -- | |
| 10 | so it might take many cycles. | 11:03:55 |
| 11 |     Q.   Did they tell you how many eggs they | |
| 12 | thought you should try to obtain? | |
| 13 |     A.   I -- I don't recall exactly, but it -- | |
| 14 | but -- but they did -- they did want me to have a | |
| 15 | lot of eggs. | 11:04:21 |
| 16 |     Q.   Can you give me an estimate? | |
| 17 |     A.   Twelve, I think.  It could have been 8. | |
| 18 | It could have been 20.  I'm -- I honestly don't | |
| 19 | recall. | |
| 20 |     Q.   Did they tell you why they wanted you to | 11:04:37 |
| 21 | have a significant number of eggs? | |
| 22 |     A.   From what I understand, it was just more | |
| 23 | insurance.  And that nothing was a guarantee, which | |
| 24 | I understood. | |
| 25 |     Q.   Did Dr. Givens -- well, strike that. | 11:05:08 |

Page 55

# EXHIBIT 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of ▮

Conducted on December 9, 2019

51

| | | |
|---|---|---|
| 1 | agreement? | 10:42:45 |
| 2 | A   Yeah.  Again, as I said, I reviewed it and | 10:42:47 |
| 3 | then was forced to sign it again. | 10:42:50 |
| 4 | Q   Did you discuss this particular risk with | 10:42:53 |
| 5 | anybody? | 10:42:56 |
| 6 | A   I mean, I don't know if this language was | 10:42:57 |
| 7 | exactly what was used, but my understanding was that | 10:42:59 |
| 8 | there was no guarantee, but that this was a really good | 10:43:03 |
| 9 | insurance plan. | 10:43:06 |
| 10 | Q   Did you object to this risk or tell anyone | 10:43:07 |
| 11 | that you didn't agree? | 10:43:11 |
| 12 | A   No, I don't remember doing that. | 10:43:13 |
| 13 | Q   On page 8 near the bottom of page, there's a | 10:43:14 |
| 14 | bunch of bullets.  The fourth bullet down says, | 10:43:26 |
| 15 | "Bacterial contamination or a laboratory accident may | 10:43:32 |
| 16 | result in loss or damage to some or all of the eggs or | 10:43:36 |
| 17 | embryos." | 10:43:39 |
| 18 | You reviewed this provision too, correct? | 10:43:41 |
| 19 | A   I did, and the line above that says "In spite | 10:43:41 |
| 20 | of reasonable precautions, many of the following may | 10:43:47 |
| 21 | happen."  And my understanding is that reasonable | 10:43:48 |
| 22 | precautions were not taken. | 10:43:50 |
| 23 | Q   But you reviewed these risks and did not | 10:43:51 |
| 24 | object to them or tell anyone you didn't agree, correct? | 10:43:54 |
| 25 | A   No, but on the assumption that reasonable | 10:43:58 |