John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,
ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S MOTION *IN LIMINE* NO. 4: LOST CHANCE DAMAGES**<br><br>Date:     April 29, 2021<br>Time:     2:00 p.m.<br>Judge:    Hon. Jacqueline Scott Corley<br>Place:    Zoom |

## NOTICE OF MOTION AND MOTION

TO ALL ATTORNEYS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 29, 2021, at 2:00 p.m. before the Honorable Jacqueline Scott Corley, Defendant Chart Inc. will and does hereby move the Court for an order in *limine* barring Plaintiffs, their counsel, and witnesses from offering any testimony, argument, suggestion, evidence, statement, inference, innuendo, or any other indication that Plaintiff G.H.'s emotional distress damages allegedly caused by the Tank 4 incident are related in any way to her inability to have biological children, achieve a live birth, or the diminished possibility of achieving a live birth with her egg samples. This motion is made following the conference of counsel pursuant to Local Rule 7-3.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Kevin M. Ringel, pleadings and other documents on file in this action, any oral or documentary evidence or argument as may be requested by the Court, and any other information the Court deems proper and necessary.

Dated: April 2, 2021

Respectfully submitted,

By: /s/  Kevin M. Ringel_____

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900

mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff G.H. has claimed emotional distress damages resulting from of an incident involving a cryogenic tank (Tank 4), manufactured by Chart, at Pacific Fertility Center (PFC) on March 4, 2018. Tank 4 contained two of Plaintiff G.H.'s eggs. On that date, the PFC laboratory director, Dr. Joseph Conaghan, discovered that Tank 4 had lost liquid nitrogen. Plaintiffs' theory is that a defect existed in Tank 4, which consequently created a crack in the interior weld causing full vacuum loss, which allowed liquid nitrogen boil off from the tank overnight. Plaintiff G.H. contends that, as a result, the temperature of Tank 4 increased and damaged her eggs. The issues for the jury to decide are whether Tank 4 contained defects that caused the March 4, 2018 incident, and then, whether the incident caused Plaintiff G.H.'s emotional distress damages.

Chart moved for partial summary judgment on G.H.'s emotional distress damages claims, reasoning that, under California law, such "lost chance" damages are not recoverable. On March 8, 2021, the Court denied Chart's motion for summary judgment on that issue. (Dkt. No. 712)  It is undisputed that G.H. only ever had, at most, a 17% chance (a mere possibility) of achieving a live birth (*i.e.* having biological children) with her eggs frozen in Tank 4.  Plaintiffs argued in response to Chart's motion for summary judgment that G.H.'s injury is the "diminished possibility [from 17% to 2%] of achieving a live birth." (Dkt. No. 673-4, 33:8-10.)  In its order, this Court agreed that G.H.'s recovery of emotional distress damages for a diminished possibility of achieving a live birth is foreclosed by *Dumas v. Cooney*, 235 Cal. App.3d 1593, 1609 (1991).  It is also foreclosed by all other California case law rejecting application of the lost chance theory of recovery.  *See Hill v. Novartis Pharm. Corp.*, 944 F. Supp. 2d 943, 959-60 (E.D. Cal. 2013) (California courts have declined the theory of lost chance).  However, this Court concluded that, to the extent that the Plaintiff sought emotional distress damages for anything other than the diminished possibility of achieving a live birth, such a claim may proceed.  Therefore, this Court

1    invited Chart to file a motion *in limine* on this issue of G.H.'s emotional distress damages.  (Dkt.

2    No. 712, 8:26-9:4.)

3        With that ruling in mind, Chart asks that this Court enter an order *in limine* barring

4    testimony or argument that G.H. is entitled to emotional distress damages related to the diminished

5    possibility of achieving a live birth.  Chart anticipates that Plaintiffs' counsel may seek to introduce

6    evidence, engage in questioning, argument, and/or attempt to elicit testimony regarding G.H.'s

7    emotional distress related to her ability or inability to have biological children, or her diminished

8    chances of having children or achieving a live birth following the Tank 4 incident.  As this Court

9    has already determined, California law bars any such recovery.  Therefore, testimony or evidence

10   is irrelevant, unfairly prejudicial to Chart, and is likely to mislead or confuse the jury and distract

11   them from the true issue with respect to G.H.'s emotional distress damages.  For these reasons, the

12   Court must prospectively exclude any such evidence from trial.

13   **II.   LEGAL STANDARD**

14       The Court has the inherent power to grant a motion *in limine*, in advance of trial, to exclude

15   evidence that could be objected to at trial. *Luce v. U.S.*, 469 U.S. 38, 41, n.4 (1984).  The Court

16   may exercise broad discretion to grant a motion *in limine* to "exclude anticipated prejudicial

17   evidence before the evidence is actually offered." *Id.*, at 40 n.2. A motion *in limine* can also be

18   brought to limit the scope of a party's argument. *See 350 W.A. LLC v. Chubb Group of Ins.*, 2007

19   WL 4365502, at *17-18 (S.D. Cal., Dec. 5, 2007, No. 05CV75WQHCAB) (granting a

20   motion *in limine* to limit evidence and argument).

21       Where a party seeks to introduce evidence at trial related to a nonviable claim, that evidence

22   should be excluded as irrelevant under Fed. R. Evid. 402. *Herwick v. Budget Rent A Car Sys. Inc.*,

23   No. CV1000409SJOPLAX, 2011 WL 13213626, at *7 (C.D. Cal. Mar. 22, 2011) ("To the extent

24   Plaintiffs seek to bring evidence relating to their nonviable malicious prosecution claim, the

25   evidence is excluded as irrelevant. Fed. R. Evid. 402.").  Otherwise relevant evidence should be

26   excluded where its probative value is far outweighed by "unfair prejudice, confusing the issues,

27   [and] misleading the jury." Fed. R. Evid. 403.

28

III.   **ARGUMENT**

G.H. is barred, under California law, from any damages arising out of her lost chance of achieving a live birth.  Therefore, any evidence related to G.H.'s alleged emotional distress as a result of not being able to have children, or because of a diminished possibility of achieving a live birth is (1) irrelevant to her claim of emotional distress damages, and (2) would be unfairly prejudicial to Chart, confuse the issues, and potentially mislead the jury.

As a matter of law, G.H. cannot recover emotional distress damages caused by a diminished possibility of achieving a live birth, or her inability to achieve a live birth or otherwise have biological children, because she never had a greater than 50% chance of achieving a live birth in the first place. *Dumas v. Cooney*, 235 Cal. App.3d 1593, 1609 (1991).  Thus, a claim for emotional distress damages resulting from an injury of "diminished possibility" of having biological children is not viable under California law.   Therefore, any evidence or testimony suggesting G.H.'s emotional distress is related to her inability to have biological children or diminished possibility of achieving a live birth because of the Tank 4 incident should be excluded *in limine* from trial as irrelevant under Rule 402.  *Herwick*, 2011 WL 13213626, at *7.

Chart anticipates, however, that Plaintiffs will attempt to offer evidence related to G.H.'s diminished possibility of achieving live birth, or inability to have biological children.  Plaintiffs' emotional distress expert, Dr. Elizabeth Grill, discussed such damages throughout her Rule 26 report.  For example, Dr. Grill stated:

> Although [G.H.] experienced the decision-making process and procedure to freeze eggs as arduous and stressful, and although she was somewhat disappointed with the number of eggs retrieved, **she felt that the retrieval increased her ability to have a child and she was optimistic that they would be kept safe for her when she was ready to use them.**  (Grill Report, 28, Section (VI)(1)(1)(d) (emphasis added).)

Such testimony or evidence should be barred *in limine* because it relates directly to G.H.'s ability or expectations with respect to achieving a live birth or having biological children – damages this Court has already determined are not recoverable under California law.

The next subsection of Dr. Grill's report lists eight items purporting to demonstrate the emotional distress suffered by G.H.  (Grill Report, 28-29, Section (VI)(1)(2)(a-h)).  Each of these items, or related testimony, should be barred *in limine* because they relate directly to G.H.'s family planning, or her control over her fertility, *i.e.*, her ability to have biological children when she chooses.  For example, item "g", as evidence for G.H.'s emotional distress, states "[G.H.] has no reassurance that the eggs are viable or would result in a healthy embryo and child."  (Grill Report, pp. 29, Section (1)(2)(g)).  This statement relates directly to G.H.'s ability to have a biological child when she chooses, even though G.H. never had more than a 17% chance of having a biological child before the Tank 4 incident.  Such statements, testimony, or similar evidence, should be barred *in limine* from introduction at trial.

Importantly, Dr. Grill describes the freezing of G.H.'s eggs as an "insurance policy."  This begs the question:  what, ultimately, is that policy insuring?  Dr. Grill answers that question by stating it "allows women the freedom *to defer having children* until they find the right partner, finish their education or pursue careers that could in turn provide peace of mind.  [G.H.] believed the storage of her eggs provided her such an insurance policy."  (Grill Report, 28-29, Section (VI)(1)(2)(a), emphasis added.)  In other words, the "insurance policy" related directly to G.H.'s control over her ability to have biological children, or, *achieve a live birth*.  But because G.H. only ever had a 17% chance of having children with the "insurance policy," the diminished "value" of that policy is not an injury for which G.H. can recover emotional distress damages.   As a result, testimony or evidence regarding G.H.'s purported "insurance policy" should be excluded *in limine* as irrelevant.

Finally, the ability to have biological children is without doubt a sensitive issue that may elicit emotional responses in people.  Introducing evidence related to G.H.'s lost chance of having biological children would create unfair prejudice against Chart, and it would certainly mislead and confuse the jury when G.H. cannot recover emotional distress damages for a lost chance injury.

As discussed above, such evidence is not relevant to G.H.'s claim.  However, even if it were potentially relevant to some aspect of her claim, the Court should exclude any such evidence *in limine* under Rule 403 because any probative value is substantially outweighed by a danger of

unfair prejudice, confusing the issues, misleading the jury.  *See Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG, 2020 WL 43115, at *5-6 (N.D. Cal. Jan. 4, 2020) (excluding evidence that could theoretically be probative to certain issues, and other evidence related to items not at issue, where the limited probative value would be substantially outweighed by Rule 403 considerations, including danger that the evidence will confuse the issues, mislead the jury, and unfairly prejudice the defendant)

## IV.     **CONCLUSION**

WHEREFORE, Defendant Chart, Inc. respectfully requests this Honorable Court enter an order *in limine* barring Plaintiffs from offering any evidence, testimony argument, suggestion, statement, inference, innuendo or any other indication related to G.H.'s emotional distress allegedly related to a diminished possibility of achieving a live birth, or inability to have a biological child as a result to the Tank 4 incident and for any other relief this Honorable Court may deem equitable and just.

Dated: April 2, 2021                             Respectfully submitted,

By: /s/ Kevin M. Ringel

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
*Counsel for Defendant Chart, Inc.*

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE &
CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' counsel*

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 4: LOST CHANCE DAMAGES**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

1

## INTRODUCTION

Plaintiff G.H. alleges that the failure of Tank 4 on March 4th, 2018, caused injury to her eggs. She will establish this at trial through expert testimony and through evidence of PFC's own admonitions that using eggs compromised in the March 4th incident carries serious risks. The Court has observed that Plaintiff's injury is probable beyond dispute. (ECF No. 712 (3/8/21 MSJ Order) at 8 ("Chart does not, and cannot argue, that it is not more likely than not that her stored eggs were damaged.").) Nonetheless, Chart asks the Court to limit Plaintiff G.H.'s damages-related arguments by invoking principles of causation.

Chart relies primarily on *Dumas v. Cooney*, a medical malpractice case, in which a plaintiff alleged that his doctors' failure to make a timely cancer diagnosis reduced the likelihood of his survival. But that case is inapplicable here because Plaintiff's injury is not an amorphous or uncertain "lost chance" of a better outcome—it's observable and quantifiable damage to her harvested eggs. If Plaintiff had instead sought recovery for the loss of a future life, the causation concepts in *Dumas* might apply. G.H., however, does not seek compensation for the value of a living child, but rather the damage to her eggs, which includes at least an 88% reduction in their usefulness. Should the jury find Chart caused this reduction, it is responsible for all harms flowing from it under the well-established damage principles in tort law. It makes no difference if Plaintiff's eggs started out 51% viable or 17% viable— or even 3% viable. If she can prove that Chart caused that number to fall to 2%, Chart is responsible, too, for the distress that results. Nothing in *Dumas* requires her to prove, in addition, that one of those eggs more likely than not would have become a living child. To the contrary, California law recognizes that the chance to *try* for one is a thing of value, which Plaintiff will argue has been taken from her.

## ARGUMENT

### A.   Because Plaintiff can establish Chart caused injury to her eggs, the causation analysis in *Dumas* does not apply.

*Dumas v. Cooney* was a medical malpractice action wherein the plaintiff alleged that a doctor's failure to diagnose cancer at an early stage caused injury: a shorter and poorer quality life. Plaintiff's counsel made clear at trial that his case was distinguishable from most negligence cases:

> A case like this is something of a departure from the usual injury case. Usually in an injury case *something occurs and a direct injury follows*. In a case like this we are not talking about the defendants being responsible for the plaintiff's cancer.

*Dumas v. Cooney*, 235 Cal. App. 3d 1593, 1599 (1991) (emphasis supplied). Instead, counsel argued, defendants caused a loss of a "possible lengthening of his life … even if no cure would have resulted from more prompt diagnosis and treatment." *Id.* at 1601. This theory of damages was reflected in the trial court's instruction to the jury: "Damages for negligence in providing medical care may be based on evidence that it is a reasonable medical probability that the plaintiff would have benefitted by *possible* cure, *possible* lengthening of his life…." *Id.* at 1600 (emphasis supplied). Defendants took issue with this instruction for the reason that it essentially lowered the threshold of causation: plaintiff must only show that defendant more likely than not caused *a possibility of injury*, rather than a demonstrable one.

On appeal, the court agreed, holding that "loss of a chance" is not a compensable injury but instead a relaxed causation standard. The court observed, "The true injury in lost chance cases is … the death or adversity." *Id.* at 1608. "[W]hen we strip away the rhetoric," in cases recognizing loss of a chance as an injury, "damages are really being awarded for the *possibility* that the negligence was a cause of the death." *Id.* at 1610–11 (emphasis in original). But under California law the principles of causation require that a plaintiff establish the *probability* that defendant's conduct caused at least *some* injury. *See id.* The loss of the chance for a different outcome, which the court likened to a "raffle ticket," won't suffice. *Id.* at 1610. To hold otherwise would be "to establish a more lenient standard of causation in medical malpractice cases." *Id.* at 1608. *Dumas* requires, then, that a plaintiff prove that a defendant *caused an injury* and the harms that result from it for which she seeks damages. *Id.* at 1609 ("[T]he lost chance theory is, in reality, focused on causation rather than injury and damages.")

Because there is no question that the tank failure caused injury to Plaintiff, *Dumas* is inapposite. As the Court stated when it denied Chart's motion for summary judgment, "Chart does not, and cannot argue, that it is not more likely than not that [Plaintiff's] stored eggs were damaged." (3/8/21 MSJ order at 8.) Plaintiff's embryology expert, David Wininger, has explained that ice crystals formed when the eggs and embryos stored in Tank 4 were subjected to dangerously high temperatures, and the jagged edges of those crystals caused severe intracellular damage. (Trial Ex. 90, 11/06/20 Report of D.

Wininger, as amended on 12/04/20 at 17, ¶¶ 43-44.) In some instances, that intracellular damage has not proven fatal, but the likelihood that tissue stored in Tank 4 will survive its injuries when thawed and used in an IVF procedure is quite low. (*See id.*, ¶¶ 45-53.) And because there are unknown risks associated with using damaged tissue, neither PFC nor Plaintiffs' experts recommend that patients use their Tank 4 tissue—citing, for example, the tissue's prolonged exposure to toxic cryoprotectants and the high rate of low birthweights observed in Tank 4 babies. (*Id.*, ¶¶ 57-60.) So while G.H. once had two mature eggs in cryostorage that could be used in future IVF procedures, she now has two severely damaged eggs that should not be used in IVF procedures, and that even if she were to ignore her doctor's advice, would be far less likely to lead to a successful outcome.

To be clear, the injury alleged is not to a future child that Plaintiff claims would have been born—it is damage to two eggs she had frozen at PFC. Part of that damage, of course, is their reduced usefulness and viability. Before they were damaged on March 4th, those eggs had value to G.H.—both an economic value and personal value, even if they were less than 50% likely to result in a child. Plaintiff need not establish that, absent Chart's wrongdoing, she would more likely than not have given birth in order to recover for the reduction in that value caused by Chart—she only need prove that, absent Chart's wrongdoing, those eggs would not have been damaged.

### B. Plaintiff's injury is akin to the injury in *Duarte*, which permitted recovery for harm to bone marrow and resulting distress even though the plaintiff's cancer likely would have returned anyway.

*Dumas* speaks to G.H.'s ability to prove that the March 4th incident caused her inability to have biological children—a claim G.H. has not made and does not plan to make. But it does not speak to G.H.'s ability to recover for damage to biological tissue that the March 4th incident *did* cause, including for the economic value of that tissue and the emotional distress G.H. suffered upon learning that her tissue had been damaged—and with it, her remaining chances of undergoing a successful IVF procedure. Those issues were not addressed in *Dumas*, but similar issues were raised in another California appellate case, *Duarte v. Zachariah*, 22 Cal. App. 4th 1652 (1994). In *Duarte*, the plaintiff was diagnosed with breast cancer and underwent a mastectomy to remove the tumor. She also agreed to undergo chemotherapy to prevent a possible recurrence. Her first treatment with the drug cytoxin,

however, was negligently administered at five times the appropriate amount, causing permanent damage to plaintiff's bone marrow that prevented her from resuming chemotherapy, then or ever again. The next year, a mass was discovered in the plaintiff's lung that was determined to be a recurrence of her breast cancer. She sued the health care providers who damaged her bone marrow and alleged that bone marrow injury had prevented her from receiving chemotherapy treatment.

Defendants argued that even if the plaintiff could have undergone more chemotherapy, her cancer still likely would have returned and she therefore could not prove the chemotherapy overdose and resulting bone marrow damage caused the recurrence. The trial court agreed and dismissed the case over plaintiff's objection that she should be permitted to recover for the damage to her bone marrow, if not for the cancer. The Court of Appeal, applying *Dumas*, agreed plaintiff could not prove the chemotherapy overdose caused her cancer. The court held, however, that the injury to the bone marrow itself was actionable "regardless whether it can be shown to have been a cause in fact of the recurrence of the cancer." *Id.* at 1660. According to the court, "[t]he injury to Duarte's bone marrow inferably caused by [the] negligence is itself an actionable harm … for which damages are recoverable." *Id.* So long as "the evidence shows the functioning of the immune system has been demonstrably impaired," there is a triable issue of fact as to the injury. *Id.* at 1663. The court held that "the injury to the bone marrow has economic value even assuming that the only impairment is the inability to undertake a course of chemotherapy." *Id.* at 1665. "Even if such a treatment diminishes the likelihood of recurrence of the cancer by only five percent, patients willingly pay the economic costs of the treatment and bear the significant pain and discomfort occasioned as its side effects." *Id.* "This alone shows that there is a significant value to the bodily capacity to undertake such treatment, which we are bound to assume was destroyed by Zachariah's negligence. To conclude otherwise is to say that no injury short of cancer is compensable. That would make for an unprecedented rule which denies recovery for all manner of detrimental impairments to the organs of the body." *Id.*

The court also held that plaintiff could recover for emotional distress arising from her inability, because of her bone marrow injury, to undergo a course of chemotherapy to treat the recurrence of her cancer. *Id.* at 1664 ("General damages may be awarded for the form of emotional distress called pain or suffering where it is a natural concomitant of a physical injury, inferable from the fact of the injury and

the common experience of humanity."). This did *not* require plaintiff to "show that the injury to the bone marrow is a cause in fact of a *subsequent* … injury, e.g., a cancer, resulting in … pecuniary loss." *Id.* (emphasis added). To the contrary, the court rejected as "untenable" the notion that plaintiff must prove the bone marrow damage alone caused any emotional distress, distinct from that attributable to the recurrence of the cancer. *Id.* at 1664 ("It is reasonable to infer that a person who has experienced a recurrence of cancer which cannot be treated because of bone marrow injury would suffer emotional distress as a result of the injury.") *Id.*

In sum, the *Duarte* court agreed with the defendant that the plaintiff could not show that defendants' medical negligence more likely than not caused *her cancer to return*. But because there was no question that the defendants' negligence caused *damage to her bone marrow*, she could recover for all harms flowing from that injury—including emotional distress over its reduced functioning and the consequences of that reduced functioning.

Similarly, in this case, G.H. seeks to recover emotional damages because her frozen eggs, which held value to her despite their limitations, were damaged by the failure of Chart's tank. Just as the plaintiff in *Duarte* could not show she would have remained cancer-free were it not for her doctors' negligence, Plaintiff G.H. cannot show that but for Tank 4's failure she would have had a child. But the loss in each case is the *ability to undergo* the chemotherapy or IVF procedure. *Id.* at 1665 ("[T]he injury to the bone marrow has economic value even assuming that the only impairment is the inability to undertake a course of chemotherapy."). And even if that treatment has a low likelihood of success, "patients willingly pay the economic costs of the treatment and bear the significant pain and discomfort occasioned as its side effects." *Id.* Here, too, "there is a significant value to the bodily capacity to undertake such treatment, which we are bound to assume was destroyed by [Chart's] negligence." *Id.* To conclude otherwise "would make for an unprecedented rule which denies recovery for all manner of detrimental impairments" to harvested gametes or embryos by those undergoing fertility treatment. *Id.* at 1665; *see also* Trial Ex. 90 at 21 (estimated success rates showing Tank 4 victims with only one embryo or less than 6 eggs likely had less than a 50% chance of achieving a live birth from that tissue).

1

**CONCLUSION**

2     Because G.H. can prove that Chart's defective tank caused damage to her eggs—including at

3 least an 88% reduction in their viability—California law allows her to recover for the harms that flow

4 from that injury, including emotional distress. Plaintiff's frozen eggs gave her the ability to attempt a

5 pregnancy after undergoing a difficult and expensive extraction process. In her eggs, G.H. placed hope

6 that she may be able to conceive. Even if her likelihood was smaller than others who did not require

7 assisted fertility treatment, it was valuable to her. Once she has established that Chart caused damage to

8 her eggs, she is entitled to seek recovery for the emotional distress of knowing that chance is gone.

9

10 Dated: April 14, 2021                    Respectfully submitted,

11                                          By: ___/s/ Amy M. Zeman_____

12                                          Eric H. Gibbs (State Bar No. 178658)
                                            Amy M. Zeman (State Bar No. 273100)
13                                          **GIBBS LAW GROUP LLP**
                                            505 14th Street, Suite 1110
14                                          Oakland, CA 94612
                                            Tel: (510) 350-9700
15                                          Fax: (510) 350-9701
                                            ehg@classlawgroup.com
16                                          amz@classlawgroup.com

17

18                                          Dena C. Sharp (State Bar No. 245869)
                                            Adam E. Polk (State Bar No. 273000)
19                                          Nina R. Gliozzo (State Bar No. 333569)
20                                          **GIRARD SHARP LLP**
                                            601 California Street, Suite 1400
21                                          San Francisco, CA 94108
                                            Tel: (415) 981-4800
22                                          Fax: (415) 981-4846
                                            dsharp@girardsharp.com
23                                          apolk@girardsharp.com
24                                          ngliozzo@girardsharp.com

25                                          Adam B. Wolf (State Bar No. 215914)
                                            Tracey B. Cowan (State Bar No. 250053)
26                                          **PEIFFER WOLF CARR KANE &**
27                                          **CONWAY, APLC**
                                            4 Embarcadero Center, Suite 1400
28                                          San Francisco, CA 94111

PLTFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 4: LOST CHANCE DAMAGES
MASTER CASE NO. 3:18-cv-01586-JSC

Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' Counsel*

PLTFS' OPPOSITION TO CHART'S MOTION IN LIMINE NO. 4: LOST CHANCE DAMAGES
MASTER CASE NO. 3:18-cv-01586-JSC