Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE &
CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' counsel*

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 1: EXTENDING RULINGS ON EXPERT TESTIMONY TO NON-EXPERTS**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

**INTRODUCTION**

The Court recently ruled that certain expert evidence Chart intended to present at trial was inadmissible. (3/16/21 Order, ECF No. 724.) Some aspects of the Court's ruling depended on particular experts' qualifications or methodology, but others were grounded in relevance concerns that logically extend to non-experts as well as experts. Plaintiffs therefore asked Chart to agree that the Court's ruling excluding the following six subjects would apply to all witnesses:

      (1)   low liquid nitrogen levels recorded at PFC in 2013 and 2014;

      (2)   PFC's use of buckets to fill its tanks with liquid nitrogen;

      (3)   whether PFC spoliated evidence by spraying Tank 4 with powder;

      (4)   Tank 4's warranty status;

      (5)   whether Tank 4 contained manufacturing or design defects; and

      (6)   possible malingering or symptom exaggeration.

Chart agreed with respect to #6 but otherwise declined to stipulate, necessitating this motion. For the same reasons the Court excluded expert evidence on these subjects, Plaintiffs now ask that it exclude non-expert evidence as well.

**ARGUMENT**

**1.      The 2013/2014 readings are not relevant to the 2018 incident.**

The Court previously ruled that neither Dr. Grace Centola nor Dr. Franklin Miller could testify about low liquid nitrogen levels recorded by Tank 4's controller in 2013 and 2014. (3/16/21 Order at 9-10, 14.) The Court excluded those readings for lack of relevance: "The inferential leap Chart makes from the 2013/2014 readings to the cause of the 2018 accident is too attenuated to be probative." (*Id.* at 9-10.) That rationale applies to experts and non-experts alike—however the 2013/14 readings are introduced, their connection to the March 4, 2018 incident is too attenuated to be probative.

As Plaintiffs argued in their motion to preclude Drs. Centola and Miller from testifying about the 2013/14 readings, evidence that PFC may have negligently monitored Tank 4's liquid nitrogen levels in 2014 also constitutes a prior bad act that is inadmissible under Rule 404(b). (*See* ECF Nos. 721 at 13, 21; 722 at 4-6.)

**2.      PFC's use of buckets is precluded by Rule 404(b).**

When the Court precluded Dr. Centola from testifying about PFC's use of buckets to refill its tanks with liquid nitrogen, it stated that "it falls within the category of inadmissible bad acts evidence" and "is excluded as not relevant." (3/16/21 Order at 10.) That same rationale applies whether the evidence is presented through Dr. Centola or through a different witness. It is not disputed that PFC's occasional use of buckets did not cause the March 4th incident. (*Id.*) It therefore constitutes bad acts evidence under Rule 404(b) and is not relevant.

**3.      Spoliation is a legal conclusion and not the proper subject of witness testimony.**

The Court is allowing Dr. Miller to testify regarding the testing PFC performed after the March 4th incident and to opine as to why he believes Chart was unable to locate a leak. (3/16/21 Order at 10-11.) But Dr. Miller "may not testify or imply that PFC or any other party did anything wrong by spraying the Tank with powder or any of the other Tank testing that was done." (*Id.* at 11.) Dr. Miller had previously stated that PFC spoliated evidence by spraying Tank 4 with talcum powder, but the Court excluded that testimony because "spoliation is a legal issue and as Plaintiffs note, not the proper subject of expert testimony." (*Id.* at 10; *see also* ECF Nos. 721 at 15-16; 722 at 7-8.) The same is true for lay testimony: a "lay witness may not … testify as to a legal conclusion." *United States v. Crawford,* 239 F.3d 1086, 1090 (9th Cir. 2001). Spoliation is not only a legal issue; it is a legal issue that is not properly before the Court. If Chart wished to pursue spoliation sanctions against PFC, it should have done so during discovery and before Tank 4 was cut apart for further testing. *See Cardinal v. Lupo*, No. 18-CV-00272-JCS, 2019 WL 4450859, at *3 (N.D. Cal. Sept. 17, 2019) (a motion for spoliation sanctions "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate"). Accordingly, for the same reasons that Chart is not permitted to imply PFC spoliated evidence through Dr. Miller, it should also be precluded from implying PFC spoliated evidence through any other witness as well.

**4.      Tank 4's warranty status is irrelevant in a strict liability case.**

The Court previously precluded Chart from introducing testimony about Tank 4's warranty through Dr. Miller, finding the tank's warranty status irrelevant and "likely to confuse the jury given the lack of relevance." (3/16/21 Order at 11.) For the same reason, Chart should be precluded from

2

introducing any evidence about Tank 4's warranty. Plaintiffs are pursuing strict products liability claims, not warranty claims. Permitting Chart to enter its warranty into evidence would only confuse the issues and improperly suggest that Chart had no further obligations at the conclusion of its warranty period—even though California law does not allow a manufacturer to use warranty terms to avoid strict liability for injuries caused by its products. *See Greenman v. Yuba Power Prod., Inc.*, 59 Cal. 2d 57, 62 (1963) ("rules defining and governing warranties … cannot properly be invoked to govern the manufacturer's liability to those injured by their defective products"); *Jimenez v. Superior Court*, 29 Cal. 4th 473, 477 (2002) (discussing *Greenman*: California became the first state to allow recovery for strict products liability "because the law of contractual warranties … offered no protection to those harmed by defective products").

 **5.**  **No witness should be permitted to opine as to whether Tank 4 contained a defect.**

  The Court has ruled that neither Dr. Miller nor any other expert will be allowed to testify that Tank 4 did or did not suffer from a manufacturing or design defect. (3/16/21 Order at 11.) As the Court explained during oral argument, "as to 'defect' and what is meant by a defect, that's a term of art here that I'm going to instruct the jury on. Not any expert." (3/4/21 Tr. at 42, ECF No. 715; *see also id.* at 48-49.) That same rationale applies to lay witnesses as well. The Court will instruct the jury on the law, and neither experts nor non-experts should be permitted to testify to the legal conclusions to be drawn (or not drawn) from the evidence. (*See* 3/16/21 Order at 11.)

 **6.**  **The parties have agreed that neither side will offer evidence concerning malingering or symptom exaggeration.**

  Plaintiffs previously sought to preclude Chart's forensic psychiatrist, Dr. Angela Lawson, from offering any testimony concerning malingering or symptom exaggeration. At the hearing, Chart clarified it did not intend to have Dr. Lawson testify that Plaintiffs are malingering. And as neither Dr. Lawson nor Plaintiffs' expert, Dr. Elizabeth Grill, had determined whether any Plaintiff was or was not malingering, the Court ruled that neither expert shall opine on the subject. (3/16/21 Order at 6.) Plaintiffs and Chart agree that the Court's limitation should apply to other witnesses as well, and that neither side will offer evidence concerning malingering or symptom exaggeration.

1

## CONCLUSION

2      In the course of screening the parties' proposed expert testimony for admissibility concerns, the

3 Court ruled that several topics are irrelevant to the central issues in dispute, and others constituted

4 improper legal conclusions. The rationale behind the Court's rulings applies to expert witnesses and lay

5 witnesses alike, and therefore Plaintiffs respectfully request that the Court extend its prior rulings to

6 cover all forms of evidence that the parties may otherwise offer on these topics.

7

8 Dated: April 14, 2021                  Respectfully submitted,

9                            By:    */s/ Amy M. Zeman*

10                            Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
11                            **GIBBS LAW GROUP LLP**
12                            505 14th Street, Suite 1110
Oakland, CA 94612
13                            Tel: (510) 350-9700
14                            Fax: (510) 350-9701
ehg@classlawgroup.com
15                            amz@classlawgroup.com

16                            Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
17                            Nina R. Gliozzo (State Bar No. 333569)
18                            **GIRARD SHARP LLP**
19                            601 California Street, Suite 1400
San Francisco, CA 94108
20                            Tel: (415) 981-4800
Fax: (415) 981-4846
21                            dsharp@girardsharp.com
22                            apolk@girardsharp.com
ngliozzo@girardsharp.com
23
24                            Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
25                            **PEIFFER WOLF CARR KANE &**
**CONWAY, APLC**
26                            4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
27                            Tel: (415) 766-3545
Fax: (415) 402-0058
28                            awolf@peifferwolf.com

4

tcowan@peifferwolf.com

*Plaintiffs' Counsel*

PLAINTIFFS' MOTION IN LIMINE NO. 1: EXTENDING RULINGS ON EXPERT TESTIMONY
MASTER CASE NO. 3:18-cv-01586-JSC

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,
ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC |
| | **DEFENDANT CHART INC.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1: EXTENDING RULINGS ON EXPERT TESTIMONY TO NON-EXPERTS** |
| This Documents Relates to: No. 3:18-cv-01586 (A.B., C.D., E.F., G.H. and I.J.) | Pretrial Hearing: April 29, 2021 Time: 2:00 p.m. Judge: Hon. Jacqueline Scott Corley Place: Courtroom F, 15th Floor |
| | Trial Date: May 20, 2021 |

**INTRODUCTION**

Chart submits the following Opposition to Plaintiffs' Motion in Limine No. 1 to extend this Court's ruling on expert testimony. Specifically, Plaintiffs seek to exclude as irrelevant evidence of the following subjects:

(1) Low liquid nitrogen levels recorded at PFC in 2013 and 2014;

(2) PFC's use of buckets to fill its tanks with liquid nitrogen;

(3) Whether PFC spoliated evidence by spraying Tank 4 with powder;

(4) Tank's warranty status;

(5) Whether tank 4 contained manufacturing or design defects;

(6) Possible malingering or symptom exaggeration.

Chart does not dispute # 6; however, the remaining evidence Plaintiffs seek to exclude is relevant and admissible. For the reasons set forth below, Plaintiffs' Motion should be denied.

**ARGUMENT**

**1.   The 2013 and 2014 liquid nitrogen readings are relevant and admissible.**

Plaintiffs seek to exclude the low liquid nitrogen (LN2) levels from 2013 and 2014 as irrelevant and inadmissible prior bad acts under Rule 404(b). Plaintiffs offer no legal authority to support their position. Rule 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b)(1). It may, however, be admissible for other purposes, including but not limited to "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is a rule of inclusion – not exclusion -  which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018)(*citing United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007)).

Chart does not submit the evidence to show PFC's character or conformity therewith. The evidence related to the 2013 and 2014 LN2 levels is admissible under Rule 404(b)(2) as non-propensity evidence of knowledge, opportunity, preparation, plan, and absence of mistake. Additionally, the evidence is relevant and consequential to Chart's defenses. Chart alleges that

CHART'S OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 1
18-CV-01586-JSC

PFC'S deviations from the standard of care, including its failure to adequately monitor and maintain LN2 levels, are part of what caused the tank failure. The evidence at issue here shows that the same type of incident occurred in the same tank, which involved similar inadequate levels of liquid nitrogen, on two prior occasions. Not only does this evidence establish the existence of low liquid nitrogen in 2013 and 2014 (which is relevant in itself), it also shows lack of mistake or coincidence. It also shows that PFC personnel, particularly Dr. Conaghan, knew that low liquid nitrogen levels existed in 2013 and 2014, yet frivolously monitored Tank 4's LN2.  Nor should the time period between these incidents and the events of February and March of 2018 serve as a basis to exclude these incidents.  These incidents can occur at any point in time if proper procedures are not in place and followed.  If anything, the passage of time underscores that PFC let its guard down as years passed between such events.  In sum, this is an important piece of information about PFC and Tank 4 that the jury may properly take into account when considering PFC's handling of the subject tank and its knowledge of the very types of event that caused Plaintiffs' damages.

**2.  PFC's use of buckets is relevant and admissible.**

Plaintiffs conclude that evidence regarding PFC's use of buckets is irrelevant and inadmissible under Rule 404(b). Again, Plaintiffs cite no legal authority to support their position. As set forth above, Rule 404(b)(2) is a rule of inclusion and permits evidence to be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Thus, the evidence showing PFC's practice of refilling liquid nitrogen levels with a bucket is admissible for non-propensity purposes. The evidence is also relevant to Chart's defense as it relates to the adequacy of PFC's procedures and processes in monitoring and refilling liquid nitrogen. This Court said the same when it ruled that PFC witnesses may testify that they filled Tank 4 with buckets. (Order at 10:10-11, Mar. 19, 2021, ECF No. 724).

**3.  Chart does not dispute that spoliation is a legal conclusion.**

As Plaintiffs point out, this Court has already determined this issue. (Pls. Mot. at 2:11-12). During the hearing on March 4, 2021, Chart agreed that it would elicit testimony from its

CHART'S OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 1
18-CV-01586-JSC

1   expert witness that that PFC "spoliated" evidence. The Court's ruling did not and should not

2   extend any further.  Chart may still elicit testimony, including from lay witnesses, about how

3   Tank 4 was handled during post-incident inspections.

4       **4.   Tank 4's warranty status is relevant and admissible.**

5         Plaintiff cites to *Greenman v. Yuba Power Prod., Inc.* and *Jimenez v. Superior Court* to

6   support their position that the warranty status be excluded. Those cases are distinguishable.

7   Neither case involved admissibility of evidence related to the warranty status of the product.

8   Instead, they relate to a plaintiff's burden of proof to plead strict liability. For example, the Court

9   in *Greenman* held that an express warranty in a brochure made notice of breach unnecessary and

10   the plaintiff could proceed on a theory of strict products liability, thus, there was no need to rely

11   on the warranty. *Greenman v. Yuba Power Products*, 59 Cal.2d 57, 59 (1963).  Conversely, here,

12   Chart does not argue that the warranty negates strict liability. Rather, it is presented relevant

13   factual background about Tank 4.  A portion of Chart's defense to be provided to the jury is

14   information regarding the standard life of the vacuum seal and that, after the warranty period of 5

15   years, it is not unusual for a vacuum seal to diminish. This information is important for multiple

16   reasons, including to show that users of the product, including PFC, had awareness that the

17   product required servicing and monitoring and that the vacuum seal degraded over time. Such

18   evidence properly may be taken into account.  This goes to the users' expectations, which

19   Plaintiffs have put at issue in attempting to prove a design defect exists in Tank 4 through the

20   "consumer expectation" test. This information is also rebuttal to Plaintiffs and their experts who

21   have provided testimony (whether its expert opinion is debatable) that the useful safe life of the

22   tank was 10 years.   Excluding the warranty information but permitting any other "useful safe

23   life" testimony or evidence would be unduly prejudicial to Chart.

24       **5.   Witness testimony regarding absence of defects in Tank 4 is proper.**

25         Plaintiffs seek to exclude testimony regarding whether Tank 4 contained a defect, arguing

26   that such testimony constitutes a legal conclusion. Plaintiffs' present no support for this

27   conclusion.

28

              CHART'S OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 1
18-CV-01586-JSC

1   The Federal Rules of Evidence state that a lay witness may give opinion testimony that is

2   rationally based on the witness's perception and is helpful to understand the witness's testimony

3   or a fact in issue. Fed. R. Evid. 701. Here, witnesses may properly testify about their own

4   experiences and perceptions as it relates to the manufacture and design of Tank 4 and similar

5   tanks. Perceptions of lay witnesses do not constitute a conclusion of law. Instead, it is evidence

6   that tends to prove or disprove the existence of defects. Such testimony does not amount to

7   interpretation of law. It is, therefore, admissible.  In any event, a categorical order on this issue at

8   this juncture of the case is unwarranted.

9
                                        **CONCLUSION**

10       WHEREFORE, Defendant Chart, Inc. respectfully requests this Honorable Court deny

11  Plaintiffs' Motion in Limine No. 1 and for any further relief the Honorable Court deems

12  appropriate.

13  Dated: April 15, 2021                    Respectfully submitted,

14
                                            By: /s/ Kevin M. Ringel
15

16                                          John J. Duffy (SB No. 6224834)
                                            Kevin M. Ringel (SB No. 6308106)
17                                          Margaret C. Redshaw (SB No. 6327480)
18                                          **SWANSON, MARTIN & BELL, LLP**
                                            330 N Wabash, Suite 3300
19                                          Chicago, Illinois 60611
                                            Tel: (312) 321-9100; Fax: (312) 321-0990
20                                          jduffy@smbtrials.com
                                            kringel@smbtrials.com
21                                          mredshaw@smbtrials.com

22
                                            Marc G. Cowden (SB No. 169391)
23                                          Adam Stoddard (SB No. 272691)
24                                          **SHEUERMAN, MARTINI, TABARI, ZENERE**
                                            **& GARVIN**
25                                          1033 Willow Street
                                            San Jose, California 95125
26                                          Tel: (408) 288-9700; Fax: (408) 295-9900
27                                          mcowden@smtlaw.com
                                            astoddard@smtlaw.com
28                                          *Counsel for Defendant Chart, Inc.*

                        4           CHART'S OPPOSITION TO PLAINTIFFS'
                                          MOTION IN LIMINE NO. 1
                                            18-CV-01586-JSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHART'S OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 1
18-CV-01586-JSC