Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

*Plaintiffs' counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 2: SUBSEQUENT REMEDIAL MEASURES**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

## INTRODUCTION

When measures are taken that would have made an earlier injury less likely to occur, evidence of those subsequent measures are inadmissible under Rule 407 of the Federal Rules of Evidence. Here, the entities that own and operate the Pacific Fertility Center (PFC) took several such measures after the March 4th incident that damaged Plaintiffs' eggs and embryos. As PFC put it in one internal document, "[i]n the aftermath of the failure of Tank 4, PFC has been proactive in assessing and overhauling its Tissue Bank management policies, operating procedures, training, servicing, and readiness protocols." (Trial Ex. 379 at 1.) That document recites a list of 12 measures implemented at PFC following the March 4th incident, including increased surveillance of its cryostorage tanks, a second alarm system for monitoring the tanks, and new benchmarks for measuring tank performance. When Chart included the document on its exhibit list, Plaintiffs asked that Chart remove it and agree that it will not attempt to introduce evidence of the remedial measures taken by PFC after the March 4th incident. Chart declined Plaintiffs' request, necessitating this motion. Plaintiffs now request that the Court preclude Chart from offering exhibits into evidence that discuss PFC's remedial efforts, asking PFC employees or any other witness about those remedial efforts, or otherwise referencing them at trial.

## ARGUMENT

### A.   PFC's List of Remedial Efforts is Inadmissible under Rule 407.

Trial Exhibit 379 in the joint exhibit list submitted by the parties is a 3-page document that lists 12 remedial measures undertaken by PFC "[i]n the aftermath of the failure of Tank 4." (Trial Ex. 379 at 1.) The document was prepared by PFC's Lab Director, Dr. Joseph Conaghan, following the March 4th incident. (ECF No. 633-12 (10/09/19 Pacific MSO 30(b)(6) and Conaghan Dep.) at 208-9.) As Dr. Conaghan put it when asked about this document during his deposition, "we said we were going to do everything in our power to make sure that nothing like this could ever happen again, no matter what." (*Id.* at 209.) Dr. Conaghan wrote in the document that "[t]he list below details our efforts to become an ultra-secure Tissue Bank," which was his "way of saying: We want to be in a position whereby …. if we receive a defective tank, if that scenario was to happen again in the future, then our tissue will not be compromised by that defective tank." (Trial Ex. 379 at 1; Conaghan Dep. at 210.) The document then describes 12 specific measures PFC had taken to ensure history would not repeat itself: from

1

keeping a backup controller on hand and installing a second alarm system, to developing a new tank surveillance protocol and new tank replacement program, to splitting patient eggs and embryos across multiple tanks when possible. (Trial Ex. 379.)

This exhibit falls squarely within Rule 407's prohibition on using subsequent remedial measures to prove negligence or culpable conduct. Fed. R. Evid. 407. One of Chart's primary defenses is that PFC acted negligently and should be held wholly or partially responsible for the March 4th incident. The jury will be instructed on comparative fault and, if it concludes that PFC was indeed negligent, will be asked to assign percentages of responsibility to both. (*See* Disputed Jury Instruction No. 23 (based on CACI No. 406).) The only reason that Chart included PFC's list of remedial measures on its exhibit list, it would appear, is to suggest that PFC knows it is responsible and had acted accordingly. But as the Rules Committee wrote when Rule 407 was first proposed, the rule "rejects the suggested inference that fault is admitted." Fed. R. Civ. P. 407, Adv. Comm. Notes on Proposed Rules. The purpose of Rule 407 is to ensure that businesses like PFC do not forgo safety improvements because they fear that their improvements will be used against them as evidence of their liability. *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989). Permitting Chart to shift responsibility onto PFC by introducing evidence of the remedial steps PFC took following the March 4th incident would undermine that purpose.

Rule 407 does permit evidence of remedial measures to be introduced for other purposes, such as ownership or control, existence of duty, feasibility of precautionary measures, and impeachment. Fed. R. Civ. P. 407, Adv. Comm. Notes on Proposed Rules. But none of these alternative purposes apply here. Nobody disputes that PFC owned and controlled Tank 4 and the facility in which it was operated. Nobody disputes that PFC owed Plaintiffs a legal duty to exercise due care while storing their eggs and embryos. Nobody disputes that the measures implemented by PFC after the March 4th incident could feasibly have been implemented before the incident. And nobody has testified to the contrary, such that the document could be admitted for impeachment purposes.

Finally, the fact that PFC is not technically a party in the upcoming trial does not affect the exhibit's admissibility. The rule by its terms applies to all evidence of subsequent remedial measures; it draws no distinctions between parties and non-parties. As the Sixth Circuit observed, "the Rule seems

to exclude evidence of remedial measures regardless of who undertook them." *See In re Air Crash Disaster*, 86 F.3d 498, 529 (6th Cir. 1996). Wright and Miller concur, noting that while there do not appear to be any cases specifically addressing the issue, "remedial measures should be excluded when offered to show the degree of fault under comparative negligence regimes." 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Evidence* § 5285 (2d ed. 2020).

### B.   Other Chart Exhibits Are Similarly Inadmissible under Rule 407.

Chart's exhibit list includes several other documents that similarly discuss the remedial measures taken by PFC following the March 4th incident.

1. Trial Exhibit 378 is PFC's post-incident Quality Management Plan. (Trial Ex. 378.) The pre-incident Quality Management Plan is already in the record as Trial Exhibit 345, so the only reason to introduce the post-incident Quality Management Plan as well would be to draw attention to the remedial measures implemented following the Tank 4 failure. For example, the post-incident Quality Management Plan states that "[a]s of March 2018, PFC also maintains a separate back-up controller for the possibility that a controller could fail." (Trial Ex. 378 at 213.) It also describes how "[e]ffective March 2018, a second and completely independent alarm system has been installed," and that "[a]s of [M]arch 2018, the Tissue bank will have a separate [Quality Management] Plan." (Trial Ex. 378 at 213, 221.)

2. Trial Exhibit 380 discusses a "new tank validation protocol" and updated tank maintenance procedures that were developed by PFC's parent company to avoid another tank failure at PFC or other Prelude-owned IVF facilities. For example, the tank's overnight usage levels are now checked each day and the tanks are required to undergo an inspection by an independent contractor on a regular basis—measures that are also included on Dr. Conaghan's list. (Trial Ex. 380, ¶¶ 3, 4.)

3. Trial Exhibit 387 also mentions some of the same remedial measures included on Dr. Conaghan's list. The document was prepared by PFC's CEO and features a bulleted list of steps PFC has taken "to make sure that this does not happen again." (Trial Ex. 387 at 1.) Among those steps are PFC's new protocol for distributing patient eggs and embryos across multiple tanks whenever possible; PFC's addition of a second alarm system for its tanks; and PFC's new policy of subjecting its tanks to regular third-party inspections. (*Id.*)

4. Trial Exhibit 383 are the minutes from a lab meeting where several of the remedial measures on Dr. Conaghan's list were discussed and implemented, including a second independent alarm system for each of PFC's large cryogenic storage tanks; new tank quality control forms that require a minimum of 3 liquid nitrogen readings per day; and the splitting of patient samples across multiple tanks.

5. Trial Exhibit P358 is the Embryologist Training for Monitoring and Maintenance of Liquid Storage Tanks that PFC implemented after the March 4th incident. This is the dramatically updated daily tank QC referred to in the meeting minutes and in Paragraph 3 of Dr. Conaghan's list of remedial measures. It includes new tank monitoring procedures and forms, a new tank validation procedure, and new emergency procedures.

6. Trial Exhibit 375 is a new Liquid Nitrogen Safety protocol that PFC implemented six days after the March 4th incident. It requires enhanced monitoring of the lab's large cryogenic storage tanks, daily verification of liquid nitrogen measurements, daily visual inspections, immediate replacement of faulty equipment, and preparation of incident reports for any out-of-the-ordinary measurements.

7. Trial Exhibit 377 is a review of the quality control data for PFC's cryostorage tanks from April 2018 through June 2018 and discusses in detail the new quality-control logs that were implemented after the March 4th incident (as discussed in Paragraph 3 of Dr. Conaghan's list), as well as the problems PFC has encountered completing those new forms each day.

8. Trial Exhibit 357 is an example of the new alarm tracking logs that PFC implemented after the March 4th incident, as discussed in Paragraph 11 of Dr. Conaghan's list.

9. Trial Exhibit 374 is a letter Dr. Conaghan wrote to the College of American Pathologists. The letter reports that PFC developed a number of new processes and protocols following the March 4th incident.

10. Trial Exhibit 366 is an internal email Dr. Conaghan wrote on March 10, 2018. The letter reports that PFC has taken steps to enhance its security standards in the wake of the March 4th incident.

11. Trial Exhibit 362 is a draft letter to patients from PFC. The letter reports that in light of the March 4th incident, "additional steps have been taken to make sure everything is done to provide the safest storage facility possible. These steps include re-inspection of onsite storage tanks, the purchase

of several emergency tanks beyond our standard back-up tanks, and an extra layer of redundancy in our warning systems."

For the same reasons Dr. Conaghan's list of subsequent remedial measures is inadmissible under Rule 407, the references to those measures in other documents should also be deemed inadmissible. Chart should also be precluded from asking PFC witnesses about these remedial measures or otherwise referencing them during trial.

## CONCLUSION

Plaintiffs respectfully request that the Court preclude Chart from entering Trial Exhibits 357, 358, 362, 366, 374, 375, 377, 378, 379, 380, 383, 387 into evidence at trial, from entering any other exhibits into evidence that reference remedial measures taken by PFC following the March 4th incident, from asking PFC employees or any other witnesses about those remedial measures, or otherwise referencing them at trial.

Dated: April 14, 2021

Respectfully submitted,

By: /s/ Amy M. Zeman

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

5
PLAINTIFFS' MOTION IN LIMINE NO. 2: SUBSEQUENT REMEDIAL MEASURES
MASTER CASE NO. 3:18-cv-01586-JSC

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' Counsel*

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Documents Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H. and I.J.) | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2: SUBSEQUENT REMEDIAL MEASURES**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

## INTRODUCTION

Chart intends to introduce evidence of PFC's quality management processes, both before and after the March 4, 2018 tank incident. This evidence includes documentation depicting the evolution of PFC's tissue bank management policies, operating procedures, training, servicing, and readiness protocol. (Trial Ex. 379). It also includes lab meeting minutes, quality control data, alarm tracking logs, and a letter to the College of American Pathologists (CAP) reporting that PFC developed a number of new processes and protocols following the March 4th incident. (Trial Exs. 378, 380, 387, 383, 358, 375, 377, 357, 366, 362). Plaintiffs filed a Motion in Limine seeking to exclude this evidence under Rule 407 of the Federal Rules of Evidence.

Plaintiffs' reliance on Rule 407 is misplaced. As Plaintiffs point out in their Motion, the purpose of Rule 407 is to exclude evidence of remedial actions as proof of fault against the defendant. (Pls.' Mot. Limine No. 2 at 2:12-13) (*citing* Fed. R. Evid. 407, Adv. Comm. Notes). That concern, however, is not present when a non-party undertakes remedial measures. The law is clear in California: Rule 407 does not exclude subsequent remedial measures by non-parties, such as PFC. Accordingly, Plaintiffs' Motion fails.

## ARGUMENT

Plaintiffs attempt to support exclusion of documents prepared by PFC as Rule 407 subsequent remedial measures with citation to two cases: *Causey v. Zinke (In re Aircrash in Bali, Indonesia)*, 871 F.2d 812 (9th Cir.), *cert. denied*, 493 U.S. 917 (1989) and *In re Air Crash Disaster*, 86 F.3d 498, 529 (6th Cir. 1996). Plaintiffs cite *Causey* for the proposition that Rule 407 was enacted to prevent businesses like PFC from forgoing safety improvements out of fear that the improvement will be used against them as evidence of liability. (Pls. Mot., *supra*, at 2:13-15). Plaintiffs' argument fails to appreciate, however, that this policy consideration is inapplicable if the subsequent remedial measure is employed by a non-party. The Ninth Circuit emphasized this in *Causey*, explaining that a non-defendant will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant. *Causey*, 871 F.2d at 816-17. Accordingly, the *Causey* court determined that Rule 407 only applies to remedial measures taken by defendants. *Id.*

*Causey* is consistent with a number of cases holding that Rule 407 does not apply to remedial measures taken by a non-party. *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 889, 887-888 (9th Cir. 1991); *see also Scherer v. Home Depot U.S.A., Inc.,* 2006 WL 3019788, *3 (E.D. Cal.) (evidence of subsequent remedial measures taken by non-defendant is admissible); *see also GATX/Airlog Company v. Evergreen International Airlines, Inc.,* 2001 WL 37126548, *7 (N.D. Cal.)(same).

*Pau v. Yosemite Park and Curry Co*. involved a fatal accident on a bicycle rented from defendant Curry Company. *Pau*, 928 F.2d at 883. The accident occurred on a park trail in the Yosemite National Park. *Id*. Subsequently, the United States Park Service – a non-party - placed a sign at the foot of trail prohibiting rental bikes from using the trail. *Id.* at 884. The trial court excluded the sign under Rule 407. *Id.* at 887-888. On appeal, the Ninth Circuit reversed, finding an abuse of discretion because the defendant Curry Company did not place the sign on the trail and, therefore, Rule 407 did not apply. *Id.* The Court explained that admitting evidence of the sign against defendant Curry Company would not discourage the United States Park Service from employing such measures in the future. *Id*.

Similarly here, PFC is not a party to the litigation and thus, Rule 407 does not apply. Nor will the admission of the evidence violate any public policy. It will not discourage PFC from employing future remedial measures as this evidence is not admitted against it nor is it admitted as an admission of fault against PFC. Moreover, even if Rule 407 did apply to this evidence, it is still admissible under Rule 407 for "other purposes," including to show the feasibility of alternative precautionary procedures and causation.

## CONCLUSION

WHEREFORE, Defendant Chart, Inc. respectfully requests this Honorable Court deny Plaintiffs' Motion in Limine No. 2 and admit Trial Exhibits 357-8, 362, 366, 375, 377-380, 383, and 387, which relate to Pacific Fertility Center's revised quality management policies and procedures following the tank incident.

Dated: April 15, 2021

Respectfully submitted,
By: /s/ Kevin M. Ringel
John J. Duffy (SB No. 6224834)

Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*