Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE &
CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

*Plaintiffs' counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 3: BAD ACTS EVIDENCE**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

# INTRODUCTION

During the parties' upcoming trial, Defendant Chart intends to introduce a variety of evidence that paints the Pacific Fertility Center (PFC) in a poor light. The Court has already ruled on some of this bad acts evidence. It found that evidence PFC violated the standard of care by backdating its liquid nitrogen measurements was admissible, but evidence PFC violated the standard of care by occasionally using buckets to refill its tanks was not. (3/19/21 Order at 9-10, ECF No. 724.) The pivotal consideration in the Court's analysis was whether the infraction could have realistically caused or contributed to the March 4, 2018 incident at the heart of this case. With respect to backdating, the Court accepted Chart's argument that a jury could find that "these deviations from the standard of care are a part of what caused the Tank failure," and observed that PFC's conduct also could support an inference of guilty knowledge. (*Id.* at 9.) With respect to buckets, however, the Court noted that even Chart's expert did "not believe that this practice caused the March 4 incident, and as such it falls within the category of inadmissible bad acts evidence." (*Id.* at 10.) Likewise, when Chart sought to introduce evidence that PFC had violated the standard of care by allowing Tank 4's liquid nitrogen levels to drop to zero in 2013 and again in 2014, the Court found the causal connection Chart was attempting to draw between 2013/14 safety infractions and the 2018 accident was too attenuated and excluded Chart's evidence. (*Id.* at 9-10.)

Plaintiffs now request that the Court review some additional bad acts evidence that Chart intends to use during trial. Chart intends to introduce a January 2017 inspection report that found PFC failed to meet the standard of care in a number of respects unrelated to the March 4th incident. PFC did not perform contact testing on its plasticware, for example, and did not have a certificate of accuracy on file for one of the lab's thermometers. This evidence—which none of Chart's experts rely on or reference, in connection with a causation or any other opinion—is more akin to PFC's use of buckets than it is to PFC's backdating of Tank 4's liquid nitrogen levels: the evidence may show that PFC committed technical infractions, but those infractions could not have realistically caused or contributed to the March 4th incident, and therefore constitute inadmissible bad acts evidence.

Plaintiffs also request that the Court limit the backdating evidence Chart is permitted to introduce at trial. The Court has already determined that Chart's forensic analyst can describe the

PLAINTIFFS' MOTION IN LIMINE NO. 3: BAD ACTS EVIDENCE
MASTER CASE NO. 3:18-cv-01586-JSC

backdating he uncovered in PFC's digital records, and that Chart's lab expert can opine that PFC's backdating of records constitutes a violation of the applicable standard of care. Chart will also be permitted to question PFC employees about their involvement in the backdating. But Chart now also wants to question one of PFC's former attorneys, Elizabeth Balassone, about the backdating and the declaration she submitted earlier in this case. If Chart believes Ms. Balassone was somehow involved with the backdating or submitted a false declaration, it should have pursued discovery sanctions against PFC's lawyers. But Chart should not now be permitted to bring a discovery dispute into trial, suggest that PFC's lawyers engaged in bad acts, and then urge jurors to hold those bad acts against PFC when rendering their verdict.

## ARGUMENT

### A. The deficiencies identified during PFC's 2017 inspection do not relate to the March 4th incident and are inadmissible under Rule 404(b).

Chart's Trial Exhibit 364 is an Inspector's Summation Report that identifies 27 deficiencies found during a January 2017 inspection of PFC's facilities. (Trial Ex. 364 (MSO011323).) Below are examples of some of these deficiencies:

- RLM.03800 – contact material testing isn't performed on plasticware
- RLM.03935 – emergency power not tested quarterly in 2016
- RLM.03975 – disposition of IVF sperm not documented
- COM.01400 – no appropriately signed attestation forms
- GEN.54400 – personnel records – no diploma or transcripts
- GEN.75400 – fire safety training – no record of annual training
- COM.30450 – new [reagent] lot confirmation of acceptability – no parallel testing against old lots

Chart wishes to use these deficiencies to suggest to the jury that PFC's lab director and embryologists are sloppy or careless, and thus more likely to have acted negligently in connection with the tank failure a year later. But Rule 404 prohibits the use of bad acts evidence for that purpose. *See Jones v. S. Pac. R.R.*, 962 F.2d 447, 450 (5th Cir. 1992) (finding train operator's prior safety infractions were inadmissible to prove he was negligent on the day of the accident or had a habit of conducting

trains negligently); *see also In re Pfizer Inc. Sec. Litig.,* 288 F.R.D. 297, 318 (S.D.N.Y. 2013) ("[defendant's] prior acts of negligence are not admissible to prove that it was negligent here").

Much like PFC's occasional use of buckets to fill its tanks, the infractions cited in the January 2017 report do not appear to have caused or contributed to the March 2018 tank accident. Up to this point, no Chart witness or expert has cited to or referenced any of these infractions as a potential cause of or contributor to the incident. Unless and until Chart can demonstrate a connection, it should not be permitted to introduce Trial Exhibit 364 into evidence, question PFC about the January 2017 inspection, or refer to any of the deficiencies identified during the January 2017 inspection.

**B.  Chart should not be permitted to call PFC's former attorney as a witness at trial.**

Chart previously sought to depose one of PFC's former attorneys: Elizabeth Balassone, who was an associate at Morrison & Foerster in 2018 and is now a Senior Appellate Court Attorney at the California Court of Appeal. (*See* 9/23/20 Joint Case Management Statement at 4, ECF No. 556.) Chart's forensic analyst had discovered that Ms. Balassone altered one of the entries in PFC's Reflections lab monitoring database, and Chart wanted to depose Ms. Balassone about that alteration. (*Id.*) In response, PFC's attorneys provided Chart with a declaration from Ms. Balassone, which explained that her alteration was inadvertent and immediately corrected. (*Id.*; *see also*  Trial Ex. 158.) Chart continued to insist that a deposition was necessary, but eventually dropped the matter after the Court stated that its "nonbinding reaction is that you don't need her deposition" during one of the parties' Case Management Conferences. (09/24/20 Tr. at 20, ECF No. 566.) The Court told Chart that it could formally raise the issue by filing a letter brief, but Chart elected not to press the issue further.

Chart now says that it intends to call Ms. Balassone and question her about the declaration she submitted last September. Chart's apparent strategy is to identify inaccuracies in Ms. Balassone's declaration to impugn PFC by undermining its former attorney's credibility. Ms. Balassone stated in her declaration that she had been navigating through PFC's Reflections dashboard when she inadvertently lowered one liquid nitrogen measurement by 0.1 cm. (Trial Ex. 158, ¶ 4.) Ms. Balassone also stated that the change was an accident and she immediately clicked the entry again to attempt to restore it to its original measurement. (*Id.*) A review of the underlying metadata suggests that Ms. Balassone's recollection of events was not quite accurate: she did lower one liquid nitrogen

3

measurement, but by 0.4 cm instead of 0.1 cm; and she did attempt to restore the entry to its original measurement, but was unsuccessful—instead of restoring the value to 12.3, she entered a value of 12.2. (Trial Ex. 102, 11/06/20 Report of J. Cauthen at 20.) Nothing in Chart's forensic analysis undermines the primary point of Ms. Balassone's declaration, however: her alteration of the Reflections data was inadvertent, she made no other changes, she was never asked to make any changes to the Reflections data, and she accessed the Reflections data only for the purpose of evaluating the information stored in that database for production purposes. (Trial Ex. 102, ¶ 5.)

Plaintiffs request that the Court preclude Chart from calling Ms. Balassone at trial. Her testimony is not sufficiently probative to justify putting one of PFC's former attorneys on the witness stand. And if Chart is permitted to question the truthfulness of Ms. Balassone's declaration, there is a significant risk that the jury will be distracted from the central issues in the case or that juror members will be unfairly prejudiced against PFC. If Chart believed that Ms. Balassone's declaration was false or submitted in bad faith, it should have informed the Court and sought an appropriate remedy. It should not be permitted to drop the issue during discovery only to re-introduce it during trial. *See Snyder v. Bank of Am., N.A.,* No. 15-CV-04228-KAW, 2020 WL 6462400, at *11 (N.D. Cal. Nov. 3, 2020) ("there does not appear to be any proper purpose for introducing this discovery dispute; it does not go to the merits of the case").

**CONCLUSION**

Plaintiffs request that the Court limit the bad acts evidence that Chart is permitted to introduce during trial. Chart has been permitted to inquire into certain entries that PFC employees altered after the March 4th incident. But the purpose of that examination should remain centered on what it says about the amount of liquid nitrogen in Tank 4 in the days and weeks leading up to the March 4th incident. It should not become the central issue in the case, and it should not lead to testimony about unrelated safety infractions or attacks on the credibility of PFC's former lawyer. Plaintiffs accordingly request

//

//

4

1   that the Court preclude Chart from calling Ms. Balassone as a witness or introducing evidence that PFC

2   was cited for laboratory deficiencies during a prior inspection.

3

4   Dated: April 14, 2021                           Respectfully submitted,

5                                                   By:    /s/ Amy M. Zeman

6                                                   Eric H. Gibbs (State Bar No. 178658)
                                                    Amy M. Zeman (State Bar No. 273100)
7                                                   **GIBBS LAW GROUP LLP**
                                                    505 14th Street, Suite 1110
8                                                   Oakland, CA 94612
9                                                   Tel: (510) 350-9700
                                                    Fax: (510) 350-9701
10                                                  ehg@classlawgroup.com
11                                                  amz@classlawgroup.com

12                                                  Dena C. Sharp (State Bar No. 245869)
                                                    Adam E. Polk (State Bar No. 273000)
13                                                  Nina R. Gliozzo (State Bar No. 333569)
14                                                  **GIRARD SHARP LLP**
                                                    601 California Street, Suite 1400
15                                                  San Francisco, CA 94108
                                                    Tel: (415) 981-4800
16                                                  Fax: (415) 981-4846
17                                                  dsharp@girardsharp.com
                                                    apolk@girardsharp.com
18                                                  ngliozzo@girardsharp.com

19                                                  Adam B. Wolf (State Bar No. 215914)
20                                                  Tracey B. Cowan (State Bar No. 250053)
                                                    **PEIFFER WOLF CARR KANE &**
21                                                  **CONWAY, APLC**
22                                                  4 Embarcadero Center, Suite 1400
                                                    San Francisco, CA 94111
23                                                  Tel: (415) 766-3545
                                                    Fax: (415) 402-0058
24                                                  awolf@peifferwolf.com
25                                                  tcowan@peifferwolf.com

26                                                  *Plaintiffs' Counsel*

27

28

PLAINTIFFS' MOTION IN LIMINE NO. 3: BAD ACTS EVIDENCE
MASTER CASE NO. 3:18-cv-01586-JSC

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,
ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br><br><br>This Documents Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H. and I.J.) | Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3: BAD ACTS EVIDENCE**<br><br>Pretrial Hearing: April 29, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Place: Courtroom F, 15th Floor<br><br>Trial Date: May 20, 2021 |

**INTRODUCTION**

Chart intends to introduce evidence detailing PFC's carelessness in its operation of the laboratory. Included in this evidence is a January 2017 College of American Pathologists (CAP) inspection report that found PFC failed to meet the standard of care in a number of respects and identifies 27 deficiencies. (Trial Ex. 364 [MSO011323]). Additionally, Chart also intends to question as a fact witness Elizabeth Balassone, one of PFC's former attorneys, about her direct involvement in backdating PFC's digital records. (Trial Ex. 158). Plaintiffs filed their Motion in Limine seeking to exclude this evidence under Rule 404(b) of the Federal Rules of Evidence.

This Court already ruled on the admissibility of certain bad acts evidence. (Order, Mar. 19, 2021, ECF No. 724). Importantly, this Court determined that evidence of PFC's backdating Tank 4's liquid nitrogen records is admissible, explaining that a jury could find it to relevant to what happened to Tank 4 to cause Plaintiffs' damages and that the conduct could support an inference of guilty knowledge. (*Id*. at 9). For the same reasons, the CAP inspection report and Ms. Balassone's testimony are likewise admissible.

**ARGUMENT**

**A.  The January 2017 CAP inspection report is relevant and admissible.**

Like the evidence related to backdating records, the CAP inspection report supports an inference of guilty knowledge against PFC. In addition to the examples cited in Plaintiffs' Motion, the CAP report also lists the following deficiencies:

- RLM 12300: No procedure to ensure viable recovery rates for cryo.

- COM 01700: No evaluation of AAB[1] challenge 1.2016 or 2.2016 for andrology or embryology. No investigation of "unacceptable" results.

- COM 0100: Not following written policy on performing and submitting PT results.

- COM 01600: No schedule for testing personnel rotation for performance of PT.

---

[1] AAB – the American Association of Bioanalysts – is a professional association and accrediting agency for clinical laboratory scientists, supervisors, directors, and consultants. (https://www.aab.org/aab/About_ABB.asp)

1                          CHART'S OPPOSITION TO PLAINTIFFS'
                          MOTION IN LIMINE NO. 3
                          18-CV-01586-JSC

- COM 30700: Need certificate of accuracy for NIST[2] thermometer.

- GEN 16902: QM Implementation – QM plan not reviewed annually for effectiveness.

- GEN 20316: QM indicators of quality – no indicators.

- GEN 20375: Document control – posted documents not controlled, handwritten corrections not initialed or dated.

- GEN 55450: Initial training – no training records.

- GEN 55500: Competency assessment – no document of assessing the required 6 elements.

- GEN 55525: Performance assessment of supervisors/consultants – no documentation.

(Trial Ex. 364).

The foregoing deficiencies are necessary to provide the jury with the entire background for the context in which the tank incident occurred. They are part of PFC's systemic violations of the standard of care and its failure to adequately maintain records, service equipment, train laboratory personnel, and review and revise quality management procedures. One portion of Chart's defense is that this conduct is causally connected to what happened to Tank 4 – the seminal issue in this case. Importantly, this evidence establishes that PFC had knowledge its conduct in the weeks leading up to the incident was not in conformity with the standard of care and was not merely a coincidence or mistake. The deficiencies cited in 2017 are similar to those exhibited by PFC personnel one year later, prior to the incident. For example, "posted documents not controlled, handwritten corrections not initialed or dated" is directly related to PFC's backdating records and its failure to maintain records. Additionally, the absence of documentation related to training, competency assessments, and performance assessments calls into question the proficiency and practices of the laboratory personnel.

Rule 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, including but not limited to "proof of motive,

---

[2] NIST – the National Institute of Standards and Technology – is "one of the nation's oldest physical science laboratories." Established by Congress, it operates as part of the Department of Commerce and provides technology, measurements, and standards to a broad spectrum of industries. (https://www.nist.gov/about-nist)

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. "Rule 404(b) is a rule of inclusion – not exclusion –  which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (*citing United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007)). The similarities between the conduct described above make the CAP report admissible to show PFC's knowledge, plan, absence of mistake, and lack of accident. *United States v. Pruett*, 681 F.3d 232, 244-5 (5th Cir. 2012) (evidence of prior violations of the Clean Water Act were admissible under Rule 404(b) to circumstantially establish defendant knowingly violated the Act).  This is evidence of how PFC ran its business.

The cases cited by Plaintiff are inapposite. In *Jones*, evidence of the defendant train operator's prior safety infractions – for speeding, failure to identify himself on the radio, failure to display headlights, and the like – were inadmissible to prove that he had a habit of conducting trains negligently under Rule 406. *Jones v. Southern Pacific R.R*., 962 F.2d 447, 449-50 (5th Cir. 1992). The Fifth Circuit explained that the train operator had only nine infractions over a career spanning 29 years, which could "hardly be characterized as a habit." *Id.* at 450. Here, Rule 406, which governs "habit evidence," does not apply. Instead, the evidence is admissible under Rule 404(b)(2) as non-propensity evidence of knowledge and absence of mistake or coincidence. Additionally, unlike the infractions in *Jones*, PFC was cited for the deficiencies only one year prior to the incident (not over a period of 29 years) and they are remarkably similar to those exhibited in the weeks leading up to the incident.

Plaintiffs' reliance on *In re Pfizer* is likewise unpersuasive. The "bad acts" alleged in *In re Pfizer* related to abuse of discovery throughout the course of the litigation, which is not alleged here. In *re Pfizer Inc. Sec. Litig.,* 288 F.R.D. 297, 318 (S.D.N.Y. 2013).

The 2017 CAP inspection records about PFC are admissible and excluding them would be unfairly prejudicial to Chart's defense that PFC caused Plaintiffs' damages.

### B.  Chart should be permitted to call Ms. Balassone as a witness at trial.

Plaintiffs also seek to exclude Ms. Balassone from testifying about the alterations she personally made to an entry on the Reflections lab monitoring database.  Plaintiffs, however, fail

to offer any legal authority to support their position.  As noted above and in Plaintiffs' Motion, this Court already determined that evidence of PFC's backdating is admissible. It follows then that Ms. Balassone's testimony regarding her involvement as a fact witness in backdating PFC records is likewise admissible. Like the testimony of PFC personnel, Ms. Balassone's testimony creates an inference of guilty knowledge and is admissible under Rule 404(b). Additionally, contrary to plaintiffs' assertion, her testimony will not distract the jury from the central issues of this case. Rather, her testimony relates to a key component of Chart's defense: PFC's backdating of records.

Moreover, it is of no consequence whether Chart continued to pursue its request to depose Ms. Balassone after she tendered her affidavit. Whether a witness sat for their deposition has no bearing on the admissibility of their testimony at trial.  Instead, relevance and probative value are key considerations, both of which have already been determined through this court's ruling that evidence of backdating is admissible.

### CONCLUSION

WHEREFORE, Defendant Chart, Inc. respectfully requests this Honorable Court deny Plaintiffs' Motion in Limine No. 3 and admit the January 2017 College of American Pathologists report (Trial Exhibit 364) and permit Chart to call Ms. Balassone to testify at the trial in this cause.

Dated: April 15, 2021

Respectfully submitted,

By: /s/ Kevin M. Ringel

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN**

1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700; Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart, Inc.*

CHART'S OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE NO. 3
18-CV-01586-JSC