Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION | Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' MEMORANDUM OF LAW REGARDING DISPUTED JURY INSTRUCTIONS**<br><br>Pretrial Conference: April 29, 2021<br>Trial Date: May 20, 2021<br><br>The Honorable Jacqueline Scott Corley |

A.     **Ninth Circuit Model Jury Instructions**

The parties have agreed on several instructions from the Ninth Circuit Model Jury Instructions that may be given to the jury, but Chart has also requested several others be read to the jury as well. Plaintiffs believe these additional instructions are unnecessary or inappropriate for the following reasons:

**1.2 and 1.3**: Plaintiffs believe these instructions are unnecessary if instruction 1.4 is given, as each addresses the duty of the jury.

**1.17**: This instruction could make sense if given at the beginning of the trial, but Plaintiffs believe it is unnecessary to inform jurors they will not have a transcript available.

**1.19**: Plaintiffs do not believe the jury should be permitted to question witnesses or that they will expect to be able to do so.

**2.9**: This instruction is given when a witness has been convicted of a crime or lied under oath on a prior occasion. Plaintiffs are unaware of any witness to whom the instruction could apply.

**2.10**: This instruction is provided when arrangements have been made to conduct a test or experiment in front of the jury. None of the party's experts have disclosed any tests or experiments they plan to perform at trial, and Plaintiffs believe it would be inappropriate for them to do so now.

**2.14**: Plaintiffs believe this instruction is likely to be unnecessary if instruction 2.13 is given, as both concern charts and summaries and Plaintiffs expect that the charts and summaries presented at trial will be received into evidence.

**5.1**: This federal damages instruction is duplicative of the state damage instructions provided below, including Instructions 11-13, which are agreed upon by the parties except for one repetitive line. In addition, to the extent the federal and state damages instructions differ in substance, the Court should prefer the state instructions under the *Erie* doctrine.

**5.2**: This federal damages instruction is unnecessary and inappropriate in light of Instructions 14-15, which cover the items of damage Plaintiffs claim by reference to applicable state law. The instruction concerning the cost of medical care is duplicative of Instruction 15. The instructions concerning property damage do not take into account state law that applies to Plaintiffs' claims. Instructions that give effect to applicable state law should be preferred under the *Erie* doctrine, and the

1
PLAINTIFFS' MEMORANDUM OF LAW REGARDING DISPUTED JURY INSTRUCTIONS
CASE NO. 3:18-CV-01586-JSC

Comment to Instruction 5.2 itself recognizes that particular claims may have special rules on damages. And the instructions concerning other items of damage are not applicable to Plaintiffs' claims.

**5.3** This federal damages instruction concerning mitigation of damages is not relevant to the parties' claims or defenses. If an instruction on mitigation of damages is given, it should be based on CACI No. 3931, as state rather than federal law applies to Plaintiffs' claims and Chart's defenses. But Chart has not put forth any evidence that Plaintiffs could have mitigated the damage to their eggs or embryos. Under California law, "[t]he rule of mitigation of damages comes into play after a legal wrong has occurred, but while some damages may still be averted." *Pool v. City of Oakland*, 42 Cal. 3d 1051, 1066 (1986). Here, the damage to Plaintiffs' eggs and embryos was complete on March 4, 2018, after it was discovered Tank 4 had lost liquid nitrogen and the tissue was transferred to a backup tank full of liquid nitrogen. Reading jurors an instruction that suggests Plaintiffs perhaps could have averted further damage but failed to do so would be misleading and confusing under the circumstances. *See* Jones, et al., *Federal Civil Trials and Evidence* ¶ 15:57 (The Rutter Group 2020) ("Jury instructions must be supported by the pleadings and evidence (or reasonable inferences therefrom) developed in a specific case"); ¶ 15:58 ("An *irrelevant* instruction, even if a correct statement of law, should not be given to the jury. Irrelevant instructions are likely to mislead the jury and invite speculation.").

**5.4** This federal damages instruction concerns discounting future economic damages to present value; it does not apply to future noneconomic damages. If an instruction on this topic is given, it should be based on CACI No. 359, as state rather than federal law applies to Plaintiffs' claims.

**B.    Disputed Instruction No. 4 Re Consumer Expectation Test**

Chart does not object to the form of Plaintiffs' proposed instruction, but does claim that the proof provided will not warrant its submission to the jury. Chart previously raised this issue in its Motion for Summary Judgment, arguing that the consumer expectation test does not apply to a cryogenic storage tank. The Court considered the expert testimony Plaintiffs intend to introduce at trial and concluded otherwise, finding that Chart had not shown as a matter of law that the consumer expectation test is inapplicable here, and observing that under *Demara v. The Raymond Corp.*, 13 Cal. App. 5th 545, 561 (2017), Plaintiffs could proceed under both a consumer expectation theory and risk/benefit theory at the same time. (3/8/21 Order on MSJ, ECF No. 712.)

Chart also requests that the Court advise the jury that it must first determine whether Tank 4 is a product about which an ordinary consumer can form reasonable expectations, citing to the Directions for Use of CACI No. 1203. The Directions for Use state that the Court must make an initial determination as to whether the consumer expectation test applies to Tank 4. The Court has already done this in connection with its Order on Chart's Motion for Summary Judgment and can revisit the issue after it has heard from all the witnesses in the case. Only if it finds Tank 4 is a product to which "the test may, but not necessarily does, apply," should the instruction be modified as Chart requests.

### C.  Disputed Instruction No. 5 Re Risk-Benefit Test

The parties' proposed instructions are both based on CACI No. 1204 and are identical in all respects except one: Chart would like to add "f) Other relevant factor(s)" as a sixth factor the jury can consider when assessing whether the benefits of Chart's tank design outweighed its risks. The phrase "Other relevant factor(s)" does appear in CACI No. 1204, but the phrase is italicized and double-bracketed—meaning that it is optional and that, if used, the relevant factors should be listed in place of the words "other relevant factors." Just as the instruction does not intend for courts to say, "name of plaintiff," it is not supposed to say, "other relevant factor(s)." The Directions for Use of CACI No. 1204 further clarify that aesthetics is one factor that could be added to the instructions in an appropriate case, but only where there is evidence that appearance is important in the marketability of the requirement. Chart has no such evidence and has not identified any other relevant factors that are relevant to the risk-benefit in this case. Its proposal to include an open-ended subpart (f) would only confuse jurors, who would not know what other factors it can consider, and could lead jurors to base their verdict on factors not contemplated by California law.

### D.  Disputed Instruction No. 6 Re Negligence – Basic Standard of Care

Plaintiffs object to this instruction as inapplicable to Plaintiffs' claims. The Directions for Use of CACI Nos. 1220 and 1221 show that Chart's proposed instruction was intended for use when a plaintiff alleges a manufacturing or design defect under a negligence theory. Plaintiffs are not asserting such a claim; they allege a manufacturing or design defect only under a theory of strict liability. *See also* Jones, et al., *Federal Civil Trials and Evidence* ¶ 15:58 ("An *irrelevant* instruction, even if a

correct statement of law, should not be given to the jury. Irrelevant instructions are likely to mislead the jury and invite speculation.").

### E. Disputed Instruction No. 8 Re Custom or Practice

Plaintiffs object to this instruction, which is intended for claims of ordinary negligence, as inapplicable and lacking foundational evidence. As stated in the instruction's Directions for Use, "This instruction is … inappropriate in cases involving strict liability." CACI No. 413 (citing *Titus v. Bethlehem Steel Corp.*, 91 Cal. App. 3d 372, 378 (1979)). If any instruction is given, it should therefore make clear that customs or practice are irrelevant to Plaintiffs' strict liability claims.

Plaintiffs have alleged a claim against Chart for negligently failing to recall or retrofit a defective product. But none of Chart's expert witnesses have expressed an opinion regarding customs or practices in the cryogenic equipment industry with respect to product retrofits or recalls, and none of the potential trial exhibits submitted by Chart concern such a custom or practice. Without a proper evidentiary foundation, this instruction is not appropriate and could only mislead or confuse jurors. *See* Jones, et al., *Federal Civil Trials and Evidence* ¶ 15:57 (The Rutter Group 2020) ("Jury instructions must be supported by the pleadings and evidence (or reasonable inferences therefrom) developed in a specific case"); ¶ 15:58 ("An *irrelevant* instruction, even if a correct statement of law, should not be given to the jury. Irrelevant instructions are likely to mislead the jury and invite speculation.").

### F. Disputed Instruction No. 9 Re Definition of Substantial Factor

Chart's proposed instruction omits the final sentence in CACI No. 430, which provides that "[c]onduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." The Directions for Use of CACI No. 430 state that the sentence is optional but "in some cases it may be error not to give this sentence." CACI No. 430 (citing *Soule v. GM Corp.*, 8 Cal. 4th 548, 572-573 (1994)). The benefit of the sentence is that it makes clear that the definition of "substantial factor" subsumes the "but for" test of causation, which makes it less likely jurors will misunderstand the test and apply an overly lenient standard of causation. *Id.* Plaintiffs therefore favor reading the jury the complete instruction, including the optional final sentence.

**G.     Disputed Instruction No. 11 Re Introduction to Tort Damages Offered by Chart**

Both proposed instructions are drawn from CACI No. 3900, but Chart's proposal includes a bracketed sentence that the Directions for Use say not to include when CACI No. 3902 is also being used—as it is here. The sentence that Chart wants to include, "The following are the specific items of damages claimed by plaintiffs," is unnecessary because when CACI No. 3902 is used, the items are not listed immediately after the instruction. Instead, they are listed after CACI No. 3903, which provides "The following are the specific items of economic damages claimed by plaintiffs," and after CACI No. 3905, which provides, "The following are the specific items of noneconomic damages claimed by plaintiffs." *See* Stipulated Instruction Nos. 12, 13, 17 (stipulating to use of CACI Nos. 3902, 3903, and 3905).

**H.     Disputed Instruction No. 14 Re Damage to Eggs or Embryos Offered by Plaintiffs**

The chief economic damages Plaintiffs are seeking in this case are for damage to their personal property—namely, their cryopreserved eggs and embryos. Chart has proposed an instruction based on CACI 3903L, which is in turn based on California Civil Code 3355. But as the California Supreme Court held in *Willard v. Valley Gas & Fuel Co.*, "section 3355 deals with property which has a market value and also a peculiar value to the owner, *and not with property having no market value*." 171 Cal. 9, 15 (1915) (emphasis added), *overruled on other grounds by Showalter v. W. Pac. R.R.,* 16 Cal. 2d 460 (1940); *see also Kimes v. Grosser*, 195 Cal. App. 4th 1556, 1560–62 (2011) (quoting *Willard*); *Zvolanek v. Bodger Seeds*, 5 Cal. App. 2d 106, 110 (1935) (same).

Plaintiffs' eggs and embryos have no market value and so are not governed by Section 3355. Embryos cannot be sold, and while donor eggs can be purchased from IVF clinics, there is no market for donor eggs with one's own DNA. If donor eggs were a true market substitute for one's own eggs, women would simply buy donor eggs rather than endure the painful, time-consuming, expensive, and emotionally exhausting process of harvesting their own eggs. Stated simply, there is no way for Plaintiffs to replace the eggs and embryos that were in Tank 4 by simply purchasing equivalent eggs and embryos. That is why the March 4th incident was so tragic and widely reported—the human tissue stored inside were highly valued and irreplaceable.

Where, as here, property has no commercial or market equivalent, "its value, or plaintiff's damages, must be ascertained in some other rational way, and from such elements as are attainable." *United States v. CB & I Constructors, Inc.*, 685 F.3d 827, 837 (9th Cir. 2012) (quoting *Willard*, 171 Cal. 9). Elements available to support a rational damages award may include "the difficulty and expense to which plaintiff was put in acquiring the property, the nature and character of the use to which it was put by him, and the like." *Id.* (quoting *Zvolanek*, 5 Cal. App. 2d at 107-8); *see also Zvolanek,* 5 Cal. App. 2d at 108 (also mentioning method of producing the property, amount of time expended, and value of the time expended, and the value to plaintiff of the lost property).

Plaintiffs' proposed jury instructions incorporates these factors, informs the jury that no fixed standard exists for determining the amount of damages, and instructs the jury that it must decide upon a reasonable amount based on the evidence and its common sense. *See CB & I*, 685 at 838 ("That the government's environmental damages are 'largely intangible' and 'not readily subject to precise calculation' does not make them any less real. The amount of such damages is 'necessarily left to the subjective discretion of the trier of fact.'") (internal citations and quotation marks omitted); *id.* ("the case law is clear that there is not one particular method for ascertaining plaintiff's damages").

### I. Disputed Instruction No. 15 Re Past Medical Expenses

Plaintiffs' proposed instruction is drawn from CACI No. 3903A, which provides that to recover damages for past medical expenses, Plaintiffs must prove the reasonable cost of reasonably necessary medical care that they have received. Chart contends CACI No. 3903A applies only to medical expenses in personal injury cases, not to medical expenses made necessary by property damage. But CACI No. 3903A includes no such limitation. To the contrary, it covers any tortious conduct that requires a plaintiff to incur medical expenses: "A person who undergoes necessary medical treatment for tortiously caused injuries suffers an economic loss by taking on liability for the costs of treatment." CACI No. 3903A, Sources and Authority (first bullet) (quoting *Williams v. The Pep Boys Manny Moe & Jack of California*, 27 Cal. App. 5th 225, 237 (2018)). Here, the Tank 4 incident caused Plaintiffs considerable emotional distress, which required some Plaintiffs to obtain mental health services. In addition, Plaintiffs A.B. and C.D. were required to make two trips from Ohio to San Francisco so PFC could attempt to thaw and transfer their damaged Tank 4 embryos. Plaintiffs had not planned on

attempting IVF transfers at that time and did so because they were advised that if they wanted to thaw their embryos to determine whether any survived, they should be prepared to attempt an IVF transfer at the same time, and that if they wished to attempt an IVF transfer with their damaged tissue, they should do so as soon as possible.

Plaintiffs have added language to the form instruction to make it clear that the reasonable cost of medical care in this case could include A.B. and C.D.'s cost of traveling to PFC so that their Tank 4 tissue could be implanted. California Civil Code section 3333 provides that tort damages may be awarded to compensate Plaintiffs for "all the damages suffered as a legal result of the defendants' wrongful conduct." A.B. and C.D. suffered economic damages when they were required to make two unplanned trips from Ohio to San Francisco to attempt thaws and transfers of their damaged Tank 4 tissue. Plaintiffs believe this item of damage should be included as medical expenses since their travel costs were incurred in order to obtain medical care from PFC. But if the Court disagrees, Plaintiffs would request that travel expenses reasonably incurred as a result of the March 4th incident be included as a separate item of damages.

**J.     Disputed Instruction No. 16 Re Loss of Use of Personal Property Offered by Chart**

Chart proposes that the Court inform the jury about an item of economic damages that Plaintiffs are not seeking: "loss of use" damages. Chart's proposed instruction is based on CACI No. 3903M, which specifies under Sources and Authority that "'Loss of use' of property is different from 'loss' of property," and is based on "the rental value of similar property which the plaintiff can hire for use during the period when he is deprived of the use of his own property." CACI No. 3903M, Sources and Authority (quoting *Collin v. American Empire Insurance Co.*, 21 Cal. App. 4th 787, 818 (1994). As the instruction itself provides, "To recover damages for loss of use, [*name of plaintiff*] must prove the reasonable cost to rent a similar [*item of personal property*] for the amount of time reasonably necessary to repair or replace the [*item of personal property*]." CACI No. 3903M. Plaintiffs' eggs and embryos cannot be repaired or replaced and similar eggs and embryos cannot be rented, so this instruction neither fits the facts of the case nor the damages Plaintiffs are actually seeking. Plaintiffs are seeking economic compensation for loss or damage to their eggs or embryos—not for loss of use of those eggs and embryos while they are undergoing repairs or are replaced with equivalent eggs or embryos. Chart's

proposed instruction is therefore irrelevant and should not be read to the jury. *See* Jones, et al., *Federal Civil Trials and Evidence* ¶ 15:58 ("An *irrelevant* instruction, even if a correct statement of law, should not be given to the jury. Irrelevant instructions are likely to mislead the jury and invite speculation.").

    **K.**    **Disputed Instruction No. 19 Re Damages on Multiple Legal Theories**

Chart's proposed instruction is based on CACI No. 3934. The Directions for Use of that instruction provide, "It is not necessary to give this instruction if the same damages are recoverable on all causes of action, counts, or legal theories, although giving only the opening paragraph might be appropriate." That is the case here and so Plaintiffs believe that no instruction should be given, or that if an instruction is given, that it be limited to the first paragraph.

Chart apparently believes that emotional distress damages are available only as to Plaintiffs' strict liability claims and not as to their claim against Chart for negligently failing to recall or retrofit Tank 4's controller. But California law has long provided that "a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss but also for his mental distress." *Crisci v. Sec. Ins. Co. of New Haven, Conn.*, 66 Cal. 2d 425, 433–34 (1967). When, as here, a plaintiff has sustained substantial property damage, emotional distress damages may properly be awarded; there is no requirement that the emotional distress be severe defendant's conduct be outrageous, as would be the case under a stand-alone claim for intentional infliction of emotional distress. *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566 (1973); *see also Dilworth v. Gen. Elec. Co.*, No. 08CV431 WQH (JMA), 2008 WL 11337013, at *3 (S.D. Cal. July 16, 2008) ("[Plaintiffs] may be entitled to 'recover not only for pecuniary loss but also for mental distress' because the complaint alleges that the Dilworths lost their 'property and suffer[ed] emotional distress' as a result of General Electric's tortious conduct."); Cal. Civ. § 3333 ("For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for *all the detriment* proximately caused thereby, whether it could have been anticipated or not.") (emphasis supplied).

Plaintiffs further object that Chart's summary of the items of damages Plaintiffs are seeking is inaccurate, as it does not include past medical expenses or the economic value of their damaged eggs and embryos. If items of damage are included as part of this instruction, they should be the same items

of damage read to the jury in connection with Instructions Nos. 14-15 and 17: (i) damage to eggs or embryos; (ii) past medical expenses; and (iii) past and future mental suffering, inconvenience, grief, anxiety, and emotional distress.

### L.  Disputed Instruction No. 23 Re Apportionment of Responsibility

Chart's proposed Instruction No. 24 is nearly identical to Stipulated Instruction No. 22, which addresses the comparative fault of another person. A second instruction that says almost exactly the same thing is unnecessary and could be prejudicial, as the Court's repetition of these particular facts or issues may cause a juror to attach undue importance or credibility to the repeated matters. *See* Jones, et al., *Federal Civil Trials and Evidence* ¶ 15:80.

### M.  Disputed Instruction No. 24 Re Superseding Cause

Plaintiffs object to this instruction as duplicative of Stipulated Instruction No. 26 Re Misuse or Modification. Both instructions are similar, but because product misuse is a particular kind of superseding cause, the instruction for misuse is better suited to the facts of this case. *See* CACI No. 1245, Directions for Use ("Product misuse or modification may be deemed to be a superseding cause, which provides a complete defense to liability." (citing (*Torres v. Xomox Corp.*, 49 Cal. App. 4th 1, 18-19 (1996)); CACI 432.

Apart from product misuse, Chart has not identified any conduct by PFC that could have caused the March 4th incident. To the contrary, Chart has specifically categorized each element of PFC's behavior as misuse of its tank and controller, including PFC's decision to unplug Tank 4's electronic controller after it malfunctioned; PFC's continued operation of Tank 4 without a working controller; and PFC's alleged failure to monitor Tank 4's liquid nitrogen levels as required by its own quality management plan. (*See* Chart's Daubert Reply at 12-13, ECF No. 686; Chart's Daubert Mot. at 8-9, ECF No. 629.)

A broader instruction on superseding cause is therefore unnecessary, as Chart's defense is adequately addressed by the narrower instruction on product misuse. Reading both instructions would place undue influence on PFC's allegedly negligent acts and could confuse the jury, who might not understand that the superseding cause instruction and the product misuse instruction are meant to apply to the same conduct. *See* Jones, et al., *Federal Civil Trials and Evidence* ¶ 15:80; *United States v.*

1  *Sarno*, 73 F.3d 1470, 1485 (9th Cir. 1995) (requested instructions were "unnecessary because they were adequately subsumed by the instructions given to the jury")

### N.    Disputed Instruction No. 25 Re Sophisticated User Defense Offered by Chart

The sophisticated user defense is a defense to a failure-to-warn claim, which is why the Directions for Use of CACI No. 1244 provide: "Give this instruction as a defense to CACI No. 1205, CACI No. 1205, *Strict Liability—Failure to Warn—Essential Factual Elements*, or CACI No. 1222, *Negligence—Manufacturer or Supplier—Duty to Warn—Essential Factual Elements*. Neither claim is at issue in this case, making a jury instruction on the sophisticated user defense inappropriate.

Chart apparently believes that the sophisticated user defense can be used as a defense to Plaintiffs' design defect claim under the consumer expectation test. But no court has ever so held. Chart refers the Court to *Johnson v. Honeywell Internat. Inc.*, 179 Cal. App. 4th 549 (2009), which held that the sophisticated user defense did not apply to the plaintiff's design defect claim: "The sophisticated user defense concerns warnings. …. Johnson's design defect cause of action was not concerned with warnings. Instead, he alleged that respondents' design of their refrigerant was defective. We see no logical reason why a defense that is based on the need for warning should apply." *Id.* at 559

Chart nonetheless points to footnote 4, where the court noted that "[Plaintiff] agrees that the sophisticated user defense will apply to a cause of action for strict liability design defect on the consumer expectation theory. That theory concerns the expectations of the 'ordinary consumer' and … he may not claim to be such a consumer." *Id.* at 558 n.4. But even if that particular plaintiff did in fact agree that the sophisticated user defense would apply outside the failure-to-warn context, the Court of Appeal did not so hold—and neither has any other California court. The issue was not briefed and the language used with regard to the claim that was briefed—"We see no logical reason why a defense that is based on the need for warning should apply"—suggests that the sophisticated user defense does not in fact apply to Plaintiffs' design defect claims in this case. The footnote also suggests a misunderstanding of the consumer expectation test by the litigants, who wrongly assumed that the theory can only apply to the "ordinary consumer" and not to sophisticated users of specialized equipment. The parties have already briefed this issue extensively and the Court, citing both the California Supreme Court and more recent appellate authority, concluded that "use of the consumer

expectation test is not necessarily foreclosed simply because the product at issue is only in specialized use, so that the general public may not be familiar with its safety characteristics." (3/8/21 Order on MSJ at 3, ECF No. 712 (quoting *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 568 n.4); *see also id.* (quoting *Demara v. The Raymond Corp.*, 13 Cal. App. 5th 545, 561 (2017) ("The consumer expectation test is not based on minimum safety assumptions or expectations of consumers in general regarding a product but rather, on the minimum safety assumptions or expectations of the product's users.").)

Regardless of what might lie behind the footnote in *Johnson v. Honeywell*, the definitive scope of the sophisticated user defense was set forth by the California Supreme Court in 2008—when the defense was first adopted in California. The court set forth clear parameters for the defense: "The sophisticated user defense exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential hazards. … The defense is considered an exception to the manufacturer's general duty to warn consumers, and therefore, in most jurisdictions, if successfully argued, acts as an affirmative defense to negate the manufacturer's duty to warn." *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 65 (2008). In deciding to adopt the defense in California, the Court stated that "the defense applies equally to strict liability and negligent failure to warn cases." *Id*. The court devoted several pages to "How the Defense Operates in California," and stated that "[t]he focus of the defense … is whether the danger in question was so generally known within the trade or profession that a manufacturer should not have been *expected to provide a warning*." *Id.* at 71, 72 (emphasis added). Nowhere in its carefully considered evaluation and adoption of the sophisticated user defense did the California Supreme Court ever suggest the defense could also apply to the consumer expectation test. Nor has the California Supreme Court or any California Court of Appeal extended the bounds of the sophisticated user defense since then.

By informing jurors that they can find for Chart on Plaintiffs' design defect claim if they find that PFC was a sophisticated user of cryogenic tanks, Chart's proposed instruction would fail to correctly state California law, as set forth by the California Supreme Court when it adopted the sophisticated user defense. For that reasons, Chart's proposal should be rejected and Disputed Instruction No. 26 should not be read to the jury at trial. *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.

2009) ("Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.")

Dated: April 15, 2021

By:    */s/ Amy M. Zeman*
Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
ehg@classlawgroup.com
amz@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Counsel for Plaintiffs*