**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

IN RE PACIFIC FERTILITY CENTER ) 
LITIGATION                     )   **NO. C 18-01586 JSC**
_____)

San Francisco, California
Thursday, April 22, 2021

**TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
        GIRARD SHARP LLP
        601 California Street, Suite 1400
        San Francisco, California 94108
   BY: **DENA C. SHARP, ATTORNEY AT LAW**
       **ADAM E. POLK, ATTORNEY AT LAW**
       **NINA R. GLIOZZO, ATTORNEY AT LAW**

        GIBBS LAW GROUP, LLP
        505 - 14th Street, Suite 1110
        Oakland, California 94612
   BY: **AMY M. ZEMAN, ATTORNEY AT LAW**

For Defendant Chart Industries, Inc.:
        SWANSON, MARTIN & BELL, LLP
        330 North Wabash Avenue, Suite 3300
        Chicago, Illinois 60611
   BY: **JOHN J. DUFFY, ATTORNEY AT LAW**
       **KEVEN M. RINGEL, ATTORNEY AT LAW**
       **ANDREW A. LOTHSON, ATTORNEY AT LAW**

Reported Remotely By:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
                     CSR No. 7445, Official U.S. Reporter

```
 1    Thursday, April 22, 2021                              1:44 p.m.
 2                        P R O C E E D I N G S
 3                              ---oOo---
 4          THE CLERK:  Calling Civil Action C 18-1586,
 5    In Re Pacific Facility Center Litigation.
 6       Counsel, starting with plaintiffs, can you please state
 7    your appearance.
 8          MS. SHARP:  Good afternoon, Your Honor.  Dena Sharp
 9    with Girard Sharp, and with me are my colleagues Adam Polk and
10    Nina Gliozzo.
11          THE COURT:  Good afternoon.
12          MS. ZEMAN:  Good afternoon, Your Honor.  This is
13    Amy Zeman with Gibbs Law Group, also with the plaintiffs.
14          THE COURT:  Good afternoon.
15          MR. DUFFY:  Good afternoon, Your Honor.  John Duffy on
16    behalf of Chart.  I'm here with my partners Kevin Ringel and
17    Andy Lothson.
18          THE COURT:  All right.  Good afternoon.
19       First, I just wanted to compliment Mr. Duffy and
20    Mr. Ringel on coordinating your spring color ties.
21                            (Laughter.)
22          THE COURT:  I can't see --
23          MR. DUFFY:  Beautiful spring day.
24          THE COURT:  -- Mr. Lothson's tie, so I don't know what
25    color he's wearing.
```

1          Anyway, we do have our --
2          Thank you.  Nah, it doesn't quite fit.
3          We do have our --
4              **MR. LOTHSON:**  More fall.
5              **THE COURT:**  -- our --
6              **MR. DUFFY:**  Turn off your camera.
7              **THE COURT:**  -- pretrial next week, but I have more
8  up-to-date information.  I wanted to give the parties as much
9  advance notice as possible.
10         So we are on board to select our jury on May 20th.  There
11 is no trial in front of us.  And so the plan is that we'll
12 select the jury on May 20th, and then we'll begin with openings
13 and the evidence on Monday, May 24th.
14         We also don't have anyone breathing up our back, so that
15 gives us a little bit more time.  As you probably saw from the
16 proposed questionnaire, we can make it a little bit more trial
17 time, which I think will be easier on the jury and the lawyers
18 and the Court, quite honestly.
19         So the summons have already gone out, and the Jury Office
20 is going to do -- they'll excuse jurors for, for example,
21 childcare issues.
22         The public schools here, Mr. Duffy, are not yet back
23 full-time; so I imagine we'll lose a number of jurors that way.
24         If you're over age 70, I think you can be excused; and
25 other financial hardships, the Jury Office will excuse.

1    Then the SurveyMonkey survey will go to the people who
2  responded then to the summons.
3    And we'll talk about the questionnaire separately in
4  a minute.
5    The parties and the Court will get the survey responses on
6  Friday, May -- whatever that Friday is before the 20th.  19,
7  18 -- 15.
8         **MR. DUFFY:**  You bet.
9         **THE COURT:**  On Friday, May 15th -- all right? --
10  you'll get that.
11    On Tuesday, May 18th, we will all be in person here in
12  San Francisco.  At 9:30 a.m., we will do a walk-through in the
13  courtroom, so with technology, with where everyone will be and
14  all that kind of stuff.
15    And we'll talk a little bit more about the decisions we'll
16  need to make that day.
17    When we're done with the walk-through, we'll stay together
18  and go through the surveys and excuse anyone that we can agree
19  to do so based solely on the written surveys.  I imagine there
20  will be some people that the parties are in agreement on.
21  There'll be some, I think, that you cannot agree to until you
22  get a chance to voir dire in person, but there will likely be
23  some that we can just excuse.
24    Then what will happen is there will be -- we're going to
25  select ten jurors for the trial.  And the reason I'm doing ten

1   as opposed to nine is it's likely to be a three-week trial.
2   Every day, the jurors have to tell the Court whether they have
3   a sore throat or something like that; and so we're going to
4   lose jurors, I've just got to imagine.  And I, as do all of
5   you, do not want to lose this trial.  We want to get to a
6   verdict.  So we're going to select ten jurors.
7       As I said before, whoever's left will deliberate.  There
8   are no alternates.
9       What's going to happen is, of the remaining people --
10  after we excuse anyone on Tuesday, of the remaining jurors
11  who've submitted surveys, 40 jurors will be randomly selected
12  to appear on May 20th.  The first group of 20 will come in at
13  9:00 a.m.  The second group of 20 will come at 11:00 a.m.
14      The first group of 20 will come in.  They'll be numbered
15  1 through 20.  They'll be seated around the courtroom.  And
16  each side is going to get 30 minutes to question the jurors.  I
17  don't need to question them because I've done it through the
18  survey.  So you'll each get 30 minutes to question the jurors.
19  Then that group of 20 will be excused to the courtroom next
20  door.
21      I should tell you, we're going to be on the 17th floor in
22  Judge Orrick's courtroom, and the jury room will be next door,
23  what is traditionally Judge Illston's courtroom.  That's how we
24  keep the social distancing.  Instead of a jury room, they have
25  an entire courtroom.

1       So we'll excuse them to that courtroom.
2       And then any jurors we need to speak to privately --
3  because some may say they're not comfortable answering a
4  question in public -- we'll address then.  And then we'll also
5  address, after that first 20, we're done with the questioning,
6  we'll address for-cause challenges.
7       After that first group of 20, they will be excused and go
8  up to the Jury Assembly Room, and the next group of 20 will
9  come in.  We'll go through that whole process again.
10      At the end of that process, assuming we have at least
11 16 jurors left -- because each side gets three peremptories --
12 we will then move to excusing -- or exercising your
13 peremptories and getting our jury and swear them in.
14      In the event we do not have enough jurors left of those
15 40, we have a backup of an additional 20 that can come in on
16 Friday.
17      I didn't want to call in 60 on Thursday because I think
18 there's an excellent chance that we can get our ten from that
19 40; but on the other hand, given the importance of this trial,
20 I don't want to miss it.
21      So we'll have a backup of another 20 for Friday.  And then
22 we can -- the Jury Office will call them on Thursday if we
23 don't need them, and so then they haven't come in.
24      With respect to the peremptories, the way I do it -- and
25 we'll discuss this next week, but I might as well tell you now.

```
 1  So they're numbered 1 through 40.  Some of them will be gone
 2  now because we've excused them for cause.  We'll go plaintiff,
 3  defendant.
 4      And when you exercise -- let's say the plaintiff excuses
 5  Juror Number 3.  And then it's the defendant's turn, and the
 6  defendant excuses Juror Number 4.  That means Jurors Number 1
 7  and 2 are on our jury, because you can't go backwards; you
 8  can't skip.
 9      I like it that way because I think it's very transparent.
10  All right?  And then, if you skip a challenge, it's:  Use it or
11  lose it.  So you each get three opportunities, I should say.
12  All right.
13      So that's how we're going to get our jury on the 20th.
14  Are there any questions about that?
15                    (No response.)
16          **THE COURT:**  No.  Okay.  Great.
17          **MS. SHARP:**  Not so far.  Thank you.
18          **THE COURT:**  All right. So now let's talk about -- I
19  thought -- oh, the -- I thought I had printed it out.  Maybe I
20  had not.
21      Oh, the questionnaire. And I took some of it, and some I
22  didn't.  And let me tell you what my goal was, to have a
23  questionnaire that was not so onerous or invasive that someone
24  wouldn't fill it out.  And so when I was going through it, I
25  was trying to say to myself:  Well, what if I was this person?
```

1        And, for example, the parties -- I don't know if it was
2   one side or the other -- had some questions --
3        And this will all be put into a SurveyMonkey.  So the
4   Jury Office is going to take this document and type everything
5   in themselves and make it very pretty.
6        There were questions about -- oh, of course.  That's
7   the -- oh, here it is.  Like, do you approve or disapprove of
8   certain things, like assisted reproductive technology.  And it
9   was only "Approve" or "Disapprove," and there was no
10  "No Opinion" option.
11       And I have no doubt that your jury consultants told you,
12  you want to squeeze them into that box.  The judge is not going
13  to squeeze them into that box.  During your time to question,
14  you can squeeze them into that box.  But I do think you're
15  going to get jurors who sincerely have no opinion.  And so
16  while I know your consultants would love to do that, I'm not
17  going to do that, but you can do that.
18       There are other questions, you notice, I didn't ask.  You
19  can do that.  But this survey comes from the Court, and so
20  that's why I did that.
21       And then also the "Please explain," that's just
22  complicated, and I can see someone throwing up their hands and
23  not completing it.  And so that was the balance that I was
24  trying to do there.
25       And, again, you do get an opportunity to question in

1 person.

2     So are there any questions about the questionnaire?

3              (No response.)

4     **THE COURT:**  No.  Great.

5     So the schedule, as you can see, what I'm planning on is
6 8:30 to 1:30 four days a week with Memorial Day week being
7 Tuesday to Friday, since we're not meeting on Monday.

8     We'll talk next Thursday about time limits.  I haven't
9 looked closely at your submission, but you have an idea now of
10 what you're going to have to do to get it in.

11    I will, on the survey, change a little bit on those dates
12 to tell the jury there is a chance it could go longer than
13 that.  Right?  But that's our expectation.

14    We won't take a lunch break because I just want to use our
15 time really efficiently.  And why have people with their -- I
16 want to limit the number of minutes that people have their
17 masks off.  You can't go out of the building anyway.  The
18 cafeteria's only running at -- it is open, though, for you guys
19 to know.  It is open till 1:00 p.m.

20    And so we'll take, like, a break around 10:00 a.m. or so,
21 depending on where we are with a witness; and a break, yeah,
22 around noon or so, 15, 20 minutes.  Closer to 15, I think.

23    And the other thing, though, we will start -- I would like
24 you all ready to go at 8:00 a.m. every day because I want
25 everything to come in smoothly; and any disagreements or

1   issues, we'll just resolve; and if we need more time, we'll be
2   there at 7:30, if we have to.  But we're not going to do
3   sidebars; so we really need to anticipate and work out.
4          So if there's something you have to discuss, we'll do it
5   at the break or we'll do it in the morning.  And if there's
6   just a really big issue, I may say, "Okay.  Just skip that.
7   We'll come back to it," or something, because it takes too long
8   to do a sidebar.  We'd have to bring the jury out into the next
9   room.
10         The other thing that you guys -- so now let's just talk
11  about sort of the technology logistics.  The great news, which
12  I did not realize this until Tuesday, is the trial will be
13  available to the public by Zoom video, which, given the number
14  of other plaintiffs we have, other entities involved, the
15  number of decision-makers from Chart as well and people who
16  want to observe the trial, I think is just great.
17         And so the way it will work is, of course, masks will be
18  worn by everyone at all times in the courthouse and the
19  courtroom.  The witness will wear a clear mask.
20         And as you may have heard, Judge Chesney has a civil case
21  going on right now.  You can just go to the Court's home page,
22  to her home page, and click on the webinar link and watch the
23  trial.
24         Now, one thing that we can either discuss next week or we
25  can figure out on the 18th, but what I'd like the parties to

1  think about is what they want the trial to look like for the
2  people observing.  For Judge Chesney's trial, the camera -- the
3  audience only sees the witness.  So you only hear the judge or
4  hear the lawyer.
5      I'm told we can set it up so you would see the lawyer
6  questioning, the lawyer defending, and the judge as well.  I
7  don't think we need to see the court reporter or the clerk.  I
8  did a virtual bench trial, and that's what we had on screen:
9  the witness, the judge, the lawyer questioning, and the
10 lawyer defending.  And I thought that worked great.
11     And, of course, anyone watching could just put their Zoom
12 on speaker view and they'd only see that person either.
13     Now, the lawyers are going to be at counsel table, where
14 there is a podium set up.  That's where you have to stay.
15 There is sort of a dedicated microphone there.  And so I think
16 you would have to bring a laptop to get it to work.
17     So on May 18th, that's something we'd have to want to work
18 out and try.  But I want you guys to discuss that as well.
19     I guess some judges here have been reluctant to have
20 anyone but the witness on screen.  I don't have any problem
21 being on screen.  My preference would be to make it as much as
22 possible like a real -- like if the audience was here in
23 person, given that it is essentially a bellwether trial.  So we
24 can discuss that next week or the 18th as well.
25     Let's see.  So, the jurors.  There will be four jurors in

1   the jury box, another six jurors in the galley.
2           And so the jurors in the jury box, they have a screen
3   right in front of their seats.  So they can look at the witness
4   who's on the witness stand and wearing the clear mask.  They
5   can also look at the witness through their screen.
6           The jurors in the galley, there will be two gigantic
7   screens set up in front of them.  And same thing:  They can
8   look at the witness in the witness chair, although they're kind
9   of far away, or they'll see it very close up on the screen.
10          And the same with the evidence.  And hopefully, you've
11  been in touch about how that works, or we can talk.  So we will
12  not need exhibit books because the exhibits will be displayed
13  very big.  And my concern about exhibit books is that the jury
14  will be thumbing through the books instead of looking up at the
15  witness.  So I don't want exhibit books.  And they'll be able
16  to see the exhibits quite well.
17          We also will have the ability to do some witnesses that
18  you agree to by remote as well.  They'll just be by Zoom on the
19  big screen, and then the lawyer will be here questioning.  So
20  it'll be -- because it's by Zoom, you'll see the lawyer who's
21  in the courtroom in the same webinar and the witness who is
22  remote.
23          I guess with the exhibits that are shown and the witnesses
24  that are live, I don't think the audience can see those, which
25  is fine.  But for the witnesses that are remote, to share --

1  for those exhibits, the lawyers will have to share screen to
2  show those, in which case then the public will see that as
3  well.
4      So, the number of people in the courtroom, we're limited
5  to 35 or so.  For me, I'll have myself, Ms. Means, a law clerk,
6  and the court reporter.  The court reporter will be here.  So
7  that's four.  And then we have ten jurors, so that's 14.
8      So that leaves -- oh, and then plus a witness, usually.
9  Right?  So that's 15.
10     So that leaves ten.  So I was just going to propose that
11 you guys, you each get five; each side gets five, whoever you
12 want to be in the courtroom at the time.
13     And, of course, there may be -- I assume there will be
14 certain Pacific Fertility witnesses testifying.  Of course,
15 their lawyer can be in the courtroom as well, and we'll just
16 add that on to the 35 or 36.  It's not a hard-and-fast -- I
17 mean, it is a hard-and-fast number, but we can play with it a
18 little bit.
19     And then on May 18th, we'll figure out where everyone can
20 sit in the courtroom.  I mean, there probably can be a couple
21 of people in the very back.  I don't think you can have more
22 than three lawyers at counsel table, but I'm not sure about
23 that.  So that's going to take up most of your five anyway.
24     The webinar can accommodate 500 viewers.  I think that's
25 enough.  Does anyone think that that won't be enough?  I mean,

```
 1   I know we have a hundred and -- I mean, there are a lot of
 2   plaintiffs.  But you guys think about it, and if somebody
 3   thinks 500's not enough, I'll see what I can do about getting a
 4   different license.  But that's what our license allows.
 5        All right.  Any questions, then, about any of that right
 6   now?  I guess you can raise more questions on Thursday
 7   next week after you think about it.  But I wanted to give you a
 8   heads-up on sort of what the plan is.
 9            MS. SHARP:  Thank you, Your Honor.  This is Dena
10   Sharp.
11        One question.  And I'll say math, not my strong point
12   either.  But doing the arithmetic, as I hear it, I think if we
13   have ten jurors, four court personnel, one witness, that's 15.
14   I think that would leave us 20.
15            THE COURT:  Oh, yeah.  You're right.
16            MS. SHARP:  I'm not saying --
17            THE COURT:  No, no, no.  Ten a side.
18            MS. SHARP:  I'm not saying --
19            THE COURT:  Ten a side.
20            MS. SHARP:  All right.  Okay.  Great.  Thank you.
21            THE COURT:  Yeah.  Ten a side.
22        You don't have to be that polite.
23            MS. SHARP:  I know but --
24            THE COURT:  You can say:  Judge, your math is wrong.
25            MS. SHARP:  What I'll say --
```

1          **MR. DUFFY:**  I almost placed an objection, Your Honor.
2          **MS. SHARP:**  What I'll say is, when I've told people
3     that their math is wrong before, it's backfired very much,
4     especially when it's a judge.
5          **THE COURT:**  Right.
6          **MS. SHARP:**  So I try not to repeat --
7          **THE COURT:**  Each --
8          **MS. SHARP:**  -- the same mistake.
9          **THE COURT:**  Yeah.  Ten.  You're right.  You each have
10    ten a side.
11         So another issue to talk about for next week, usually at
12    the pretrial, there's enough to do.  I don't go through those
13    exhibits.  But what I want the parties to do -- maybe you can
14    tell me by next Thursday.  Which are the exhibits that there's
15    actually, like, authenticity disagreements or things that we
16    can't resolve?  Because, as you know, you have to tell the
17    party what exhibits you're going to be using with a particular
18    witness.  And so, if there's really a relevance objection, I
19    can usually get that resolved the morning of or something like
20    that, after I have more context with things.
21         But if there are authenticity exhibits to any of these
22    things, this is all something we need to get resolved before
23    the trial starts.  So if you can let me know, that's what we'll
24    want to discuss next Thursday.
25         **MS. SHARP:**  May I ask one question on that while we're

1  on exhibits, Your Honor?
2          **THE COURT:** Yes.
3          **MS. SHARP:** Do you have any kind of procedure for
4  pre admitting exhibits?  It seems to me that that would be one
5  way we could speed things up for everybody if there are at
6  least some we know we're going to use.
7          **THE COURT:** Sure.  If you've agreed to them, we can
8  just, at the beginning of the day -- if you're going to
9  admit -- you can call the witness.  And if you're admitting
10 these 30, 20, 10 documents with the witness, we can just go
11 ahead.
12     Ms. Sharp can say, "I move to admit Exhibits 1 through
13 10."
14     And Mr. Duffy can stand up and say, "No objection," and
15 look so magnanimous in front of the jury.
16     And I'll say, "Admitted."
17     And then, yeah, we don't have to go through it at all.
18 That would be great.  I absolutely encourage you guys to do
19 that.
20         **MS. SHARP:** I have no doubt Mr. Duffy will say that
21 too; so that's perfect.
22         **MR. DUFFY:** Thank you.
23         **THE COURT:** I like to do it in front of the jury
24 because I do like to give the lawyers the opportunity to look
25 so reasonable.

1    I think you are -- I'm really looking forward to this
2 because I know it's going to be a super well-tried case.
3    That's it.  So, Mr. Duffy, I hope you got your hotel
4 reservation.
5         **MR. DUFFY:**  Will now.  I will now.
6         **THE COURT:**  Yeah.  It should not be a problem getting
7 them.
8         **MR. DUFFY:**  I hear there might be some available.
9    I have one question, and it concerns deposition
10 designations.  We're going to have quite a bit, I think.
11    I notice that we have two hours for our final pretrial
12 conference.  I was wondering if the Court can give us some
13 guidance about maybe giving us another couple hours so we can
14 hammer out the designations and objections, because then we've
15 got to edit the video and that's --
16        **THE COURT:**  Oh, I see.  You want to get it done
17 next week, what the objections are.
18    Has that been submitted to me?
19        **MR. DUFFY:**  No.  No.
20        **THE COURT:**  Oh.
21        **MR. DUFFY:**  And I think it might make sense for us to
22 set another date so that we can -- because, as you say --
23        **THE COURT:**  Yeah, yeah, yeah.
24        **MR. DUFFY:**  -- you want --
25        **THE COURT:**  Exactly.  Exactly.

| | |
|---|---|
| 1 | **MS. ZEMAN:** If I could, Your Honor, I think we're also |
| 2 | going to need to know your ruling on one of our motions in |
| 3 | limine regarding that, because we need to know whether some of |
| 4 | those witnesses are being put on by deposition or -- |
| 5 | **THE COURT:** I tend to rule on those next Thursday, all |
| 6 | the in limines. |
| 7 | Yeah, we should probably have another -- and the 18th -- |
| 8 | would the 18th be -- if we were to go through any remaining |
| 9 | disagreements as to the deposition designations on the 18th, |
| 10 | since we're not starting the evidence until the 24th? |
| 11 | **MS. SHARP:** That's great from my perspective. |
| 12 | **THE COURT:** Yeah. So we'll just -- I have a |
| 13 | settlement conference scheduled that day. That's going to have |
| 14 | to be moved. |
| 15 | We'll just plan whatever we need for the day to get done. |
| 16 | So put aside the whole day. |
| 17 | I guess I should make -- well, no, they know we're doing |
| 18 | the walk-through so the courtroom -- oh, there is no other |
| 19 | trial in that courtroom; so we're okay. |
| 20 | Yeah. No. That's exactly the type of thing, Mr. Duffy, I |
| 21 | want to hammer out as much as possible -- |
| 22 | **MR. DUFFY:** Yeah. |
| 23 | **THE COURT:** -- in advance. |
| 24 | **MR. DUFFY:** Yeah. |
| 25 | **THE COURT:** All right. Great. |

```
 1           MR. DUFFY:  All right.
 2           THE COURT:  So, yeah.  So --
 3           MR. DUFFY:  See you in a couple weeks.
 4           THE COURT:  -- you can watch that trial --
 5      Yeah, we will.  To be honest, I didn't actually think it
 6   was going to happen, but it's happening.
 7                       (Laughter.)
 8           THE COURT:  And, oh, the other thing I should let you
 9   know is we are not asking the jurors if they're vaccinated.
10   That's the advice we've been given.  If somebody tells us
11   they've tested positive for COVID, we may ask then because we
12   may be able to keep the jury going.
13      I would simply say to all of you and whoever you have in
14   the courtroom, I would encourage everyone to get vaccinated,
15   which now apparently anyone can.  So --
16           MR. DUFFY:  Yeah.
17           MS. SHARP:  Just got my second.
18           THE COURT:  Excellent.  Excellent.
19      Okay.  We will see you then next week.
20           MR. DUFFY:  Great.  Thank you, Your Honor.
21           THE COURT:  All right.  Bye-bye.
22           MS. SHARP:  Thank you very much, Your Honor.
23              (Proceedings adjourned at 2:08 p.m.)
24                         ---oOo---
25
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, April 23, 2021

*Ana Dub*
_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter