UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACIFIC FERTILITY CENTER LITIGATION | Case No. 18-cv-01586-JSC<br><br>**ORDER FOLLOWING APRIL 29, 2021 PRETRIAL CONFERENCE**<br><br>Dkt. Nos. 728, 742, 743, 744, 745, 746, 747, 748, 749, 750, 751, 752, 753, 754 |

Jury trial is scheduled to commence on May 20, 2021. The Court held a second pretrial conference on April 29, 2021.

## MOTIONS IN LIMINE

**A.   Chart's Motions**

**1. MIL 1:** *Motion to Exclude Evidence of Other Occurrences* **(Dkt. No. 742)**

Chart seeks to exclude evidence of other occurrences of customer complaints regarding Chart products. Chart discusses four categories of information that it seeks to exclude: (1) emails addressing other Chart tanks with vacuum seal loss (Trial Exhibit 274); (2) Chart's recall of other aluminum tanks; (3) evidence of any other tank failures; and (4) "other occurrences" with respect to the TEC 3000 Controller. Chart insists that Plaintiffs have not shown that these incidents are substantially similar or that there was any common causation.

Generally, "[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). The degree of substantial similarity is dependent on how the evidence is to be used. "Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of

similarity because it weighs directly on the ultimate issue to be decided by the jury." *Younan v. Rolls-Royce Corp.*, No. 09CV2136-WQH-BGS, 2013 WL 1899919, at *9 (S.D. Cal. May 7, 2013) (quoting *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir.1992)). "The requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect. Any differences in the accidents not affecting a finding of substantial similarity go[es] to the weight of the evidence." *Id*.

The only ripe issue presented by Chart's motion is the admissibility of Trial Exhibit 274: an email exchange between Chart and one of its distributors, Princeton Cryotech, following the implosion of a cryogenic tank at Rutgers University. In that email the distributor wrote that "my assumption is an implosion such as this is an obvious sign of an internal weld leak." (Dkt. No. 675-5 at 3 (Trial Ex. 274).).  To the extent that Chart has issues with other exhibits, since it did not reference them specifically, the Court cannot rule on them now.

As to Trial Exhibit 274, Plaintiffs maintain that they "are not introducing the Rutgers incident as direct proof that Tank 4 suffered from a similar design defect, that Chart was negligent, or that a 2020 tank implosion could have provided notice to Chart back in 2018." (Dkt. No. 742 at 61:7-9.)  Instead, Plaintiffs offer it as support for their contention that "internal leaks are known within the cryogenic equipment industry to cause inner vessel implosions." (Dkt. No. 742 at 61:17-18.)

Exhibit 274 is excluded as hearsay not subject to any exception.  Plaintiffs offer the distributor's out-of-court statement for its truth—that the distributor assumed that an internal weld leak caused the implosion and therefore the distributor knew that internal leaks could cause tank implosions. To the extent it is not hearsay, it is excluded under Rule 403 as its minimal probative value is outweighed by the prejudice that arises from speculating as to what was in the distributor's mind at the time he made the statement.  Before Plaintiffs may use the out-of-court statement as impeachment evidence they must first raise the issue with the Court because the same hearsay problem may exist. Plaintiffs' reliance on In *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 702 F. App'x 537, 541 (9th Cir. 2017) is unavailing as there was no hearsay issue

with the challenged evidence.

### 2. MIL No. 2: *Motion to Exclude Evidence re: the Reptile Theory* (Dkt. No. 745)

Chart's motion is DENIED. "The Court will not categorically prohibit a form of trial strategy, particularly given the absence of any reason to believe that reptile theory is likely to rear its head here (or that the Court would be [un]able to identify it if it did)." *Walden v. Maryland Cas. Co.*, No. CV 13-222-M-DLC, 2018 WL 6445549, at *3 (D. Mont. Dec. 10, 2018).

### 3. MIL No. 3: *Motion to Exclude Reference to "Insurance Policy" in the Egg or Embryo Banking Context* (Dkt. No. 743)

Chart's motion is DENIED. Plaintiffs may testify as to how they viewed their stored eggs and embryos and Plaintiffs' emotional distress damages expert may recount and opine on that testimony.

### 4. MIL No. 4: *Motion to Exclude Evidence of G.H's Lost Chance Damages* (Dkt. No. 744)

Chart's motion to bar Plaintiffs from offering any evidence, testimony, or argument regarding G.H's emotional distress as a result of a diminished possibility of achieving a live birth is GRANTED to that limited extent. G.H. can, however, attempt to seek compensation for damages to her eggs, much like the plaintiff in *Duarte* could seek compensation for damage to her bone marrow even though she could not seek compensation for the damage to the bone marrow that consequently prevented her from receiving chemotherapy and therefore having a reduced chance of recurrence of her cancer. *Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1664 (1994), as modified on denial of reh'g (Mar. 30, 1994). As the *Duarte* court held: "It is reasonable to infer that a person who has experienced a recurrence of cancer which cannot be treated because of bone marrow injury would suffer emotional distress as a result of the injury." *Id.* at 1664. It is similarly reasonable to infer that a person who cannot try for a live birth, even if that attempt would be likely fail, would suffer emotional distress. The way to address this nuanced distinction is for the parties to agree on language to include in the jury instructions with respect to G.H.'s damages. The Court's ruling is without prejudice to its ruling on any issue presented in connection with jury instructions.

**B.   Plaintiffs' Motions**

### 1. MIL No. 1: *Motion to Extend Court's Expert Rulings to Lay Witnesses* (Dkt. No. 746)

3

1  Plaintiffs' motion to extend the Court's *Daubert* motion rulings to lay witness testimony is
2  GRANTED in part. In particular, the reasoning for the Court's rulings regarding: (1) low liquid
3  nitrogen levels recorded at PFC in 2013 and 2014; (2) PFC's use of buckets to fill its tanks with
4  liquid nitrogen; (3) whether PFC spoliated evidence by spraying Tank 4 with powder; (4) Tank 4's
5  warranty status; (5) whether Tank 4 contained manufacturing or design defects; and (6) possible
6  malingering or symptom exaggeration applies equally to lay witnesses. This ruling does not
7  preclude Chart from eliciting testimony as to what in fact happened; for example, that the Tank
8  was in fact filled using buckets if they can so testify. Nor does it preclude Chart from cross-
9  examining Plaintiffs regarding their emotional distress.

10  **2. MIL No. 2:** *Motion to Exclude PFC's Subsequent Remedial Efforts* (**Dkt. No. 747**)

11  Plaintiffs' motion to preclude Chart from offering exhibits into evidence that discuss the
12  subsequent remedial efforts of Pacific Fertility Center (PFC), asking PFC employees or any other
13  witness about those remedial efforts, or otherwise referencing them at trial is DENIED. Federal
14  Rule of Evidence 407 does not bar Chart from offering this relevant evidence.
15  Rule 407 provides that "[w]hen measures are taken that would have made an earlier injury
16  or harm less likely to occur, evidence of the subsequent measures is not admissible to prove"
17  "negligence" or "culpable conduct." Chart seeks to offer evidence of PFC's subsequent remedial
18  measures to prove PFC's negligence or culpable conduct. The Ninth Circuit has held, however,
19  that Rule 407 does not bar admissibility of subsequent remedial measures of non-parties; instead,
20  it applies only to bar the remedial measures of the defendant in the lawsuit. *See Pau v. Yosemite*
21  *Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) (holding that the trial abused its discretion in
22  barring evidence of subsequent remedial measure of non-party). The Ninth Circuit reasoned that
23  "Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous
24  conditions without fear that their actions will be used as evidence against them," and "[a]
25  nondefendant will not be inhibited from taking remedial measures if such actions are allowed into
26  evidence against a defendant." *Id.; see also In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 817
27  (9th Cir. 1989) ("Where the defendant has not voluntarily participated in the subsequent measure
28  at issue, the admission of that measure into evidence does not 'punish' the defendant for his efforts

to remedy his safety problems."). As the First Circuit explained in following the Ninth Circuit's decision in *Pau*:

> Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. A nondefendant will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant. Because the social policy which forms the primary basis of Rule 407 is not furthered, there is no rationale for excluding third party subsequent repairs under the Rule.

*Raymond v. Raymond Corp.,* 938 F.2d 1518, 1524 (1st Cir. 1991) (internal quotation marks and citations omitted). Similarly, here, given that admitting evidence of PFC's subsequent remedial measures will have no legal consequences on PFC's liability to Plaintiffs as PFC is not a party to this action, allowing its admission will not discourage future potential defendants from taking subsequent remedial measures. Other Circuits are in accord. *See, e.g., Diehl v. Blaw–Knox*, 360 F.3d 426, 428 (3d Cir. 2004) ("Rule 407 does not bar evidence of remedial measures taken by a non-party."); *Mehojah v. Drummond*, 56 F.3d 1213, 1215 (10th Cir.1995), (same); *TLT–Babcock, Inc. v. Emerson Elec. Co*., 33 F.3d 397, 400 (4th Cir. 1994) ("[E]vidence of subsequent repairs may be admitted where those repairs have been performed by someone other than the defendant."); *Dixon v. International Harvester Co*., 754 F.2d 573, 583 (5th Cir. 1985) ("[W]here repairs were made by a non-defendant, Rule 407 does not bar the evidence."); *O'Dell v. Hercules, Inc*., 904 F.2d 1194, 1204 (8th Cir. 1990).

Plaintiffs' reliance on *In re Air Crash Disaster*, 86 F.3d 498, 529 (6th Cir. 1996) is unpersuasive. First, the Court cannot rely on out-of-circuit authority to disregard the Ninth Circuit's clear command about the Rule 407 only applying to conduct taken by a defendant. PFC is not a defendant in this case and will not be liable to Plaintiffs based on the jury's verdict. Second, the *In re Air Crash Disaster* court explicitly distinguished the facts of its case from where, as here, the subsequent remedial measures were taken by a non-party. *Id.* (noting that "[i]n each of these cases [holding that Rule 407 bars subsequent remedial measures voluntarily taken by a defendant], however, the remedial measure was taken, not by a plaintiff, but by someone who was not a party to the suit.").

**3. MIL No. 3:** *Motion to Exclude PFC Bad Acts Evidence* **(Dkt. No. 748)**

Plaintiffs' motion to preclude Chart from offering evidence regarding a January 2017 inspection report that found "PFC failed to meet the standard of care in a number of respects unrelated to the March 4 incident" (Dkt. No. 748 at 2-3) is DENIED in part.  The evidence that just over one year before the March 2018 incident PFC was made aware of several deficiencies in its lab procedures is relevant to show PFC's knowledge that it was not operating fully in compliance with required procedures. Such evidence is relevant to Chart's argument that it was therefore especially unreasonable for PFC to rely on its employees to manually monitor and record Tank 4's nitrogen levels after the controller's failure.  *See* Fed. R. Evid. 404(b). Chart may use the exhibit with Dr. Conaghan as discussed at the pretrial conference.  However, Chart may not argue that because PFC was told in the January 2017 report that it violated certain standards it therefore must have acted negligently with respect to the March 2018 Tank 4 incident.

Plaintiffs' motion to preclude Chart from calling Ms. Balassone as a witness is GRANTED.  Ms. Balassone's proposed testimony is cumulative and would raise unnecessary privilege issues and thus any probative value, which is slight at best, is outweighed by its prejudice.

**4. MIL No. 4:** *Motion to Exclude Plaintiffs' Informed Consent Forms* **(Dkt. No. 749)**

Plaintiffs' motion to exclude Trial Exhibits 291, 295, 305, 309, 314, 315, 316, 317, 318 (the informed consent forms executed by Plaintiffs before undergoing fertility treatment at PFC) is DENIED.  However, before PFC may refer to any portion of the Form other than what it identified in its opposition to MIL No. 4 it must give Plaintiffs prior notice and an opportunity to object.  The parties shall meet and confer on the proposed language of a limiting instruction, if any, to be given when the exhibits are introduced.

**5. MIL No. 5:** *Motion to Exclude Evidence of PFC's Offers to Pay for Medical Expenses* **(Dkt. No. 750)**

Plaintiffs' motion to exclude evidence that in the wake of the March 4 incident PFC offered to provide free (fertility-related) medical services to affected patients is GRANTED.  *See* Fed. R. Evid. 409 (prohibiting the use of "[e]vidence of furnishing, promising to pay, or offering

to pay medical, hospital, or similar expenses resulting from an injury … to prove liability for the injury"). Trial Exhibits 324, 330, 353, 369, 372, 373, 411, 424, and 534 are excluded without prejudice to Chart meeting and conferring with Plaintiffs regarding specific portions of those exhibits, if any, that are relevant to other issues and admissible.

### 6. MIL No. 6: *Motion to Exclude Evidence of Non-Party Finances and Ownership* (Dkt. No. 751)

Plaintiffs' motion to exclude evidence of Prelude Fertility's finances and its ownership and, in particular, Trial Exhibit 153, is GRANTED. Chart cannot offer such evidence without first obtaining the Court's permission outside jury's presence.

### 7. MIL No. 7: *Motion to Exclude Non-Party Insurance Coverage Evidence* (Dkt. No. 752)

Plaintiffs' motion to exclude evidence of general and professional liability insurance policies and indemnification agreements between the PFC entities, and, in particular, Trial Exhibits 381, 506, and 507, is GRANTED. *See* Fed. R. Evid. 411; *see also In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1014 (9th Cir. 2008) ("Evidence of indemnification is generally inadmissible"). Chart cannot offer such evidence without first obtaining the Court's permission outside jury's presence.

### 8. MIL No. 8: *Remote Testimony of Chart Witnesses* (Dkt. No. 753)

Chart shall provide Plaintiffs with additional information as directed by the Court at the pretrial conference by May 6, 2021. The parties shall then meet and confer and contact the Court by May 13 if a dispute remains.

### 9. MIL No. 9: *Motion to Maintain Plaintiffs' Anonymity* (Dkt. No. 754)

Plaintiffs seek an order allowing them to continue to proceed anonymously such that only their first names will be used at trial and identifying information (last name, date of birth) will be redacted. Plaintiffs argue that the nature of this action and the fact that they have been deposed about a variety of issues relating to their mental health, fertility, and sexuality warrants continuing to shield their identity at trial. Plaintiffs also insist that Chart will not suffer any prejudice and that the public has no interest in their identities.

Rather than proceed anonymously, the Court will seal the Courtroom (and transcript) when evidence is offered as to whether a plaintiff obtained an abortion and as to their sexual history and practices and other particularly private information if brought to the Court's attention in advance. Such evidence will not be broadcast to the public. Its highly confidential and private nature outweighs the public interest, if any, of its disclosure.

**CHART'S MOTION FOR RECONSIDERATION RE: DR. MILLER'S TEST**

Chart's motion for reconsideration and clarification of the Court's *Daubert* ruling regarding Dr. Miller's test (Dkt. No. 728) is DENIED. The Court previously excluded Dr. Miller's test evidence as unreliable. Nothing in the motion for reconsideration gives the Court a reason to revisit this holding. *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.").

With respect to Chart's motion for clarification, while the Court's Order did not explicitly address Dr. Miller's visual observations during the test, those are excluded for the same reasons the remainder of his testimony regarding the test is excluded—it is not reliable. That said, Dr. Miller is free to testify based on his experience regarding what one would expect to see on the outside of a cryogenic tank following a vacuum failure. Further, the parties shall meet and confer regarding any video taken by Dr. Miller to be used as a demonstrative of his and other witness's testimony, but not as admissible evidence.

**ADDITIONAL MATTERS**

The Court sets the following time limits for trial: 25 hours each side excluding opening and closing statements. The parties shall each have 1.25 hours for opening statements and 2 hours for closing arguments.

The parties shall meet and confer and prepare a stipulation regarding witness exclusion from the trial.

The Court sets a further pretrial conference for May 18, 2021 at 9:30 a.m. in Courtroom 2 on the 17th Floor. To the extent that the parties have any issues regarding trial exhibits, jury

8

instructions, or the verdict forms that they wish to have decided prior to the start of trial, the parties shall file a statement so indicating by May 6, 2021. The parties shall exchange any demonstrative exhibits that they intend to use in their opening statements by May 12, 2021 and the parties shall file a statement regarding any disputes regarding the demonstrative exhibits by May 14, 2021.

***

This Order disposes of Docket Nos. 728, 742, 743, 744, 745, 746, 747, 748, 749, 750, 751, 752, 753, 754.

**IT IS SO ORDERED.**

Dated: April 30, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge