Pages 1 -  11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

IN RE PACIFIC FERTILITY CENTER LITIGATION )   NO. C 18-01586 JSC

San Francisco, California
Thursday, May 6, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:  (By Zoom Videoconference)

For Plaintiff Class:

GIRARD SHARP LLP
601 California Street
Suite 1400
San Francisco, California  94108
BY: **CHRISTINA H. SHARP, ESQ.**
**NINA GLIOZZO, ESQ.**

GIBBS LAW GROUP, LLP
505 14th Street
Suite 1110
Oakland, California  94612
BY: **AMY M. ZEMAN, ESQ.**
**JOHN BICKNELL, JR., ESQ.**

For Defendant Chart Industries, Inc.:

SWANSON, MARTIN AND BELL, LLP
330 North Wabash
Suite 3300
Chicago, Illinois  60611
BY: **JOHN J. DUFFY, ESQ.**
**KEVIN M. RINGEL, ESQ.**
**ANDREW A. LOTHSON, ESQ.**
**KRISTINE REVEILLE, ESQ.**

Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
Official Reporter, U.S. District Court

| | |
|---|---|
| 1 | **Thursday, May 6, 2021**                                    **2:34 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 |          **THE COURTROOM DEPUTY:**  Calling Civil Action |
| 4 | C-18-1586, In Re Pacific Fertility Center Litigation. |
| 5 |      Counsel, starting with plaintiffs, can you please state |
| 6 | your appearance? |
| 7 |          **MS. ZEMAN:**  Good afternoon, Your Honor.  This is Amy |
| 8 | Zeman for the plaintiffs, also accompanied by my associate, |
| 9 | John Bicknell. |
| 10 |          **THE COURT:**  Good afternoon. |
| 11 |          **MS. SHARP:**  On mute, myself. |
| 12 |      Good afternoon, Your Honor.  Dena Sharp, with my colleague |
| 13 | Nina Gliozzo as well. |
| 14 |          **THE COURT:**  Good afternoon. |
| 15 |          **MR. DUFFY:**  Good afternoon, Your Honor.  John Duffy |
| 16 | on behalf of Chart, with my fully-vaccinated partners Kevin |
| 17 | Ringel, Andrew Lothson and Kristine Reveille. |
| 18 |          **THE COURT:**  Good afternoon. |
| 19 |      So before we move the question the parties had, you had a |
| 20 | question last time about creating your own little bubble at |
| 21 | counsel table.  That is fine, provided everyone is vaccinated. |
| 22 | So, and also, you each get an allotment of ten persons.  If I |
| 23 | recall, Ms. Sharp corrected my math in the courtroom. |
| 24 |      I would like you to ensure that they're all vaccinated. |
| 25 | And if someone can't be, talk to me about it. |

1        And the reason is I simply want to reduce the likelihood

2    that our trial is going to be disrupted by someone testing

3    positive.  And certainly, lawyers who are there, people who are

4    there all the time, it's more likely if one of those persons

5    test positive, it would, you know, upset our trial.  As opposed

6    to just a witness or something like that.

7        So, that's why.

8            **MS. ZEMAN:**  Understood, Your Honor.

9            **MS. SHARP:**  Yes, Your Honor.

10           **THE COURT:**  And I think you can walk in everywhere

11   now, just about, and get one.

12           **MR. RINGEL:**  Your Honor?

13           **THE COURT:**  Yes.

14           **MR. RINGEL:**  Can I also raise a COVID-related

15   question while we're on the topic, before we get into the

16   other stuff?

17           **THE COURT:**  Yes.

18           **MR. RINGEL:**  With regards to courtroom technology,

19   obviously, I haven't been to your courtroom before.  We've, in

20   the past, used, you know, private vendors, courtroom

21   technology operators to assist with operation of technology in

22   the courtroom.

23       Given the limitation on the number of people that will be

24   allowed in the courtroom, is that something that we need to

25   worry about for this trial?  Or will there be court personnel

1   that we can rely on?

2        I just wanted to make sure I was okay with COVID protocol

3   regarding that.

4             **THE COURT:**  There will not be court personnel for you

5   to rely on.  Have you been in touch with someone from our IT

6   department?

7        Ms. Sharp is shaking --

8        **MR. RINGEL:**  I -- I would defer to the plaintiffs,

9   Your Honor.  I know that there was email sent and there was

10  talks of a walk-through but I don't think --

11            **THE COURT:**  Well, the walk-through is -- I would get

12  the name from Ms. Sharp.

13            **MS. SHARP:**  (Indicating)

14            **THE COURT:**  Oh, you don't remember?

15            **MS. SHARP:**  I might be nodding out of turn,

16  Your Honor.

17            **THE COURT:**  Oh.

18            **MS. SHARP:**  I think -- we've been in touch with

19  Ms. Means.  I don't know if we actually have the name of the

20  IT person.

21            **THE COURT:**  I'll send you the name.  I'll have

22  Ms. Means send you the name.  You should call our IT

23  department, who --

24            **MR. RINGEL:**  That will be helpful.

25            **THE COURT:**  Who will tell you exactly how it works.

1     **MR. RINGEL:**  And while I have the floor, I guess, I'm

2     sorry; can I ask one more technology question?

3          **THE COURT:**  Yes.

4     **MR. RINGEL:**  We were curious in the way in which the

5     jury questionnaire survey results would be provided to us from

6     the Court.

7          **THE COURT:**  I think, by email.

8     **MR. RINGEL:**  Okay.  And is that something that the

9     Court is converting the questionnaire that you sent into the

10    SurveyMonkey, and that's going to be sent out from the Court.

11    Right?

12         **THE COURT:**  Correct.  That has been sent out.  So it

13    is in people's in-boxes, as we speak.

14    **MR. RINGEL:**  Okay.

15         **THE COURT:**  Hopefully, they're being completed.

16    **MR. RINGEL:**  That clarifies it.  Thank you,

17    Your Honor.

18         **THE COURT:**  Yeah.  And then on the 15th, I don't know

19    what the form will be we look at, but I assume this is a

20    usable form because this is what they've been doing.

21         You will be sent the results, and then we'll discuss them

22    on the 18th.

23         **MR. RINGEL:**  Thank you, Your Honor.

24         **THE COURT:**  Okay.  But yeah, definitely, I'll get --

25    reach out to the IT people, because they can tell you exactly

1    how it all works.  We do have a criminal trial going on right

2    now, and finished a civil trial last week, another civil

3    trial.  So, they're all happening.  In the San Francisco

4    courthouse.

5        Okay.  So you had an issue about deposition designations.

6    So, Ms. Sharp, you asked for the call.

7            **MS. SHARP:**  We did, Your Honor.  I think my

8    colleague, Ms. Zeman, is going to take the first crack here.

9            **MS. ZEMAN:**  Sure.  I can get us started.

10       So Your Honor, our goal is to work through the depo

11   designations, and in an efficient and orderly process.  In the

12   joint pretrial order, both sides designated witnesses to be

13   called by deposition at trial.

14       And we just disagree on when Chart should provide its

15   designations for the 11 witnesses that it identified as ones it

16   would be calling by deposition in its case-in-chief.

17           **THE COURT:**  Okay.  All right.  And Chart -- and I did

18   get your submission today -- my understanding is you don't

19   intend to designate any, but you may change your mind.  Is

20   that it?

21           **MR. DUFFY:**  Right now, Your Honor, yeah.  As I said

22   in my letter, normally what I do is we work this out with my

23   opposing counsel, so that they designate, and then what they

24   designate sometimes changes what I think I may need to do.

25   It's just like in trial when live witnesses come up.

1     **THE COURT:**  Yeah.

2     **MR. DUFFY:**  I have an expansive witness list.  I may

3   not call some of these people, based upon evidence that they

4   put on.  Because as a defendant, obviously, you react to what

5   the plaintiff does.

6     So what my proposal was, was that they would designate.

7   And when I see what they will designate, I'll

8   counter-designate.  And then I may have to add another witness

9   by video.  I don't think I'll have very much video.  As I said

10  in my letter, maybe three hours total in my entire

11  case-in-chief, based on what I think may happen.  But the

12  plaintiffs start it off.  And that's why I think it makes sense

13  for them to do that.

14    Then we counter-designate, and then I can add possibly a

15  witness or two that I may want to have testify sort of in

16  response to what they're going to designate.

17    What I don't want to do is I don't want to go through,

18  like, as I say, I don't want to have like 50 hours of attorney

19  time trying to go over stuff, and simultaneously designate --

20  that's just too much.

21    **THE COURT:**  But is the timing -- as I understood, the

22  issue is the timing with respect to the additional video.

23    Is that right, Ms. Zeman?

24    **MS. ZEMAN:**  I mean, under Chart's proposal, we would

25  be doing -- dealing with the designations for Chart's

1   case-in-chief during the middle of trial.

2       You know, in our experience, the designations would be

3   done by both sides ahead of trial.  With the understanding, of

4   course, that both sides have a may-call list.  We may change

5   our mind about some witnesses, and ultimately not bring them.

6       But we still have to do the work of identifying the

7   designations, and getting those worked out ahead of time, as

8   opposed to in the middle of trial.

9           **THE COURT:**  And Mr. Duffy, the calendar designations,

10   you don't have any problem with.  It's the -- it's your

11   additional witnesses that they haven't designated that you may

12   designate, it's the timing of that.

13       Is that the issue?

14           **MS. ZEMAN:**  I think that's a fair characterization.

15   Exactly.

16           **THE COURT:**  And so Mr. Duffy, when do you propose

17   that you would identify those witnesses?

18           **MR. DUFFY:**  The 14th.  As I said in my letter, I'm

19   anticipating about three hours, total, of video testimony in

20   my case-in-chief.

21       So I don't think there's going to be a significant amount

22   of heavy lifting by the plaintiffs.  But again, the list is

23   fluid, because they may see that and think:  Well, now I need

24   to add other witnesses, or other --

25           **THE COURT:**  Okay.

1          **MR. DUFFY:**  -- what happened.  So...

2          **THE COURT:**  So Ms. Zeman, if they identify that by

3    May 14th, what's the problem?

4          **MS. ZEMAN:**  Well, we may be able to work with that.

5    That is actually new information.  In their email and in their

6    letter, their suggestion was that they would provide their

7    designations at least a day before they put the witness on the

8    stand.  Which, of course, would be during the middle of trial.

9    Another --

10         **THE COURT:**  Here's my solution which is, I'm going to

11   give you a default rule that nobody likes.  And that way, you

12   can then -- but you can agree to anything else, yourself, as

13   long as it doesn't give me less time than I'm going to give.

14   All right?

15        So in smaller trials, so, each party must identify a

16   witness that they're calling by video, by deposition, at least

17   72 business hours before the trial day begins at which they're

18   going to be called.

19        So for example, if the witness is going to be called on

20   Tuesday, May 24th, then by 8:30 a.m. on Thursday, May 20th, the

21   party must identify the witness and the portions of the

22   deposition transcript you're going to move to admit.  Then the

23   other side has 24 hours to counter-designate.  For example,

24   that would be by 8:30 a.m. Friday, May 21st.  Then you meet and

25   confer.  And if there's a dispute, the dispute is submitted to

1  me at least 24 hours before the trial day the witness is going

2  to testify, which in that case would be 8:30 a.m. Monday.

3       So that goes to Ms. Zeman's issue of it all the being

4  right in the middle of trial.  Gives me, then, that afternoon

5  to -- to review the dispute, and have it resolved before trial

6  the next day.  That's what I want to make sure happens.

7       But, if you guys want to agree to some process where it

8  doesn't happen during trial, that's fine by me.  But that's my

9  default.  Okay?  So now you know what the default is, and then

10 you can work something out.

11          **MR. DUFFY:**  Thank you, Your Honor.  We'll speak with

12  the plaintiffs' counsel.

13          **THE COURT:**  Yeah.  I'm sure you can work something

14  out.

15          **MS. ZEMAN:**  Okay, Your Honor.

16          **THE COURT:**  Okay.  And I'll -- do you need me to

17  write that down?  Or is that clear?

18          **MS. ZEMAN:**  I don't think that's necessary.

19          **MR. DUFFY:**  No.  We'll get the transcript, just to

20  make sure, Your Honor.  Thank you.

21          **THE COURT:**  All right.  Anything further?

22          **MR. DUFFY:**  No, I don't think so.

23          **MS. ZEMAN:**  Thank you.

24          **THE COURT:**  All right.  That's fine.  I'm happy --

25  and if other questions arise, I'm happy.  Just let Ms. Means

```
 1   know.  But otherwise, I'll see you on the 18th, in person.

 2   For some of you, the very first time.

 3            MS. SHARP:  Thank you.  Looking forward to it.

 4            MR. DUFFY:  First time I've been --

 5            THE COURT:  Oh, if you want to wear clear masks,

 6   that's fine, as well.  But you have to get your own.

 7            MR. DUFFY:  Very good.

 8            MS. SHARP:  Thank you, Judge.

 9            MR. DUFFY:  Thank Your Honor.

10            MS. SHARP:  Thank Your Honor.

11            MR. RINGEL:  Thank you.

12       (Proceedings concluded)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, May 7, 2021