John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100
Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,**
**ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700
Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

IN RE PACIFIC FERTILITY CENTER
LITIGATION

This Document Relates to:
No. 3:18-cv-01586
(A.B., C.D., E.F., G.H., and I.J.)

Case No. 3:18-cv-01586-JSC

**CHART'S TRIAL BRIEF REGARDING
LOW LN2 INCIDENTS AT PFC IN 2013
AND 2014**

Judge:  Hon. Jacqueline S. Corley
Trial Date: May 20, 2021

CHART'S TRIAL BRIEF REGARDING LOW LN2 INCIDENTS AT PFC IN 2013 AND 2014
CASE NO. 3:18-CV-01586-JSC

1    Pursuant to Rule 404(b) of the Federal Rules of Evidence, Chart Inc. hereby asks the Court

2    to permit the introduction of evidence related to the documented incidents in 2013 and 2014 at the

3    PFC laboratory where Tank 4's liquid nitrogen (LN2) level dropped to dangerous levels, including

4    to zero.  In support of its request, Chart submits the following Trial Brief:

5    **BACKGROUND**

6    On March 19, 2021, on Plaintiffs' motion, the Court entered its order precluding Chart's

7    experts, Dr. Grace Centola and Dr. Franklin Miller, from testifying regarding multiple incidents in

8    2013 and 2014 where the LN2 in Tank 4 at PFC dropped to dangerous levels.  (ECF No 724).  The

9    Court found the evidence to be "too attenuated to be probative" with respect to causation of the

10   accident in March 2018.  (*Id*. at 9:22-10:1; 14:13-15).  At Plaintiffs' further request, the Court

11   extended that ruling to lay witnesses on April 30, 2021.  (ECF No. 777 at 4:1-9).  However, the

12   Court's order also stated, "[t]his ruling does not preclude Chart from eliciting testimony as to what

13   in fact happened[.]"  (*Id*. at 6-9).

14   The data from Tank 4's controller showed the following:

15   - Between July 19, 2013 and July 17, 2014, the liquid level in Tank 4 fell
16     **below 9.0 inches** on 80 occasions.

17   - On October 30, 2013 the liquid level in Tank 4 dropped to **3.0 inches**.

18   - From December 26, 2013 to December 30, 2013 Tank 4 had a level **below**
19     **8.0 inches**.

20   - From December 28, 2013 to December 30, 2013 the level was **below 4.0**
21     **inches**.

22   - On <u>December 30, 2013</u> the liquid level in Tank 4 dropped to <u>**0 inches**</u>.

23   - From January 17, 2014 to January 20, 2014 the level was again **below 8.0**
24     **inches**.

25   - On <u>January 20, 2014</u> the level again dropped to <u>**0 inches**</u>.

26   (*See* ECF No. 632-2, Exhibit 5, Dr. Grace Centola's November 20, 2020 Expert Report, p. 15,

27   ¶45) (emphasis added).

28

1

CHART'S TRIAL BRIEF REGARDING LOW LN2 INCIDENTS AT PFC IN 2013 AND 2014
CASE NO. 3:18-CV-01586-JSC

1
2
3
4
5
6
7
8
9
10

At her deposition on August 27, 2020, PFC embryologist, Erin Fischer testified on questioning by Plaintiffs' counsel that she had been scheduled to work on December 31, 2013 and January 20, 2014, that nothing unusual occurred with Tank 4 on those days, and that if a tank had run low on LN2 on December 31, 2013 or January 20, 2014, she would have heard about it. (August 27, 2020 Dep. Transcript of Ms. Fischer, 133:23-135:16, attached as <u>Exhibit A</u>).  Ms. Fischer further testified to the following:  "**Q.** Excluding March 4th, 2018, are you aware of any instance where a tank at PFC had less than 5 inches of liquid nitrogen in it with samples present? **A**. No.  **Q.** And if either of those scenarios had happened, do you think you would have heard about it?  **A.** Yes.  **Q.** Are you confident you would have heard about it?  **A.** Yes."  (*Id*. at 132:5-14).

11
12
13
14
15
16
17
18

Similarly, PFC embryologist Dr. Jean Popwell, at her September 2, 2020 deposition and on questioning by Plaintiffs' counsel, testified: "**Q.** And excluding Tank 4, are you aware of any instance where a tank at PFC had less than five inches of liquid nitrogen in it with eggs and embryos present?  **A.** No.  **Q.** If that had happened, do you think you would have heard about it? […]  **THE WITNESS:** Yes.  **Q.** Why is that? […]  **THE WITNESS:** It would have been a very unusual event."   (September 2, 2020 Dep. Transcript of Dr. Popwell, 35:19-36:7, attached as <u>Exhibit B</u>) (objections omitted).  Dr. Popwell testified the schedule showed she was working at the lab on December 30, 2013.  (*Id*. at 51:25-52:11).

19
20
21

At the April 29, 2021 hearing on motions *in limine*, the Court explained its ruling excluding the 2013 and 2014 incidents, stating the incidents are "too remote in time" to be probative.  (April 29, 2021 Hearing Transcript, 16:11-18).

22
23
24

At trial on May 27, 2021, on direct examination, Plaintiffs' counsel elicited a series of testimonial statements from PFC's Ms. Fischer related directly to the low LN2 level data in 2013 and 2014.  Ms. Fischer testified the following:

25
26

- She has worked at PFC since September 2005.  (May 27, 2021 Trial Transcript at 769:9-13).

27

- The lab performs QC checks daily.  (*Id*. at 771:6-14).

28

2

- That includes checking liquid nitrogen levels in tanks like the ones she sees here today [including Tank 4].  (*Id*. at 771:15-31).
- She does not recall ever being concerned that the PFC lab might run out of LN2 during her time at PCF.  (*Id*. at 777:20-25).
- Because PFC has **always** had adequate supplies of LN2.  (*Id*. at 778:2-9)(emphasis added).

Then, going further on direct, the following exchange took place between Plaintiffs' counsel and Ms. Fischer:

> **Q.** Did you **ever** observe lower liquid nitrogen levels than you would  expect in Tank 4?
>
> **A.** No.
>
> **Q.** **Always** had plenty of liquid nitrogen as far as you know?
>
> **A.** As far as I know, yes.
>
> **Q.** What about the other freezer tanks in the lab, did you **ever** see any tank that had any concerning level of liquid nitrogen prior to March 4th, 2018?
>
> **A.** No, I have not.

(*Id*. at 778:1-779:11) (emphasis added).  On May 26, 2021 Plaintiffs' counsel elicited similar testimony from Dr. Conaghan.  (*See* May 26, 2021 Trial Transcript at 492:13-18: "**Q.** Before March 4th, was there **ever** an instance in which you believe the liquid nitrogen in Tank 4 ever dropped below six inches? **A.** I believe it **never** dropped below six inches. **Q.** Would that have been a notable event at the clinic? **A.** Absolutely, yes.") (emphasis added).

## ARGUMENT

Any "time gap" or attenuation with respect to the 2013 and 2014 incidents has now been closed by Plaintiffs' counsel's direct questioning of PFC personnel regarding whether the PFC lab has ever experienced low LN2 levels in Tank 4 (or any tank) prior to the March 4, 2018 incident. At issue are people at a specific clinic, and their actions with respect to filling tanks, checking tank LN2 measurements, supply tank issues, backdating measurement evidence, with a theory that those

3

1    people let the tank run dry, which caused any damage to Plaintiff's eggs and embryos.  With

2    respect to 2013 and 2014, at issue are the same people at the same clinic, demonstrating the same

3    conduct—they let the same tank LN2 drop to unsafe levels multiple times, and drop to zero twice.

4    Further, their testimony at trial that PFC has never experienced low LN2 level issues is

5    contradicted by this very evidence Chart now seeks to use.

6           Obviously PFC's record and actions with respect to LN2 levels (dating back to at least

7    2005 when Ms. Fischer started working there) is significant to Plaintiffs' counsel as they defend

8    PFC—they are provoking testimony about this evidence in their case.  Plaintiffs' counsel's goal is

9    clearly that the jury hears the lab <u>never</u> before experienced low LN2 levels in its tanks.  Thus, they

10   have now opened the door and made the 2013 and 2014 low LN2 level incidents a significant and

11   relevant issue at trial.

12          Further, Ms. Fischer has testified at both deposition and trial to the following: (1) she was

13   working on a day in 2014 when the evidence shows the LN2 level went to zero in Tank 4; (2) the

14   LN2 levels are checked every day at PFC; (3) she is not aware of any instance where a tank at PFC

15   had less than 5 inches of LN2 in it with samples present; (4) she **<u>never</u>** observed lower levels of

16   LN2 in Tank 4 than she would have expected; (5) she does not recall **<u>ever</u>** being concerned that

17   the PFC lab might run out of LN2 during her time at PCF; and (6) PFC has **always** had adequate

18   supplies of LN2.  (*See supra* 2:1-9; 2:21-3:17).

19          PFC personnel have provided testimony to the jury that can only infer PFC has never had

20   an issue with low LN2 levels in its dewars or supply tanks.  While the 2013 and 2014 incident

21   evidence plainly contradicts this testimony, it is also plainly relevant, and admissible under Rule

22   404(b).  The incidents are admissible to show "proof of motive, opportunity, intent, preparation,

23   plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  "Rule

24   404(b) is a rule of inclusion—not exclusion—which references at least three categories of other

25   'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *United States

26   v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (citing *United States v. Curtin*, 489 F.3d 935, 944 (9th

27   Cir. 2007)).  The evidence shows PFC personnel must have had previous knowledge of low levels

28

CHART'S TRIAL BRIEF REGARDING LOW LN2 INCIDENTS AT PFC IN 2013 AND 2014
CASE NO. 3:18-CV-01586-JSC

of LN2 at the lab, and it also shows lack of mistake or coincidence.

As Chart has explained, this evidence is relevant to the case against PFC and whether they have had past issues with keeping LN2 properly supplied at the facility, and whether these issues present deviations from the standard of care, just like Chart is alleging occurred at PFC at the time of the incident.  (ECF No. 746, 1:14-2:14; ECF No. 668 at 12:9-25).   Chart's expert, Dr. Miller, will testify that supply issues contributed to low LN2 level incident on March 4, 2018, which Plaintiffs allege caused their damages.  (*See* ECF No. 668 at 12:9-25).  Dr. Centola will testify that failure to properly monitor LN2 levels daily is a deviation from the standard of care, and the 2013 and 2014 low LN2 incidents at PFC demonstrate deviations from that standard of care that is required to ensure sufficient protection of the stored samples.  (*Id*.)  This evidence is now crucial for calling into question PFC's credibility, especially considering they claim to <u>never</u> have had low LN2 issues at the lab, and to show how the PFC lab has operated over the years.  Plaintiffs' counsel now appear to agree such evidence is relevant to the case against PFC and they have opened the door for its use.

This evidence is also now relevant for another reason: to show that even when Tank 4 goes dry for a single day or less (as it did twice in 2013 and 2014) it keeps the tissue inside cold enough to produce live births at better outcome rates than Tank 4 after the March 4, 2018 incident.  During Dr. Conaghan's testimony on May 26, Plaintiffs' counsel presented to Dr. Conaghan Trial Exhibit 180, which is a spreadsheet with live birth outcome data for Tank 4, including data from 2013 and 2014.  Dr. Conaghan testified "The tissue that has been thawed from Tank 4 after March of 2018 has not performed as well as the tissue that was thawed from that tank beforehand or tissue that was thawed from other tanks."  (May 26, 2021 Trial Transcript at 551:3-6).

The 2013 and 2014 incident evidence helps demonstrate that where there is just a short period of time that Tank 4 is without LN2 (as Plaintiffs claim here) it would not have caused significant damage to Plaintiffs' tissue so as to cause worse live birth outcomes, *i.e.*, worse performance.  However, when there are longer periods of time without LN2, caused by slow evaporation and not refilling the tank over the course of days (which is what Chart claims happened

CHART'S TRIAL BRIEF REGARDING LOW LN2 INCIDENTS AT PFC IN 2013 AND 2014
CASE NO. 3:18-CV-01586-JSC

to Tank 4 at PFC), that is what produces the worse live birth outcomes Tank 4 has experienced after March 4. Plaintiffs' and Dr. Conaghan's claim that Tank 4 has produced worse live birth outcomes after the March 4 incident supports Chart's theory that Tank 4 was dry or had low levels of LN2 for a longer period of time—*i.e.* days, not hours. The 2013 and 2014 incident evidence will help explain that to the jury, and by introducing Trial Exhibit 180 (with its live birth data from 2013 and 2014), Plaintiffs have further opened the door for its use.

Finally, Plaintiffs' counsel cannot now claim Rule 403 should prohibit introduction of the 2013 and 2014 incidents. They elicited testimony clearly referring to whether there were **ever** any issues with LN2 levels prior to March 4, 2018, while knowing the Court had excluded reference to the evidence that demonstrated the clinic had, in fact, experienced issues with LN2 levels prior to March 4. There is nothing attenuated or unfair about Chart now showing the data that demonstrates the same people in the same facility experienced low LN2 level issues before, especially where some of those same people have testified in front of the jury that such issues never occurred. Exclusion of this relevant evidence at this juncture would only serve to unfairly prejudice Chart's defense.

## CONCLUSION

For the foregoing reasons, Chart respectfully requests that this Court permit Chart to introduce evidence of the 2013 and 2014 low LN2 incidents at the PFC lab.

Dated: June 1, 2021

By: */s/Kevin M. Ringel*
John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100
Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

6

CHART'S TRIAL BRIEF REGARDING LOW LN2 INCIDENTS AT PFC IN 2013 AND 2014
CASE NO. 3:18-CV-01586-JSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,**
**ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700
Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

7