John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Andrew A. Lothson (SB No. 6297061)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100
Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,
ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700
Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Case No. 3:18-cv-01586-JSC<br><br>**CHART'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge:  Hon. Jacqueline S. Corley |

## I.　INTRODUCTION

Plaintiffs have failed to present evidence to the jury required to support their strict products liability and negligent failure to recall claims against Chart.  With respect to their strict liability claims, Plaintiffs have not presented any expert testimony to support their causation theory that a hairline crack in the fill port weld *caused* Tank 4 to lose 14 inches of liquid nitrogen (LN2) in less than 22 hours.  Plaintiffs have presented no scientific, physical, or mathematically supported evidence to suggest that that amount of LN2 could ever boil off and disappear from a cryogenic tank during that short time period.  Without such evidence, the jury cannot concluded that any purported defect caused the "less than 1 inch" LN2 level PFC discovered in Tank 4 on March 4, 2018, which is what Plaintiffs allege caused their harm.

Likewise, Plaintiffs' negligent failure to recall claim fails because they have not presented evidence to support all of the elements they must prove for the jury to return a verdict in their favor.   Because the jury cannot reasonably conclude that Plaintiffs have met their evidentiary burdens in this case, the Court should render judgment as a matter of law against Plaintiffs on their strict products liability and negligent failure to recall claims.

## II.　LEGAL STANDARD

A district court may grant judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ P. 50(a)(1).  In the Ninth Circuit, this standard is met, and judgment as a matter of law is proper, "when the evidence permits only one reasonable conclusion." *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009) (internal citations omitted).

## III.　ARGUMENT

### A.　Chart is entitled to judgment as a matter of law on Plaintiffs' strict products liability claims.

At the March 4, 2021 hearing, in discussion about whether Plaintiffs' expert, Dr. Anand Kasbekar, could testify about causation based on his assumption that 14 inches was in Tank 4 at the end of the day on March 4, the Court stated "[n]ow, he can testify, based on that assumption.

If the jury finds otherwise, well, that kind of -- I think their case hinges in large -- to a large extent on that finding. If the jury finds otherwise, well then, his opinion won't have any validity, which is what you'll argue." (Mar. 4, 2021 Hearing Transcript, 4:16-5:1.)

With the Plaintiffs' case-in-chief over, the jury cannot find that 14 inches of LN2 both existed in Tank 4 at the end of the day on March 3, 2018 (when it was purportedly measured by Jean Popwell), and, most importantly on the causation issue, *all* of it (approximately 120 liters) boiled off to *less than one inch* by the time that PFC discovered that low level on March 4, 2018. (*See* May 26, 2021 Trial Transcript, testimony of Dr. Joseph Conhagan, 451:20-452:12). Plaintiffs have presented no expert testimony to the jury, through Dr. Kasbekar or otherwise, that could establish a welding defect in Tank 4 caused it to lose all 14 inches of LN2 in less than 22 hours. However, Plaintiffs have presented no evidence that such a finding is even physically or mathematically possible and, therefore, the jury cannot make such a finding as a matter of law.

In a products liability case, "the plaintiff must prove that a defect caused the injury," either because of a design defect or a manufacturing defect. *Scott v. C.R. Bard, Inc.*, (2014) 231 Cal. App. 4th 763, 773; *Demara v. The Raymond Corp.*, (2017) 13 Cal. App. 5th 545, 554. "A product liability case must be based on substantial evidence establishing both the defect and causation (a substantial probability that the design defect, and not something else, caused the plaintiff's injury) and where, as here, the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." *Stephen v. Ford Motor Co.*, (2005) 37 Cal. App. 4th 1363, 1373.

In this case, Plaintiffs' alleged injury is damage to their eggs or embryos because of the alleged low LN2 level found in Tank 4 on March 4, 2018. Plaintiffs have provided no expert or other scientific evidence to show how LN2 could have depleted in Tank 4 from 14 inches to the less than one inch by the time they discovered it. They have not shown how the alleged hairline fracture defect that purportedly formed sometime during that 22 hours between the March 3 fill and the March 4 discovery, could have caused such a rapid boil-off rate. But the complexity of LN2 boil-off rates and ultimately what caused the low LN2 level in Tank 4 is certainly beyond the common experience of the jury. Thus, without expert testimony to establish what caused the low LN2 level that allegedly caused their harm, Plaintiffs cannot establish their products liability

1    claims in this case. *Stephen*, (2005) 37 Cal. App. 4th 1363, 1373.

2        Dr. Kasbekar did not offer an opinion as to how 14 inches of LN2 could disappear from

3    Tank 4 within the pertinent time period.  Dr. Kasbekar's opines that (1) a defect in the annular fill

4    port weld caused a hairline crack that existed in Tank 4 sometime before the March 4, 2018; and

5    (2) this crack caused vacuum failure in Tank 4.  Importantly, Dr. Kasbekar did not testify at trial

6    that 14 inches of LN2 in Tank 4 depleted, or even could deplete to less than one inch.  Instead, his

7    offered opinions about the cause of the tank failure were "based upon how that crack formed,

8    where it originated, are not based upon the 14 inches of nitrogen being in the tank. If there were

9    12 inches or 13 inches or 15 inches, my opinions would be the same. They are based upon the

10    testing, the examination and the fractography work I did." (May 25, 2021 Trial Transcript, 365:11-

11    23).  This testimony does not get Plaintiffs past the causation barrier they must overcome with

12    respect to LN2 boil-off.[1]

13        Plaintiffs presented Dr. Joseph Conaghan, the director of PFC, in their case-in-chief.

14    Plaintiffs' counsel, perhaps unwittingly, led Dr. Conaghan with the following questions:

15        **Q**.      And you were comfortable, given that, going to manual monitoring and
16                having no alarm on Tank 4 between February 15 and when the tank failed;
                    right?

17        **A**.      Yes, I was.

       **Q**.      And that's because you had no reason to believe that the tank would fail
18                overnight; isn't it?

19    (May 27, 2021 Trial Transcript, 652:19-24).  Dr. Conaghan responded with the following:

20        Well, first of all, there's absolutely no reason to believe that the tank was going
21        to fail. There was no warning, there was no indication that anything was wrong
       with the tank. And we had been in and out of that tank, as we saw, and
22        everything that we observed was normal for that tank leading up to the incident.
       **The second thing is that even if a tank fails and loses its vacuum seal, with**
23        **12 or 14 or 16 inches of liquid nitrogen inside** *you would never expect that*
24        *all of that nitrogen could disappear in 24 hours*. **So even if there was a breach**
       **in the vacuum seal, because you've got hundreds and hundreds of liters of**
25        **liquid nitrogen inside, you wouldn't expect that that nitrogen could**
26        **disappear so quickly.**

27

28

---

[1] Dr. Kasbekar's opinion does not account for Jean Popwell's testimony that when she opened the lid on Tank 4 on March 4, 2018, she claims to have seen 4 to 5 inches of LN2. (May 27, 2021 Trial Transcript, 713:25-714:13).  That amount of LN2 would preserve the Plaintiffs' eggs and embryos.

CHART'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 3:18-CV-01586-JSC

(May 27, 2021 Trial Transcript, 652:25-653:9) (emphasis added).   Losing that amount of LN2 in less than in 24 hours is not scientifically plausible under the circumstances alleged in this case— and Plaintiffs have not shown evidence to suggest otherwise.

Again, at the March 4, 2021 hearing the Court identified the significance of the 14 inch finding, concluding Plaintiffs' case hinged upon it. (March 4, 2021 Hearing Transcript, 4:16-5:1). Because Plaintiffs have no expert to testify that 14 inches (hundreds of liters) of LN2 can boil off to less than one inch overnight, the jury cannot now make a causation finding for Plaintiffs. *Lakeside-Scott*, 556 F.3d at 802 (judgment as a matter of law is proper "when the evidence permits only one reasonable conclusion."). Thus, they cannot support their causation theory in this case that the alleged weld defect caused the "less than 1 inch" level of LN2 discovered by PFC in Tank 4 on March 4, 2018. The jury is not permitted to draw a factual inference that has not been shown to be physically or mathematically possible. The Court should enter judgment as a matter of law against Plaintiffs on their strict products liability claims.

**B.**    **Chart is entitled to judgment as a matter of law on Plaintiffs' negligent failure to recall claim.**

Plaintiffs claim Chart's failure to recall or retrofit the TEC 3000 controller caused their injuries—*i.e.*, damage to their tissue stored in Tank 4.   Plaintiffs have not presented sufficient evidence to the jury to support their failure to recall claim under the parties stipulated California Civil Jury Instruction 1223, which requires Plaintiffs to prove seven elements, including that Chart knew or reasonably should have known that the controller was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner (element 2); Chart became aware of the defect after the controller was sold (element 3); and that a reasonable seller under the same or similar circumstances would have recalled or retrofitted the controller (element 5). (*See* ECF No. 762, Stipulated Instruction No. 7, p.12).

Plaintiffs have not presented an expert opinion or otherwise sufficient evidence to establish these three elements they *must* be able to prove under the Stipulated CACI No. 1223.

**1.**    **Plaintiffs cannot prove element 2.**

Element 2 has two parts for which Plaintiffs must present evidence to prove: (1) Chart

1   knew or should have known the controller was dangerous or likely to be dangerous when (2) PFC

2   used the controller in a reasonably foreseeable manner.

3         Starting with the second part, Plaintiffs have presented no evidence to the jury (expert or

4   otherwise) to demonstrate PFC used the TEC 3000 controller in a reasonably foreseeable manner

5   when they unplugged it on February 15, 2018, and for seventeen (17) days kept it unplugged except

6   to purportedly use the autofill mechanism to refill Tank 4.  Again, Plaintiffs have not presented

7   evidence that such use of the TEC 3000 controller on a cryogenic tank is reasonable, or that any

8   cryogenic lab other than PFC has ever used the TEC 3000 controller in such a manner.  It logically

9   follows, then, that Plaintiffs have not presented any evidence that PFC's use of the controller on

10   Tank 4 during those 17 days could have been reasonably foreseeable to Chart.

11         Second, Plaintiffs have not presented to the jury evidence demonstrating Chart knew or

12   should have known the TEC 3000 could be dangerous in the manner in which Plaintiffs claim it

13   caused their harm.  Plaintiffs have merely presented evidence showing that Chart employees were

14   aware of certain alleged malfunctions in the field with a handful of other TEC 3000 controllers

15   while being operated under mostly unknown (or dissimilar) circumstances.   However,

16   malfunctions are not defects, but symptoms, and to have knowledge that a symptom is "dangerous"

17   it must be shown to have caused some harm before.   Plaintiffs have presented no other incident

18   where it was alleged that a TEC 3000 controller ever caused or contributed damage to

19   cryogenically frozen human tissue.  In other words, Plaintiffs have presented no evidence to the

20   jury support a finding that Chart reasonably should have known the controller was likely to be

21   dangerous because there is no evidence Chart was aware of any prior *harm* caused by the

22   controller.

23         Plaintiffs have attempted to argue, without providing evidence, that the TEC 3000

24   controller was dangerous when coupled with their *allegation* that an MVE 808 tank could rapidly

25   lose vacuum seal and over 14 inches (hundreds of liters) of LN2 overnight.  However, and as

26   previously discussed, Plaintiffs allegation about rapid boil-off rates remain simply an allegation.

27   They have provided no scientific evidence or mathematical basis to prove that an MVE 808 tank

28   could lose such large amounts of LN2 in such a short period of time.  Thus, to the extent Plaintiffs

1   claim that this alleged confluence of dangers should have been known by Chart, they have not

2   presented evidence to prove it.    As a result, the jury cannot find that Chart knew or reasonable

3   should have known that any purported malfunction on the TEC 3000 controller was likely to be

4   dangerous in the way Plaintiffs allege it was in this case.  The jury cannot infer facts from evidence

5   that does not exist.

6           **2.        Plaintiffs cannot prove element 3.**

7           Element 3 requires Plaintiffs to prove Chart was aware of a "defect."  However, they have

8   shown no defect to exist in the subject TEC 3000 controller.  Again, they have merely shown Chart

9   was aware of certain malfunctions occurring in the field with other controllers.  But alleged

10  malfunctions are not defects.  They are symptoms of other issues and can be caused by outside

11  influences on the product that are not attributable to Chart.  For example, Plaintiffs presented

12  testimony to the jury from former Chart employees that end-user error causes a lot of the

13  malfunctions.  (*See* May 25, 2021 Trial Transcript, Video Deposition of Justin Junnier, 72:14-24).

14  At bottom, Plaintiffs have presented no expert to opine on what the root cause of these symptoms

15  are, to show whether they are caused by a defect, or some other issue.   Plaintiffs, therefore, cannot

16  prove a defect existed in the TEC 3000 controller, which should have prompted a recall.

17          **3.        Plaintiffs cannot prove element 5.**

18          Plaintiffs have also not presented evidence to the jury to show what a reasonable seller or

19  manufacturer would do under the same or similar circumstances when presented with complaints

20  from the field on the TEC 3000 controller.  The question therefore is:  how could a jury find what

21  a reasonable seller would have done under these circumstances?  For plaintiffs to prove this

22  element, they must show evidence to support that a seller would have recalled or retrofitted the

23  product even without a root cause of symptoms (or complaints) being established as a defect in the

24  product and without knowledge that the product ever caused a similar injury to that alleged by the

25  plaintiffs.  Because Plaintiffs have not presented that evidence, the jury cannot make that finding.

26  **IV.    CONCLUSION**

27          Plaintiffs have not presented sufficient evidence in their case from which a jury could

28  reasonable conclude the Plaintiffs have proven each element of their strict liability claims, or their

1    negligent failure to recall claims.   Therefore, this Honorable Court, pursuant to Fed. R. Civ. P.

2    50(a), should render judgment as a matter of law on both of Plaintiffs' claims against Chart.

3    Dated: June 3, 2021                       By:   *s/Kevin Ringel*

John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Andrew A. Lothson (SB No. 6297061)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100
Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**SHEUERMAN, MARTINI, TABARI,**
**ZENERE & GARVIN**
1033 Willow Street
San Jose, California 95125
Tel: (408) 288-9700
Fax: (408) 295-9900
mcowden@smtlaw.com
astoddard@smtlaw.com

*Counsel for Defendant Chart Inc.*

7

CHART'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 3:18-CV-01586-JSC