Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

*Plaintiffs' counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br>No. 3:18-cv-01586<br>(A.B., C.D., E.F., G.H., and I.J.) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' TRIAL BRIEF RE PUNITIVE DAMAGES INSTRUCTION** |

During yesterday's jury charge conference, Chart objected to the reading of Jury Instruction No. 33 concerning punitive damages. Chart took the position that "there's been no evidence that an officer, director, or managing agent has been involved in anything having to do with the controller," and the Court requested additional detail on that issue. (Tr. at 1747-48.)

### A. Plaintiffs introduced evidence that a Chart Vice President and Chart managing agents were involved with Chart's failure to recall or retrofit its controllers.

There are three exhibits before the Court that confirm the company's officers and managing agents—including the Vice President and General Manager of Chart's cryobiological business, Frank Bies—knew about the dangers posed by the SN=0 defect and approved of the company's decision not to recall or retrofit the affected TEC-3000 controllers. (Trial Exs. 284, 200, 223.) These exhibits show in the years leading up to the Tank 4 incident, Chart's upper management had been kept informed about the SN=0 issue, the company's development of a retrofit capable of fixing the issue, and the ultimate decision to release that retrofit to market without informing customers that it was necessary to address a known defect in Chart's TEC-3000 controllers.

The first indication that the SN=0 issue had reached the management level was in July 2015, when Ramon Gonzalez, a Cryobio Product Manager at Chart, wrote that Chart had just lost a large quantity of freezer sales because of the issue, and that "Chart hierarchy needs an answer urgently why this is occurring; so needless to say this has turned into a high priority." (Trial Ex. 284 at 290.) Then in May 2016, Chart Quality Analyst Daphne Maddox wrote that when she presented April's metrics to "upper management," they will want to know why Chart had to replace 10 TEC-3000s for a single customer all at once, and that she was "going to have to explain this in management review." (Trial. Ex. 200 at 4552-53.) After she was referred to Ramon Gonzalez and Brendon Wade for more information, Ms. Maddox confirmed that she "will be sure that everyone is aware." (*Id.* at 4551.)

A November 2017 email from Mr. Wade indicated that the Chart officers and managing agents who had been kept apprised of the SN=0 issue and ensuing TS retrofit kits were Frank "Buzz" Bies, Josep Fernandez, and Ramon Gonzalez. (Trial Ex. 223 at 28403.) Mr. Bies was an officer at Chart and the Vice President and General Manager of Chart's cryobiological business; Mr. Fernandez was a Managing Director at Chart; and Ramon Gonzalez, as previously mentioned, was the Product Manager

above Brendon Wade and Justin Junnier in the Chart hierarchy. (Bies Dep. at 8, 18 (played on June 1, 2021); Junnier Dep. at 18-19 (played on May 25, 2021).) Mr. Wade's email indicates that Messrs. Bies, Fernandez, and Gonzalez were Chart representatives with oversight over the TS retrofit kits (which had been released in the U.S. in May 2017), and who had the power within Chart to push forward the launch of those retrofit kits in Europe.

**B.     The jury can reasonably infer from the evidence that Chart's officers and directors authorized, approved, or ratified Chart's failure to recall or retrofit its controllers.**

By releasing the TS retrofit kit to market without informing customers that the retrofit was needed to fix a known and dangerous defect in Chart's TEC-3000 controllers, Plaintiffs contend that Chart acted both with malice (because it acted with a willful and knowing disregard for biological samples stored in customer tanks) and with fraud (because it intentionally concealed a material fact). To hold Chart liable for punitive damages, the jury must also be able to conclude that at least one of Chart's officers or managing agents authorized, approved, or ratified the company's offending conduct. Cal. Civ. Code § 3294(b); *White v. Ultramar, Inc.,* 21 Cal. 4th 563, 572 (1999) (managing agents are "those employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy").

Plaintiffs are not required, however, to "produce a smoking memorandum signed by the CEO and Board of Directors." *Pizarro v. Nat'l Steel & Shipbuilding Co.*, No. 19-cv-08425-WHA, 2021 WL 1197467, at *4 (N.D. Cal. Mar. 30, 2021) (quoting *Willis v. Buffalo Pumps, Inc.*, 34 F. Supp. 3d 1117, 1133 (S.D. Cal. 2014)). In addition, "[t]here is no requirement that the evidence establishes that a corporation acted on a particular date with 'malice.'" *Romo v. Ford Motor Co.*, 99 Cal.App. 4th 1115, 1141 (2002), *voided and remanded on other grounds*, 538 U.S. 1028,1140 (2003). Instead, Plaintiffs may carry their burden "if the evidence permits a clear and convincing inference that within the corporate hierarchy authorized persons acted despicably in 'willful and conscious disregard of the rights or safety of others,'" or to intentionally conceal a material fact with the intention of depriving customers of property or legal rights. *Id.* at 1141. This inference cannot be based merely on speculation, but it can be established with circumstantial evidence. *Id.*

Plaintiffs' evidence, though circumstantial, meets these requirements and permits the jury to reasonably infer that Mr. Bies (as an officer), along with Messrs. Fernandez and Gonzalez (as managing agents) authorized, approved, or ratified Chart's offending conduct. They were kept apprised about the SN=0 defect; knew that Chart had developed a TS retrofit kit to remedy that defect; were authorized to act for the company in releasing the TS retrofit kit to market; and necessarily must have approved or ratified Chart's failure to inform customers that the TS retrofit kit was needed to correct a known defect, install the retrofit on customers' controllers free of charge, or otherwise recall defective controllers from the field. Even if Plaintiffs were not able to identify some of the specific officers and managing agents involved in Chart's failure to recall or retrofit defective TEC-3000 controllers, the jury could reasonably infer that the decision whether to institute a multi-million dollar retrofit or recall campaign is "the kind of determination that could only have been made by a managing agent." *Barrous v. BP P.L.C.*, No. 10-CV-02944-LHK, 2011 WL 4595205, at *17 (N.D. Cal. Oct. 3, 2011). But here Plaintiffs have introduced both evidence that Chart's "hierarchy" and "upper management" were kept informed about how Chart intended to handle the dangerous SN=0 defect, as well as evidence identifying some of that upper management by name. Under these circumstances, the jury could reasonably award punitive damages and should be instructed on the law governing that award. *See also Willis*, 34 F. Supp. 3d at 1133 ("There is ample evidence in the record exists to support a finding that Defendant's managing agents knew about the dangers of asbestos, but nonetheless failed to provide any warning to Mr. Willis and other end users."); *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757, 814 (1981), *disapproved on other grounds by Kim v. Toyota Motor Corp.*, 6 Cal. 5th 21 (2018) ("There is substantial evidence that management was aware of the crash tests showing the vulnerability of the Pinto's fuel tank," and "testimony from several sources that the test results were forwarded up the chain of command").

Dated: June 8, 2021

Respectfully submitted,

By:   /s/ Amy M. Zeman

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**

505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@giradsharp.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE & CONWAY, APLC**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' Counsel*