**Volume 11**

**Pages 1782 - 1816**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

IN RE PACIFIC FERTILITY CENTER )   **No. 18-1586 JSC**
LITIGATION                     )
_____)
                                   San Francisco, California
                                   Tuesday, June 8, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                GIRARD SHARP LLP
                602 California Street, Suite 1400
                San Francisco, California 94108
          BY:   **DENA C. SHARP, ESQ.**
                **ADAM E. POLK, ESQ.**
                **NINA R. GLIOZZO, ESQ.**

                GIBBS LAW GROUP LLP
                505 14th Street, Suite 1110
                Oakland, California 94612
          BY:   **AMY M. ZEMAN, ESQ.**
                **JOHN BICKNELL, ESQ.**
                **GEOFFREY A. MUNROE, ESQ.**

For Defendant Chart Industries:
                SWANSON, MARTIN AND BELL, LLP
                330 N Wabash, Suite 3300
                Chicago, Illinois 60611
          BY:   **JOHN J. DUFFY, ESQ.**
                **KEVIN M. RINGEL, ESQ.**
                **ANDREW LOTHSON, ESQ.**
                **KRISTINE C. REVEILLE, ESQ.**

Reported By:   Katherine Powell Sullivan, CSR #5812, RMR, CRR
               Official Reporter - U.S. District Court

1

**I N D E X**

2    Tuesday, June 8, 2021 - Volume 11

3                                                        **PAGE**  **VOL.**

4    Defense Rests                                        1795  11
     Jury Instructions                                    1796  11

5    **DEFENDANT'S WITNESSES**

6
     **PICKELL, WILLIAM**
7    (By Videotaped Deposition)                           1794  11

8    **LAMB, HANA**
     (By Videotaped Deposition)                           1794  11
9
                           **E X H I B I T S**
10
     **TRIAL EXHIBITS**                            **IDEN**  **EVID**  **VOL.**
11
      144                                                1795  11
12
      190                                         1793  11
13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

1  **Tuesday - June 8, 2021**                                    **8:05 a.m.**

2                       **P R O C E E D I N G S**

3                            ---oOo---

4      (Proceedings held outside the presence of the jury:)

5           **THE COURT:**  Good morning.

6      (Counsel greet the Court.)

7           **THE COURT:**  Okay.  So let's first discuss the jury

8  instructions, putting aside punitive damages for the moment.

9      Are there any comments on the jury instructions?  From the

10 plaintiffs?

11          **MS. SHARP:**  I don't believe so, Your Honor.

12          **THE COURT:**  All right.  And from Chart?

13      **MR. DUFFY:**  Not from Chart.  Just based on our prior

14 objections, I want to state --

15          **THE COURT:**  Those are preserved for the record.

16          **MR. DUFFY:**  Thank you.

17          **THE COURT:**  So with respect to the verdict form, I've

18 been thinking -- and again I was thinking this morning -- I

19 wonder if the jury were to find for Chart on Question Number 2,

20 I think we don't get to the negligent recall because that would

21 be a finding of the sole cause.  Not the reasonable forceable

22 because it's different theories as to the use or misuse, but as

23 to causation.

24      I think that then eliminates -- for them to find sole

25 cause, they'd have to say that Chart's conduct was not even a

**PROCEEDINGS**

1   substantial factor.  That was Mr. Polk's point yesterday, which

2   is correct.  So if Chart's conduct was not even a substantial

3   factor, then they can't find for the plaintiff on Number 12.

4         **MR. POLK:**  I was just reading from the directions for

5   use.  So I did think that the way the Court had it originally,

6   before the edit yesterday, makes more sense.

7         **THE COURT:**  So, wait.  So I think it would say, "If

8   you answered yes under Number 2, skip questions" -- no.  "If

9   you answered yes," then they just sign the verdict form at that

10  point.  Okay.

11        **MR. DUFFY:**  Yes.  That's what I think, Your Honor.

12        **THE COURT:**  Yeah.  All right.  We'll make those

13  changes.

14     And then the other -- the only other thing was in Question

15  1 we'll say -- should I say -- in the jury instruction we

16  define the Product as Tank 4 and the controller.  So should I

17  say was the Product misused, so that it follows the jury

18  instruction on misuse or modification?  Or should I say was

19  Tank 4 and/or the controller?

20        **MR. DUFFY:**  Why don't you say "and the controller";

21  right?  Maybe both, because this is fairly specific, and if we

22  take them back -- I would put both in there because, otherwise,

23  they have to go back to get that definition.

24        **THE COURT:**  I think if we just say Tank 4, that's

25  different from the definition.

 1      What is plaintiffs' position?

 2          **MR. POLK:**  Just give me one second.

 3          **THE COURT:**  Sure.

 4          **MR. POLK:**  I want to get the jury instruction --

 5      Where do we define Tank 4, Your Honor?

 6          **MR. POLK:**  -- harmonized here.  One moment.

 7          **THE COURT:**  It's instruction, I think, number 20 --

 8  no, yeah, 21.

 9          **MR. POLK:**  They define it as -- it is defined as

10  "cryogenic tank and the TEC 3000 electronic controller," and

11  then together the "Product."

12          **THE COURT:**  The Product.  And so should I say "Tank 4

13  and the controller"?

14          **MR. POLK:**  The "Product."

15          **THE COURT:**  Or just say the "Product"?  I think I

16  should say "the Product."

17          **MR. POLK:**  That's our preference.

18          **THE COURT:**  Yeah.

19          **MR. DUFFY:**  I think we want to capitalize the

20  definition in 21, Your Honor, because it's lower case P for

21  product.

22          **THE COURT:**  I think that makes sense.  "Together the

23  Product," capitalized.  And then in Number 1, the "Product"

24  capitalized.

25          **MR. DUFFY:**  That way they can follow it.

PROCEEDINGS

1      **THE COURT:**  That they'll know.

2      **MR. DUFFY:**  I'll tie it together in my closings so

3  they see it, but I think that would be helpful.

4      **THE COURT:**  The Product.  Okay.

5      Okay.  Anything more on those?

6      **MR. POLK:**  Not from the plaintiff.

7      **THE COURT:**  Okay.  All right.  I will file -- it will

8  again say "proposed" because I don't file the verdict form

9  without saying proposed.  But if you want to use it in your

10  closing arguments you can just redact the "proposed" on both.

11      Okay.  With respect to the punitive damages, the

12  plaintiffs' burden here is clear and convincing, at least what

13  I read before I came on the bench.

14      I don't think it meets that with respect to, for example,

15  it could be -- let's see, what's her name? -- Daphne Thomas.

16  The problem is we don't know what she communicated to whom or

17  if she communicated.  We know she had an intent to communicate,

18  but we don't know what she communicated, to whom, how she

19  framed it or anything.  So I don't think that email chain gets

20  you there.

21      Mr. Gonzalez might, but what is the definition of a

22  managing agent?  You argue he's the supervisor of two other

23  people.  True.  But -- I don't know.

24      Do you have anything to add other than what's in there?

25      **MR. POLK:**  We do, Your Honor.  And I do appreciate

**PROCEEDINGS**

1    your tentative.  I think that the cases that we cite,

2    specifically the Judge Koh decision from *Barrous versus British*

3    *Petroleum*, is worth a look here.

4         We do define managing agent in the brief that we filed.

5    It's somebody who has discretion -- I can get the exact

6    language for you here -- to act on behalf of the company.

7         I do want to clarify what the conduct that we are alleging

8    is.  The conduct is that Chart knew that there was a problem

9    with the controllers and that the controllers were failing.

10        Chart knew that they had developed --

11             **THE COURT:**  Don't say Chart.  Tell me which officer or

12    managing agent knew.

13             **MR. POLK:**  Sure.  Well, and I will -- I think we've

14    given Your Honor evidence in Exhibit 223 that Chart was --

15    sorry, that Buz Bies and Ramon Gonzalez were aware of the

16    repair.  And I can show you the exact portion of that exhibit.

17    It's -- and this is from November 7, 2017, the second

18    paragraph.  Engineering is --

19             **THE COURT:**  Which email?  What time?

20             **MR. POLK:**  I'm sorry.  It's the very top email,

21    1:51:26 p.m.  The second paragraph there indicates that:

22             "Engineering is confident that the new MVE TS has much

23        better resilience to electronic interference than the

24        TEC 3000.  Maybe you can mention this to Joseph, Ramon,

25        Buzz to push forward" --

1          **THE COURT:**  Was it mentioned to Buzz?

2          **MR. POLK:**  Well, Ramon Gonzalez testified that the

3     touchscreen was pushed out in May of 2017.

4          **THE COURT:**  What was told to Buzz?

5          **MR. POLK:**  Well, Your Honor, we think, based on this

6     email in combination with Mr. Gonzalez's testimony that the

7     touchscreen was pushed out, it would be reasonable to infer

8     that Mr. Bies, who's named in this email along with Chart

9     hierarchy, who's named in Exhibit 284, and upper management,

10    who's named in Exhibit 200, were aware of both the problem and

11    the fix and ratified or approved, which is a route to punitive

12    damages, the decision not to inform their customers, including

13    PFC, that there was a retrofit available.

14         So, yes, you're right, we have a high burden here, higher

15    than a preponderance.  But, no, we don't think it's appropriate

16    to take it from the jury at this time.

17         **THE COURT:**  Okay.  Well, I think that you're right

18    that the fact that there was a retrofit that was offered

19    clearly management would know about that.  But what I don't

20    know, what I think the record is devoid of, is exactly what

21    management knew about why the retrofit was needed.

22         **MR. POLK:**  Your Honor, I will point you to one more

23    case that we cite.  It's the *Pizarro* case.  And that case makes

24    it clear that there is no need for a smoking gun memorandum to

25    the CEO or anything like that.  And that's a case from this

PROCEEDINGS

 1    year.

 2          THE COURT:  No, I completely agree with that.  But

 3    this isn't -- this is just some testimony.  I understand, you

 4    know, the way it worked with respect to the depositions and

 5    when they came in and what you're going to ask and how it

 6    developed, that must be a problem with this case that may not

 7    occur with later cases.  I don't know if Chart has anything to

 8    add.

 9          MR. POLK:  Understood.

10          MR. DUFFY:  No, Your Honor.  I think your comments are

11    correct.

12          THE COURT:  I'm going to exclude the punitive damages.

13    I'll write something so it will be there.  But I think it's

14    just not, especially given the higher standard with respect --

15    I'm only finding with respect to the managing agent/officer

16    element.

17          MR. POLK:  Understood.  Thank you, Your Honor.

18          THE COURT:  Okay.  What does our trial day look like?

19          MR. LOTHSON:  It's going to be brief, Your Honor.  We

20    have a couple depositions to play.

21          THE COURT:  That's it?

22          MR. LOTHSON:  Yep.

23          THE COURT:  All right.

24          MR. LOTHSON:  About an hour.

25          THE COURT:  So then let's talk about -- so then what

**PROCEEDINGS**

1   I'll do is we'll take a break.  Or is there any rebuttal?

2         MS. SHARP:  No, Your Honor.

3         THE COURT:  No.  Okay.  We'll take a break, and what

4   I'll tell the jury -- well, you'll rest, and then I'll tell the

5   jury what our -- well, how long are the depositions?

6         MR. LOTHSON:  One hour.

7         THE COURT:  Okay, yeah.  We'll take -- I'll tell the

8   jury then, at that point, what we're going to do is take a

9   break.  We'll come back, I'll read the instructions to them.

10  I'll then suggest that they go back and select their presiding

11  juror and decide their schedule, right, so that we'll close

12  tomorrow.

13      And how long do we need for closings?

14        MS. SHARP:  Your Honor, you had previously said two

15  hours.

16        THE COURT:  Yes.

17        MS. SHARP:  That's what we had been planning for.  One

18  question for clarification, while I have the Court's ear.  I

19  assume rebuttal for the plaintiffs is agreeable?

20        THE COURT:  Yes.

21        MS. SHARP:  Okay.  Then two hours total, I think,

22  unless my colleagues kick me.  And nobody's kicking me.

23        THE COURT:  Okay.  And about the same for Chart?

24        MR. DUFFY:  Yeah, that's fine, Your Honor.  That's

25  fine.

PROCEEDINGS

1       **THE COURT:**  Right.  So then we'll probably finish --

2   we'll start at 9:00, so we'll probably finish around 1:30.

3       **MS. SHARP:**  Oh.

4       **THE COURT:**  So I'll tell the jury that so what I'll

5   then ask them to do, once they select the presiding jury, to

6   figure out what they want to do tomorrow.  Do they want to stay

7   and continue to deliberate or stop at 1:30 and come back

8   Thursday.

9       They should also discuss Thursday's schedule, Mr. Toole's

10  child's graduation is 3:00 p.m.  So they are able to get,

11  really, a full day in of deliberations, and then if they need

12  Friday as well.

13      **MR. DUFFY:**  You know, the other thing is, let's say we

14  don't take the full four hours allotted for closings, just tell

15  them that if that happens they may start a little earlier than

16  that.  Just a little wiggle room.

17      **THE COURT:**  Yeah.  Basically what I'll tell them is

18  they should figure out how long they want to stay on Wednesday.

19  And they should discuss it now so they can plan accordingly.

20      **MR. LOTHSON:**  Would they be provided lunch perhaps?

21      **THE COURT:**  Yes.

22      **MR. LOTHSON:**  Good.

23      **THE COURT:**  Good, I'm glad you reminded me.  I will

24  tell them that should they tell Ms. Means that they would

25  intend to stay tomorrow, we will provide lunch for them.  Okay.

PROCEEDINGS

1        All right.  The other thing I would say, the plaintiffs

2   probably know this, but I don't know if Chart, have you been to

3   Arsicault -- I don't know how to pronounce it -- Bakery on --

4   have you guys been there?  Yes?  You can tell them where it is.

5        They are the best croissant you will ever have in your

6   life.  I promise.  And so just make sure you go there.

7            MR. RINGEL:  Could we get a spelling for the record,

8   Your Honor?

9            THE COURT:  Because I was thinking I was going to go

10  buy some for our jurors because I think none of them are from

11  here, and it would be a shame for them to come to the

12  Tenderloin every day and not enjoy those croissants.

13           MR. POLK:  Your Honor, there's one issue.  There's one

14  exhibit to move into evidence, that I introduced.  I don't

15  think there's objection from Chart.  It's Trial Exhibit 190.

16  It's the controller manual that I used with Mr. Cauthen, cited

17  in his report.

18           MR. DUFFY:  No objection, Your Honor.

19           THE COURT:  190 admitted.  Great.  All right.  Thank

20  you.

21      (Trial Exhibit 190 received in evidence.)

22           MR. DUFFY:  Thank you, Your Honor.

23      (Jury enters at 8:18 a.m.)

24           THE COURT:  Good morning, members of the jury.  You

25  may be seated.

PROCEEDINGS

1    Is Chart prepared to call your next witness?

2        **MR. LOTHSON:**  Yes, we are, Your Honor.  Chart calls

3    William Pickell, from Extron, by video.

4        We have the audio, but I don't know if the video screen is

5    on.  They're not on for any of the --

6        **THE COURT:**  For me either.

7        (Brief pause.)

8        **THE COURT:**  Members of the jury, less you worry, we

9    are finishing the evidence in the case today.

10       **JUROR:**  Yea.  That's good.

11   **WILLIAM PICKELL, DEFENDANT'S WITNESS, BY VIDEOTAPED TESTIMONY**

12       (Video played; not reported.)

13       **MR. LOTHSON:**  That concludes that.

14       **THE COURT:**  That concludes that testimony.

15       All right.  Is Chart prepared to call your next witness?

16       **MR. RINGEL:**  Yes, Your Honor.  Chart will call Hana

17   Lamb by video.

18    **HANA ACOSTA, DEFENDANT'S WITNESS, BY VIDEOTAPED TESTIMONY**

19       (Video played; not reported.)

20       **THE COURT:**  Does that conclude the testimony?

21       **MR. RINGEL:**  Your Honor, that concluded the testimony.

22   I want to list the deposition exhibits that were referenced

23   with the corresponding trial exhibits for the jury.

24       **THE COURT:**  All right.  So in that testimony you heard

25   exhibit numbers.  Those numbers are different for trial

PROCEEDINGS

1    exhibits.

2        So you can go ahead.

3        **MR. RINGEL:**  Deposition Exhibit 216 is Trial Exhibit

4    423.  Deposition Exhibit 217 is Trial Exhibit 422.  Deposition

5    Exhibit 211 is Trial Exhibit 415.  Deposition Exhibit 372 is

6    Trial Exhibit 144.

7        And, Your Honor, we'd like to move 144 into evidence,

8    which is the only one that's not been previously entered into

9    evidence.

10       **THE COURT:**  Any objection?  No.  Okay.  144 admitted.

11       (Trial Exhibit 144 received in evidence.)

12       **THE COURT:**  Do you have another witness?

13       **MR. DUFFY:**  No, Your Honor.  We believe the jury has

14   heard enough of Chart's defense.  The Defense rests.

15       (Defense rests.)

16       **THE COURT:**  Thank you.

17       And the plaintiffs do not have any rebuttal.

18       Members of the jury, that concludes the evidence in the

19   case.  What we're going to do now is take a 15-minute break.

20   When you return I'm going to read the jury instructions to you,

21   which I'm sorry, are long.  But you will get a copy of them.

22       Then what I'm going to do is I'm going to give you some

23   instructions to go back and choose your presiding juror and

24   talk about your schedule.

25       We'll resume tomorrow morning at 9:00 a.m. with closing

**JURY INSTRUCTIONS**

1  arguments.  So you're going to get a surprise break, shortened

2  day today.  And then we'll do closing arguments tomorrow, and

3  you can begin your deliberations tomorrow.

4      So we'll take a 15-minute break, and then I'll come back

5  and I'll read the jury instructions to you.

6      We're getting close, but I still need to tell you now to

7  please do not discuss the case yet.  We're getting close.

8  Tomorrow you'll be able to do that.

9      Okay.  Thank you.

10      (Jury out at 9:30 a.m.)

11          **THE COURT:**  All right.  Thank you.

12              (Recess taken at 9:31 a.m.)

13          (Proceedings resumed at 9:49 a.m.)

14              **JURY INSTRUCTIONS**

15      **THE COURT:**  So, members of the jury, I'm now going to

16  read you the jury instructions.  Some of them you will have

17  heard at the beginning of trial, but we give them to you again

18  because they will guide you during your deliberations.

19      Now that you have heard all of the evidence, it is my duty

20  to instruct you on the law that applies to this case.  A copy

21  of these instructions will be available in the jury room, or

22  copies, for you to consult if you find it necessary.

23      It is your duty to find the facts from all the evidence in

24  the case.  To those facts you will apply the law as I give it

25  to you.  You must follow the law as I give it to you, whether

1  you agree with it or not.  And you must not be influenced by

2  any personal likes or dislikes, opinions, prejudices, or

3  sympathy.  This means you must decide the case solely on the

4  evidence before you.  You will recall that you took at oath at

5  the beginning of this case to do so.

6      In following my instructions, you must follow all of them

7  and not single out some and ignore others; they are all equally

8  important.  Please do not read into these instructions or

9  anything that I may say or do or have said or done that I have

10 an opinion regarding the evidence or what your verdict should

11 be.

12     We all have feelings, assumptions, perceptions, fears, and

13 stereotypes about others.  Some biases we are aware of, and

14 others we might not be fully aware of, which is why they are

15 called implicit or unconscious biases.  No matter how unbiased

16 we think we are, our brains are hardwired to make unconscious

17 decisions.

18     We look at others and filter what they say through our own

19 personal experience and background.  Because we all do this, we

20 often see life and evaluate evidence in a way that tends to

21 favor people who are like ourselves, or who have had life

22 experiences like our own.  We can also have biases about people

23 like ourselves.  One common example is the automatic

24 association of male with career and female with family.  Bias

25 can affect our thoughts, how we remember what we see and hear,

1  whom we believe or disbelieve, and how we make important

2  decisions.

3      As jurors, you are being asked to make an important

4  decision in the case.  You must, one, take the time you need to

5  reflect carefully and thoughtfully about the evidence.

6      Two, think about why you are making the decision you are

7  making and examine it for bias.  Reconsider your first

8  impressions of the people and the evidence in this case.  If

9  the people involved in this case were from different

10  backgrounds, for example, richer or poorer, more or less

11  educated, older or younger, or of a different gender, gender

12  identity, race, religion, or sexual orientation, would you

13  still view them and the evidence the same way?

14      Three, listen to one another.  You must carefully evaluate

15  the evidence and resist and help each other resist any urge to

16  reach a verdict influenced by bias for or against any party or

17  witness.  Each of you have different backgrounds and will be

18  viewing this case in light of your own insights, assumptions

19  and biases.  Listening to different perspectives may help you

20  to better identify the possible effects these hidden biases may

21  have on decision-making.

22      And, four, resist jumping to conclusions based on personal

23  likes or dislikes, generalizations, gut feelings, prejudices,

24  sympathies, stereotypes, or unconscious biases.  The law

25  demands that you make a fair decision based solely on the

**JURY INSTRUCTIONS**

1  evidence, your individual evaluation of that evidence, your

2  reason and common sense, and these instructions.

3      The evidence you are to consider in deciding consists of

4  the sworn testimony of any exhibits, the exhibits that have

5  been admitted into evidence, any facts to which the lawyers

6  have agreed, and any facts that I have instructed you to accept

7  as proved.

8      In reaching your verdict, you may consider only the

9  testimony and exhibits received into evidence.  Certain things

10  are not evidence, and you may not consider them in deciding

11  what the facts are.  I will list them for you:

12      Arguments and statements by lawyers are not evidence.  The

13  lawyers are not witnesses.  What they have said in their

14  opening statements, will saying in their closing arguments and

15  at other times is intended to help you interpret the evidence,

16  but it is not evidence.  If the facts as you remember them

17  differ from the way the lawyers have stated them, your memory

18  of them controls.

19      Questions and objections by lawyers are not evidence.

20  Attorneys have a duty to their clients to object when they

21  believe a question is improper under the rules of evidence.

22  You should not be influenced by the objection or by the Court's

23  ruling on it.

24      Testimony that was excluded or stricken, or that you have

25  been instructed to disregard, is not evidence and must not be

1    considered.  In addition, some evidence -- that's fine.

2        Anything you may have seen or heard when the Court was not

3    in session is not evidence.  You are to decide the case solely

4    on the evidence received at the trial.

5        Evidence may be direct or circumstantial.  Direct evidence

6    is direct proof of a fact, such as testimony by a witness about

7    what that witness personally saw or heard or did.

8    Circumstantial evidence is proof of one or more facts from

9    which you could find another fact.  You should consider both

10   kinds of evidence.  The law makes no distinction between the

11   weight to be given to either direct or circumstantial evidence.

12       It is for you to decide how much weight to give any

13   evidence.  By way of example, if you were to wake up in the

14   morning and see the sidewalk is wet, you may find from that

15   fact that it rained during the night.  However, other evidence,

16   such as a turned on garden hose, may provide a different

17   explanation for the presence of water on the sidewalk.

18   Therefore, before you decide that a fact has been proven by

19   circumstantial evidence, you must consider all the evidence in

20   light of reason, experience, and common sense.

21       There are rules of evidence that control what can be

22   received into evidence.  When a lawyer asks a question or

23   offers an exhibit into evidence and a lawyer on the other side

24   thinks that it is not permitted by the rules of evidence, that

25   lawyer may have objected.  If I overruled the objection, the

1  question was answered or the exhibit received.  If I sustained

2  the objection, the question could not be answered, and the

3  exhibit could not be received.  Whenever I sustained an

4  objection to a question, you must ignore the question and must

5  not guess what the answer might have been.

6      The parties have agreed to certain facts which were read

7  to you.  You must treat these facts as having been proved.

8      A deposition is the sworn testimony of a witness taken

9  before trial.  The witness is placed under oath to tell the

10 truth, and lawyers for each party may ask questions.  The

11 questions and answers are recorded.  When a person is

12 unavailable to testify at trial, the deposition of that person

13 may be used at the trial.

14     The deposition of the following individuals were used at

15 trial:  Seth Adams.  Kyle Eubanks.  Brendon Wade.  Justin

16 Junnier.  Jeff Brooks.  Ramon Gonzalez.  Frank "Buzz" Bies.

17 Gregory Mueller.  Hana Lamb.  Buster Ingram.  And William

18 Pickell.

19     Insofar as possible, you should consider deposition

20 testimony presented to you in court in lieu of live testimony

21 in the same way as if the witness had been present to testify.

22     Evidence was presented to you in the form of answers to

23 one of the parties -- in the form of answers of one of the

24 parties to written interrogatories submitted by the other side.

25 These answers were given in writing and under oath before the

1    trial in response to questions that were submitted under

2    established court procedures.  You should consider the answers,

3    insofar as possible, in the same way as if they were made from

4    the witness stand.

5        Evidence was also presented to you in the form of

6    admissions to the truth of certain facts.  These admissions

7    were given in writing before the trial, in response to requests

8    that were submitted under established court procedures.  You

9    must treat these facts as having been proved.

10       Certain charts and summaries not admitted into evidence

11   have been shown to you in order to help explain the contents of

12   books, records, documents, or other evidence in the case.

13   Charts and summaries are only as good as the underlying

14   evidence that supports them.  You should, therefore, give them

15   only such weight as you think the underlying deserves.

16       Certain charts and summaries have been admitted into

17   evidence to illustrate information brought out in the trial.

18   Again, charts and summaries are only as good as the testimony

19   or other admitted evidence that supports them.  You should,

20   therefore, give them only such weight as you think the

21   underlying evidence deserves.

22       In deciding the facts in this case, you may have to decide

23   which testimony to believe and which testimony not to believe.

24   You may believe everything a witness says, or part of it, or

25   none of it.

**JURY INSTRUCTIONS**

1    In considering the testimony of any witness, you may take

2    into account:  The opportunity and ability of the witness to

3    see or hear or know the things testified to; the witness's

4    memory; the witness's manner while testifying; the witness's

5    interest in the outcome of the case, if any; the witness's bias

6    or prejudice, if any; whether other evidence contradicted the

7    witness's testimony; the reasonableness of the witness's

8    testimony in light of all the evidence; and any other factors

9    that bear on believability.

10   Sometimes a witness may say something that is not

11   consistent with something else he or she said.  Sometimes

12   different witnesses will give different versions of what

13   happened.  People often forget things or make mistakes in what

14   they remember.  Also, two people may see the same event but

15   remember it differently.  You may consider these differences,

16   but do not decide that testimony is untrue just because it

17   differs from other testimony.

18   However, if you decide that a witness has deliberately

19   testified untruthfully about something important, you may

20   choose not to believe anything that witness said.  On the other

21   hand, if you think the witness testified untruthfully about

22   some things but told the truth about others, you may accept the

23   part you think is true and ignore the rest.

24   The weight of the evidence as to a fact does not

25   necessarily depend on the number of witnesses who testify.

1   What is important is how believable the witnesses were and how

2   much weight you think their testimony deserves.

3        Experts may give opinions on those subjects in which they

4   have special skills, knowledge, experience, training or

5   education.  You should consider each expert opinion in evidence

6   and give it whatever weight it deserves.  Remember, you decide

7   all the facts.  If, in reaching an opinion, you find that an

8   expert relied on certain facts, and you decide that any of

9   those facts were not true, then you are free to disregard the

10  opinion.

11       The law allows expert witnesses to be asked questions that

12  are based on assumed facts.  These are sometimes called

13  "hypothetical questions."  In determining the weight to give to

14  the expert's opinion that is based on the assumed facts, you

15  should consider whether the assumed facts are true.

16       Plaintiffs Laura and Kevin Parsell, Chloe Poynton,

17  Rosalynn Enfield, and Adrienne Sletten each engaged with

18  Pacific Fertility Center to provide them with fertility

19  services.

20       Plaintiffs' eggs and embryos were stored in a cryogenic

21  tank, referred to as "Tank 4," which was designed and

22  manufactured by the defendant, Chart Inc.  Plaintiffs allege

23  that Tank 4 lost liquid nitrogen during an incident that

24  occurred the weekend of March 4th, 2018, damaging or destroying

25  their eggs and embryos.  Plaintiffs assert that the tank

1  malfunctioned because of a defect in the way it was designed or

2  manufactured by Chart, and that Chart negligently failed to

3  recall the tank's controller.

4      Chart denies plaintiffs' allegations and denies that

5  plaintiffs are entitled to an award of damages.  Chart contends

6  that Pacific Fertility Center's misuse of the tank and

7  controller caused the incident and any alleged damage to

8  plaintiffs' frozen eggs and embryos.  Plaintiffs claim that

9  they were harmed by a product manufactured by Chart that

10 contained a manufacturing defect or was defectively designed.

11     Claim Number 1:  Strict Liability - Manufacturing Defect.

12     Plaintiffs claim that Tank 4, an MVE 808 cryogenic tank,

13 contained a manufacturing defect.  To establish this claim,

14 plaintiffs must prove all of the following:

15     First, that Chart manufactured the tank;

16     Second, that the tank contained a manufacturing defect

17 when it left Chart's possession;

18     Third, that plaintiffs were harmed; and

19     Fourth, that the tank's defect was a substantial factor in

20 causing plaintiffs' harm.

21     The parties have stipulated that Chart manufactured the

22 tank, so you must find that the first element of the claim has

23 been proved.

24     A product contains a manufacturing defect if the product

25 differs from the manufacturer's design or specifications or

1  from other typical units of the same product line.

2      Claim 2:  Strict Liability - Design Defect - Consumer

3  Expectations Test.

4      Plaintiffs claim Tank 4's design was defective because the

5  tank did not perform as safely as an ordinary consumer would

6  have expected it to perform.  To establish this claim,

7  plaintiffs must prove all of the following:

8      First, that Chart manufactured the tank;

9      Second, that an ordinary consumer of the tank had

10  reasonable minimum safety expectations about the tank;

11      Third, that the tank did not perform as safely as an

12  ordinary user of cryogenic storage tanks would have expected it

13  to perform when used or misused in an intended or reasonable

14  foreseeable way;

15      Fourth, that plaintiffs were harmed;

16      And, fifth, that the tank's failure to perform safely was

17  a substantial factor in causing plaintiffs' harm.

18      An "ordinary consumer" means an ordinary user of the tank.

19      The parties have stipulated that Chart manufactured the

20  tank, so you must find that the first element of the claim has

21  been proved.

22      Claim 3:  Strict Liability - Design Defect - Rest-Benefit

23  Test.

24      Plaintiffs also claim that Tank 4's design caused harm to

25  them.  To establish this claim, plaintiffs must prove all of

1  the following:

2      First, that Chart manufactured the tank; second that

3  plaintiffs were harmed; and, third, that the tank's design was

4  a substantial factor in causing harm to plaintiffs.

5      If plaintiffs have proved these three facts, then your

6  decision on this claim must be for plaintiffs unless Chart

7  proves that the benefits of the tank's design outweigh the

8  risks of the design.  In deciding whether the benefits outweigh

9  the risks, you should consider the following:

10      The gravity of the potential harm resulting from the use

11  of the tank; the likelihood that this harm would occur; the

12  feasibility of an alternative safer design at the time of

13  manufacture; the cost of an alternative design; and the

14  disadvantages of an alternative design.

15      Again, the parties have stipulated that Chart manufactured

16  the tank, so you must find that the first element of this claim

17  has been proved.

18      Chart's Misuse or Modification Affirmative Defense.

19      Chart claims that it is not responsible for plaintiffs'

20  claimed harm because the MVE 808 cryogenic tank and the

21  TEC 3000 electronic controller, together referred to as the

22  "Product," were misused or modified after it left Chart's

23  possession.

24      To succeed on this affirmative defense, Chart must prove,

25  first, the Product was misused or modified after it left

1   Chart's possession; and, second, the misuse or modification was

2   so highly extraordinary that it was not reasonably forceable to

3   Chart and, therefore, should be considered as the sole cause of

4   plaintiffs' harm.

5        Plaintiffs' Claim 4:  Negligent Failure to Recall.

6        Plaintiffs claim that Chart was negligent because it

7   failed to recall or retrofit the TEC 3000 electronic controller

8   installed on Tank 4.  To establish this claim, plaintiffs must

9   prove all of the following:

10       First, that Chart sold the TEC 3000 electronic controller;

11       Second, that Chart knew or reasonably should have known

12   that the controller was dangerous or was likely to be dangerous

13   when used in a reasonably forceable manner;

14       Third, that Chart became aware of this defect after the

15   controller was sold;

16       Fourth, that Chart failed to recall or retrofit the

17   controller;

18       Five, that a reasonable seller under the same or similar

19   circumstances would have recalled or retrofitted the

20   controller;

21       Six, that plaintiffs were harmed; and

22       Seven, that Chart's failure to recall or retrofit the

23   controller was a substantial factor in causing plaintiffs'

24   harm.

25       The parties have stipulated that Chart sold the TEC 3000

1   electronic controller, so you must find that the first element

2   of the claim has been proved.

3        A substantial factor in causing harm is a factor that a

4   reasonable person would consider to have contributed to the

5   harm.  It must be more than a remote or trivial factor.  It

6   does not have to be the only cause of the harm.  Conduct is not

7   a substantial factor in causing harm if the same harm would

8   have occurred without that conduct.

9        A person or entity's conduct may combine with another

10  factor to cause harm.  If you find that Chart's conduct was a

11  substantial factor in causing plaintiffs' harm, then Chart is

12  responsible for the harm.  Chart cannot avoid responsibility

13  just because some other person, condition, or event was also a

14  substantial factor in causing plaintiffs' harm.

15       Chart claims that the negligence of Pacific Fertility

16  Center contributed to plaintiffs' harm.  To succeed on this

17  claim, Chart must prove both of the following by a

18  preponderance of the evidence:

19       First, that Pacific Fertility Center and its employees and

20  agents were negligence; and, second, that this negligence was a

21  substantial factor in causing plaintiffs' harm.

22       If you find that the members of Pacific Fertility Center

23  and its employees and agents was a substantial factor in

24  causing plaintiffs' harm, you must then decide how much

25  responsibility Pacific Fertility Center has by assigning

1    percentages of responsibility to Pacific Fertility Center and

2    to Chart on the verdict form.   The percentages must total

3    100 percent.

4        For purposes of these instructions, Pacific Fertility

5    Center's employees include employees of Pacific Fertility

6    Center, Pacific MSO, LLC and/or Prelude Fertility, Inc.

7        You will make separate findings of each plaintiffs' total

8    damages if any.   In determining an amount of damages, you

9    should not consider any entity's assigned percentage of

10   responsibility.

11       Negligence is the failure to use reasonable care to

12   prevent harm to oneself or to others.   Pacific Fertility Center

13   can be negligent by its employees or agents acting or by

14   failing to act.

15       Pacific Fertility Center was negligent if its employees or

16   agents did something that a reasonably careful person would not

17   do in the same situation or failed to do something that a

18   reasonably careful person would do in the same situation.   You

19   must decide how a reasonably careful person would have acted in

20   Pacific Fertility Center employees' situation.

21       Plaintiffs have the burden of proving their claims and

22   Chart has the burden of proving its affirmative defenses by a

23   preponderance of the evidence.

24       When a party has the burden of proving any claim or

25   affirmative defense by a preponderance of the evidence, it

1  means you must be persuaded by the evidence that the claim or

2  affirmative defense is more probably true than not true.

3      You should base your decision on all of the evidence,

4  regardless of which party presented it.

5      If you decide that plaintiff has proved any of the strict

6  liability claims against Chart, and that Chart has not proved

7  its misuse/modification affirmative defense, or you decide

8  plaintiffs have proved their negligent failure to

9  recall/retrofit claim, you must also decide how much money will

10 reasonably compensate plaintiffs for the harm.  This

11 compensation is called "damages."

12     The amount of damages must include an award for each item

13 of harm that was caused by Chart's conduct, even if the

14 particular harm could not have been anticipated.

15     Plaintiffs do not have to prove the exact amount of

16 damages that will provide reasonable compensation for the harm.

17 However, you must not speculate or guess in awarding damages.

18     The damages claimed by each plaintiff for the harmed

19 caused by Chart fall into two categories, called economic

20 damages and non-economic damages.  You will be asked on the

21 verdict form to state the two categories of damages separately

22 as to each plaintiff.

23     The following are the specific items of economic damages

24 claimed by plaintiffs:

25     Damage to eggs or embryos.  Plaintiffs' eggs and embryos

1    do not have an established market value, but plaintiffs may

2    establish their value through other available sources,

3    including the expense of obtaining and cryopreserving the eggs

4    and embryos; the time expended to obtain eggs and embryos; the

5    difficulty associated with obtaining the eggs and embryos; the

6    nature and character of the eggs and embryos; and the use for

7    which the eggs and embryos were intended.

8         No fixed standard exists for deciding the amount of these

9    damages; however, you must consider only the economic value of

10   the eggs and embryos, not their sentimental or emotional value.

11   You must use your judgment to decide a reasonable amount based

12   on the evidence and your common sense.

13        The following are the specific items of non-economic

14   damages claimed by each plaintiff:

15        Past and future mental suffering, inconvenience, grief,

16   anxiety, and emotional distress.

17        No fixed standard exists for deciding the amount of these

18   non-economic damages.  You must use your judgment to decide a

19   reasonable amount based on the evidence and your common sense.

20        To recover for future pain and suffering, each plaintiff

21   must prove that they are reasonably certain to suffer that

22   harm.  For future emotional distress, determine the amount in

23   current dollars paid at the time of judgment that will

24   compensate each plaintiff for future emotional distress.

25        Each plaintiff is not entitled to damages for any physical

1   or emotional condition that they had before Chart's conduct

2   occurred.  However, if a plaintiff had a physical or emotional

3   condition that was made worse by Chart's wrongful conduct, you

4   must award damages that will reasonably and fairly compensate

5   them for the effect on that condition.

6       Now, before you begin your deliberations -- and that will

7   occur tomorrow after closing arguments -- elect one member of

8   the jury as your presiding juror.  The presiding juror will

9   preside over the deliberations and serve as the spokesperson

10  for the jury in court.

11      You shall diligently strive to reach agreement with all of

12  the other jurors if you can do so.  Your verdict must be

13  unanimous as to each issue submitted to you.

14      And each of you must decide the case for yourself, but you

15  should do so only after you have considered all the evidence,

16  discussed it fully with all the other jurors and listened to

17  their views.

18      It is important that you attempt to reach a unanimous

19  verdict, but of course only if each of you can do so after

20  having made your own conscientious decision.  Do not be willing

21  to change your opinion if the discussion persuades you that you

22  should.  But do not come to a decision simply because other

23  jurors think it is right, or change an honest belief about the

24  weight and effect of the evidence simply to reach a verdict.

25      Now, I have just a handful more that I will read to you

**PROCEEDINGS**

1    tomorrow, after you hear the closing arguments.

2         What I'd like you to do now is go back to your jury

3    courtroom and select your presiding juror.  And then I would

4    like you to discuss your schedule because you now get to set

5    the schedule as opposed to the Court.  And in particular for

6    tomorrow, discuss how long you would like to stay tomorrow.

7         If you're going to stay past 1:30, we will order lunch for

8    you.  So we'll have lunch for you.  You won't have to bring it.

9    And you should also discuss on Thursday what your schedule

10   would be.  And that's just so all of you can plan, make your

11   plans accordingly.

12        So I'd like you to do that, and then you can text

13   Ms. Means.  She'll give you the instructions when you have

14   decided on your schedule.

15        Tomorrow we're going to commence right away with the

16   closing arguments.  We're going to start a little bit later,

17   just 9:00 a.m.  You're welcome to come here, though, and arrive

18   as early as you usually do because I know for traffic reasons

19   some of you may do so.  But the closing arguments will start

20   sharply at 9:00 a.m.

21        All right.  Thank you very much.  Ms. Means will bring you

22   to the jury room so you can discuss the schedule.

23             **JUROR：**  Thank you.

24        (Jury out at 10:17 a.m.)

25             **THE COURT:**  Okay.  So for the exhibits, the jury will

PROCEEDINGS

1   be given a computer and a USB device that you guys need to

2   figure out.  So that's what you're going to be doing today, or

3   shortly now, is get that USB.

4       And you can work with Ms. Means when she returns to make

5   sure we have agreement on all the exhibits that were admitted.

6   And then I know there's some things that we wanted to redact

7   from those exhibits.  So that's up to you all to make sure that

8   gets redacted and placed on the USB port so that when we are

9   here at 8:30 tomorrow morning -- Mr. Duffy, if you're late

10  that's okay; your colleagues can handle that -- but at 8:30 we

11  have the USB that we will give the jury so they can immediately

12  begin reviewing exhibits if they want to.

13          MS. ZEMAN:  Your Honor, is the intention that they

14  will get all of the exhibits electronically, or is that just

15  for the subset of materials that were Excel documents?

16          THE COURT:  No, the policy during these COVID times is

17  for all of it.

18          MS. ZEMAN:  Got it.

19          THE COURT:  Yeah, all of it.  I think, actually,

20  that's what they're used to in any way.

21          MS. ZEMAN:  Good.

22          THE COURT:  Yeah, it will be all of it.  They will

23  have a computer there, and they'll have all of it.

24      Okay.  Anything we need to discuss about closing

25  arguments?

**PROCEEDINGS**

1    I guess, how much time will you be reserving, do you

2  think, Ms. Sharp?  Or maybe it doesn't matter.  I'll leave that

3  up to you.  You have two hours total.  If you use your whole

4  two hours initially then you'll be out of luck.

5         **MS. SHARP:**  Understood.  Thank you, Your Honor.

6         **MR. DUFFY:**  Thanks, Your Honor.

7         **THE COURT:**  Okay.  Thank you.

8         **MR. DUFFY:**  Thank you.

9    (At 10:19 a.m. the proceedings were adjourned until

10  Wednesday, June 9, 2021, at 9:00 a.m.)

11                        - - - - -

12              **CERTIFICATE OF REPORTER**

13    I certify that the foregoing is a correct transcript

14  from the record of proceedings in the above-entitled matter.

15  DATE: Tuesday, June 8, 2021

16

17

18

19  _____

20    Katherine Powell Sullivan, CSR #5812, RMR, CRR
            U.S. Court Reporter

21

22

23

24

25