UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACIFIC FERTILITY CENTER LITIGATION | Case No. 18-cv-01586-JSC<br><br>**ORDER RE: PUNITIVE DAMAGES INSTRUCTION**<br><br>Re: Dkt. No. 846 |

At the charging conference on June 7, 2021, Chart objected to the proposed jury instruction regarding punitive damages. In particular, Chart argued that "there's been no evidence that an officer, director, or managing agent has been involved in anything having to do with the controller." (Tr. at 1747-48.) The Court requested briefing regarding this matter. The Court reviewed Plaintiffs' trial brief and the relevant legal authority, and prior to instructing the jury, orally ruled that no reasonable trier of fact could find by clear and convincing evidence that the alleged conduct constituting malice, oppression, or fraud was authorized by, known by, or committed by one or more Chart officers, directors, or managing agents, and therefore declined to give a punitive damages instruction. (Tr. 1787-1790.) This Order elaborates on the Court's oral ruling.

## DISCUSSION

Plaintiffs' punitive damages request arises out of their claim that Chart was negligent because it failed to recall or retrofit the TEC 3000 electronic controller installed on Tank 4. To hold Chart liable for punitive damages on this claim, the jury must be able to find by clear and convincing evidence that at least one of Chart's officers or managing agents authorized, approved, or ratified the company's offending conduct. Cal. Civ. Code § 3294(b); *Barton v. Alexander*

*Hamilton Life Ins. Co. of* America, 110 Cal.App.4th 1640, 1644 (2003) (holding that the clear and convincing standard applies to all of section 3294); *see also White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999) (stating that managing agents are "those employees who exercise substantial independent authority and judgment over decisions that ultimately determine corporate policy").

Plaintiffs' trial brief identifies three trial exhibits which they contend support such a finding: Trial Exhibits 200, 223, and 284. They contend that "[t]hese exhibits show in the years leading up to the Tank 4 incident, Chart's upper management had been kept informed about the SN=0 issue, the company's development of a retrofit capable of fixing the issue, and the ultimate decision to release that retrofit to market without informing customers that it was necessary to address a known defect in Chart's TEC-3000 controllers." (Dkt. No. 846 at 2.) While these exhibits indeed reference the "Chart hierarchy" and "upper management," they do not identify to whom they are referring. (Trial Ex. 284 at 290; Trial. Ex. 200 at 4552-53.) Nor did Plaintiffs identify trial testimony which supports their theory that an officer or managing agent was actually aware of the alleged controller issues or, at least, any testimony as to what the officer or managing agent was aware of. In particular, although Plaintiffs maintain that Frank Bies, the Vice President and General Manager of Chart's cryobiological business, was a Chart officer who was aware of the controller issue, they do not cite to portions of his deposition testimony which would support such knowledge and he was not copied on the emails at Trial Exhibits 200, 223, or 284.

Plaintiffs' argument that knowledge can be inferred from Chart's release of a retrofit kit for the TEC-3000 controllers is likewise unavailing. While Plaintiffs need not "produce a smoking memorandum signed by the CEO and Board of Directors," *Pizarro v. Nat'l Steel & Shipbuilding Co.*, No. 19-cv-08425-WHA, 2021 WL 1197467, at *4 (N.D. Cal. Mar. 30, 2021), the evidence must permit "a clear and convincing inference that within the corporate hierarchy authorized persons acted despicably in 'willful and conscious disregard of the rights or safety of others'" *Romo,* 99 Cal.App. 4th at 1141 (citing Civ. Code, § 3294). As Plaintiffs have not identified evidence that discusses what Chart's unidentified hierarchy was told about the controller issue and the need for a retrofit, no reasonable trier of fact could find by clear and convincing evidence that

the hierarchy acted in willful and conscious disregard of the rights and safety of others. The trial exhibits highlighted by Plaintiffs reference potential future discussions with management, but the record is silent as to whether those discussions happened and thus is silent as to what information was conveyed to the hierarchy.  At best the retrofit and the emails support a finding by a preponderance of the evidence that some communications occurred; absent evidence as to the substance of the communications they do not satisfy the clear and convincing evidence required for the imposition of punitive damages.

Finally, Plaintiffs argue that Josep Fernandez and Ramon Gonzalez are managing agents. Mr. Fernandez was a managing director at Chart and Mr. Gonzalez was a Cryobio product manager.  There is no evidence, however, to support Mr. Fernandez's knowledge of the issue—let alone his authorization, approval, or ratification of Chart's allegedly offending conduct.  Plaintiffs point to no trial testimony to that effect and the only reference to Mr. Fernandez in the identified exhibits is Brendon Wade's statement in an email to Jim Gibson that "[m]aybe you can mention this to Josep/Ramon/Buzz" in reference to the controller issue.  (Tr. Ex. 223.)  Plaintiffs have pointed to no evidence that it was actually raised with Mr. Fernandez.

With respect to Mr. Gonzalez, Plaintiffs contend that because he was above Mr. Wade and Justin Junnier in the Chart hierarchy, and he participated in the email chains at Trial Exhibits 200 and 284, he is a managing agent. A plaintiff

> may satisfy the "managing agent" requirement . . . through evidence showing the information in the possession of the corporation and the structure of management decisionmaking that permits an inference that the information in fact moved upward to a point where corporate policy was formulated. These inferences cannot be based merely on speculation, but they may be established by circumstantial evidence, in accordance with ordinary standards of proof.

*Romo v. Ford Motor Co.*, 99 Cal.App. 4th 1115, 1141 (2002), voided and remanded on other grounds, 538 U.S. 1028 (2003).   "The key inquiry [for purposes of the managing agent question] concerns the employee's authority to *change* or *establish* corporate policy." *CRST, Inc. v. Superior Ct.*, 11 Cal. App. 5th 1255, 1273 (2017), as modified (June 19, 2017) (emphasis added).

That Mr. Gonzalez was above Mr. Wade and Mr. Junnier in the company hierarchy does not demonstrate that he is a managing agent with the authority to change or establish corporate

policy, and in fact, the emails themselves suggest otherwise. In Trial Exhibit 200, Daphne Maddox, a quality analyst with Chart's BioMedical Division, is seeking additional information from Mr. Gonzalez so that she can pass it on to "upper management." (Tr. Ex. 200 at CHART004553.) Similarly, in Trial Exhibit 284 Mr. Gonzalez seeks additional information so that he can pass it on to "Chart hierarchy." (Tr. Ex. 284 at EXTRON-000290.) Neither of these emails support an inference that he formulated corporate policy; indeed, Plaintiffs do not identify any evidence that suggests Mr. Gonzalez had any input or even influence on whether there would or should be a retrofit or recall of the controller. *See Coll. Hosp. Inc. v. Superior Ct*., 8 Cal. 4th 704, 723 (1994), as modified (Nov. 23, 1994) ("The obvious point is that in performing, ratifying, or approving the malicious conduct, the agent must be acting as the organization's representative, not in some other capacity.") At best, these emails support an inference that Mr. Gonzalez's role was to provide information to those formulating company policy.

For the reasons stated above, the Court concludes that Plaintiffs have failed to demonstrate that substantial evidence supports an inference that a Chart officer or managing agent authorized, ratified, or approved of the Chart's offending conduct with respect to the controller. As a result, the Court declined to give an instruction regarding punitive damages to the jury.

**IT IS SO ORDERED.**

Dated: June 17, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge