John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**ZENERE COWDEN & STODDARD APC**
2005 De La Cruz Blvd., Suite 240
Santa Clara, California 95050
Office: (408) 430-3551
mcowden@zcslawfirm.com
astoddard@zcslawfirm.com

*Counsel for Defendant Chart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br><br>No. 3:20-cv-05047 (A.J. and N.J.)<br>No. 3:20-cv-04978 (L.E. and L.F.)<br>No. 3:20-cv-05030 (M.C. and M.D.)<br>No. 3:20-cv-04996 (O.E.)<br>No. 3:20-cv-05041 (Y.C. and Y.D.) | Master Case No. 3:18-cv-01586-JSC<br><br>**DEFENDANT CHART INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:      November 4, 2021<br>Time:     9:00 a.m.<br><br>Judge:    Hon. Jacqueline Scott Corley<br>Place:     Courtroom F, 15th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS ....................................................................2

ARGUMENT ........................................................................................................................3

   I.   PLAINTIFFS CANNOT ESTABLISH THE ELEMENTS OF COLLATERAL
       ESTOPPEL. .............................................................................................................3

       A.  Under California's collateral estoppel standard, which governs this diversity
          case, a judgment has no collateral estoppel effect while it is subject to appeal. ...........4

       B.  Separate issues are involved in proving each individual case ......................................6

       C.  Chart did not have a full and fair opportunity to litigate the verdict .............................9

       D.  Non-mutual offensive collateral estoppel is a recipe for judicial inefficiency ...........11

   II.  BELLWETHER TRIALS ARE NOT BINDING ..............................................................12

CONCLUSION.....................................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acevedo-Garcia v. Monroig,*
    351 F.3d 547 (1st Cir. 2003) ............................................................. 11

*Barron v. Martin- Marietta Corp.,*
    868 F. Supp. 1203 (N.D. Cal. 1994) ..................................................... 6

*Brahmana v. Lembo,*
    2010 WL 290490 (N.D. Cal. 2010) ...................................................... 6

*Butcher v. Truck Insurance Exchange,*
    77 Cal. App. 4th 1442 (2000) ............................................................... 4

*Butler v. Eaton,*
    141 U.S. 240 (1891) ........................................................................... 12

*Campbell v. S. Pac. Co.,*
    22 Cal. 3d 51 (1978) ............................................................................ 7

*Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.,*
    62 Cal. App. 5th 88 (2021) ................................................................... 5

*Daewoo Elecs. Am. Inc. v. Opta Corp.,*
    875 F.3d 1241 (9th Cir. 2017) .............................................................. 4

*Deviner v. Electrolux Motor, AB,*
    844 F.2d 769 (11th Cir.1988) ............................................................... 8

*Dodge v. Cotter Corp.,*
    203 F.3d 1190 (10th Cir. 2000) .......................................................... 13

*Dunson v. Cordis Corp.,*
    854 F.3d 551 (9th Cir. 2017) ........................................................ 13, 14

*Eichman v. Fotomat Corp.,*
    759 F.2d 1434 (9th Cir. 1985) .............................................................. 6

*Goodson v. McDonough Power Equip., Inc.,*
    443 N.E. 2d 978 (Ohio 1983) ............................................................ n.5

*Guaranty Trust Co. v. York,*
    326 U.S. 99 (1945) ............................................................................... 5

ii

*Gustafson v. U.S. Bank N.A.*,
    618 F. App'x 921 (9th Cir. 2015) ...................................................................4

*Hart v. Am. Airlines, Inc.*,
    61 Misc. 2d 41 (N.Y. Sup. Ct. 1969) .............................................................10

*In re Air Crash at Detroit Metro. Airport*,
    776 F. Supp. 316 (E.D. Mich. 1991) .............................................................10

*In re Hanford Nuclear Reservation Litigation*,
    497 F.3d 1005 Prod. Liab. Rep. (CCH) P 17808 (9th Cir. 2007) ...................13

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999) ...........................................................................13

*Jacobs v. CBS Broadcasting Inc.*,
    291 F.3d 1173 (9th Cir. 2002) ......................................................................n.1

*Leuzinger v. County of Lake*,
    253 F.R.D. 469 (N.D. Cal. 2008) ..................................................................n.2

*Lucido v. Superior Ct.*,
    51 Cal. 3d 335 (1990) .....................................................................................1

*Montana v. U. S.*,
    440 U.S. 147 (1979) ........................................................................................9

*Navarov v. Caldwell*,
    161 Cal.App.2d 762 (2d Dist. Cal. 1958) ........................................................6

*Neev v. Alcon Labs., Inc.*,
    No. SACV1500336JVSJCGX, 2016 WL 9051170 (C.D. Cal. Dec. 22, 2016)...............11

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ...............................................................................3, 4, 13

*People v. Burns*,
    198 Cal. App. 4th 726 (2011) ..........................................................................5

*Riverside County Transportation Com. v. Southern California Gas Co.*,
    54 Cal. App. 5th 823 (2020) ............................................................................5

*Rodgers v. Sargent Controls & Aerospace*,
    136 Cal. App. 4th 82 (2006). ...........................................................................9

iii

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) ........................................................................1,3

*Schneider v. Lockheed Aircraft Corp.*,
    658 F.2d 835 (D.C. Cir. 1981) ........................................................................7, 8

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ........................................................................4, 5, n.1

*Silvia v. EA Technical Services Inc.*,
    2018 WL 3093454 (N.D. Cal.) ........................................................................n.1

*Williams Enters., Inc. v. Sherman R. Smoot Co.*,
    938 F.2d 230 (D.C. Cir. 1991) ........................................................................8

*Younger v. Jensen*,
    26 Cal.3d 397 (1980) ........................................................................ n.1

**RULES**

Fed. R. Civ. P.

    50 ........................................................................6

    59 ........................................................................6

Fed. R. Evid.

    404 ........................................................................9, 10

Fed. R. App. P.

    4 ........................................................................6

Cal. Civ. Proc. Code

    1049 ........................................................................4, 5, n.2

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Plaintiffs and their counsels' attempt to apply offensive, non-mutual collateral estoppel to bind Chart to the jury's findings in the first bellwether trial is a dramatic and unfair shift from their position in support of class certification that the parties "get a redo of every bellwether." This change is also without merit and should be rejected.

In a diversity case that involves the application of state law, the state's collateral estoppel rules apply.  For each of the issues on which they seek collateral estoppel, Plaintiffs must establish as a matter of law: (1) the issue sought to be precluded from re-litigation must be identical to that decided in a former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1131-32 (9th Cir. 2019) (*quoting Lucido v. Superior Ct.*, 51 Cal. 3d 335 (1990)). Failure to meet even one of the foregoing elements means Plaintiffs' motion must be denied.

Under California law, a judgment does not have collateral estoppel effect while it is still subject to reversal on appeal.  The judgment in the first trial is still subject to appeal, and therefore is not binding. Plaintiffs' collateral estoppel argument also fails as issues of causation and damages necessarily involve individual-specific inquiries not previously decided during the first bellwether trial.

While Plaintiffs failed to satisfy all of the elements of estoppel, they cannot prevail on their Motion for additional reasons.  Supreme Court and Ninth Circuit precedent make clear that courts should not apply collateral estoppel, even when all elements are satisfied, when doing so would be inconsistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Rodriguez*, 930 F.3d at 1131-32.  The use of a judgment currently on appeal to prevent Chart from presenting a defense to the product liability theories brought by new plaintiffs in a second bellwether trial is contrary to each of these bedrock principals of due process that are

1

1   cornerstones of our legal system.  Collateral estoppel also does not promote judicial efficiency.  If

2   the Ninth Circuit concludes there were errors in the first bellwether trial, collateral estoppel would

3   incorporate those same errors into the second trial, necessitating reversal as well.

4          Finally, bellwether trials are not binding in later cases absent an agreement by the parties

5   that they will have such binding effect.  No such agreement exists here.

6          Plaintiffs have not and cannot demonstrate the existence of a final decision on the merits,

7   that the issues are identical, or that application of the doctrine is equitable. Accordingly, Plaintiffs'

8   request for partial summary judgment must be denied.

9                          <u>**SUPPLEMENTAL STATEMENT OF FACTS**</u>

10          On March 4, 2018, Dr. Joseph Conaghan, the lab director at Pacific Fertility Center (PFC),

11   discovered that one of PFC's cryogenic freezers, a Chart, Inc. model MVE 808 used to store

12   cryopreserved eggs and embryos (Tank 4), allegedly had insufficient liquid nitrogen and unsafely

13   high temperatures.  This litigation arises out of claims brought by individuals whose eggs and

14   embryos were stored in Tank 4 at the time of the incident. The Plaintiffs first sought class

15   certification of their claims, which this Court denied. (Order, Jun. 23, 2020, ECF No. 473). In

16   denying class certification, this Court acknowledged that certification would not promote judicial

17   economy, because "much of the evidence presented in the general causation trial would have to be

18   presented again in the individual trials on the" specific causation question and punitive damages

19   question. (*Id.* at 10:20-27).

20          The first bellwether trial proceeded on the claims of the five named Plaintiffs, who were at

21   one time putative class representatives. The parties agreed to a structure and schedule for the

22   remaining cases to be tried in groups of five with each trial involving only Plaintiffs with either

23   eggs or embryos in Tank 4. (Order Approving Joint Stipulation at 1:7-13, Dec. 7, 2020, ECF No.

24   620). The second bellwether trial – to which this opposition relates - involves five embryo

25   plaintiffs: three selected by Chart and two selected by Plaintiffs. (Order at 1:4-5, Jan. 20, 2021,

26   ECF No. 659).

27          The first trial concluded in June 2021. The jury returned a verdict against Chart and this

28   Court subsequently entered Judgment on the verdict. (Judgment, Aug. 13, 2021, ECF No. 901).

Shortly thereafter, Chart posted an appeal bond signifying its intent to appeal the Judgment. (Order Approving Bond, Sept. 10, 2021, ECF No. 935). Chart also moved for a new trial and filed a renewed Motion for Judgment as a Matter of Law, which remain pending and undetermined. (Def.'s Mot. New Trial, Sept. 10, 2021, ECF No. 937; Def.'s Mot. J. Matter of Law, Sept. 10, 2021, ECF No. 936). These pending motions are incorporated by reference herein under Fed. R. Civ. P. 10(c).

Chart seeks a new trial based on erroneous evidentiary rulings, attorney misconduct, and excessive damages. (*Id.*) The erroneous evidentiary ruling argument is based, in part, on the Court's exclusion of Dr. Miller's exemplar testing. (*Id.*) The attorney misconduct argument pertains to inappropriate and calculated statements made by counsel for Plaintiffs throughout the trial. (*Id.*) Most egregious were counsel's statements in rebuttal closing, which violated two court orders at a time where counsel for Chart had no opportunity to respond. (Trial Tr. Vol. 12 at 1945:21-24, Jun. 9, 2021, ECF No. 859).

## ARGUMENT

## I.   PLAINTIFFS CANNOT ESTABLISH THE ELEMENTS OF COLLATERAL ESTOPPEL.

Plaintiffs must establish as a matter of law and fact each of the five above-mentioned elements of collateral estoppel *and* that application of issue preclusion will preserve integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation. *Rodriguez*, 930 F.3d at 1131-32. Where, as here, a party fails to establish even a single element of collateral estoppel, preclusion is not proper. *Id.*

The United States Supreme Court has recognized that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," and "may be unfair to a defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979).  For these reasons, district courts have broad discretion as to when and whether to apply offensive collateral estoppel. *Id*. at 331. The discretion is rooted in the Supreme Court's recognition that offensive, non-mutual collateral estoppel - where one verdict binds the defendant in perpetuity yet leaves new plaintiffs free to pursue claims lost by other plaintiffs - poses a grave danger of unfairness to

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

defendants. *Id.*at 329-31.   Where "the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id*.

**A.  Under California's collateral estoppel standard, which governs this diversity case, a judgment has no collateral estoppel effect while it is subject to appeal.**

The parties agree that, because this Court is exercising diversity jurisdiction, California collateral estoppel rules apply. (Pls.' Mot. at 8:9-10)(*citing Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246-7 (9th Cir. 2017)). While federal law applies to determine the preclusive effect of a prior federal judgment that resolves a federal question (*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-8 (2001)), in cases of federal diversity jurisdiction where the case is resolved under state law, the result is different: the law of the state in which the court is sitting applies. *Daewoo*, 875 F.3d at 1247 ("federal common law requires that we determine the preclusive effect of the prior decision by reference to the law of the state where the rendering federal diversity court sits. Because we must determine the preclusive effect of the judgment in the guaranty action, rendered by the United States District Court for the District of New Jersey sitting with diversity jurisdiction, *Semtek* mandates that we turn to New Jersey state preclusion law."); *Gustafson v. U.S. Bank N.A.,* 618 F. App'x 921, 922 (9th Cir. 2015) ("Contrary to the district court's analysis, however, we apply state law, not federal law, to determine the effect of the prior dismissal in this diversity case."); *see also Butcher v. Truck Insurance Exchange*, 77 Cal. App. 4th 1442 (2000) (finality of judgments in prior federal diversity judgments should be determined by Cal. Civ. Proc. Code § 1049).

The cases cited by Plaintiffs are not instructive as they either directly involved a judgment entered under federal question jurisdiction or relied on Ninth Circuit precedent analyzing judgments under federal question jurisdiction.[1] (Pls.' Mot. at 12:5-11). Plaintiffs cite no binding

---

[1] *Silvia v. EA Technical Services Inc*., 2018 WL 3093454 (N.D. Cal.) is distinguishable as it involved application of claim preclusion, not issue preclusion, to prevent a plaintiff from pursuing claims in state court. The *Silvia* decision does not analyze *Semtek*, but instead relies on *Jacobs v. CBS Broadcasting Inc.,* 291 F.3d 1173, 1177 (9th Cir. 2002). In *Jacobs,* which was decided a year after the Supreme Court's *Semtek* decision but did not cite *Semtek*, the Ninth Circuit assumed, without deciding, that "[u]nder California law, the preclusive effect of a prior federal judgment is a matter governed by federal law. *Younger v. Jensen*, 26 Cal.3d 397 (1980)." *Younger* involved

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

precedent to support their position that federal law should govern the offensive collateral estoppel effect of a diversity judgment decided under state law.

Conversely, in *Semtek*, the Supreme Court held that, when district courts enter judgments in cases involving diversity jurisdiction and issues of state law, the federal common law rules require application of state law to decide the claim or issue preclusion effect of the judgment. *Semtek Int'l Inc.*, 531 U.S. at 508. By requiring application of state preclusion law, the Court in *Semtek* stressed that the jurisdictional limitations of the Rules Enabling Act and bedrock principles of federalism in *Erie Railroad v. Tompkins* outweigh concerns about predictability and efficient adjudication. *Id.* at 508-09. "Any other rule would produce the sort of 'forum-shopping ... and ... inequitable administration of the laws' that *Erie* seeks to avoid, [citation omitted] since filing in, or removing to, federal court would be encouraged by the divergent effects that the litigants would anticipate." *Id.* at 509 (*citing Guaranty Trust Co. v. York*, 326 U.S. 99, 109-110 (1945)).

Because this Court is exercising diversity jurisdiction in a case that involves state law claims, California law on collateral estoppel and the finality of judgments applies. Under California law, a judgment is not final for purposes of collateral estoppel during the pendency of, and until the resolution of, an appeal. Cal. Civ. Proc. Code §1049[2]; *Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.*, 62 Cal. App. 5th 88, 103 (2021) ("An adjudication is not final 'if an appeal is pending or could still be taken.'"); *Riverside County Transportation Com. v. Southern California Gas Co.*, 54 Cal. App. 5th 823, 838 (2020); *People v. Burns*, 198 Cal. App.

---

the preclusive effect of a federal judgment that involved federal issues, and the California Supreme Court's conclusion that federal collateral estoppel rules applied in that context is consistent with *Semtek*. (*See id.* at 507 ["no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case, yet we have long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes."]). However, as noted above, *Semtek* goes on to hold that when a federal case is a diversity case that raises only *state* law questions, "the state court [is] obliged to give to Federal judgments only the force and effect it gives to state court judgments within its own jurisdiction." *Semtek*, 531 U.S. at 507.

[2] *Leuzinger v. County of Lake*, 253 F.R.D. 469 (N.D. Cal. 2008) discusses Cal. Civ. Proc. Code § 1049; however, it does not analyze whether state law should apply to determine the collateral estoppel effect of a federal diversity judgment nor does it consider the decision in *Semtek*. The *Leuziner* court exercised federal question jurisdiction, not diversity jurisdiction.

1  4th 726, 731 (2011)("the judgment is not final and preclusive if it is still subject to direct attack");

2  *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985).

3        The judgment in the first bellwether trial is not final under California law because it is still

4  subject to appeal. Rule 4 of the Federal Rules of Appellate Procedure provides that if a party files

5  motions for judgment under Rule 50(b), or for a new trial under Rule 59, then "the time to file an

6  appeal runs for all parties from the entry of the order disposing of the last such remaining motion."

7  Fed. R. App. P. 4. On September 10, 2021, Chart filed a Motion for New Trial and a renewed Rule

8  50(b) Motion for Judgment. (Def.'s Mots., *supra*). Both motions remain pending. Accordingly,

9  the time for appeal has not passed. Indeed, the deadline to file an appeal will not even begin to run

10 until after disposition of Chart's post-trial motions. *See Eichman*, 759 F.2d at 1439; Fed. R. App.

11 P. 4. Because the judgment is not final, Plaintiffs are not entitled to invoke the collateral estoppel

12 doctrine.

13        **B.  Separate issues are involved in proving each individual case.**

14        Plaintiffs' Motion also fails on the first element: the issues decided in the first bellwether

15 trial are not identical to those to be decided in subsequent trials. For each of the claims they assert

16 against Chart, Plaintiffs must prove that Chart's conduct in connection with the Tank 4 incident

17 actually caused each individual's harm. In other words, they must prove that, as a result of Chart's

18 conduct, Plaintiffs' eggs and embryos have been damaged such that they have lost the opportunity

19 for a successful future pregnancy and birth. They must also show that their alleged emotional

20 distress was proximately caused by Chart's alleged wrong, rather than by the distress that is

21 normally associated with the IVF process. *Brahmana v. Lembo*, 2010 WL 290490, at *2 (N.D.

22 Cal. 2010) (quotation omitted); *see also Barron v. Martin- Marietta Corp.*, 868 F. Supp. 1203,

23 1211-12 (N.D. Cal. 1994) (recovery of emotional distress damages requires a "verifiable causal

24 nexus" between the actual injury and the emotional distress). Further, each plaintiff also needs to

25 overcome Chart's defenses of preexisting conditions, failure to mitigate, and contributory

26 negligence. *Navarov v. Caldwell*, 161 Cal.App.2d 762, 772 (2d Dist. Cal. 1958) (judgment for

27 plaintiff is not res judicata as to issues of contributory negligence in a subsequent action growing

28

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

out of the same accident by a different plaintiff against the same defendant); se*e also Campbell v. S. Pac. Co.*, 22 Cal. 3d 51, 56 (1978).[3]

These causation requirements are not determinable by a single trial. The probability of producing a viable child from biological material stored in Tank 4 varies for each Plaintiff. Additionally, Chart's defenses demand an individual-specific inquiry focused on personal circumstances, such as a Plaintiff's age, family, relationship status, whether they forewent medical evaluation and follow-up egg retrievals, and other highly individualized factors. Thus, the proximate cause analysis conducted in the first trial will necessarily differ from proximate cause analysis in future proceedings. This Court previously rejected Plaintiffs' request for class certification of an "issues class" for this reason, finding that it would not advance resolution as a myriad of issues would still be left for case-by-case adjudication. (Order at 10:18-19, ECF No. 473). Without identity of issues between parties, issue preclusion is improper as a matter of law.

The airplane cases cited by Plaintiffs are distinguishable. (Pls. Mot. at 17:16-21). In those cases, proximate cause was undeniable - there was no question that an airplane crash caused all of the damages and injuries, i.e., the deaths of the passengers. However, the same is not true for Plaintiffs' injuries. Each Plaintiff's stored biological material has distinct chances of viability. That biological material, prior to any decrease in temperature in the chamber, may not have been capable of leading to a viable child. Conversely, some or all of the Plaintiff's biological material may still be capable of leading to a viable child. Not only does this mean there is not the identity between prior Plaintiffs and the present Plaintiffs seeking to assert non-mutual offensive issue preclusion, but it also points to why application of issue preclusion would not further judicial economy.

*Schneider v. Lockheed Aircraft Corp*. is instructive. In that case, nearly 150 plaintiffs brought individual personal injury actions alleging claims for a neurological development disorder

---

[3] Whether and how contributory negligence ultimately unfolds at trial is not dispositive at this stage. But because Plaintiffs seek to apply a preclusive doctrine as a matter of law, their failure to even attempt to establish that there is no genuine dispute of material facts on contributory negligence for each of the individual Plaintiffs, should preclude summary judgment in their favor under Fed. R. Civ. P. 56.

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

following a plane crash. 658 F.2d 835, 837 (D.C. Cir. 1981), *abrogated on other grounds by Williams Enters., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230 (D.C. Cir. 1991). The same jury tried the first three bellwether trials and found that the forces generated by the accident could cause minimal brain dysfunction or aggravate preexisting injuries. *Id.* The trial court precluded defendant from re-litigating this causation finding in the remaining 147 actions. *Id.* at n.15. To promote judicial efficiency, the court also barred defendant from presenting evidence of the forces generated by the crash to show that the injuries of any particular plaintiff were not caused by the crash. *Id.* However, the court allowed defendant to present evidence showing that such injuries resulted from other events, provided defendant gave advanced notice of their intent to do so. *Id.* If the defendant provided such notice, the plaintiff could rebut it, but only using evidence received in the prior trials.[4] *Id.*

The D.C. Circuit reversed and ordered new trials, finding that preclusion was not proper because "whether an accident caused particular injuries to 150 separate persons," raises "distinct factual issues" as to each individual plaintiff. *Id.* at 852. In reversing the application of collateral estoppel, the court found that "although the circumstances of the accident are fixed from case to case, the likelihood that the accident caused each particular set of symptoms could vary." *Id.*; *see also Deviner v. Electrolux Motor, AB,* 844 F.2d 769, 774 (11th Cir.1988) (stating that doctrine of collateral estoppel should not be extended indiscriminately to tort cases where the factual circumstances differ and multiple variables have to be considered in each case). Applying the elements of collateral estoppel, the court concluded that the district court denied defendant its day in court on issues that had not been adjudicated.[5] *Id.*

---

[4] Chart submits that the inevitable level of micromanagement by the court in presenting evidence to the jury that is sure to result from parsing issues and proofs because of estoppel is not only inefficient, it is a recipe for error on appeal.

[5] The complexity of the science and technical issues underlying the Plaintiffs' product liability theories regarding, for example, cryogenics and metallurgy also militate against application of the doctrine here. *See, e.g.*, *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 988 (Ohio 1983) ("The danger [in applying offensive, non-mutual collateral estoppel] is multiplied in cases such as this one where the issue determined in the first litigation relates to a product's design. This is due to the nature of the questions and the potentially broad impact of their resolution. These questions are very technical, requiring expert testimony to bring out the specifics. Also, a jury's

8

Similarly here, the elements necessary for application of offensive collateral estoppel have not been met. The likelihood that the tank incident proximately caused each Plaintiff's injuries varies and was not litigated in the first bellwether trial. Additionally, PFC was found to be a causal factor in Plaintiffs' damages in the first trial and the underlying facts of PFC's handling of the tank remain in dispute. Therefore, the issues at future trials are not identical and Plaintiffs cannot satisfy the first element of issue preclusion.

### C.  Chart did not have a full and fair opportunity to litigate the verdict.

In addition, California law does not support application of issue preclusion where a party was not afforded a full and fair opportunity to litigate the issues. *Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82, 90 (2006).  "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. U. S.*, 440 U.S. 147 (1979).

Counsel for Plaintiffs' misconduct during the first bellwether trial impeded Chart's ability to fully and *fairly* litigate the issues.[6] Throughout the trial, Plaintiffs' counsel exploited the Court's pre-trial rulings to gain an unfair advantage against Chart. From opening statements to closing argument, counsel repeatedly drew improper attention to the fact that Chart's witnesses were not present in the courtroom - a flagrant violation of the Court's ruling that Chart personnel could not present live testimony. (Tr. of Proceedings at 4:23–5:3, May 18, 2021, ECF No. 810; Plt. Mot. in Lim. No. 8, Apr. 15, 2021, ECF No. 753). Plaintiffs' counsel also violated the *in limine* ruling excluding Dr. Miller's testing (Order at 12-13, ECF No. 724). Indeed, counsel intentionally waited until rebuttal closing argument to do so, leaving Chart no opportunity to address the jury again or attempt to mitigate the damage. (*Id.* at 1940:25–1941:2).

---

ultimate determination requires delicate balancing between the design decisions actually made by the manufacturer and those which are postulated as feasible within the industry at any given point in time. Thus, the determination made by a jury in any particular case will ofttimes not be free from doubt.").

[6] Chart's pending Motion for New Trial addresses the allegations of misconduct in further detail. (Def.'s Mot. New Trial, ECF No. 937).

9

After flaunting the Court's pre-trial orders, Plaintiffs now double down on their lawyers' misconduct and ask the Court to give it a cascading effect at all future trials. In doing so, Plaintiffs urge the Court to use the Judgment – procured at least in part by trial lawyer misconduct – as the basis to foreclose Chart from defending itself in future cases. Plaintiffs' counsel repeatedly violated in limine rulings to inflame the jury's passions, distorting the trial process and the verdict. Collectively, counsels' improper statements subverted the proceedings from beginning to end. Such behavior undermined the fairness of the trial.

At least one commentator has identified the very danger now presented to this Court:

> The dangers of issue preclusion are as apparent as its virtues. The central danger lies in the simple but devastating fact that the first litigated determination of an issue may be wrong. The risk of error runs far beyond the proposition that most matters in civil litigation are determined according to the preponderance of the evidence. The decisional process itself is not fully rational, at least if rationality is defined in terms of the formally stated substantive rules. Considerations of sympathy, prejudice, distaste for the substantive rules, and even ignorance or incapacity may control the outcome. Trial tactics are consciously adapted to these concerns, but efforts to reduce the irrationality may fail or backfire and efforts to exploit it may succeed.

18 Wright, Miller & Cooper, Federal Practice & Procedure 142, §4416.

In addition, the erroneous exclusion of evidence, including Dr. Miller's exemplar testing, further impeded Chart's ability to fairly litigate the issues in the first trial.[7] Indeed, whether that exemplar testing, enhanced by Dr. Miller's additional disclosures discussing further tests, passes Daubert scrutiny, is at issue in the present cases.

Moreover, Plaintiffs' arguments as to the breakdown of time spent on various issues are inapt. Regardless of the amount of time devoted to each issue, counsel's misconduct tainted Chart's opportunity for a fair trial and preclusion is not proper. The case law relied on by Plaintiffs to establish judicial efficacy - *Hart v. Am. Airlines, Inc.,* 61 Misc. 2d 41 (N.Y. Sup. Ct. 1969) and *In re Air Crash at Detroit Metro. Airport*, 776 F. Supp. 316 (E.D. Mich. 1991) – is likewise inapposite. (Pls.' Mot. at 17:16-21). Fairness of trial was undisputed in both cases. Chart did not

---

[7] Chart's pending Motion for New Trial addresses the erroneous exclusion of evidence in further detail. (Def.'s Mot., ECF No. 937).

have a full and fair opportunity to defend itself given the misconduct and erroneous exclusion of evidence. Fairness requires that the Judgment not be given preclusive effect.

### D. Non-mutual offensive collateral estoppel is a recipe for judicial inefficiency.

Plaintiffs further claim that, if collateral estoppel applies, it will minimize repetitive litigation. (Pls.' Mot. at 13:20-21). But, the substantial overlap of evidence contradicts this. Collateral estoppel should not be applied when "doing so would promote neither uniformity nor judicial efficiency" and where "the issues will be re-litigated regardless of whether the Court applies collateral estoppel." *Neev v. Alcon Labs., Inc.*, No. SACV1500336JVSJCGX, 2016 WL 9051170, at *13 (C.D. Cal. Dec. 22, 2016). Even with mass torts featuring a single catastrophic event, "the need to re-litigate individual issues that overlap the common issues provide a special reason to deny preclusion." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4465.3 (3d ed.)*; see also Acevedo-Garcia v. Monroig*, 351 F.3d 547, 572–577 (1st Cir. 2003). Here, applying collateral estoppel would not appreciably reduce evidence that will need to be introduced in upcoming trials.

*Acevedo* is on point. It involved an action brought by eighty-two plaintiffs claiming the city fired them for their political affiliation. *Acevedo*, 351 F.3d at 553. The cases were severed into four separate actions - three groups of twenty and one group of twenty-two plaintiffs. *Id.* At the end of the first trial, the judge precluded the defendant from re-litigating three designated issues, but determined that the issue of political discrimination was unique to each plaintiff and would be litigated accordingly. *Id.* at 554. The appellate court reversed, explaining, "where even one issue of liability must be made available to defendants in the second trial, granting preclusive effect to the other issues may not result in efficiency gains because litigation of the 'live' issue may require introduction of some of the same evidence pertinent to the estopped issues." *Id.* at 572–577 (*quoting* Wright, Miller & Cooper § 4465.3). Thus, saving little trial time. *Id.*

The same is true here. Plaintiffs seek preclusion on several issues of general causation (Pls.' Mot. at 7:26-8:8), but specific causation and individual damages predominate the case. (Hr'g Tr. 14:5-8, Feb. 27, 2020, ECF No. 427). Indeed, this Court previously found that class certification

of general causation issues would not promote judicial economy and efficiency for multiple reasons:

> First, much of the evidence presented in the general causation trial would have to be presented again in the individual trials on the specific causation question. Given the evidence as to earlier incidents and circumstances that could have harmed the reproductive material, the individual trial juries will have to hear testimony as to how the tank works, how the material is properly stored, what happens when the temperature rises, and the like— duplicating the evidence presented to the first jury.

> Second, much of the evidence presented in the general causation trial would have to be presented again in the individual trials on the punitive damages question. To determine whether Chart's conduct warrants punitive damages, and how much, the individual trial juries will hear evidence as to what Chart knew and when and what it failed to do, as well as evidence of the defect and what it could cause. All of this evidence will be presented in the general causation trial.

(Order at 10:20-11:9, ECF No. 473).

Because the same evidence presented during the general causation stage will necessarily be presented on specific causation and punitive damages, if the court allows the punitive damages claim to proceed, collateral estoppel will not reduce the length of future trials by any meaningful amount. Thus, the doctrine does not promote judicial efficiency. If anything, the opposite is true: collateral estoppel raises substantial difficulties where, as here, a trial court judgment operates as collateral estoppel while an appeal is pending. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4433 (3d ed.). A legal quagmire will result if a second judgment based upon the preclusive effects of the first judgment cannot stand because the first judgment is reversed. *Id.* (*citing Butler v. Eaton*, 141 U.S. 240, 244 (1891)). "This result should always be avoided." *Id.*

## II.   BELLWETHER TRIALS ARE NOT BINDING.

Even if, *arguendo*, all elements of issue preclusion are met, that is still not enough to apply non-mutual offensive collateral estoppel. Appellate courts are, rightfully, skeptical of using bellwether trials to formally bind related claimants. Indeed, several circuits, including the Ninth Circuit, have recognized that the results of bellwether trials are not properly binding on related

claimants unless those claimants expressly agree to be bound by the bellwether proceedings. *See In re Hanford Nuclear Reservation Litig.,* 497 F.3d 1005, 1025 (9th Cir. 2007) ("We recognize that the results of the Hanford bellwether trial are not binding on the remaining plaintiffs."); *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1199 (10th Cir. 2000) ("[T]here is no indication in the record before us that the parties understood the first trial would decide specific issues to bind subsequent trials."); *In re TMI Litig.*, 193 F.3d 613, 725 (3d Cir. 1999). Absent an express indication otherwise, bellwether trials are presumed to not be binding on plaintiffs in the other cases, but instead should be used for informational purposes only. *Dunson v. Cordis Corp.*, 854 F.3d 551, 555 (9th Cir. 2017).

The United States Supreme Court has recognized that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," and "may be unfair to a defendant." *Parklane Hosiery Co.*, 439 U.S. at 329-30. For these reasons, district courts have broad discretion as to when and whether to apply offensive collateral estoppel. *Id.* at 331. The discretion is rooted in the Supreme Court's recognition that offensive, non-mutual collateral estoppel--where one verdict binds the defendant in perpetuity yet leaves new plaintiffs free to pursue claims lost by other plaintiffs--poses a grave danger of unfairness to defendants. *Id.* at 329-31. Where "the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.*

In an attempt to demonstrate judicial economy, Plaintiffs selectively quote *Dunson v. Cordis Corp*. for the proposition that "a bellwether trial might be binding on the defendant under ordinary principles of issue preclusion." (Pls. Mot. at 16:19-21). However, even if ordinary principles of issue preclusion are met (which they are not), the Ninth Circuit in *Dunson* repeatedly noted that, in the context of bellwether trials, preclusion is not proper without an express agreement to be bound. *Dunson*, 854 F.3d at 555. In fact, the entirety of the quote offered by Plaintiffs is: "[t]rue, a verdict favorable to the plaintiff in the bellwether trial might be binding on the defendant under ordinary principles of issue preclusion, *but that is not enough*." *Id.* (emphasis added).

CHART'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-CV-01586-JSC

The same is true here. Neither Plaintiffs nor Chart agreed to a binding first trial. Rather, the parties stipulated to consolidate the proceedings consistent with Rule 42(a) (Consolidation Order at 1:17-18, Sept. 15, 2020, ECF No. 554), which "has long been interpreted to allow for consolidation for pretrial purposes only." *Dunson*, 854 F.3d at 556.  That Plaintiffs even make this argument now cannot be reconciled with their earlier representations to the Court. Counsel for Plaintiffs previously acknowledged the non-binding effect of the bellwether process:

> You can use the preclusive findings from a class trial when you are bound as a class member; but in every other mass tort I'm involved in, *you get a redo of every bellwether*. The bellwethers guides the parties in what you can – it helps you with settlement and resolution, but in my experience, *any efforts to try to use as offensive issue preclusion, anything found in a bellwether trial, we failed.* I know we haven't been able to successfully do that.

(Hr'g Tr. at 31:7-18, Feb. 27, 2020, ECF No. 421)(emphasis added).

Thus, not only would application of preclusion be fundamentally unfair, but also unprecedented. Plaintiffs' Motion must be denied.

## **CONCLUSION**

For the foregoing reasons, Chart respectfully requests that this Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Dated: September 28, 2021

Respectfully submitted,
 /s/ *John J. Duffy*
John J. Duffy (SB No. 6224834)
Kevin M. Ringel (SB No. 6308106)
Margaret C. Redshaw (SB No. 6327480)
**SWANSON, MARTIN & BELL, LLP**
330 N Wabash, Suite 3300
Chicago, Illinois 60611
Tel: (312) 321-9100; Fax: (312) 321-0990
jduffy@smbtrials.com
kringel@smbtrials.com
mredshaw@smbtrials.com

Marc G. Cowden (SB No. 169391)
Adam Stoddard (SB No. 272691)
**ZENERE COWDEN & STODDARD APC**
2005 De La Cruz Blvd., Suite 240

14

Santa Clara, California 95050
Office: (408) 430-3551
mcowden@zcslawfirm.com
astoddard@zcslawfirm.com

*Counsel for Defendant Chart Inc.*

15