Amy M. Zeman (State Bar No. 273100)
Geoffrey A. Munroe (State Bar No. 228590)
John E. Bicknell (State Bar No. 331154)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
amz@classlawgroup.com
gam@classlawgroup.com
jeb@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

*Plaintiffs' Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACIFIC FERTILITY CENTER LITIGATION<br><br><br>This Document Relates to:<br><br>No. 3:20-cv-05047 (A.J. and N.J.)<br>No. 3:20-cv-04978 (L.E. and L.F.)<br>No. 3:20-cv-05030 (M.C. and M.D.)<br>No. 3:20-cv-04996 (O.E.)<br>No. 3:20-cv-05041 (Y.C. and Y.D) | Master Case No. 3:18-cv-01586-JSC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUES RESOLVED IN THE PRIOR TRIAL**<br><br>Date: November 4, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Jacqueline S. Corley<br>Place: Courtroom F, 15th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... ii

ARGUMENT ..............................................................................................................2

    A.    Plaintiffs have established the elements of issue preclusion. ...................................2

        1.    Under California law, judgments entered by federal courts are considered final even if they remain subject to appeal........................................................2

        2.    The issues Plaintiffs seek to preclude Chart from relitigating are identical to issues adjudicated by the first jury. ...........................................................5

        3.    Chart had a full and fair opportunity to litigate the cause of the Tank 4 incident. ..............8

        4.    Limiting the scope of future trials will save time and resources. ...................................9

    B.    Bellwether trials are subject to the same principles of issue preclusion as any other trial. ......12

CONCLUSION............................................................................................................14

i

# TABLE OF AUTHORITIES

Cases                                                                                                        Page(s)

*Acevedo-Garcia v. Monroig*,
351 F.3d 547 (1st Cir. 2003) ..................................................................................................... 9

*Adams v. United States*,
No. CV 03-49-E-BLW, 2010 WL 4457452 (D. Idaho Oct. 29, 2010) ................................. 13

*Briggs v. Merck Sharp & Dohme*,
796 F.3d 1038 (9th Cir. 2015) ............................................................................................... 12

*Calhoun v. Franchise Tax Bd.*,
20 Cal.3d 881 (1978) ................................................................................................................. 4

*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ................................................................................................. 5

*Deposit Bank of Frankfort v. Bd. of Councilmen of City of Frankfort*,
191 U.S. 499 (1903) ................................................................................................................... 4

*DKN Holdings LLC v. Faerber*,
61 Cal. 4th 813 (2015) ............................................................................................................. 3

*Dunson v. Cordis Corp.*,
854 F.3d 551 (9th Cir. 2017) ........................................................................................... 12, 14

*F.E.V. v. City of Anaheim*,
15 Cal. App. 5th 462 (2017) ..................................................................................................... 4

*Grant Heilman Photography, Inc. v. McGraw-Hill Companies*,
No. CV 12-2061, 2016 WL 687176 (E.D. Pa. Feb. 19, 2016)............................................... 13

*In re Abbott Laboratories, Inc.*,
698 F.3d 568 (7th Cir. 2012) ................................................................................................. 14

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
No. CV 2:13-MD-2433, 2019 WL 6310731 (S.D. Ohio Nov. 25, 2019).................................. 9, 10, 12

*Jacobs v. CBS Broad., Inc.*,
291 F.3d 1173 (9th Cir. 2002) ................................................................................................. 4

*Joseph v. Am. Gen. Life Ins. Co.*,
495 F. Supp. 3d 953 (S.D. Cal. 2020)....................................................................................... 4

*Lucido v. Superior Ct.*,
51 Cal. 3d 335 (1990) ............................................................................................................... 6

*Miletak v. AT&T Servs., Inc.*,
    No. 17-CV-00767-EMC, 2017 WL 2617961 (N.D. Cal. June 16, 2017)................................4

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ........................................................................................8

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)................................................................................................8, 9

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) ........................................................................................6

*Roos v. Red*,
    130 Cal. App. 4th 870 (2005) ........................................................................................8

*Rutherford v. FIA Card Servs., N.A.*,
    No. CV1302934DDPMANX, 2013 WL 12204309 (C.D. Cal. Sept. 30, 2013)...................5

*Schneider v. Lockheed Aircraft Corp.*,
    658 F.2d 835 (D.C. Cir. 1981) ...................................................................................7, 8

*Semtek International Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001)...........................................................................................3, 4, 5

*Silvia v. EA Technical Services, Inc.*,
    No. 15-CV-04677-JSC, 2018 WL 3093454 (N.D. Cal. June 22, 2018) ..........................3, 5

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ........................................................................................4

*Younger v. Jensen*,
    26 Cal.3d 397 (1980) ........................................................................................4

Statutes

Cal. Code Civ. Proc. § 1049 ........................................................................................3

Other Authorities

18A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4465.3 (3d ed.) .........9, 12, 13

Restatement (Second) of Judgments § 28 (1982) ........................................................9

1

**INTRODUCTION**

2       In opposing Plaintiffs' motion for issue preclusion, Chart argues that bellwether trials are not

3 subject to ordinary principles of issue preclusion and that Plaintiffs' counsel previously agreed as much

4 during a hearing on class certification. In fact, Plaintiffs' counsel agreed with the Court that if their lead

5 plaintiffs prevailed at trial, "that could be issue preclusion." (2/27/20 Tr. at 17:15-17, ECF No. 421.)

6 One of plaintiffs' former attorneys also noted her belief that a class trial would be preferable because

7 issue preclusion is not guaranteed. Her prior experience was with dispersed mass torts, which are less

8 likely to be afforded preclusive affect than single-event actions, like these matters. The Ninth Circuit

9 has affirmed on at least two occasions that bellwether trials are subject to ordinary rules of issue

10 preclusion, and several bellwether trials have been afforded preclusive effect to streamline future

11 proceedings and avoid inconsistent verdicts. After the class certification hearing, moreover, the Court

12 made clear to Chart that the first verdict had the potential to result in issue preclusion: "we do need to

13 resolve, once the first trial happens – at least assuming if there's a verdict against Chart – any issue

14 preclusion or issues or things like that." (9/24/20 Tr. at 16:22-24, ECF No. 566.)

15       At that time, Chart acknowledged that it might be precluded from relitigating some of the jury's

16 findings in the lead trial (*see id.* at 16:25), but it now contends otherwise and claims that none of the

17 requirements for issue preclusion have been met. Chart argues at length that the jury's special verdict is

18 not a final determination on the merits because Chart intends to file an appeal. But the Court has

19 previously held that judgments entered by federal courts are considered final under California law even

20 if they remain subject to appeal, and Chart's footnoted efforts to distinguish that case are unconvincing.

21 Chart next argues that issue preclusion is inappropriate because future trials will raise some plaintiff-

22 specific issues not decided in the first trial. But issue preclusion does not require complete identicality

23 of issues; it only requires that the issues sought to be precluded be the same as issues decided in a prior

24 proceeding. If Plaintiffs' motion is granted, Chart would still be entitled to argue whether and to what

25 extent the March 4th incident harmed each individual plaintiff. It would be barred only from relitigating

26 the cause of the March 4th incident—a threshold issue that occupied 75% of the first trial and was

27 definitively resolved by the jury's special verdict. Chart contends that special verdict was tainted

28 because it did not have a full and fair opportunity to litigate, but none of the circumstances the Supreme

1    Court has stated could potentially make issue preclusion unfair to a defendant are present here.

2           Chart also contends issue preclusion would not save time or otherwise promote judicial

3    economy. But the first trial showed that nearly 20-30 hours of trial time could be saved in each future

4    trial if the cause of the March 4th incident is not relitigated. A few hours of video deposition testimony

5    would be needed if punitive damages remain at issue, but Plaintiffs intend to maximize the efficiency to

6    be gained from issue preclusion in the event their motion is granted by working to streamline any

7    punitive damages presentation. With about thirty trials remaining, limiting each trial to primarily

8    plaintiff-specific issues would save a tremendous amount of time and allow these consolidated

9    proceedings to be fully adjudicated much faster and more efficiently. Even more importantly, it would

10   ensure that the proceedings are adjudicated consistently and in a manner that does not undermine public

11   confidence in the judicial system. Each plaintiff involved in this litigation had eggs or embryos stored

12   in the same cryogenic tank, referred to as Tank 4. Each plaintiff claims they were harmed by the same

13   catastrophic and highly publicized March 4th incident, when Tank 4 was discovered to have lost liquid

14   nitrogen. Some plaintiffs may recover more or less than others as a result of their individual

15   circumstances; that is to be expected and is consistent with a fair judicial process. But it would not be

16   just or sensible for the judicial system to first determine that Tank 4 failed because of a progressive

17   crack in one of its interior welds—only to later determine that Tank 4 failed because embryologists

18   neglected to fill it for weeks on end, triggering a spontaneous implosion. As a matter of logic and

19   fairness, the same tank failure should have the same cause. Granting Plaintiffs' motion for issue

20   preclusion will ensure that holds true here.

## ARGUMENT

**A.     Plaintiffs have established the elements of issue preclusion.**

> **1.     Under California law, judgments entered by federal courts are considered final even if they remain subject to appeal.**

25          Chart first argues that the requirements for issue preclusion have not been met because it intends

26   to appeal the judgment entered in the lead trial. (Opp. at 4-6, ECF No. 951.) The parties agree that

27   California law applies to diversity cases like this one, but they disagree on when California considers a

28   judgment to be final for purposes of issue preclusion. Chart contends that under California law,

judgments issued by a state court are not considered final if an appeal is pending or could still be taken. (Opp. at 5 (citing Cal. Code Civ. Proc. § 1049).) But as this Court observed in *Silvia v. EA Technical Services, Inc.*, California law treats judgments issued by a federal court differently: those judgments are considered final for purposes of issue preclusion even if an appeal could still be taken. *Silvia*, No. 15-CV-04677-JSC, 2018 WL 3093454, at *3 (N.D. Cal. June 22, 2018). "In other words, if this was a diversity case where the Court was reviewing a state trial court decision for claim and issue preclusion that was on appeal to a California appellate court, the judgment would *not* be final. But because the issue here is the finality of a *federal* trial court decision, the judgment is final for claim and issue preclusion purposes." *Id.* at *3.

Chart claims *Silvia* is distinguishable because it involved claim preclusion instead of issue preclusion. But the Court specifically noted that its reasoning applied for both "claim *and* issue preclusion purposes." *Silvia,* 2018 WL 3093454, at *3 (emphasis added). Both claim and issue preclusion include the same final judgment requirement; in fact, issue preclusion differs from claim preclusion in only two ways, neither of which are related to the final-judgment rule: issue preclusion precludes the relitigation of issues instead of claims, and issue preclusion can be raised by someone who was not a party in the first lawsuit. *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823–25 (2015). So it makes sense that the analysis of when a judgment becomes final would be the same for both claim preclusion and issue preclusion, and Chart has not cited any authority to the contrary. *See also Silvia*, 2018 WL 3093454, at *3 (relying principally on two Ninth Circuit cases, one involving claim preclusion and one involving issue preclusion).

Chart also contends *Silvia* is distinguishable because it did not analyze the U.S. Supreme Court's decision in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001). But *Semtek* simply held that when dismissal is entered by a federal court sitting in diversity, the preclusive effect of that dismissal is governed by the law of the forum state. *Id.* at 508. The *Silvia* decision began its analysis with that very principle: "Because this is a diversity case, California collateral estoppel rules apply." *Silvia* at *3. The *Semtek* decision did not, however, address the specific question of how California law treats judgments entered by a federal court, and so the Court was correct to turn to Ninth Circuit and California state law to reach its conclusion on that question. Chart suggests that *Semtek* held

that when a diversity case raises only state law questions, "the state court [is] obliged to give to Federal judgments only the force and effect it gives to state court judgments within its own jurisdiction." (Opp. at 5, n.1. (alteration by Chart).) But *Semtek* made no such holding: Chart excerpted a question, not a holding, and that question was posed in a case decided in 1903: "When is the state court obliged to give to Federal judgments only the force and effect it gives to state court judgments within its own jurisdiction?" *Semtek*, 531 U.S. at 507 (quoting *Deposit Bank of Frankfort v. Bd. of Councilmen of City of Frankfort*, 191 U.S. 499, 515 (1903)).

The *Semtek* court recognized that it was deciding afresh the issue of what law federal courts sitting in diversity should do when resolving questions of issue preclusion. *Id.* at 508. It concluded they should apply "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 508. The question raised by *Semtek* is thus the same question answered by *Silvia*: what law would California courts apply to a judgment issued by a California district court sitting in diversity? *Silvia* relied on two Ninth Circuit cases for the answer to that question. *Silvia* at *3. Both cases were decided after *Semtek* and both cases concluded—quoting California law—that a California state court would consider such a judgment final even if an appeal could still be taken. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006) ("[a] federal [district court] judgment is as final in California courts as it would be in federal courts" (quoting *Calhoun v. Franchise Tax Bd.*, 20 Cal.3d 881, 887 (1978))); *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002) ("A federal judgment has the same effect in the courts of this state as it would have in a federal court." (quoting *Younger v. Jensen*, 26 Cal.3d 397, 161 (1980))).

Several subsequent decisions in both California federal and California state courts have reached the same conclusion as *Silvia*, *Sosa*, and *Jacobs*: California law affords judgments entered by a federal court the same preclusive effect it would have under federal principles of finality. *See, e.g., Joseph v. Am. Gen. Life Ins. Co.*, 495 F. Supp. 3d 953, 958 (S.D. Cal. 2020), *aff'd*, No. 20-56213, 2021 WL 3754613 (9th Cir. Aug. 25, 2021) ("under California law, the res judicata effect of a prior federal court judgment is analyzed using federal standards"); *Miletak v. AT&T Servs., Inc.*, No. 17-CV-00767-EMC, 2017 WL 2617961, at *3 (N.D. Cal. June 16, 2017) ("California law ... determines the res judicata effect of a prior federal court judgment by applying federal standards."); *F.E.V. v. City of Anaheim*, 15

4

Cal. App. 5th 462, 467 (2017) ("A federal judgment 'has the same effect in the courts of this state as it would have in a federal court'"); *Rutherford v. FIA Card Servs., N.A.*, No. CV1302934DDPMANX, 2013 WL 12204309, at *3 (C.D. Cal. Sept. 30, 2013) ("Under California law, however, a federal judgment has the same preclusive effect in state court as it would in federal court.")

For the most part, the requirements for issue preclusion are the same under federal law as they are under California law. But in the few instances where they differ, such as on the finality of judgments still subject to appeal, California law looks to federal law if the judgment at issue was entered by a federal court. *See Silvia*, 2018 WL 3093454 at *3. Arguably, even if California law were otherwise, this Court could still consider its judgment final for purposes of issue preclusion. That is because, under *Semtek*, federal courts need not follow state law if it is incompatible with federal interests. *Semtek*, 531 U.S. at 509. And the Ninth Circuit has recognized that federal courts have a legitimate interest in affording their judgments with immediate preclusive effect, particularly when doing so will conserve judicial resources and avoid duplicative litigation in another forum. *See Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (district courts may enter final judgments under Rule 54(b) for purposes of securing res judicata effects). In this case, however, both federal law and California law agree that judgments entered by a federal court are final for purposes of claim and issue preclusion at the time of entry—even if appellate review remains possible—and so there is no need to resolve any conflict between federal and state interests.

## 2. The issues Plaintiffs seek to preclude Chart from relitigating are identical to issues adjudicated by the first jury.

Chart next contends that the issues decided in the lead trial are not identical to the issues to be decided in the remaining trials. (Opp. at 6-9.) In particular, Chart intends to challenge in subsequent trials whether each plaintiff's eggs or embryos were actually damaged as a result of the March 4th incident and whether each plaintiff suffered any emotional distress as a result of that damage. (*Id*. at 6.) Chart points out that the degree to which the March 4th incident caused each plaintiff harm will involve "an individual-specific inquiry focused on personal circumstances, such as a Plaintiff's age, family, relationship status, whether they forewent medical evaluation and follow-up egg retrievals, and other highly individualized factors." (*Id*. at 7.) It contends some plaintiffs' frozen tissue may never have been

capable of leading to a live birth even before the March 4th incident, whereas other plaintiffs' tissue might still be capable of producing a live birth even after the March 4th incident. (*Id.*)

Chart is correct that plaintiff-specific issues of causation and damages are not appropriate for issue preclusion, as those identical issues were not resolved in the lead trial. But Plaintiffs are not asking for issue preclusion on those issues. Plaintiffs are asking only that Chart be collaterally estopped from relitigating eight distinct issues that do not vary from plaintiff to plaintiff and so should not be relitigated anew during each individual trial:

1. Whether Tank 4 was misused or modified after it left Chart's possession;

2. Whether Tank 4 contained a manufacturing defect when it left Chart's possession;

3. Whether a manufacturing defect was a substantial factor in causing the March 4th incident;

4. Whether Tank 4 contained a design defect when it left Chart's possession;

5. Whether a design defect was a substantial factor in causing the March 4th incident;

6. Whether Chart negligently failed to recall or retrofit Tank 4's controller;

7. Whether the failure to recall or retrofit was a substantial factor in causing the March 4th incident; and

8. What percentage of responsibility Chart has for the March 4th incident.

Chart does not dispute that each of these eight issues are identical to issues that the jury in the lead case necessarily decided when it rendered its special verdict. Instead, Chart's argument assumes that every issue in each case needs to be identical before issue preclusion can be granted, and that because it intends to raise some issue unique to the named plaintiffs in subsequent trials, *none* of the jury's verdict in the first trial is entitled to preclusive effect. (*See* Opp. at 7 ("Without identity of issues between parties, issue preclusion is improper as a matter of law.") It is unable to cite any authority for that proposition, however, and case law confirms that only the "issue[s] sought to be precluded from relitigation" need to be identical to issues decided in a former proceeding. *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1131–32 (9th Cir. 2019) (quoting *Lucido v. Superior Ct.,* 51 Cal. 3d 335, 341 (1990)).

Here, the lead trial consisted of two distinct segments involving two distinct sets of witnesses: first, the jury to determined exactly what happened to Tank 4 on March 4, 2018, and who or what was responsible; and second, the jury assessed the individualized effects of the March 4th incident on the

named plaintiffs. Each of the eight issues that Plaintiffs are asking the Court to preclude Chart from relitigating involves only the first part of the trial: What happened to Tank 4 on March 4, 2018, and who or what was responsible. Chart will be free to litigate the effect the March 4th incident had on each individual plaintiff in subsequent trials, but it should not be permitted to relitigate what happened to Tank 4 at each trial as well. Tank 4 failed only once; as a matter of logic and to preserve public confidence in the judicial system, that single tank failure should have the same cause whenever a legal claim arising out of the same tank failure is adjudicated.

Plaintiffs previously likened the Tank 4 failure to plane crash cases, where courts have used issue preclusion to ensure that a single catastrophic event has only one cause in the eyes of the law. Chart points out that issue preclusion is not always warranted in air crash cases and analogizes this case to *Schneider v. Lockheed Aircraft Corp.*, where the D.C. Circuit Court of Appeals vacated the trial court's collateral estoppel order because the causation issues at play were not identical. *Schneider*, 658 F.2d 835, 852 (D.C. Cir. 1981). The issues sought to be relitigated in that case did not involve the cause of the airplane crash, however; they involved whether the crash was sufficient to cause a variety of symptoms in surviving children, which ranged from anxiety to psychomotor seizures. *Id.* The trial court's collateral estoppel order wrongly inferred that prior verdicts established the crash was sufficient to cause every form of neurological dysfunction alleged by surviving plaintiffs—whether or not that particular dysfunction was before the jury at the time. Although the Court of Appeals agreed the fate of other passengers would be probative, it disagreed that it was dispositive, and vacated the order. *Id.*

That is precisely why Plaintiffs are not seeking to collaterally estop Chart from challenging whether the March 4th incident injured every plaintiff who had tissue stored in Tank 4 when it failed: the fact that the first five named plaintiffs suffered injury as a result of the March 4th incident is probative of whether other plaintiffs suffered injury as well, but it is not dispositive. Consistent with *Schneider*, Chart will be free in subsequent trials to argue that certain plaintiffs with tissue stored in Tank 4 were not damaged at all by the March 4th incident due to their individual circumstances. But the *Schneider* court did not say that no issue preclusion was appropriate when a part of each plaintiffs' case raised individual issues. In fact, it went out of its way to stress that "[i]n vacating the [collateral estoppel order] here, we do not suggest that appropriate collateral estoppel orders cannot be framed in

these or other cases. Nor do we intend otherwise to discourage the district courts or the parties from simplifying the proof offered at trial." *Id.* at 853. In fact, the litigants themselves had agreed in *Schneider* to what Plaintiffs are asking for here: the manufacturer would not be permitted to contest that it caused the crash in each of the survivor's lawsuits. *See id.* at 840. It might well be true that a single catastrophic event is responsible for certain plaintiffs' alleged injuries but not others, but it does not make sense for the same event to have differing causes depending on who is suing. The issue of what caused a single catastrophic event is identical in all plaintiffs' cases and thus is a strong candidate for issue preclusion under *Schneider* as well as the air disaster cases previously cited by Plaintiffs.

**3.      Chart had a full and fair opportunity to litigate the cause of the Tank 4 incident.**

Chart next contends that it did not receive a full and fair opportunity to litigate the issues resolved by the jury's special verdict. (Opp. at 9-11.) It points to the issues it raised in its motion for a new trial: evidentiary rulings by the Court that Chart believes were erroneous and statements made by Plaintiffs' counsel that Chart believes constitute attorney misconduct. (*See* ECF No. 936.) In the course of ruling on Chart's new trial motion, the Court will necessarily address whether those rulings and statements rendered the trial unfair to Chart. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (new trial may be granted if the verdict was against the weight of the evidence, damages are excessive, or the trial was not fair to the moving party for other reasons). It therefore will not be necessary for the Court to do so for the first time here.

In the context of issue preclusion, courts typically do not evaluate whether evidentiary rulings or attorney misconduct rendered the preceding trial unfair—presumably because those matters are best addressed through a motion for new trial or other post-trial proceedings rather than through a collateral attack in a separate action. The United States Supreme Court has enunciated only three situations when offensive collateral estoppel may be unfair to a defendant: (i) when the first action was for small or nominal damages and the defendant had no incentive to vigorously litigate, particularly if future suits were not foreseeable; (ii) when the judgment relied upon for issue preclusion is inconsistent with one or more previous judgments in favor of the defendant; and (iii) when the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *see also Roos v. Red*, 130 Cal.

App. 4th 870, 880 (2005) (adopting *Parklane*'s analysis for purposes of determining whether a party has had a full and fair opportunity to litigate under California law).

Chart does not contend that any of those three situations are present here. As a result, Chart is considered to have had a full and fair opportunity to litigate and may permissibly be collaterally estopped from relitigating the same issues in future litigation. *Parklane*, 439 U.S. at 332-33; *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, No. CV 2:13-MD-2433, 2019 WL 6310731, at *27 (S.D. Ohio Nov. 25, 2019) (granting issue preclusion where "[n]one of these situations are even arguably present here"); *see also* Restatement (Second) of Judgments § 28 (1982) ("a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous").

### 4. Limiting the scope of future trials will save time and resources.

Chart further contends that issue preclusion would be a recipe for judicial inefficiency. (Opp. at 11-12.) It analogizes to a civil rights lawsuit brought by 83 municipal employees who alleged they were laid off due to their political affiliation. *Acevedo-Garcia v. Monroig*, 351 F.3d 547 (1st Cir. 2003). While the Court of Appeals recognized that "non-mutual collateral estoppel may well be a useful and appropriate trial management device in the second trial," and its ruling was "not intended to discourage its application," it found that the particular order before it would have wrongly precluded liability defenses that were not actually litigated in the first proceeding. *Id.* at 577. And once the Court of Appeals concluded that at least some liability defenses must be permitted in a second trial, it questioned whether the preclusion of any liability defenses was warranted. *Id.* As the court pointed out in remanding to the trial court to craft a new estoppel order, if much of the same evidence would have to be introduced anyway, little if any trial time would be spared. *Id.* (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper § 4465.3).[1]

Chart submits that is exactly what would happen here if the cause of the March 4th incident is

---

[1] Chart slightly misquotes Wright & Miller in its opposition, omitting the word "may" from the treatise's statement, which reads: "The need to relitigate individual issues that overlap the common issues *may* provide a special reason to deny preclusion." 18A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4465.3 (3d ed.) (emphasis added).

deemed decided for purpose of all future trials: little if any trial time would be spared. It cites the Court's order denying class certification, which surmised that much of the evidence presented in a general causation trial would have to be presented again during individual trials. (6/23/20 Order at 10:20-21, ECF No. 473.) But as the order explained, one reason for that supposition was that Chart had presented evidence of "earlier incidents and circumstances that could have harmed the reproductive material." (*Id.* at 10:21-25.) Chart abandoned that argument prior to the first trial—after Plaintiffs' (unrebutted) statistical analysis eliminated the possibility that previous low-level events in 2013 or 2014 could have been responsible for the poor outcomes seen in Tank 4 tissue following the March 4th incident. Chart's embryology expert now says that "the period of February 14, 2018 and March 4, 2018 … was the cause of any damage to the samples stored in Tank 4" (4/23/21 Centola Report at 4, ECF No. 908-8); when asked if Tank 4's liquid nitrogen levels ever dropped to zero before March 4, 2018, she answered, "That would be highly unlikely." (11/23/20 Centola Dep. at 246, ECF No. 630-10.) So it is no longer necessary, as the Court thought it might be, for Plaintiffs to combat issues of specific causation by presenting PFC witnesses to testify that Tank 4's liquid nitrogen level did not drop to zero at some point prior to the March 4th incident.

The Court's class certification order also posited that much of the evidence presented on general causation would have to be presented during individual trials on the question of punitive damages. (6/23/20 Order at 10:26-27.) At the time, Plaintiffs had alleged that Chart knew that the vacuum seals in its cryogenic tanks were defective and their claim for punitive damages was based in part on Chart's failure to recall the entire tank or warn PFC about the risk of defective seals. (*See* 2nd Am. Compl., ¶¶ 108-109, 193, 225-228, ECF No. 280.) Plaintiffs have since refined their theory of punitive damages to focus exclusively on Chart's failure to recall or retrofit the tank's controller. (*See* Jury Instruction No. 22, ECF No. 853; 3rd Am. Compl., ¶¶ 57-64, ECF No. 578-1.) Much of the punitive damages case was therefore presented through deposition testimony of Chart employees responsible for those controllers, and if presented again in a future trial, most if not all of the tank witnesses—such as the three expert witnesses who testified about the cause of the tank's interior crack and implosion—would not need to be called. Because eliminating issues of general liability would result in more streamlined proceedings, issue preclusion may be granted even if claims for punitive damages remain. *See In re E. I. du Pont de*

*Nemours & Co. C-8 Pers. Inj. Litig.,* 2019 WL 6310731 at *29. But Plaintiffs recognize that issue preclusion will result in even greater efficiency if primarily specific causation and individual damages need to be adjudicated in future trials, and therefore are prepared to further streamline their punitive damages case if their requests for issue preclusion are granted.

The lead trial demonstrated just how much time could be saved if the juries in future trials were asked only to determine if and to what extent the Tank 4 incident caused injury to the individual plaintiffs sitting before them. Those issues took less than 9 hours trial time and required testimony from only 9 witnesses (the plaintiffs themselves and four experts). Determining what happened to Tank 4 on March 4, 2018, in contrast, required nearly 30 hours and 19 witnesses to resolve. None of those 19 witnesses would need to testify in future trials if Plaintiffs' motion for issue preclusion is granted. That is perhaps the biggest difference from the class certification stage and now: at class certification, the Court could only predict the likely efficiencies to be gained from a class trial (based on imperfect information provided by parties who did not yet fully understand how their cases would be presented to a jury); now, the Court has seen the parties try both the general liability issues involved in the case and the plaintiff-specific issues and has concrete evidence that precluding the parties from re-litigating the cause of the March 4th incident will save a substantial amount of time, result in far fewer witnesses (including several third-party witnesses who would be pulled away from their work at the Pacific Fertility Center), and dramatically simplify the factual questions that each future jury would need to answer.

Chart also argues issue preclusion could create judicial inefficiency if the jury's verdict in the lead trial is overturned on appeal. (Opp. at 12.) But issue preclusion would actually mitigate the effects of any reversal. Limiting future trials to issues not covered in the first trial would mean less chance for the same or similar mistakes to recur in each subsequent trial. It would also mean that the general liability portions of each case could be addressed through a single appeal rather than multiple appeals, and any prejudicial error could be corrected through a single retrial rather than multiple retrials. Chart points to Wright & Miller's advice that "[t]his result should always be avoided," and suggests the treatise is recommending against granting issue preclusion while the initial judgment is still subject to appeal. (Opp. at 12.) But "the result" the treatise says should be avoided is allowing a "second

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
MASTER CASE NO. 3:18-cv-01586-JSC

1    judgment [to] become conclusive even though it rest[s] solely on a judgment that [is] later reversed."

2    18A Fed. Prac. & Proc. Juris. § 4433 (3d ed.) Wright & Miller otherwise recognizes that "[d]espite the

3    manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the

4    common claims, defenses, or issues is even worse." *Id.*

5    **B.   Bellwether trials are subject to the same principles of issue preclusion as any other trial.**

6         Chart's final argument is that bellwether trials are not binding. The lead trial in this consolidated

7    litigation was never formally designated as a bellwether trial: the Court's most recent consolidation

8    order refers to it as the consolidated action and subsequently filed cases as related cases. (9/15/20

9    Order, ECF No. 554.) But even if the lead trial is considered a bellwether trial, the Ninth Circuit has

10   affirmed on multiple occasions that bellwether trials can produce preclusive effects, just like any other

11   trial. *See Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) ("Ordinary principles

12   of collateral estoppel may apply in subsequent cases, but we agree with Judge Battaglia that a

13   bellwether trial is not, without more, a joint trial within the meaning of CAFA."); *Dunson v. Cordis

14   Corp.*, 854 F.3d 551, 555 (9th Cir. 2017) ("a verdict favorable to the plaintiff in the bellwether trial

15   might be binding on the *defendant* under ordinary principles of issue preclusion").

16        Chart accuses Plaintiffs of quoting misleadingly from the *Dunson* decision, and claims that the

17   Ninth Circuit actually said issue preclusion "is not enough" and that a bellwether is not binding unless

18   the parties agree otherwise. (Opp. at 13.) In fact, what the Ninth Circuit said was that ordinary

19   principles of issue preclusion are not enough to transform the bellwether into a joint trial within the

20   meaning of CAFA—just as it had held two years earlier in *Briggs*. *Dunson*, 854 F.3d at 555 (citing

21   *Briggs*, 795 F.3d at 1051). Without some indication from other plaintiffs that they are agreeing to be

22   bound by the result of a bellwether trial, as occurs when a joint trial of 100 or more plaintiffs is

23   proposed under CAFA, "the results will not be binding *on the plaintiffs* in the other cases." *Id.* But the

24   bellwether can still be binding on the *defendant*—who unlike those other plaintiffs was a party to the

25   bellwether trial and therefore subject to ordinary rules of issue preclusion. *Id.* Other jurisdictions agree

26   and have granted bellwether trials preclusive effect when doing so would streamline future trials and

27   avoid the possibility of inconsistent results. *See, e.g., In re E. I. du Pont de Nemours & Co. C-8 Pers.*

28

*Inj. Litig.,* 2019 WL 6310731, at *1*; Adams v. United States*, No. CV 03-49-E-BLW, 2010 WL 4457452, at *2-3 (D. Idaho Oct. 29, 2010).

In addition, a bellwether trial can be given preclusive effect even if the parties were not specifically informed of that possibility prior to trial. *See Grant Heilman Photography, Inc. v. McGraw-Hill Companies*, No. CV 12-2061, 2016 WL 687176, at *5 (E.D. Pa. Feb. 19, 2016) (disagreeing "that merely because an order was not entered specifically noting preclusive effect, that the first trial cannot have preclusive effect"). But in this instance, Chart was informed by the Court that the first trial may have preclusive effects on at least two separate occasions. During the class certification hearing, the Court repeatedly raised the possibility:

- "if your named Plaintiffs win, that could be offensive issue preclusion" (2/27/20 Tr. at 17:15-16.)
- "why wouldn't [other victims of the Tank 4 incident] also benefit just from using it for offensive issue preclusion" (*id.* at 18:12-13.)
- "why is [class certification] better than just [plaintiffs] getting to use it as offensive issue preclusion?" (*id.* at 30:5-6.)

Even Chart's prior counsel agreed that "[t]here are streamlining processes that we can use to make sure that … we are not trying the same issues over and over again." (*Id.* at 42:8-10.)

Chart points out that one of the attorneys who previously represented the putative class of Tank 4 victims noted that class certification was superior because issue preclusion was not guaranteed and that "in my experience, any efforts to try to use as offensive preclusion, anything found in a bellwether trial, we failed." (*Id.*at 31:15-17.) That particular attorney's prior experience was with "dispersed" mass events, such as the tobacco cases discussed at length during the hearing, which injure many people at different times and places. "Single-event" wrongs like the March 4th incident, which injure many people at the same time are different and more amenable to issue preclusion. *See* 18A Fed. Prac. & Proc. Juris. § 4465.3 (3d ed.) But simply pointing out that issue preclusion is not guaranteed does not mean, as Chart now suggests, that Plaintiffs took the position that a bellwether trial should not be granted preclusive effect. In fact, when the Court first raised the possibility of issue preclusion with one of the attorneys who continues to represent Plaintiffs in these consolidated proceedings, she responded,

13

"Well, I think that's right." (2/27/20 Tr. at 17:17.) And if any doubt remained whether the result of the first trial could produce preclusive effects in this case, the Court removed that uncertainty during a subsequent case management conference. The Court specifically advised Chart's current counsel that "we do need to resolve, once the first trial happens – at least assuming if there's a verdict against Chart – any issue preclusion or issues or things like that." (9/24/20 Tr. at 16:22-24.) Chart's counsel even acknowledged that issue preclusion was a possibility and suggested that a defense verdict should produce a similar preclusive effect. (*Id.* at 16:25.) And although issue preclusion would not have been available to Chart if the first trial had yielded a defense verdict, Chart surely would have moved to bind other plaintiffs under *Dunson*, which suggests other plaintiffs may be bound by a bellwether trial if—as Plaintiffs did here—they previously agreed to have their cases consolidated for trial purposes. *Dunson*, 854 F.3d at 554 (citing *In re Abbott Laboratories, Inc.*, 698 F.3d 568, 573 (7th Cir. 2012)); *see also* 9/14/20 Joint Stip. at 5, ¶ 2, ECF No. 552 (agreeing to consolidate for pretrial and trial purposes); 9/15/20 Order at 1, ¶ 2 (ordering both pretrial and trial proceedings consolidated).

## CONCLUSION

All parties in this litigation were well aware that the lead plaintiffs' trial would address the critical questions of what happened to Tank 4 on March 4, 2018, and who or what was responsible. The parties also knew the jury's findings could have effects in future trials concerning the same March 4th event and that the parties should allocate resources accordingly. The parties did just that and, following years of discovery on general liability issues and a three-week trial devoted primarily to those same issues, a jury definitively resolved what happened to Tank 4 on March 4, 2018, and concluded that Chart was 90% responsible. In the interest of streamlining future trials and maintaining public confidence in the judicial process, the cause of that March 4th incident should remain the same throughout these consolidated proceedings. Plaintiffs according request that the Court grant their motion and collaterally estop the parties from relitigating each designated issue concerning the March 4th incident during the upcoming trial.

Dated: October 14, 2021                    Respectfully submitted,

                                           By:    */s/ Amy M. Zeman*

14

Amy M. Zeman (State Bar No. 273100)
Geoffrey A. Munroe (State Bar No. 228590)
John E. Bicknell (State Bar No. 331154)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94162
Tel: (510) 350-9700
Fax: (510) 350-9701
amz@classlawgroup.com
gam@classlawgroup.com
jeb@classlawgroup.com

Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
apolk@girardsharp.com
ngliozzo@girardsharp.com

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR KANE &
CONWAY, LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@peifferwolf.com
tcowan@peifferwolf.com

*Plaintiffs' Counsel*

15