UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACIFIC FERTILITY CENTER LITIGATION<br><br>This Document Relates to:<br><br>No. 3:20-cv-05047 (A.J. and N.J.)<br>No. 3:20-cv-04978 (L.E. and L.F.)<br>No. 3:20-cv-05030 (M.C. and M.D.)<br>No. 3:20-cv-04996 (O.E.)<br>No. 3:20-cv-05041 (Y.C. and Y.D) | Case No.  18-cv-01586-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 908 |

Plaintiffs prevailed at trial on their product liability and failure to recall claims against Chart Industries and judgment was entered in their favor on August 13, 2021.  There are over 130 other consolidated related cases which are a part of the *In re: Pacific Fertility Litigation*.[1]  (Dkt. No. 554.[2])  The next five cases are set for trial January 31, 2022. (Dkt. No. 620.) As part of their pre-trial filings, these Plaintiffs have moved for partial summary judgment seeking to bar Chart from relitigating the cause of the underlying incident on the grounds that the jury's findings from the prior trial should be given preclusive effect.  (Dkt. No. 908.)  Having carefully considered the parties' briefs and the relevant legal authority, and having had the benefit of oral argument on November 4, 2021, the Court DENIES Plaintiffs' motion for partial summary judgment.  Plaintiffs have not shown as a matter of law that the jury's findings and the subsequent judgment are final for purposes of issue preclusion.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11, 19, 553, 615, 618, 893, 894, 919, 920, 934, 969, 981.)
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

**BACKGROUND**

Plaintiffs in *In re: Pacific Fertility Litigation* all obtained fertility services from Pacific Fertility Center (PFC)[3], and in particular, as relevant here, cryopreservation of their eggs and embryos. On March 4, 2018, PFC's laboratory director, Dr. Joseph Conaghan, discovered that Tank 4 which contained 2,500 embryos and 1,500 eggs—including Plaintiffs' eggs and embryos—had lost liquid nitrogen.

As a result of this incident, Plaintiffs A.B., C.D., E.F., G.H., and I.J. filed a putative class action against Chart alleging manufacturing and design defects, as well as negligent failure to recall.[4]  The Court denied class certification and Plaintiffs A.B., C.D., E.F., G.H., and I.J.'s claims proceeded to trial in May and June 2021.  (Dkt. Nos. 473, 819, 820, 823, 825, 831, 836, 839, 845, 848, 855, 857.)   On June 10, 2021, the jury returned a verdict in Plaintiffs' favor on all claims.  (Dkt. No. 858.)  On August 13, 2021, the Court granted Plaintiffs' motion for entry of judgment under Rule 54(b) and the Clerk entered judgment in their favor.  (Dkt. Nos. 901, 902.)  On November 8, 2021, the Court denied Chart's motion for a new trial and motion for judgment as a matter of law under Rule 50(b).  (Dkt. No. 995.)

The next set of Plaintiffs' claims—those of Plaintiffs A.J., N.J., L.E., L.F., M.C., M.D., O.E., Y.C., and Y.D (hereafter "Plaintiffs")—are set for trial on January 31, 2022.  In connection with that trial, the parties have filed motions for summary judgment and motions to exclude expert testimony.  (Dkt. Nos. 905, 906, 908, 910.)

**DISCUSSION**

Plaintiffs contend that certain factual issues were resolved at the jury trial of Plaintiffs A.B., C.D., E.F., G.H., and I.J.'s claims and that the jury's findings on these issues should be given preclusive effect under the doctrine of collateral estoppel, otherwise known as issue preclusion.[5]  In particular, Plaintiffs seek to preclude Chart from relitigating:

---

[3] The Court uses PFC throughout this Order to refer to Pacific Fertility Center and all its associated entities and medical professionals, including Prelude Fertility, Inc., and Pacific MSO, LLC

[4] The PFC entities were also named as defendants but the claims as to them have been compelled to arbitration.

[5] Under California law, "the doctrine of res judicata [traditionally] defines the preclusive effect of

(1) Whether Tank 4 was misused or modified after it left Chart's possession;

(2) Whether Tank 4 contained a manufacturing defect when it left Chart's possession;

(3) Whether a manufacturing defect was a substantial factor in causing the March 4th Incident;

(4) Whether Tank 4 contained a design defect when it left Chart's possession;

(5) Whether a design defect was a substantial factor in causing the March 4th incident;

(6) Whether Chart negligently failed to recall or retrofit Tank 4's controller;

(7) Whether the failure to recall or retrofit was a substantial factor in causing the March 4th incident;

(8) What percentage of responsibility Chart has for the March 4th incident.

(Dkt. No. 908 at 2.)

**A. Issue Preclusion**

Federal common law governs a federal court's determination of the preclusive effect of a federal judgment. *See Taylor v. Sturgell*, 553 U.S. 880 (2008). Under federal common law, what preclusion rule applies depends on whether the federal judgment is based upon federal question or diversity jurisdiction. *Id.* at 891 & n.4. If the judgment is based upon federal question jurisdiction, federal courts apply the uniform federal rules of preclusion. *Id.* at 891. If the judgment is based upon diversity jurisdiction, federal courts apply the law of the state where the "federal diversity court sits." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1247 (9th Cir. 2017); *see also Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) ("[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity"). That is, the "same claim-preclusive rule (the state rule) appl[ies] whether the dismissal has been ordered by a state or a federal court." *Semtek*, 531 U.S. at 508.

The Court's judgment to which Plaintiffs seek to apply issue preclusion is based upon diversity jurisdiction. (Dkt. No. 578-1 at ¶ 9.) Therefore, in deciding whether issue preclusion

---

a judgment in a prior proceeding in terms of both claim preclusion (at common law, merger and bar) and issue preclusion (collateral estoppel)." *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1507 n.5 (2008), as modified on denial of reh'g (Oct. 14, 2008) (internal citations omitted). The United States Supreme Court uses "the terms 'claim preclusion' and 'issue preclusion,' rather than 'res judicata' and 'collateral estoppel.'" *Id.* (citing *Taylor v. Sturgell*, 553 U.S. 880, 892, n.5 (2008).) The Court will use the term issue preclusion in this Order. Claim preclusion is not at issue.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    applies, the Court applies California preclusion law. *Taylor,* 553 U.S. at 891 n.4; *Semtek,* 531 U.S

2    at 508.  Under California law, issue preclusion applies where:

3                    (1) the issue sought to be precluded from relitigation must be identical
                     to that decided in a former proceeding;
4
                     (2) the issue to be precluded must have been actually litigated in the
5                    former proceeding;

6                    (3) the issue to be precluded must have been necessarily decided in
                     the former proceeding;
7
                     (4) the decision in the former proceeding must be final and on the
8                    merits;

9                    (5) the party against whom preclusion is sought must be the same as,
                     or in privity with, the party to the former proceeding; and
10
                     (6) application of issue preclusion must be consistent with the public
11                   policies of preservation of the integrity of the judicial system,
                     promotion of judicial economy, and protection of litigants from
12                   harassment by vexatious litigation.

13   *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1131–32 (9th Cir. 2019) (quoting *Lucido v.*

14   *Superior Court*, 51 Cal.3d 335, 341-43 (1990) (internal citation and quotation marks omitted)).

15   Plaintiffs contend that all requirements are met as a matter of law. Chart responds that issue

16   preclusion is improper because the judgment in the first trial is not final (Requirement No. 4), and

17   even apart from the lack of finality, it would be counter to the public policy of "preservation of the

18   integrity of the judicial system, promotion of judicial economy, and protection of litigants from

19   harassment by vexatious litigation" to give preclusive effect to the first jury's findings"

20   (Requirement No. 6).  (Dkt. No. 951 (quoting *Rodriguez*, 930 F.3d at 1131).

21          Under California preclusion law, a judgment is not final "while open to direct attack, e.g.,

22   by appeal." *See Abelson v. Nat'l Union Fire Ins. Co.,* 28 Cal. App. 4th 776, 787 (1994); *see also*

23   *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 928 (9th Cir. 2006) ("Under California law, ... a judgment

24   is not final for purposes of res judicata during the pendency of and until the resolution of an

25   appeal.") (internal citation omitted).  Here, it is undisputed that all appeals from the judgment have

26   not been exhausted and therefore under California law issue preclusion does not yet apply.  *See*

27   *Callahan v. Peopleconnect, Inc.*, 2021 WL 5050079, at *4 (N.D. Cal. Nov. 1, 2021) (California

28   federal court refusing to apply issue preclusion to California federal diversity jurisdiction

4

1  judgment because the judgment is on appeal and therefore not final for purposes of California law

2  of issue preclusion).  Summary judgment must therefore be denied.

3          Plaintiffs' insistence that in California the federal rule of finality for federal question

4  jurisdiction judgments applies to federal diversity jurisdiction judgments is unpersuasive.  Under

5  federal common law, a federal question jurisdiction judgment is final for preclusion purposes upon

6  the trial court's entry of final judgment.  *Sosa*, 437 F.3d at 927.  Thus, under the federal question

7  preclusion rule, the judgment entered by this Court would satisfy the finality requirement for the

8  application of issue preclusion.  But to apply the federal question judgment preclusion rule would

9  contradict the Supreme Court's holding that the preclusive effect of federal diversity jurisdiction

10  judgments be determined by state law, and, in particular, the Court's command that the "same

11  claim-preclusive rule (the state rule) appl[ies] whether the dismissal has been ordered by a state or

12  a federal court."  *Semtek*, 531 U.S. at 508.  Plaintiffs are asking this Court to apply a different

13  preclusive rule to a dismissal ordered by a state court than a dismissal ordered by a federal court

14  sitting in diversity.  *Semtek* rejects that approach.

15          Even if federal common law would adopt a state preclusion rule that applied a different

16  preclusion rule to a state court judgment than to a federal diversity jurisdiction judgment, Plaintiffs

17  have not shown that California law makes that distinction.  In *Hardy v. Am.'s Best Home Loans*,

18  232 Cal. App. 4th 795 (2014), for example, the California Court of Appeals considered whether to

19  give preclusive effect to a federal district court's dismissal of an action under Federal Rule of Civil

20  Procedure 41(b) for failure to prosecute.  The plaintiff argued that under California law collateral

21  estoppel does not apply because the dismissal of the federal action was not a final judgment on the

22  merits as under California law a dismissal for failure to prosecute is not a final judgment on the

23  merits.  *Id*. at 803. The court noted that "while the federal order dismissed both federal and state-

24  law claims, the claims asserted in this action involve only state claims" and thus likened "the

25  district court's dismissal of the state law claims [] to a federal court's dismissal in a diversity

26  action."  *Id*. at 806.  As a result, "under *Semtek*, the preclusive effect of the district court's

27  dismissal is determined under California law" and critically, "California law does not bar this

28  action because the federal action was not an adjudication on the merits."  *Id*.  Thus, the court

applied California preclusion law—not federal law—to determine the preclusive effect of what it characterized as a federal diversity judgment.

In support of its holding, *Hardy* relied on *Semtek*.

> While federal common law . . . governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity, the federal Supreme Court concluded there was no need to establish a uniform federal rule since *state*, not federal, substantive law was at issue, explaining: "And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court. This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits."

*Hardy*, 232 Cal. App. 4th at 805-06 (quoting *Semtek*, 531 U.S. at 508) (emphasis added).  The court then applied *Semtek* to conclude that California's rule regarding the effect of a dismissal for failure to prosecute applied.  *Hardy*, 232 Cal. App. 4th at 806.  *Hardy* thus contradicts Plaintiffs' contention that California law applies the federal law controlling the preclusive effect of federal question judgments to determine the preclusive effect of federal diversity judgments. *See also Nathanson v. Hecker*, 99 Cal. App. 4th 1158, 1163 (2002) ("California gives full faith and credit to a final order or judgment of a federal court by follow[ing] the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, *at least where the prior judgment was on the basis of federal question jurisdiction*.") (emphasis added) (internal citation and quotation marks omitted; alteration in original); *Butcher v. Truck Ins. Exch*., 77 Cal. App. 4th 1442, 1452 (2000) ("California follows the rule that the preclusive effect of a prior judgment of a federal court is determined by federal law, *at least where the prior judgment was on the basis of federal question jurisdiction*.") (emphasis added).

This approach is consistent with how other circuits have applied *Semtek* to diversity jurisdiction judgments.  *See, e.g*., *CSX Transportation, Inc. v. Gen. Mills, Inc*., 846 F.3d 1333, 1340 (11th Cir. 2017) (applying Georgia's claim preclusion rule because "federal common law borrows the state rule of [claim preclusion] to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction."); *Medina-Padilla v. U.S. Aviation Underwriters, Inc*., 815 F.3d 83, 86 (1st Cir. 2016) (applying Puerto Rico's preclusion rule,

1  including to the question of the finality of the federal diversity jurisdiction judgment).

2  It is thus unsurprising that Plaintiffs do not cite, and the Court has not located, any

3  California state court or Ninth Circuit case which applies federal preclusion rules to a federal

4  diversity jurisdiction judgment. *Sosa v. DIRECTV, Inc*., considered whether a state court

5  judgment barred a federal action which reached judgment after the state trial court judgment, but

6  before resolution of the state court appeal. 437 F.3d. at 927. Applying California preclusion law

7  to the state court judgment, the court held that the California judgment was not final for preclusion

8  purposes until the resolution of the appeal. *Id.* It then applied the federal preclusion rule to the

9  federal district court judgment and concluded that under the federal rule it was final upon the entry

10 of the district court judgment. *Id.* at 928. Because the federal judgment was final before the state

11 judgment, the state judgment did not bar the federal judgment. *Id.* The federal judgment, however,

12 was based on federal question jurisdiction which was why the federal rule of finality applied. *Id.*

13 at 927 (stating that the plaintiffs brought federal RICO claims). If the federal judgment had been

14 based on diversity jurisdiction, then California preclusion law would have applied. *Semtek*, 531

15 U.S. at 508-09. Thus, *Sosa* does not support Plaintiffs' contention that under California law the

16 federal rule of finality governs the preclusive effect of federal diversity jurisdiction judgments.

17 *Jacobs v. CBS Broad., Inc*., 291 F.3d 1173 (9th Cir. 2002), likewise does not support

18 Plaintiffs' position. There, the Ninth Circuit addressed whether a Writers Guild of America

19 (WGA) proceeding to determine who deserved participating writer credit barred a federal action.

20 *Id.* at 1177. *Jacobs* did not analyze the preclusive effect of a federal judgment based on diversity

21 jurisdiction. Thus, the *Jacobs* court's unexplained statement that "[u]nder California law, the

22 preclusive effect of a prior *federal* judgment is a matter governed by federal law" is dicta and not a

23 holding that under California law the federal law governing the preclusive effect of federal

24 question judgments governs diversity jurisdiction judgments notwithstanding *Semtek's* holding to

25 the contrary. *Id.*

26 The Court acknowledges that several district courts, including this one, have held that

27 "[u]nder California law, the preclusive effect of a prior federal judgment is a matter governed by

28 federal law" and therefore, "in applying California law, the federal final judgment rule applies".

United States District Court
Northern District of California

1   *Silvia v. EA Tech. Servs., Inc.*, No. 15-CV-04677-JSC, 2018 WL 3093454, at *3 (N.D. Cal. June

2   22, 2018); *see also Rutherford v. FIA Card Servs., N.A.*, No. 13-02934 DDP MANx, 2013 WL

3   12204309, at *3 (C.D. Cal. Sept. 30, 2013) ("Under California law, however, a federal judgment

4   has the same preclusive effect in state court as it would in federal court."). Upon reflection, that

5   holding was incorrect.  In making that statement, the Court relied upon *Jacobs*.  *Silvia*, 2018 WL

6   3093454 at *3 (quoting *Jacobs*, 291 F.3d at 1177).  But, as explained above, that statement was

7   unreasoned dicta.  Further, in support of that statement, *Jacobs* cited the California Supreme

8   Court's decision in *Younger v. Jensen*, 26 Cal.3d 397 (1980), that "[a] federal judgment has the

9   same effect in the courts of this state as it would have in a federal court." *Younger*, 26 Cal.3d at

10  411 (internal citation and quotation marks omitted).  *Younger*, however, addressed the preclusive

11  effect of a federal judgment based upon federal question jurisdiction and thus says nothing about

12  the preclusive effect of a federal diversity jurisdiction judgment.  And *Younger*, in turn, relied

13  upon *Levy v. Cohen*, 19 Cal. 3d 165, 172 (1977), which merely reasoned that "[f]ull faith and

14  credit must be given to a final order or judgment of a federal court" and does not hold that the

15  federal rule governing the preclusive effect of federal question judgments governs the preclusive

16  effect of federal diversity jurisdiction judgments. Further, *Levy* involved a prior judgment from a

17  bankruptcy case over which federal district courts have original and exclusive jurisdiction. *Levy*,

18  19 Cal. 3d at 172–73.  Thus, neither *Younger* nor *Levy* suggests that California law treats the

19  preclusive effect of federal judgments based on diversity jurisdiction the same as federal

20  judgments based on federal question jurisdiction.  And, in any event, since *Younger* was decided,

21  the United States Supreme Court has held that as a matter of federal common law, federal courts

22  apply the state preclusion rules that govern state court judgments to federal diversity jurisdiction

23  judgments.  *Semtek*, 531 U.S at 508.

24      *Joseph v. Am. Gen. Life Ins. Co.*, 495 F. Supp. 3d 953 (S.D. Cal. 2020), aff'd, No. 20-

25  56213, 2021 WL 3754613 (9th Cir. Aug. 25, 2021), held that under California law the preclusive

26  effect "of a prior federal court judgment is analyzed under federal standards" in the context of

27  determining the preclusive effect of a federal diversity jurisdiction judgment.  *Id.* at 958.  In so

28  holding, the court cited *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).

United States District Court
Northern District of California

*Costantini*, however, addressed the preclusive effect of a federal question judgment. *Id.* at 1200-01. The court held that state preclusion rules apply to the preclusive effect of federal question judgments. *Id.* at 1201. That statement of law, however, is clearly irreconcilable with Supreme Court precedent. *See Taylor*, 553 U.S. at 891. Further, in stating that California preclusion law governs the preclusive effect of a federal judgment (without distinguishing between federal question and federal diversity jurisdiction judgments), the court relied on *Younger*, 26 Cal. 3d at 411. As explained above, *Younger* considered the preclusive effect of a federal question judgment. Thus, *Joseph* does not persuade this Court that federal common law governing the preclusive effect of federal question judgments controls here.

Nor is the Court persuaded by Plaintiffs' suggestion that even if California preclusion law applies, under *Semtek's* carve out for "situations in which the state law is incompatible with federal interests" the Court could still consider its judgment final for purposes of issue preclusion. 531 U.S at 509. Plaintiffs argue that "federal courts have a legitimate interest in affording their judgments with immediate preclusive effect, particularly when doing so will conserve judicial resources and avoid duplicative litigation in another forum." (Dkt. No. 970 at 9.) Under *Semtek*, this Court must follow California's preclusion rules regarding finality. Further, to hold otherwise would hardly conserve judicial resources or avoid duplicative litigation; if the Ninth Circuit reverses the judgment, then the first trial and any subsequent cases which were tried after the application of issue preclusion would have to be retried. And if the Ninth Circuit affirms the jury's verdict in whole or in part then the judgment becomes final and issue preclusion will likely apply and thus shorten the trials of the remaining cases.

Accordingly, the Court concludes that California law governs all aspects of the issue preclusion analysis including the question of finality. Because the judgment entered following the jury's verdict is not final under California law, issue preclusion does not apply at this time.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for partial summary judgment is DENIED. As the Court stated at oral argument, there is an issue as to whether it makes sense to go forward with the second trial before the first judgment becomes final under California law. (Dkt. No. 951

United States District Court
Northern District of California

at 17 (Chart arguing that "A legal quagmire will result if a second judgment based upon the preclusive effects of the first judgment cannot stand because the first judgment is reversed.").) *See Callahan, v. PEOPLECONNECT, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079, at *5 (N.D. Cal. Nov. 1, 2021) (discussing the unavailability of preclusion when "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant.") (internal citation omitted).  Indeed, courts frequently stay cases where there is a pending appeal of a parallel or related action which could be dispositive, at least in part, of the federal action.  *See Larsen v. City of Los Angeles*, No. 12-04392, 2012 WL 12887557, at *8 (C.D. Cal. Aug. 3, 2012) (staying a section 1983 action pending an appeal of the grant of the plaintiff's habeas petition invalidating his conviction); *Stafford v. Rite Aid Corp.*, No. 17-01340 AJB-JLB, 2020 WL 4366014, at *5 (S.D. Cal. July 30, 2020 ("staying proceedings pending the appeals of related cases will serve the interests of judicial economy and will help to clarify the issues and questions of law going forward"), reconsideration denied, 2020 WL 6018941 (S.D. Cal. Sept. 29, 2020); *see also Leyva v. Certified Grocers of California, Ltd*., 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

Accordingly, the parties are ordered to file separate statements by December 1, 2021 indicating their position regarding whether these consolidated related actions should be stayed pending Chart's appeal of the judgment in the first action.  The Court sets a further video status conference for December 7, 2021 at 9:30 a.m.

This Order disposes of Docket No. 908.

**IT IS SO ORDERED.**

Dated: November 12, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge